IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

In Re:

Major G. Tillery,

    Movant *Pro Se.*

_____

:
:
:
:
:
:
:
:
:
:

Docket No. _____

Inmate No. : AM 9786

Address:

SCI Chester
500 E. 4th Street
Chester, PA 19013

## MOTION FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Major G. Tillery ("Tillery"), moves for an Order authorizing the

District Court to consider his second petition for a writ of habeas corpus, pursuant

to 28 U.S.C. § 2244 and Local Appellate Rule 22.5.

Petitioner has appended his proposed *Second Petition for Relief Pursuant to*

*28 U.S.C. § 2254 (Petition)* and supporting sworn declarations to this Motion,

along with the documents required pursuant to Local Appellate Rule 22.5(a) and an

accompanying memorandum of law. In addition, he states the following:

1.      This is a case of factual innocence and gross prosecutorial misconduct violating Tillery's right to due process and a fair trial. Newly discovered evidence proves that the Commonwealth knowingly and intentionally manufactured and presented false evidence and suppressed impeachment and exculpatory evidence to falsely convict Tillery, resulting in a fundamental miscarriage of justice that warrants the reversal of Tillery's conviction.

2.      Petitioner was convicted in May 1985 for murder in the first degree for the shooting death of Joseph Hollis and aggravated assault for the shooting of John Pickens in a North Philadelphia poolroom on October 22, 1976. He was sentenced to life imprisonment without the possibility of parole, with a consecutive 5-10 year sentence for the aggravated assault. Tillery is now 69 years old and has been imprisoned for almost thirty-seven years; twenty of those years in solitary confinement.

3.      The central evidence against Tillery was the testimony of career jailhouse informant, Emanuel Claitt ("Claitt"), who allegedly was an eyewitness to the shootings. The Commonwealth's other fact witness, Robert Mickens ("Mickens"), was allegedly a lookout on the street and heard shots from inside the poolroom.

4.    The surviving victim, John Pickens, gave a written and oral statement describing the shooters, "Dave" and "Rickie," to a homicide detective the morning after the shooting. Pa 294-300. Pickens did not name Tillery, and affirmatively denied that William Franklin, Tillery's alleged co-conspirator, was involved when shown Franklin's police photo. The prosecution did not produce Pickens to testify at trial. Tillery requested his trial attorney to subpoena Pickens as a defense witness, but Pickens could not be located.

5.    No physical evidence was presented against Tillery at trial, nor was any physical evidence linked to him in any way. Car keys found in the poolroom were identified as belonging to Fred Rainey, who was not charged; likewise, eighteen hundred dollars from the poolroom was released to Alfred Clark, who was detained in a car stop shortly after the shooting, but was not charged. Hats and coats found in the poolroom were not linked to Tillery. No fingerprints were taken at the scene.

6.    No one was arrested for this homicide and assault until the spring of 1980, after homicide detectives questioned Emanuel Claitt, who was, at the time, in jail for a parole violation and had 28 open charges against him. Following a May 20, 1980 written statement given by Claitt to homicide detectives, arrest warrants

3

were issued for Tillery and William Franklin ("Franklin"), the owner of the poolroom.

7.      Claitt testified against Franklin, in November/December 1980, and against Tillery five years later, in May 1985. The only evidence inculpating Tillery was the testimony of Claitt and Mickens.

8.      On June 15, 2016, Tillery filed a PCRA petition *pro se* in the Court of Common Pleas of Philadelphia County. Pa 436-474. The claims in that PCRA petition also form the basis of his second federal petition for habeas corpus (i.e. the subject of the instant motion). They were:

1)      Factual innocence;

2)      Intentional fabrication of testimony by the Commonwealth, the Commonwealth's knowing presentment of perjured testimony, and suppression of impeachment and exculpatory evidence by the Commonwealth.

9.      The petition was based on newly discovered facts, as set forth in the sworn declarations of Emanuel Claitt and Robert Mickens. Pa 1-19.

10.      In their declarations, Claitt and Mickens both state, for the first time, that their testimony at trial was entirely false, that their testimony was scripted and coached by the Commonwealth, that neither were in or near the poolroom on

4

October 22, 1976, and that neither Claitt nor Mickens have any personal knowledge of the shootings of Hollis or Pickens, or the events allegedly leading up to the shootings.

11.     Claitt and Mickens corroborate each other regarding the methods and practices employed by homicide detectives and prosecutors to obtain their false statements and present their perjured trial testimony.

12.     Additional corroboration is presented, in the petition, that police detectives wrongly permitted Claitt and Mickens to have private sexual visits with girlfriends in Police Administration Building (PAB) interview rooms as an inducement for their false testimony. Four of these women have been identified; one has acknowledged her participation, and another's presence with Claitt is recorded in the log book of the PAB. Pa 307-311.

13.     The PAB visitation logs for the homicide interview room were provided to Tillery by another inmate, Andre Harvey, whose case involves the same sex-for-testimony deals offered to a witness. The detectives in Harvey's case, Lawrence Gerrard and Ernest Gilbert, were also involved in investigating Tillery's case. Pa 301-306.

14. Identical misconduct by Detectives Gerrard and Gilbert has, in the past, resulted in the reversal of a conviction. *See Commonwealth v. Lester,* 572 A.2d 694 (Pa. Super. 1990) (voluntary manslaughter).

15. The falsified testimony of Claitt and Mickens was the *only evidence* inculpating Tillery.

## RELEVANT PROCEDURAL HISTORY

16. Petitioner, Major George Tillery, was arrested and charged with murder in the first degree for the shooting death of Joseph Hollis, criminal conspiracy, possessing instruments of crime generally and aggravated assault under Philadelphia County, Pennsylvania docket number CP-51-CR-0305681-1984. His trial took place from May 2 - May 29, 1985**.** On May 29, 1985, Tillery was convicted on all counts. On December 9, 1986, Tillery was sentenced to life imprisonment without parole on the first degree murder conviction, to run concurrently with a 1-2 year sentence on possession of instruments of crime generally and concurrently with a 5-10 year sentence on criminal conspiracy. A 5-10 year sentence on aggravated assault was to run consecutively to the life sentence. Tillery was represented at trial by attorney Joseph Santaguida.

17.     On direct appeal, the Superior Court of Pennsylvania affirmed
Tillery's conviction on May 30, 1999. *Commonwealth v. Tillery,* No. 3297
Philadelphia 1986, 563 A.2d 195 (Pa. Super. 1989) (unpublished memorandum),
*allocatur denied, Commonweath v. Tillery,* 593 A.2d 841 (Pa. Mar. 5, 1990). Pa
394-407. Tillery was represented on his direct appeals by attorney James S. Bruno.

18.     Petitioner filed his first PCRA petition in the Court of Common Pleas
(CCP) of Philadelphia County on September 20, 1996. Pa 408-415. The petition
claimed ineffective assistance of Tillery's trial counsel, Joseph Santaguida, on the
basis that Santaguida had an actual conflict of interest because he had previously
represented John Pickens, one of the alleged victims in Tillery's case, during the
Commonwealth's case against Tillery's alleged co-conspirator, William Franklin.
The CCP denied the petition on timeliness grounds on January 13, 1998.

19.     The Superior Court of Pennsylvania affirmed on appeal on April 21,
1999. *Commonwealth v. Tillery,* 738 A.2d 1055 (Pa. Super. 1999) (unpublished
memorandum), *allocatur denied, Commonwealth v. Tillery*, 742 A.2d 674 (Pa. Aug.
18, 1999). Pa 416-419. Petitioner was represented on his first PCRA petition by
Richard P. Hunter.

20.     Petitioner filed a *pro se* petition for habeas corpus relief in the United States District Court for the Eastern District of Pennsylvania on December 22, 1999. *Tillery v. Horn*, 2:99-cv-065160-BWK (E.D. Pa.). This petition also alleged ineffective assistance of Tillery's trial counsel, Joseph Santaguida, as the first PCRA petition had.

21.     Initially, the District Court affirmed the magistrate judge's report and denied a hearing on October 30, 2000. The Court of Appeals granted a certificate of appealability on February 28, 2002 and clarified that its remand was for the purposes of a hearing on August 21, 2002. *Tillery v. Horn,* No. 00-3818 (3d Cir. 2002). Evidentiary hearings were held on April 23, 2003 and May 28, 2003, during which Tillery and Santaguida both testified. The District Court then denied relief on July 29, 2003. Pa 38-39.

22.     Petitioner was represented in the District Court by Edward H. Wiley, who was appointed following remand from the Court of Appeals (No. 00-3818) on August 21, 2002.

23.     Following the denial of relief on July 29, 2003, the Court of Appeals affirmed the District Court on July 29, 2005. *Tillery v. Horn,* 142 F. App'x. 66 (3rd

8

Cir. 2005) (No. 03-3616). Pa 100-111. Tillery was represented in the Court of Appeals by Michael J. Confusione.

24.     On August 13, 2007, Tillery filed a second PCRA petition *pro se* in the Court of Common Pleas of Philadelphia County, with a *Brady* claim based on court records, including trial testimony in other cases, which provided information that Claitt was promised a sentence of "less than 10 years" and that Mickens had obtained parole assistance. Pa 436-474. The petition was dismissed by the Court of Common Pleas on September 9, 2008 on timeliness grounds.

25.     The Superior Court of Pennsylvania affirmed on appeal on July 15, 2009. *Commonwealth v. Tillery,* 981 A.2d 937 (Pa. Super. 2009) (unpublished memorandum), *allocatur denied*, *Commonwealth v. Tillery,* 985 A.2d 972 (Pa. Dec. 9, 2009). Pa 475-481.

26.     On June 15, 2016, Tillery filed a third PCRA petition *pro se* in the Court of Common Pleas of Philadelphia County. Pa 482-549. This PCRA petition was dismissed by the Court of Common Pleas on September 26, 2016 on timeliness grounds.

27.     The Superior Court of Pennsylvania affirmed on appeal on June 11, 2018. *Commonwealth v. Tillery*, 193 A.3d 1063 (Pa. Super. 2018) (unpublished

memorandum), *allocatur denied, Commonwealth v. Tillery,* 201 A.3d 729 (Pa. Feb. 6, 2019). Pa 559-565. Tillery's Application for Reconsideration of the Denial of Allowance of Appeal was denied on May 1, 2019. Tillery was represented by Stephen P. Patrizio on the appeal.

## RELATED PENDING LITIGATION

28.      Petitioner's alleged co-conspirator, William Franklin ("Franklin"), was tried from November - December 1980 for murder in the first degree, criminal conspiracy, possessing instruments of crime generally and aggravated assault under Philadelphia County, Pennsylvania docket number CP-51-CR-0527851-1980. On December 5, 1980, Franklin was convicted on all counts. Franklin was sentenced to life imprisonment without the possibility of parole on July 7, 1982.

29.      Franklin filed a PCRA petition in the Court of Common Pleas of Philadelphia County on July 18, 2016, docket number CP-51-CR-0605611-1980. Franklin's petition was also dismissed by the Court of Common Pleas on September 12, 2017 on timeliness grounds.

30.      The Superior Court of Pennsylvania reversed on appeal and remanded to the PCRA court for an evidentiary hearing on November 16, 2018. *Commonwealth v. Franklin,* 201 A.3d 854 (Pa. Super. 2018) (unpublished

10

memorandum). Pa 566-578. Franklin's evidentiary hearing is ongoing in the Court of Common Pleas.

31.     Both Tillery's and Franklin's PCRA petitions and subsequent appeals was based on Claitt's declaration,[1] and made the same argument: for purposes of the timeliness exceptions to the PCRA, 42 Pa. C. S. § 9545(b)(1)(i) and (ii), due diligence does not require the petitioner to seek out and interview Commonwealth witnesses known to have committed perjury at trial, nor is the petitioner required the make the unreasonable assumption that the Commonwealth improperly permitted those witnesses to commit perjury. *Commonwealth v. Medina*, 92 A.3d 1210 (Pa. Super. 2014); *Commonwealth v. Davis,* 836 A.2d 125 (Pa. Super. 2003), *Commonwealth v. Loner,* 836 A.2d 125 (Pa. Super. 2003); *Commonwealth v. McCracken*, 659 A.2d 541 (Pa. 1995).

## PRIOR APPLICATIONS FOR HABEAS CORPUS

32.     Petitioner respectfully submits that the issues presented herein have not been previously litigated in a prior application for habeas corpus.

---

[1]     Robert Mickens was not a witness at Franklin's trial. Thus, Franklin's PCRA petition was entirely based on the declaration of Emanuel Claitt.

11

33.     Petitioner's first petition for habeas corpus was restricted to the issue of ineffective assistance of his trial counsel based on an undisclosed conflict of interest. His trial attorney, Joseph Santaguida, had previously represented one of the victims in the shooting, John Pickens. Tillery refers the Court to the District Court's order of July 29, 2003 and the Third Circuit's opinion of July 29, 2005, *Tillery v. Horn,* 142 F. App'x. 66 (3rd Cir. 2005) (No. 03-3616). Pa 27-111.

34.     None of the claims in Tillery's first petition for habeas corpus are raised in the instant petition.

### FACTS SHOWING DUE DILIGENCE

35.     Petitioner respectfully submits that the factual predicate underlying this petition - the Commonwealth's fabrication of the entirety of the witness testimony against him and its suborning of perjury by those witnesses - was not previously discoverable through the exercise of due diligence. The factual predicate is not that Claitt and Mickens lied in inculpating Tillery: that is not a new fact. Tillery was well aware of this, and has always maintained that he is factually innocent.

36.     The following acts of misconduct by the Commonwealth were previously unknown to Tillery:

12

(a)     The fact that prosecution witnesses Claitt and Mickens were not on

the scene of the shootings at all, and that the entirety of their

testimony concerning Tillery was false, was known to the

Commonwealth, which used threats and promises of favorable

treatment as an inducement for that false testimony;

(b)     Threatening prosecution witnesses Claitt and Mickens with false

murder charges unless they agreed to provide false testimony against

Tillery;

(c)     Arranging private meetings for sexual liaisons involving Claitt and

Mickens, while they were in custody, by named detectives, with

named women;

(d)     Manufacturing Claitt's and Mickens' false statements and testimony

inculpating Tillery;

(e)     Arranging a meeting of Claitt with Mickens, while they were in

custody, for Claitt to convince Mickens to falsely testify against

Tillery;

(f)     Granting multiple undisclosed plea deals to Claitt and Mickens, including dismissal of charges, minimal sentences, bail arrangements and release from jail despite detainers;

(g)     Concealing the existence of a set of charges (the May 16, 1980 robbery charges) from the defense, on which the Commonwealth had an agreement to dismiss the charges entirely;

(h)     Prompting Claitt and Mickens to testify falsely denying those same plea deals and bail and parole agreements; and

(i)     Vouching at trial for the truthfulness and lack of ulterior motive for Claitt's and Mickens' false testimony, and failing to correct that perjured testimony.

37.     In the decades since Tillery's conviction and incarceration, Tillery was transferred to more than ten different prisons. In addition to solitary confinement at Leavenworth and Marion, Tillery spent five years in the New Jersey State Management Control Unit (MCU) in Trenton, four years in solitary at SCI Retreat, SCI Pittsburgh and SCI Forest, and four months in solitary at SCI Frackville, for a total of approximately 20 years in solitary. He suffered severe illnesses, and his legal files were destroyed in a prison flood.

14

38.     Despite this, over the course of his imprisonment, Tillery persistently and patiently challenged his conviction. He researched public records using Pennsylvania's Right-to-Know Law and reviewed the criminal records of Claitt and Mickens, whose testimony he knew to be perjured at trial.

39.     Petitioner's *pro se* 2007 PCRA petition, his second, was the result of these diligent and extensive efforts. The factual predicate of that petition was that Claitt was offered a sentence of "less than ten years" as a plea deal and Mickens had obtained parole assistance, contradicting their trial testimony that they had no deals.

40.     There was no documentation in the available records at that time to support the new facts, as now revealed in Claitt's and Mickens' declarations, that their testimony was manufactured and coached by the Commonwealth. Nor (as explained in Tillery's attached, proposed Petition) were the specific plea deals known, which included dismissals of open charges - including entire sets of charges which were never disclosed at trial - along with other inducements offered to Claitt and Mickens, such as arranging for sex with girlfriends in homicide interview rooms.

41.    The 1983 log records of the Police Administration Building (PAB) homicide interview rooms, which corroborate the assertions of sexual liaisons in exchange for false testimony, are not public records and could not have been discovered by Tillery through a records search. They were provided to Tillery by a prisoner, Andre Harvey, who obtained them through a private investigator.

42.    Based on the trial testimony of Claitt and Mickens, who stated at trial that they were witnesses to or in some way involved in the shootings, Tillery had always assumed that Claitt and Mickens were uncharged accessories to the October 22, 1976 shooting. Tillery learnt, based on the numerous times they testified as the key prosecution witness in other cases, that Claitt and Mickens were career informants, beholden to the police and prosecution. These concrete facts show that Tillery had no reasonable expectation that either Claitt or Mickens would acknowledge their perjured testimony against him.

43.    Claitt's continuing relationship with the Commonwealth is shown by his admission that the Phildelphia District Attorney's office assisted him in obtaining a dismissal of his bond judgments as recently as 2014 - only two years before Tillery obtained Claitt's declaration.

16

44.     The declarants, Emanuel Claitt and Robert Mickens, also state that they did not previously come forward due to fear of retaliation if they did so.

45.     Petitioner risked retaliation from the Commonwealth, including prison officials, if he attempted to directly contact Claitt about his false testimony against him. The Department of Corrections had "separation orders" issued against Tillery and individuals who Tillery had previous involvement with. Claitt asserted at trial, falsely, that Tillery tried to attack him in 1982 for testifying in Franklin's case. The Commonwealth had also obtained a protective order for Robert Mickens, pursuant to then-Pennsylvania Rule of Criminal Procedure 305(F), making Mickens a "secret witness" against Tillery, on the grounds that Mickens feared retaliation from Tillery.

46.     Petitioner has been incarcerated for more than thirty-six years, more than twenty of which he spent in solitary confinement. He was identified as a leader in the prison population and - falsely - as a former leader in the Philadelphia "Black Mafia".

47.     Petitioner was initially transferred into solitary confinement at Leavenworth in 1989 on the basis that he played a role in starting the Camp Hill

17

prison riots that year. Tillery was not even incarcerated at Camp Hill when the riots took place, and was not involved in instigating the riots.

48.     The fact that Tillery was not even at Camp Hill and did not participate in the riots took more than twenty years to be corrected. *Tillery v. Hayman*, No. 3:07-cv-02662-MLC-LHG (D.N.J. Mar. 31, 2011).

49.     Petitioner has had zero misconducts, throughout his term of incarceration, for gang affiliations or prisoner organizing.

50.     Petitioner was released from solitary confinement only in May 2014.

51.     Petitioner recounts the above history to emphasize the objective fact that he would have been disciplined, though for spurious reasons, if he had attempted to contact Claitt or Mickens prior to his release from solitary confinement.

## CONCLUSION

52.     This Petition makes out a *prima facie* case that the factual predicate of the Petition could not have been discovered previously through the exercise of due diligence. To a clear and convincing standard, Tillery's conviction rested entirely upon intentionally fabricated testimony, which was knowingly permitted to stand

uncorrected, and this exculpatory information was not disclosed to the defense, in violation of Tillery's constitutional and fundamental rights.

53.     Accordingly, the facts underlying the Petition show that, but for constitutional error, no reasonable factfinder would have found Tillery guilty of the underlying offense.

54.     Petitioner remains imprisoned at SCI Chester, serving a sentence of life without the possibility of parole.

55.     Petitioner is factually innocent of the murder of which he was convicted.

WHEREFORE, Petitioner respectfully requests this Court to grant his motion and issue an order authorizing the district court to consider his second petition for habeas corpus.


Dated : 4/30/20          Respectfully Submitted,



MAJOR G. TILLERY
Movant *Pro Se*
SCI Chester
500 E. 4th Street
Chester, PA 19013

## CERTIFICATE OF SERVICE

I, Richard Tan, hereby certify that on May 1, 2020, I caused a copy of this Motion for Order Authorizing District Court to Consider Second Petition for Writ of Habeas Corpus, Memorandum in Support and Appendix, which includes Petitioner's Second Petition for Relief Pursuant to 28 U.S.C. § 2254 and Exhibits, to be served by U.S. Mail on:

Office of the District Attorney
3 South Penn Square
Philadelphia, Pennsylvania 19107

Office of the Attorney General of Pennsylvania
1600 Arch Street, Suite 300
Philadelphia, Pennsylvania 19107

Kenneth Eason, Acting Superintendent
SCI Chester
500 E. 4th St.
Chester, Pennsylvania 19013

_____
Richard Tan