IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

In Re:

Major G. Tillery,

              Movant *Pro Se.*

_____

: Docket No. _____

:

: Inmate No. : AM 9786

:

: Confinement: SCI Chester
: 500 E. 4th Street
: Chester, PA 19013

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Petitioner, Major G. Tillery ("Tillery"), submits this Memorandum in support of his *Motion for Order Authorizing District Court to Consider Second Petition for Writ of Habeas Corpus.*

Petitioner's *Second Petition for Writ of Habeas Corpus* (*Petition)* proves factual innocence and gross prosecutorial misconduct, violating Major Tillery's right to due process and a fair trial. Newly discovered evidence proves that the Commonwealth obtained Tillery's conviction by intentionally manufacturing and presenting false evidence, as well as suppressing exculpatory and impeachment

evidence. The Commonwealth's actions caused a fundamental miscarriage of justice that warrants the reversal of Tillery's conviction.

The Petition includes the declarations, under penalty of perjury, of Emanuel Claitt ("Claitt") and Robert Mickens ("Mickens"), corroborated by additional witnesses and documentary evidence. Claitt and Mickens were the only fact witnesses at Tillery's trial for the shootings of Joseph Hollis and John Pickens. There was no physical evidence implicating Tillery, and Claitt was the sole alleged witness to the shooting itself. Both witnesses now state that their trial testimony was entirely false, that they were not at the scene of the shootings, and that their testimony was, in actuality, fabricated and scripted by the Commonwealth.

Based on Claitt's declarations and the supporting evidence in this *Petition*, Tillery's alleged co-conspirator, William Franklin ("Franklin"), was granted an evidentiary hearing by the Superior Court of Pennsylvania following an initial dismissal on timeliness grounds by the Pennsylvania (PCRA) court.[1] But despite making the same arguments, Petitioner has yet to receive *any* hearing on the merits of his claims.

---

[1] Mickens did not testify against Franklin during Franklin's trial in 1980, so Franklin's PCRA was based entirely on Claitt's declarations.

This Petition makes out a *prima facie* showing that "but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty" of first degree murder, and that the information contained therein "could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(B).

## II. FACTUAL SUMMARY

On October 22, 1976, Philadelphia police received a call to a poolroom in North Philadelphia. Inside, police discovered the dead body of Joseph Hollis. Around the corner from the poolroom, police found John Pickens bleeding from a gunshot wound. Pickens survived his injuries.

As more fully discussed in the attached Petition, no physical evidence was presented against Tillery. No fingerprints were taken on the scene. None of the physical evidence recovered was linked to Tillery at all. Car keys found in the poolroom were identified as belonging to another individual, Fred Rainey, who was not charged; likewise, eighteen hundred dollars from the poolroom was released to Alfred Clark, who was detained in a car stop shortly after the shooting, but who was likewise not charged. The surviving victim, John Pickens, gave a written and oral statement to police in which he stated that "Dave" and "Rickie"

3

committed the shooting, but the prosecution never subpoenaed Pickens at trial. Pa 294-300.

No one was charged for this homicide and assault until the spring of 1980, when Emanuel Claitt was questioned by police detectives. Claitt, a serial jailhouse informant who had 28 open charges against him at the time - at trial he claimed that he had eight - provided a written statement inculpating Tillery and Franklin and later testified at both the trial of William Franklin, in November/December 1980, and Tillery's trial five years later, in May 1985. Claitt was the only eyewitness identifying Tillery as the shooter.[2]

Mickens did not testify to seeing the shootings. He testified that he was recruited by Tillery to serve as a lookout, was outside the poolhall when the shootings took place, and heard shots ring out inside the building.

Tillery was convicted of murder in the first degree and sentenced to life without the possibility of parole in December 1986. Thirty years later, Claitt and Mickens made declarations, under penalty of perjury, which led to the filing of Tillery's third PCRA petition on June 15, 2016. Pa 1-19.

---

[2] *Commonwealth v. Tillery,* No. 3297 Philadelphia 1986, 563 A.2d 195, pp. 3-5 (Pa. Super. 1989) (unpublished memorandum) (summary of case). Pa 394-407.

Tillery refers the Court to his Petition for a more complete description of the Commonwealth's misconduct, as revealed by Claitt and Mickens. Essentially, and in the most basic sense, the entirety of the substantive testimony at trial was manufactured. Claitt was not present during the events of the shooting, nor was he present at the alleged events leading up to the shooting, which supplied a motive. Claitt's account of being attacked by Tillery in 1982, after he testified in William Franklin's trial, was likewise false. Similarly, Mickens was not at the scene during the shooting and was never recruited by Tillery to be a look-out. Pa 1-19.

Claitt also lied about the circumstances leading up to his alleged confession. At trial, he testified that he provided police, out of altruism and with no expectation of reward, with information about both the Goodwin case and a number of other cases, including the Hollis shooting. In actuality, Claitt was threatened with charges for Goodwin's murder, was coerced into providing false testimony, and offered inducements of leniency, including dismissals of open charges - deals which were concealed from Tillery by the Commonwealth:

- The Commonwealth concealed the very existence of 13 open charges for robbery ("May 1980 robbery charges"), for which Claitt was arrested on May 16, 1980, four days before he gave his first written statement inculpating Tillery, for which the complaint was filed the

5

month of William Franklin's trial, and which the Commonwealth dismissed after Franklin's trial.

- The Commonwealth instructed Claitt to testify, falsely, that he had "no deal" on a separate set of robbery charges ("1983 robbery charges"), which were open at the time Tillery was tried. After Tillery's trial, the Commonwealth dismissed all the charges.

- The Commonwealth instructed Claitt to testify, falsely, that he made an "open plea" on charges to which he actually had an agreement to receive no more than 10 years ("1978-1980 charges").

As an inducement to testify falsely, homicide detectives arranged for Claitt's and Mickens' girlfriends to visit privately with them in the Police Administration Building (PAB) interview rooms. These visits are documented in the attached PAB logs, which Tillery obtained from another prisoner, Andre Harvey, who raised the same issue in his own appeals against the same detectives (Lawrence Gerrard and Ernest Gilbert). Identical misconduct by Detectives Gerrard and Gilbert in another case resulted in the reversal of a conviction for voluntary manslaughter. *See Commonwealth v. Lester*, 572 A.2d 694 (Pa. Super. 1990).

The Commonwealth also suppressed the fact that Claitt was placed in a police van with Mickens which rode "back and forth from police headquarters to

the county prison on State Street" for hours while Claitt pressured Mickens. Pa 4, 17.

Petitioner asserts claims of factual innocence, that the entirety of the testimony against him at trial was fabricated by the Commonwealth, that the Commonwealth knowingly permitted this perjured testimony to stand uncorrected, and that the Commonwealth failed to disclose this exculpatory evidence to him, both at trial and during the 36-plus years he has been incarcerated.

## III. ARGUMENT

### A. PETITIONER MEETS THE REQUIREMENTS OF 28 U.S.C. § 2244(b)(2)

#### 1. Standard of Review

In order to file a successive petition for writ of habeas corpus, a petitioner must demonstrate that he has alleged "a *prima facie* showing that the application satisfies the requirements of § 2244(b)(2)". 28 U.S.C. § 2244(b)(3)(C).

The *prima facie* showing required by § 2244(b)(3)(C) is a modest one. It requires only "a sufficient showing of possible merit to warrant a fuller exploration

by the district court." *Goldblum v. Klem,* 510 F.3d 204, 219 (3rd Cir. 2007) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).[3]

As in any context where a court determines the existence *vel non* of a *prima facie* showing, credibility determinations should not be attempted. 28 U.S.C. § 2244(b)(2)(B) ("The facts underlying the claim, *if proven* . . .") (emphasis added). "A more extensive inquiry" is left to the District Court, after an appropriate evidentiary hearing. *Goldblum,* 510 F.3d at 220.

### 2. No Reasonable Factfinder Would Have Found Tillery Guilty of the Underlying Offense

The two witnesses on whose testimony Tillery's conviction depended state that their substantive testimony was entirely false. They recount circumstances in which their perjured testimony was extorted from them through threats of prison time. Inducements were provided, including promises of leniency and sexual

---

[3] *Accord In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003); *Bell v. United States*, 296 F.3d 127, 128 (2nd Cir. 2002) *Reyes-Requena v. United States,* 243 F.3d 893, 899 (5th Cir. 2001); *Thompson v. Calderon*, 151 F.3d 918, 925 (9th Cir. 1998); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981), 450 U.S. 248, 253 (1981) ("burden of establishing a *prima facie* case . . . is not onerous"); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993) (*prima facie* showing is "minimal"); *Johnson v. Love,* 490 F.3d 658, 663 (3rd Cir. 1994) ("some reason to believe" claim "might" succeed).

inducements. Those promises of leniency were, actually, fulfilled. None of this was disclosed to Tillery.

The suppression of material exculpatory or impeachment evidence violates due process. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citing *Brady v. Maryland,* 373 U.S. 83 (1963)). Furthermore, the Supreme Court has long held that "a deliberate deception of court and jury by the presentation of testimony known to be perjured . . . [is] inconsistent with the rudimentary demands of justice . . ." *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). Any conviction "obtained by the knowing use of perjured testimony is fundamentally unfair . . ." *United States v. Agurs*, 427 U.S. 97, 103 (collecting cases). *See also Haskell v Superintendent Greene SCI,* 866 F.3d 139, 151 (3rd Cir. 2017); *Lambert v. Blackwell,* 387 F.3d 210, 242-43 (3rd Cir. 2004).

The knowing suppression of exculpatory evidence is both a violation of *Brady/Napue* and prosecutorial misconduct. *United States v. John-Baptiste*, 747 F.3d 186, 209 (3d Cir. 2014) (citations omitted). Claims involving the solicitation of perjured testimony are subject to a "strict standard of materiality", under which a conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment for the jury." *United States v. Agurs,*

427 U.S. 97, 103 (1976) (citations omitted); *Lambert v. Blackwell,* 387 F.3d 210, 242 (3d Cir. 2004).

The declarations of Emanuel Claitt and Robert Mickens undermine the entirety of the Commonwealth's case. Both state their testimony - *all* the evidence inculpating Tillery - was manufactured by the Commonwealth. In addition to this, the Commonwealth suppressed evidence of deals to dismiss a set of robbery charges, to receive reduced time on charges which Claitt pled guilty to, and also completely concealed the existence of a separate set of robbery charges for which Claitt was arrested *four days* before his statement to police inculpating Tillery.

This Court has explained that, when a key witness testifies, falsely, that they received no consideration for their testimony, this alone suffices to make out a *Napue* claim. *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 145-47 (3d Cir. 2017) (citation omitted). Taking the above facts as proven for purposes of establishing a *prima facie* case, and conducting a review, as § 2244(b)(2)(B)(ii) states, "in light of the evidence as a whole" - a review which should include in its purview the paucity of evidence against Tillery at trial - this Court should conclude, to a clear and convincing (or indeed, to any) standard, that there is a *prima facie* showing that no reasonable factfinder who was aware of this evidence would have found Tillery guilty.

### 3. The Factual Predicate Could Not Have Been Discovered Previously Through the Exercise of Due Diligence

The level of diligence displayed by Tillery is best evaluated by the District Court in view of the "factually intensive" nature of the inquiry. *Holland v. Florida*, 560 U.S. 531, 653-54 (2010). Indeed, this Court is only required to pass upon whether Tillery makes a *prima facie* showing of diligence.

As this Court has explained, the "reasonable diligence" standard does not require extreme or exceptional diligence. *Wilson v. Beard*, 426 F.3d 653, 660 (". . . to satisfy § 2244(d)(1)(D)'s 'due diligence' standard, a prisoner must exercise 'reasonable diligence in the circumstances."); *Lacava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005) (reasonable diligence does not require "the maximum feasible diligence."). This Court recognizes that a long period of incarceration bears on the due diligence inquiry, and that "physical confinement can limit a litigant's ability to exercise due diligence." *Schuleter v. Varner,* 384 F.3d at 75 (citing *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004)).

Petitioner has consistently maintained his innocence. He was aware at trial that the testimony against him was perjured. Following his conviction, despite the lack of legal representation, he steadily conducted research on Claitt and Mickens and investigated avenues through which he could prove his innocence. This included obtaining a large number of external documents and public records

11

through the Pennsyvlania Right-to-Know Law, including trial transcripts, docket entries and letters from the Philadelphia District Attorney requesting leniency for Emanuel Claitt, which were used to support his second PCRA petition in 2007. Pa. 436-474. This extensive investigation disclosed one falsification concerning undisclosed plea deals: that Claitt was promised "no more than ten years" when sentenced on his 1978-1980 charges.

In contrast, the factual predicate underlying the instant petition is the Commonwealth's fabrication of the entirety of the witness testimony against Tillery, and its suborning of perjury. The Commonwealth deliberately concealed misconduct, including threats and wrongful inducements (including sex-for-testimony exchanges) given to Claitt and Mickens. Police and prosecutors manufactured the entirety of the substantive testimony, and concealed plea deals (as well as entire sets of charges) which were not raised in the 2007 PCRA.

Petitioner's 2007 PCRA petition shows that he has consistently and patiently sought, within the constraints imposed upon him by his three-decade-long incarceration - of which approximately 20 years were spent in solitary confinement - to uncover information proving his innocence through public records.

Petitioner did not attempt to contact Claitt or Mickens. He did not do so in the preparation for his 2007 PCRA, or afterwards, until they themselves came

forward in 2016. It is not that doing so never occurred to him. The reason he did not previously seek to contact either witness is because the Commonwealth maintained, falsely, that Claitt and Mickens had been threatened by him.

At trial, Claitt falsely maintained that Tillery had attempted to shoot him in 1982 in retaliation for his testimony. Pa 9. The Commonwealth also obtained a protective order to conceal Mickens' identity from the defense, on the false grounds that Mickens feared retaliation. Because of the prosecutorial misconduct in this case, any attempt to contact Claitt or Mickens would have prompted immediate retaliation from prosecutors. Claitt states that, as recently as 2014, he was still receiving favorable treatment from the Philadelphia District Attorney's office. Pa 5.

To further explain the consequences for him if he had attempted to contact either witness earlier, Tillery briefly summarizes the circumstances of his incarceration.

Following his conviction, Tillery was identified in prison as a leader in the prison population and - falsely - as a former leader in the Philadelphia Black Mafia. After riots broke out at Camp Hill in October 1989, Tillery was shipped out of Pennsylvania and transferred into the federal system, into maximum security and solitary confinement at Leavenworth and then the super-max isolation prison at Marion, Ill. His prison jacket falsely stated that he was a participant in the Camp

13

Hill riot and that he had "gang involvement". These allegations were plainly incorrect, since Tillery was *not even incarcerated at Camp Hill when the riots happened,* and could not have been a participant.[4]

Over three decades of incarceration,[5] Tillery has had zero misconducts based on gang affiliations or prisoner organizing, belying his alleged affiliation with the "Black Mafia". He was released from solitary confinement in 2014 after eleven years without a misconduct: only two years before Claitt and Mickens made their declarations.

This Court has definitively rejected the proposition that, for a *Brady* claim, a due diligence requirement should be imposed on the defendant. *Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263 (3rd Cir. 2016). In fact, the allegations in this Petition

---

[4] The errors in Tillery's record were not corrected until twenty years after his conviction, in 2007-2009, when Tillery participated in a class action lawsuit challenging the grounds for his solitary confinement in the New Jersey State Management Control Unit (MCU). Although the action was dismissed on summary judgment, the twenty-year error in his record concerning his presence at Camp Hill during the riots was corrected during the lawsuit. *Tillery v. Hayman*, No. 3:07-cv-02662-MLC-LHG (D.N.J. Mar. 31, 2011).

[5] Over the course of his thirty year incarceration, Tillery has been transferred to more than ten different prisons. In addition to solitary confinement at Leavenworth and Marion, Tillery spent five years in the New Jersey State Management Control Unit (MCU) in Trenton, four years in solitary at SCI Retreat, SCI Pittsburgh and SCI Forest, and four months in solitary at SCI Frackville, for a total of approximately 20 years in solitary confinement.

closely track *Banks v. Dretke,* 540 U.S. 668 (2004), on which *Dennis* relied. In rejecting any due diligence requirement for *Brady* claims alleging prosecutorial misconduct, the Supreme Court in *Banks* held that "[a] rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Id.* at 696.

 Although Tillery recognizes that the due diligence requirement for a *Brady* claim is analytically distinct from the gatekeeping inquiry here, this Court's opinion in *Dennis* should weigh heavily in its consideration of whether Tillery makes a *prima facie* showing of due diligence. It was the Commonwealth's misconduct which prevented Tillery from uncovering the perjured testimony in this case. The witnesses who have now come forward all state that they feared, and continue to fear, retaliation for doing so. Pa 9, 18. Despite these impediments, Tillery researched and filed a previous petition on suppressed evidence of plea deals, using available public information. This Court should find that, for purposes of 28 U.S.C. § 2244(b)(2)(B), Tillery exercised reasonable diligence.

### B. PETITIONER SATISFIES AN EQUITABLE EXCEPTION TO 28 U.S.C. § 2244(d)

#### 1. Legal Standard

"A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).

AEDPA's limitation period "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run'." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (quoting *Day v. McDonough,* 547 U.S. 198, 208 (2006)). Instead, the limitation period is subject to both statutory and equitable tolling.[6] *Munchinski v. Wilson*, 694 F.3d 308, 327-29 (3d Cir. 2012). In addition to tolling, "to prevent a 'fundamental miscarriage of justice', an untimely petition is not barred when a petition makes a 'credible showing of actual innocence' . . . " *Reeves v. Fayette SCI,* 897 F.3d 154, 160 (3d Cir. 2018) (quoting *McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013)).

---

[6] Because the Pennsylvania courts rejected Tillery's PCRA petition as untimely, it was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2), and he was not entitled to statutory tolling, per *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

16

## 2. Petitioner Makes Out a Gateway Claim of Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court recognized that the "fundamental miscarriage of justice" exception to the doctrine of procedural default, recognized in *Schlup v. Delo*, 513 U.S. 298 (1995), provides an equitable exception to AEDPA's statute of limitations. "*McQuiggin* illustrates that where a petitioner makes an adequate showing of actual innocence, our interest in avoiding the wrongful conviction of an innocent person permits the petitioner to pursue his constitutional claims in spite of the statute of limitations bar." *Satterfield v. Dist. Att'y Phila.*, 872 F.3d 152, 162-63 (3d Cir. 2017).

The actual innocence claim in *Schlup* was not itself a constitutional claim, but a gateway through which the petitioner could pass in order to obtain review of otherwise barred claims. *Schlup,* 513 U.S. at 315-16. The petitioner need not show he is actually innocent of the crime he was convicted of. Rather, a court determining whether a gateway claim of actual innocence has been proven engages in a "probabilistic determination" regarding whether it is "more likely than not" that no reasonable juror, in light of the new evidence, would have found the petitioner guilty. *Id.*

A reviewing court does not exercise "independent judgment as to whether reasonable doubt exists". Instead, it makes an evaluation "about what reasonable,

17

properly instructed jurors would do." *Schlup,* 513 U.S. at 329-30; *Reeves v. Fayette SCI,* 897 F.3d 154, 160-61 (3d Cir. 2018) (citations omitted). The Supreme Court has also described this standard as whether it is "more likely than not *any* reasonable juror would have reasonable doubt . . . " *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasis added).

As discussed previously, the evidence presented in this Petition nullifies the entirety of the substantive evidence presented at Tillery's trial, and no reasonable factfinder presented with this evidence could have found Tillery guilty.

Petitioner also emphasizes that the claims in his Petition have never been subject to any evidentiary development. The dismissal of his PCRA petition was on timeliness (i.e. procedural) grounds, and the Pennsylvania courts made no findings on the merits of his claim. The PCRA court did find that Tillery did not exercise due diligence as a matter of state law, but the questionable grounds of that decision are amply illustrated by the fact that, relying on exactly the same cases and arguments, Tillery's alleged co-conspirator, William Franklin, obtained a reversal and a remand to the PCRA court following an identical dismissal on timeliness grounds - a reversal made over a credibility determination by the PCRA court. Pa 559-578.

There is no further backstop if Tillery is not permitted to develop the merits of his claim of factual innocence. Under these circumstances, this Court should permit the District Court to determine whether Tillery makes out a *Schlup* claim. *Cristin v. Brennan,* 281 F.3d 404, 417 (3d Cir. 2002) (28 U.S.C. § 2254(e)(2) does not apply to "hearings on excuses for procedural defaults"); *Holloway v. Horn*, 355 F.3d 707, 716 (3d Cir. 2004).

### 3. Petitioner Qualifies for Equitable Tolling

The AEDPA statute of limitations is also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631 (2010). For equitable tolling to apply, a petitioner must show that he has been diligently pursuing his rights and that an extraordinary circumstance prevented him from filing his petition on time. *Holland,* 560 U.S. at 649.

As discussed previously, Tillery has shown reasonable diligence in pursuing his petition. He submits that his lack of access to legal resources during his incarceration, including the destruction of his legal files in 2011 at SCI Pittsburgh, constitutes extraordinary circumstances. *Miller v. N.J. State Dep't of Corr.,* 145 F.3d 616 (3d Cir. 1998).

## IV. CONCLUSION

The prosecutorial misconduct documented in this Petition is grave. It concerns far more than isolated bits of false information; it implicates the entirety of Petitioner's trial. The Commonwealth's misconduct resulted in the convictions of two men on spurious charges, and constitutes a fundamental miscarriage of justice.

As a credible and amply corroborated claim of factual innocence, this Petition deserves further evidentiary development. Petitioner should not be denied this last opportunity to prove his claims when the Superior Court of Pennsylvania, in William Franklin's case, made the right decision and granted Franklin a hearing. Petitioner is factually innocent of the shooting of Joseph Hollis, and he appeals to this Court to grant him this final opportunity, after thirty-seven years, to show his innocence.

Dated: 4/30/20

Respectfully Submitted,

MAJOR G. TILLERY
Petitioner *Pro Se*
SCI Chester
500 E. 4th Street
Chester, PA 19013