No. _____

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

---

In Re: MAJOR GEORGE TILLERY,
Movant *Pro Se*

---

**MOTION FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER SECOND
PETITION FOR WRIT OF HABEAS CORPUS**

---

**APPENDIX VOLUME I**

---

Major G. Tillery
AM 9786
Petitioner *Pro Se*
SCI Chester
500 E. 4th Street
Chester, PA 19013

# TABLE OF CONTENTS

| Title | Date | Page |
|---|---|---|
| Verified Declaration of Emanuel Claitt | 5/4/2016 | Pa 1-6 |
| Verified Declaration of Emanuel Claitt | 6/3/2016 | Pa 7-10 |
| Transcript - Videotaped Statement of Emanuel Claitt | 8/3/2016 | Pa 11-15 |
| Verified Declaration of Robert Mickens | 4/18/2016 | Pa 16-19 |
| Petitioner's First (1996) PCRA Petition | 9/20/1996 | Pa 20-26 |
| Docket sheet, *Tillery v. Horn,* No. 2:99-cv-06516-BWK | 4/22/2020 | Pa 27-37 |
| District Court Order Dismissing Petition | 7/30/2003 | Pa 38 |
| Other District Court Docket Entries (Entries 74, 78, 84, 85, 90-93) | 6/11/2003 - 11/03/2008 | Pa 39-56 |
| Docket Sheet, *Tillery v. Horn,* No. 00-3818 | 4/22/2020 | Pa 57-59 |
| Docket Sheet, *Tillery v. Horn,* No. 03-3616 | 4/22/2020 | Pa 60-64 |
| Petitioner's Brief Before the Court of Appeals, *Tillery v. Horn,* 142 F.App'x 66 (3d Cir. 2005) (No. 03-3616)[1] | 9/13/2004 | Pa 65-99 |

---

[1] A copy of Petitioner's brief before the Court of Appeals was provided to him by his attorney, Michael J. Confusione. However, the copy provided by Mr. Confusione was unsigned. Petitioner provides it to the Court for reference. The Appendix to the brief is not included.

| Title | Date | Page |
|---|---|---|
| Opinion of the Court of Appeals, *Tillery v. Horn,* 142 F.App'x 66 (3d Cir. 2005) (No. 03-3616) | 7/29/2005 | Pa 100-111 |
| Proposed Second Petition for Relief Pursuant to 28 U.S.C. § 2254 and Consolidated Initial Memorandum of Law | 5/1/2020 | Pa 112-597 |

## DECLARATION OF EMANUEL CLAITT
PURSUANT TO PA C.C. § 4904 AND 28 U.S.C. § 1746

Emanuel Claitt makes the following verified declaration:

I submit this declaration stating that I lied when I testified at the trial of
Major Tillery in May 1985 for the murder of Joseph Hollis and attempted
murder of John Pickens on October 22, 1976.

I wasn't in the pool hall when Joseph Hollis was shot and killed and
John Pickens shot and injured.

I wasn't anywhere near Joseph Hollis and John Pickens when they were
shot.

I lied when I testified that Major Tillery and William Franklin were in
the pool hall and shot Hollis and Pickens.

I was in prison in 1980 on serious charges and I was approached by
Philadelphia detectives Larry Gerrard and Ernest Gilbert. They threatened to
charge me with the murder of Samuel Goodwin. I had eight or nine open cases,
at least three of them were felonies with a lot of years of prison time.

I was threatened about the murder of Samuel Goodwin. The detectives
really wanted information to get Major Tillery for murder.

Detectives and prosecutors ADA Roger King and Barbara Christie
promised if I said that Major Tillery and William Franklin were the shooters in
the 1976 murder of Joseph Hollis and the attempted murder of John Pickens I

Pa 1

wouldn't get state time in my many pending criminal charges and I wouldn't be charged in the murder of Samuel Goodwin, that I had nothing to do with.

I was threatened that I would get maximum prison time if I didn't cooperate to get Tillery and Franklin.

I was also allowed to have sex with my girlfriends (four of them) in the homicide interview rooms and in hotel rooms, in exchange for my cooperation.

Detectives Larry Gerrard and Ernest Gilbert, and Lt. Bill Shelton with the knowledge and direction of ADAs Roger King and Barbara Christie, promised me leniency, threatened me and allowed me private time for sex with girlfriends in the homicide interview rooms and hotel rooms.

Major Tillery couldn't be found when the prosecution wanted to arrest him and Franklin. So Franklin was tried in December 1980 and I falsely testified against William Franklin at his trial for the 1976 murder of Hollis and attempted murder of Pickens. In truth, I wasn't in or near the pool hall when the shootings happened.

After Franklin's trial I tried to recant but Lt. Shelton threatened me and said I would be framed on another murder.

At Major Tillery's trial in 1985, I testified about a meeting and an argument that supposedly took place on October 20, 1976 between Alfred Clark the leader of North Philadelphia drug selling and those in charge of drug selling in West Philadelphia, including Joseph Hollis and John Pickens. This

Pa 2

*E.C.*
Dana Goodwin

argument supposedly took place in the home of ~~Samuel~~ Goodwin. I testified

that Major Tillery was there and after an argument and pistol slapping of Clark

by Hollis, Major Tillery said that "Hollis would have to die for what he did."

This was not true. I was not at any such meeting and I didn't have any

personal knowledge of this supposed argument and threat made by Major

Tillery.

*E.C.* I also testified at Major Tillery's trial that after the argument in

*Goodman's*
~~Goodwin~~'s house a group that included me as well as Clark and Major Tillery

met at a mosque in North Philadelphia and drove a few blocks to a poolroom

owned by William Franklin to demand Sylvester White, the head of the West

Philadelphia drug selling, arrange a meeting with Hollis and Pickens.

None of this testimony was true. I had no involvement, if any of this

actually happened.

I falsely testified that on October 22, 1976, I was standing by the door

inside the pool hall during the meeting to prevent anyone from entering or

leaving and that both Franklin and Pickens were in the pool hall.

I lied when I testified I heard a gunshot/gunshots in the pool hall, saw

Pickens and Hollins shot and that Major Tillery and Franklin were in the pool

hall and that they were the shooters.

Pa 3

*E.C.*

3

At Major Tillery's trial I was forced by ADA Barbara Christie to testify about the "black mafia" and that they were run by Black Muslims in Philadelphia.

Before Major Tillery's trial, detectives instructed me to persuade Robert Mickens to become a witness against Major Tillery. I was put in a police van to ride alone with Mickens back and forth from homicide up to the county holding prison on State Street, to make it clear to Mickens that he really had no choice, except to testify against Major Tillery.

I knew Robert Mickens before this and lied at Major Tillery's trial when I testified I had never met or spoken with him.

I also falsely accused Major Tillery of placing a fire bomb on the front porch of Frank Henderson on Church Lane.

Everything I testified to at Major Tillery's trial and William Franklin's trial about witnessing an argument between Alfred Clark and Joseph Hollis, threats made by Major Tillery against John Pickens and the shootings at the pool hall a few days later was false.

My testimony was made up while being questioned by homicide detectives Gerrard and Gilbert and being prepped by ADAs Christie and King to testify against Major Tillery and William Franklin.

Detectives Larry Gerrard, Ernest Gilbert and ADAs Barbara Christie, Roger King interviewed me, and worked over my testimony to make sure

Pa 4

4

Major Tillery and William Franklin were convicted of murder and attempted

murder.

*false E.C.*

In exchange for my testimony many of my cases were not prosecuted. I

got probation. I was sentenced to just 18 months for fire bombing and was

protected when I was arrested between the time of Franklin's and Tillery's

trials.

After Major Tillery's trial I was told I hadn't done good enough, that I

"straddled the fence." In 1989 I was convicted of felony charges and spent

13 ½ years in prison, *to something I di.d.+ do + framed by the ADA. E.C.*

In 2014 I was given help by the prosecution in getting all my bond

*judgements di.d m y fw/* ~~money returned to me~~ for cases going back over ~~23~~ years. *E.C.*

I am now giving this verified declaration because I want to free my

conscience. I need to be able to live with myself. It is vital I correct this. I

testified falsely against Major Tillery and William Franklin because I was

threatened by the police and prosecutors with a murder prosecution for a crime

I didn't commit. I was promised no state time for crimes I did commit if I lied.

I am ready to testify in court for Major Tillery and William Franklin and

tell the truth that I lied against them at their trials, coerced by police and

prosecutors.

DATED: May 4, 2016

_____

EMANUEL CLAITT

## VERIFICATION

I verify that the statements made in the above Declaration are true and correct
to the best of my knowledge, information and belief. I understand that false
statements herein are subject to the penalties of 18 Pa.C.S. §4904 and 28 U.S.C. §
1746, relating to unsworn falsification to authorities.

Date: May 4 , 2016

EMANUEL CLAITT

Pa 6

6

## SUPPLEMENTAL DECLARATION OF EMANUEL CLAITT
PURSUANT TO PA C.C. § 4904 AND 28 U.S.C. § 1746

Emanuel Claitt makes the following verified declaration:

I submit this supplemental declaration about my false, manufactured

testimony against Major Tillery and William Franklin in the November 1980

and May 1985 trials for the murder of Joseph Hollis and attempted murder of

John Pickens on October 22, 1976.

The police detectives and prosecutors I met with knew I didn't have any

personal knowledge that Major Tillery and William Franklin were involved or

part of those shootings. They manufactured the lies I gave against Tillery and

Franklin and coached me before the trials.

It was clear they knew I didn't have any direct knowledge about the

shootings at the poolroom on October 22, 1976, that I wasn't there then or at

the argument at Dana Goodman's house or meetings before the October 22,

1976 shootings. They ~~said things to me~~ like: For example In our meetings I said you know I wasn't there — you have to fill in the blanks. Detectives Gerrard, Gilbert, Det Lubiejewski and ADA Lynn Ross would tell me "you've got to say it this way," I was told "we've got to bring him down — you've got to help us." That meant I should lie Barbara Christie told me, "Your the best, you should have been a lawyer." That meant I knew how to lie.

Emanuel Claitt

The prosecutor against William Franklin in 1980 was Lynn Ross. I met with him as well as ADAs who worked with Barbara Christie soon after I met with Lt. Bill Shelton and Detectives Gerrard and Gilbert & Lubiejewski E. C. I met with ADA Roger King als who had me lie in another case.

I was coached by ADA Barbara Christie before Major Tillery's trial. She was worried about my first statement that John Pickens had gone through a glass door. She coached me to testify about a second door leading out of the poolroom and that it had been a glass door.

ADA Christie coached me how to answer the defense attorney's questions about whether I had plea deals or any agreements for leniency in sentencing for all the charges I faced back in 1980 when I first gave a statement about the shootings of Hollis and Pickens and since then. ADA Christie coached me on this like ADA Lynn Ross did before I testified against William Franklin.

Back in 1980 when I testified at Franklin's trial I lied when I said that the only plea agreement was that my sentences on three cases would run concurrently. But I had been promised the DA's recommendation to receive no more than 10 years. In fact I got one and a half-years. When I was questioned about this at Major Tillery's case I repeated the lie that I had no plea deal about length of sentencing. ADA Christie knew that wasn't true.

Pa 8

2

I was scheduled to go to trial on my robbery case soon after the Tillery trial was over. ADA Christie coached me to stick to saying that the robbery case was "open" and that there were no agreements about leniency and sentencing. She coached me to just say I knew the judge would be told about my cooperation in Major Tillery's case and other cases. That's what I stuck to. But my testimony that there was no plea deal was a lie and ADA Christie knew that. She told me I would get very little time. the robbery charges + other charges would be nolle prossed. And they were.

It was also a lie, known to ADAs Ross, Christie, King that Major Tillery and George Rose were involved in bombing/firebombing in 1979 and 1980 that I testified to in August 1985.

It was also a total fabrication that Major Tillery pulled a gun on me and threatened to shoot me in Philadelphia in early 1983.

I wasn't willing to tell the truth about the lies I testified to at these trials and that my false testimony was manufactured by the ADAs and police until now. It has taken me all these years to be willing and able to deal with my conscience and put aside my fears of retaliation by the police and prosecution for telling what really happened at those trials.

3

I am now ready and willing to testify in court for Major Tillery and

William Franklin and tell the truth that I lied against them at their trials,

coerced by police and prosecutors.

DATED: 6/3/16

EMANUEL CLAITT

## VERIFICATION

I verify that the statements made in the above Declaration are true and correct
to the best of my knowledge, information and belief. I understand that false
statements herein are subject to the penalties of 18 Pa.C.S. §4904 and 28 U.S.C. §
1746, relating to unsworn falsification to authorities.

Date: June 3, 2016

EMANUEL CLAITT

4

## Transcript – Video Taped Statement of Emanuel Claitt, August 3, 2016

**Emanuel Claitt:**

I am Emanuel Claitt and I affirm the truthfulness of my verified declarations dated May 4, 2016 and June 3, 2016.

I lied when I testified at the trials of William Franklin in November 1980 and of Major Tillery in 1985 for the murder of Joseph Hollis and attempted murder of John Pickens on October 22, 1976.

I wasn't in the pool hall when Joseph Hollis was shot and killed and John Pickens shot and injured. I wasn't anywhere near Joseph Hollis and John Pickens when they were shot.

I lied when I testified that Major Tillery and William Franklin were in the pool hall and shot Hollis and Pickens.

Everything I testified to at Major Tillery's trial and William Franklin's trial about witnessing an argument between Alfred Clark and Joseph Hollis, threats made by Major Tillery against John Pickens and the shootings at the pool hall a few days later was false.

My testimony was made up while being questioned by homicide detectives Larry Gerrard, Ernest Gilbert and Lt. Bill Shelton and being prepped by ADAs Ross, Christie and King to testify against Major Tillery and William Franklin.

They worked over my testimony to make sure Major Tillery and William Franklin were convicted of murder and attempted murder.

I was in prison in 1980 on serious charges and I had a lot of open cases. At least three of them were felonies with a lot of years of prison time.

Detectives and prosecutors ADA Lynn Ross and Barbara Christie promised if I said that Major Tillery and William Franklin were the shooters in the 1976 murder of Joseph Hollis and the attempted murder of John Pickens I wouldn't get state time in my many pending criminal charges and I wouldn't be charged in the murder of Samuel Goodwin, that I had nothing to do with.

I was threatened that I would get maximum prison time if I didn't cooperate to get Tillery and Franklin.

The detectives with the knowledge and direction of ADAs Lynn Ross, Barbara Christie and Roger King promised me leniency, threatened me and allowed me private time for sex with girlfriends in the homicide interview rooms and hotel rooms.

After Franklin's trial I tried to recant but Lt. Shelton threatened me and said I would be framed on another murder.

None of my testimony was true. I falsely testified that on October 22, 1976, I was standing by the door inside the pool hall during the meeting to prevent anyone from entering or leaving and that both Franklin and Pickens were in the pool hall.

I lied when I testified I saw Major Tillery and William Franklin shoot Pickens and Hollins.

Before Major Tillery's trial, detectives instructed me to persuade Robert Mickens to become a witness against Major Tillery.

I was put in a police van to ride alone with Mickens back and forth from homicide up to the county holding prison on State Road, to make it clear to Mickens that he really had no choice, except to testify against Major Tillery.

It was also a lie, known to ADAs Ross, Christie, King that Major Tillery and George Rose were involved in bombing -firebombings in 1979 and 1980 that I testified to that in August 1985.

It was also a total fabrication that Major Tillery pulled a gun on me and threatened to shoot me in Philadelphia in early 1983.

The police detectives and prosecutors I met with knew I didn't have any personal knowledge that Major Tillery and William Franklin were involved or part of those shootings. They manufactured the lies I gave against Tillery and Franklin and coached me before the trials.

I was coached by ADA Barbara Christie before Major Tillery's trial. She was worried about my first statement that John Pickens had gone through a glass door. She coached me to testify about a second door leading out of the poolroom and that it had been a glass door.

ADA Christie coached me how to answer the defense attorney's questions about whether I had plea deals or any agreements for leniency in sentencing for all the charges I faced back in 1980 when I first gave a statement about the shootings of Hollis and Pickens and since then.

ADA Christie coached me on this like ADA Lynn Ross did before I testified against William Franklin.

Back in 1980 when I testified at Franklin's trial I lied when I said that the only plea agreement was that my sentences on three cases would run concurrently. In fact I got one and a half-years.

In exchange for my false testimony many of my cases were not prosecuted. I got probation. I was sentenced to just 18 months for fire bombing and was protected when I was arrested between the time of Franklin's and Tillery's trials.

At Major Tillery's trial I testified that there was no plea deal. That was a lie and ADA Christie knew that. She told me the robbery charge and other charges would be nolle prossed. And they were.

At Major Tillery's trial I was forced by ADA Barbara Christie to testify about the "black mafia" and that they were run by Black Muslims in Philadelphia.

After Major Tillery's trial I was told I hadn't done good enough, that I "straddled the fence." In 1989 I was convicted of felony charges and spent 13 ½ years in prison for something I didn't do and framed by the ADA.

In 2014 I was given help by the prosecution in getting all my bond judgments dismissed on cases going back over 23 years.

I testified falsely against Major Tillery and William Franklin because I was threatened by the police and prosecutors with a murder prosecution for a crime I didn't commit. I was promised no state time for crimes I did commit if I lied.

I wasn't willing to tell the truth about the lies I testified to at these trials and that my false testimony was manufactured by the ADAs and police until now.

I gave my verified declarations because I want to free my conscience. I need to be able to live with myself.

It has taken me all these years to be willing and able to deal with my conscience and put aside my fears of retaliation by the police and prosecution for telling what really happened at those trials.

I am now ready and willing to testify in court for Major Tillery and William Franklin and tell the truth, the whole truth, that I lied against them at their trials, coerced by police and prosecutors. That is the end of the statement.

**Emanuel Claitt**:  I get so much energy talking to you and knowing that you are the one that is going to fight the beat to get them out. They deserve to be out. They didn't do that crime and I didn't do the crime that they said I committed. The same thing I did to them the DA did to me—and got somebody to lie and I did 13½ years in prison and I lost a lot of time away from my family. Tillery and Franklin done did triple the time I did and I just think that they need to be free.

　　If right is right, right gonna prevail because the DA knows that they lied and got me to lie. I want to free my conscience. I can't live with myself knowing that I did that.


Transcript checked against Video Taped Statement
By Rachel Wolkenstein

**DECLARATION OF ROBERT MICKENS**
PURSUANT TO PA C.C. § 4904 AND 28 U.S.C. § 1746

ROBERT MICKENS affirms the following under penalty of perjury:

In May 1985 I falsely testified as a witness for the Philadelphia County District Attorney in the prosecution of Major George Tillery (CP-51-CR-0305681-1984) on murder charges.

The testimony I gave at that trial was false, manufactured by the prosecutor, Assistant District Attorney Barbara Christie.

I was coerced and promised favors if I falsely testified against Major Tillery.

I was arrested on February 28, 1984 on charges of robbery and rape and faced twenty-five years of imprisonment if convicted.

ADA Christie told me that if I "worked with [her] on the Major Tillery case" she "guaranteed" I wouldn't be sent upstate on my robbery and rape case and would be "protected."

ADA Christie and her homicide detectives, John Cimino and James McNeshy, repeatedly brought me in for questioning on a number of robbery and murder cases, asking me to become a prosecution witness against Major Tillery. On one occasion ADA Christie showed me what looked like a paper signed by Major Tillery saying that I was going to be an alibi witness for him. I told her I was.

Pa 16 $. M.

1

I was brought down by homicide detectives to tell me that co-defendants Kenneth Pernell and Darry Workman were accusing me of being involved in the murder of Abe Green, a neighbor of the men. When I agreed to become a witness against them, because Darry Workman had confessed to me that he had shot Abe Green, I was transferred out of the Philadelphia area to a prison in Easton, PA, Northampton County Prison for my protection.

Before the preliminary hearing and my cooperation with the prosecution was publicly known, this information was released and an article appeared in the *Philadelphia Daily News* saying that I was a witness against Pernell and Workman. This put me at risk as a known "snitch." I complained to ADA Christie and she promised to take care of me.

I was brought down from Easton, supposedly to meet with the homicide detectives in Philadelphia. Instead I was put in a police van with Emanuel Claitt, who already testified against Major Tillery's co-defendant. I rode back and forth from police headquarters to the county prison on State Street with Claitt, but never taken from the van. Claitt told me I was "pretty hemmed up" and that Major Tillery was a "slime," that Major Tillery had been spreading the word that I was a snitch and that I should testify against Major Tillery.

I told detectives Cimino and McNeshy that I missed my girlfriend Judy Faust. I was given an hour and a half private visit with her in an interview room in the police headquarters so that we could have sex.

Pa 17 B. M.

2

I was a secret witness for the prosecution at trial.

My identity as a prosecution witness was kept from Major Tillery and his lawyer before I was called as a witness at the trial on the false grounds that I needed a protective order to protect me from Major Tillery.

That was not true. I had told Major Tillery that I would be a witness for him at the murder trial of John Hollis. He had no reason to think I would be a witness *against* him. I had no contact with Major Tillery once I was sent to Northampton County Prison. I did not fear him or ask for protection from Major Tillery.

At the trial I falsely testified that I was a look-out during the shooting of John Hollis and John Pickens. That was totally false. My entire testimony was scripted and rehearsed by ADA Barbara Christie.

I agreed to give this false testimony because I was I promised no prison time on the rape and robbery charges and that I would be protected by the prosecution. I was given sexual favors in exchange for my false testimony.

When I was sentenced on October 10, 1985 after my guilty plea of rape and criminal conspiracy, I didn't get prison time. I was sentenced to five years probation.

I didn't come forward earlier to recant and explain because of my own guilt for falsely testifying against Major Tillery and my fear of retaliation by the prosecution and police.

Page 18 $\mathcal{B}. \mathcal{U}$

3

Much in my life has changed. I want to make amends for falsely

testifying against Major Tillery. I am willing and ready to be a witness in any

proceeding brought to challenge his conviction.

Dated: April / 8, 2016

ROBERT MICKENS

## VERIFICATION

I verify that the statements made in the above Declaration are true and correct
to the best of my knowledge, information and belief. I understand that false
statements herein are subject to the penalties of 18 Pa.C.S. §4904 and 28 U.S.C. §
1746, relating to unsworn falsification to authorities.

Date: April / 8, 2016

ROBERT MICKENS

RICHARD P. HUNTER, JR.                ATTORNEY FOR DEFENDANT
IDENTIFICATION NO. 15379
SUITE 1C-51 THE PHILADELPHIAN
2401 PENNSYLVANIA AVENUE
PHILADELPHIA, PA     19130
(215) 978-4300

---

COMMONWEALTH OF PENNSYLVANIA          :     COURT OF COMMON PLEAS
                                      :     PHILADELPHIA COUNTY
                  VS.                 :
                                      :     MARCH TERM, 1984
                                      :
MAJOR GEORGE TILLERY                  :     BILLS #568 thru #574

RECEIVED
SEP 20 1996
CRIMINAL MOTION COURT
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

## MOTION PURSUANT TO THE POST CONVICTION RELIEF ACT

Petitioner, Major George Tillery, by his attorney Richard P.
Hunter, Jr., Esquire, moves this court for relief under the Post
Conviction Relief Act 42, Pa.C.S.A. § 9541 et. seq. and in support
thereof represents the following:

1.  Your Petitioner, Major George Tillery, is presently
incarcerated at Smithfield Correctional Institution at Huntingdon,
Pennsylvania.

2.  On May 29, 1985 Petitioner was found guilty by a Jury
which was presided over by the Honorable John E. Geisz, of the
Charges of Murder in the First Degree, Possession of Instruments of
Crime - Generally, Criminal Conspiracy, Aggravated Assault, under
bills of Information March Term, 1984, Numbers 568, 570, 571, 573
and 574.

3.  On December 9, 1986 your Petitioner was sentenced under
Bill #570 on the charge of First Degree Murder of Joseph Hollis to
a mandatory sentence of Life Imprisonment;

1

On Bill Number 568 on the charge of possession of an instrument of crime, Petitioner received one to two years incarceration to run concurrent with Bill Number 570;

On Bill Number 571 on the charge of Criminal Conspiracy, Petitioner was sentenced to not less than 5, and not more than 10 years incarceration, to run concurrent with the sentence on Bill Number 570;

On Bill Number 573 charging Petitioner with Aggravated Assault on John Pickens, Petitioner was sentenced to not less than 5 and not more than 10 years incarceration, to run concurrent with the sentence on Bill Number 570;

On Bill Number 574 charging Petitioner with Criminal Conspiracy, Petitioner was sentenced to not less than 5 and not more than 10 years incarceration, to run concurrent with the sentence on Bill Number 570.

4.    Subsequent to this verdict Petitioner filed Post Trial Motions which were denied.  Petitioner then filed a timely appeal with the Superior Court of Pennsylvania under Docket Number 3297 Philadelphia, 1986.  The decision of lower court was affirmed by the Superior Court on May 30, 1989.

5.    Petitioner then filed a petition for allowance of appeal with the Supreme Court of Pennsylvania which was denied.

6.    At the trial of this case your Petitioner was represented by Joseph Santaguida, Esquire.  At Post Trial Motions and the filing of appeals before the Superior and Supreme Courts of Pennsylvania, your Petitioner was represented by James S. Bruno,

2

Esquire.

7.   Petitioner respectfully requests that the charges against
him be dismissed, or in the alternative be granted a New Trial
because of the ineffectiveness of his trial counsel, Joseph
Santaguida, Esquire, and the ineffectiveness of his appellate
counsel Joseph Bruno, Esquire.

8.   Petitioner has only recently learned that trial counsel
Joseph S. Santaguida, Esquire, was ineffective in his
representation of Petitioner in that he had a conflict of interest,
when he represented Petitioner in his trial before the Honorable
John Geisz.  For Mr. Santaguida represented not only petitioner at
his trial but also simultaneously represented one of the
petitioner's alleged victims, to wit:  John Pickens.

9.   Petitioner only recently learned about Mr. Santaguida's
representation of the victim John Pickens when he read the case of
Commonwealth vs. William Franklin, 397 Pa. Superior Ct. 265,
(1990).  In particular, at 273 the Superior Court of Pennsylvania
indicates that Mr. Santaguida in May of 1983 informed trial counsel
(trial counsel for William Franklin, a co-defendant of your
petitioner) that because of Mr. Pickens' involvement in the events
underlying the criminal charges filed against Franklin, he
(Santaguida) would have to advise his client Mr. Pickens not to
testify on Franklin's behalf.

10.  Trial Counsel Joseph Santaguida, Esquire, had a clear
conflict of interest and could not have represented both Mr.
Pickens, the victim, and your Petitioner effectively.  See, In the

3

Pa 22

Interest of Lloyd Saladin, 518 A2d. 1258 (1986).

11.   For trial counsel to have represented both the alleged
victim and the alleged assailant was not proper and had no
reasonable basis which was designed to effectuate Petitioner's
interest.

12.   In fact, Petitioner at his trial requested Mr. Santaguida
to call Mr. Pickens as a defense witness.  Petitioner had reason to
believe that Mr. Pickens told the police that Petitioner was not
one of the assailants of the decedent Mr. Hollis or Mr. Pickens.

13.   Mr. Santaguida had a clear conflict in that he was
attempting to simultaneously protect the alleged victim by advising
him to take the Fifth Amendment at the trial of Petitioner's Co-
Defendant, William Franklin, and at the same time had a clear duty
to present to the Court any and all exculpatory evidence on behalf
of his other client your Petitioner, Mr. Tillery.  See Saladin,
supra.

14.   As a further result of this conflict of interest of trial
counsel, Petitioner was not only denied effective representation of
counsel but he was also deprived of his Due Process rights because
he was prevented from introducing into the record evidence that
would be vital to his defense; i.e. the testimony of the victim
Pickens that petitioner was not one of the assailants.

15.   Trial counsel was further ineffective as a result of this
conflict because he did not request the court for a missing witness
charge when the Commonwealth failed to call John Pickens who was
also his client.  Clearly trial counsel had a conflict and could

4

not request a missing witness charge when in fact he represented
the missing witness.

16.    Petitioner avers and therefore believes that trial
counsel had represented the victim, Mr. Pickens, in other criminal
proceedings prior to and subsequent to representing petitioner in
this matter before Judge Geisz.

17.    It is respectfully submitted that Mr. Santaguida's
stewardship of your petitioner's case was ineffective for there was
no reasonable basis, for him to have represented both the victim
(Mr. Pickens) and his alleged assailant (petitioner). This
conflict of interest of counsel under the circumstances of his
representation of your petitioner, seriously undermined the truth
determining process to such an extent that a reliable adjudication
of guilt or innocence could not have taken place.

18.    Further, petitioner was denied his 6th Amendment right
under the United States Constitution Right to competent assistance
of counsel. See also Pennsylvania Constitution Article 1 § 9 and
Comm. ex rel., Washington v. Marone, 235 A.2d. 349, 1967.

19.    Petitioner further avers and therefore believes that
appellate counsel James Bruno, Esquire, who represented the
petitioner from Post Trial Motions through the filing of a Petition
for Allowance of Appeal with the Supreme Court of Pennsylvania, was
ineffective in that he did not discover, through due diligence, and
therefore did not assert at Post Trial Motions or in his appellate
briefs that trial counsel, Joseph Santaguida, Esquire, had a
conflict of interest and could not have effectively represented

5

your petitioner at trial.

20.   Petitioner avers that the issues raised in this petition have not been previously litigated and that these allegations of error have not been waived in that petitioner only recently discovered that Mr. Santaguida had a conflict of interest when he represented petitioner at his trial.

WHEREFORE, for all the aforementioned reasons petitioner prays that he be released from custody and discharge or in the alternative that he be granted a new trial.

Respectfully submitted,

RICHARD P. HUNTER, JR.
ATTORNEY FOR DEFENDANT

Dated:   September 13, 1996

6

Pa 25

## VERIFICATION

I, **Major George Tillery,** do hereby verify the facts set forth in the attached Motion are true and correct to the best of my knowledge, information and belief.

The undersigned understands that the statements made therein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

*Major G. Tillery*
MAJOR GEORGE TILLERY

DATED: 6-27-96

CLOSED,HABEAS

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:99-cv-06516-BWK

TILLERY v. HORN
Assigned to: HONORABLE BRUCE W. KAUFFMAN
Demand: $0
Case in other court:  USCA FOR THE THIRD CIRCUIT,
                      03-03616
Cause: 28:2254 Petition for Writ of Habeas Corpus
(State)

Date Filed: 12/22/1999
Date Terminated: 11/04/2008
Jury Demand: None
Nature of Suit: 530 Habeas Corpus:
(General)
Jurisdiction: Federal Question

**Petitioner**

**MAJOR TILLERY**                represented by  **MAJOR TILLERY**
                                                 AM-9786
                                                 SCI HUNTINGDON
                                                 1100 PIKE STREET
                                                 HUNTINGDON, PA 16654-1112
                                                 PRO SE

                                                 **EDWARD H. WILEY**
                                                 2449 GOLF ROAD
                                                 SUITE #12
                                                 PHILADELPHIA, PA 19131
                                                 484-557-7361
                                                 Email:
                                                 edwardhwileylegal@gmail.com
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

V.

**Respondent**

**MARTIN HORN**                  represented by  **DAVID CURTIS GLEBE**
*DEPT. OF PENNA STATE PRISONS*                   OFFICE OF THE DISTRICT
                                                 ATTORNEY
                                                 THREE SOUTH PENN SQUARE
                                                 PHILADELPHIA, PA 19107-3499
                                                 Email: DAFed.Lit@phila.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **JEFFREY M. KRULIK**

OFFICE OF DISCIPLINARY
COUNSEL
1601 MARKET STREET
SUITE 3320
PHILADELPHIA, PA 19103
215-560-6296
Email: JeffreyM.Krulik@pacourts.us
*TERMINATED: 02/18/2003*
*LEAD ATTORNEY*

**THOMAS W. DOLGENOS**
DISTRICT ATTORNEY'S OFFICE
THREE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107-3499
215-686-5701
Email: DAFed.Lit@phila.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/22/1999 | 1 | Relator's petition for writ of habeas corpus (lal) (Entered: 12/22/1999) |
| 12/22/1999 | | Habeas Corpus Case Management Track. (lal) (Entered: 12/22/1999) |
| 01/19/2000 | 2 | ORDER THAT THE CLERK OF COURT FURNISH PETITIONER WITH FORMS FOR FILING A PETITION PURSUANT TO 28 U.S.C. SECTION 2254 AND BEARING THE ABOVE-CAPTIONED CIVIL ACTION NUMBER, AND, IT IS FURTHER ORDERED THAT PETITIONER SHALL COMPLETE THESE FORMS AND RETURN THEM TO THE CLERK OF COURT WITHIN THIRTY DAYS TOGETHER WITH EITHER A CHECK FOR FIVE DOLLARS OR A COMPLETED IN FORMA PAUPERIS FORM. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 1/19/00 ENTERED AND COPIES MAILED . (lvj) (Entered: 01/19/2000) |
| 01/24/2000 | 3 | Revised forms returned from petitioner (lvj) (Entered: 01/24/2000) |
| 01/31/2000 | 4 | Memorandum by PETITIONER MAJOR TILLERY in support of habeas corpus . (lvj) (Entered: 01/31/2000) |
| 01/31/2000 | | Filing Fee Paid; filing fee $ 5.00 receipt # 723110 (ajf) (Entered: 02/01/2000) |
| 02/03/2000 | | Case forwarded to Chief Magistrate Judge James R. Melinson. (ajf) (Entered: 02/03/2000) |
| 02/04/2000 | 5 | ORDER REFERRING CASE TO MAGISTRATE JUDGE JAMES R. MELINSON FOR A REPORT AND RECOMMENDATION. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 2/4/00 ENTERED AND COPIES MAILED. (lvj) (Entered: 02/04/2000) |

| 02/04/2000 | 6 | ORDER THAT THE DISTRICT ATTORNEY OF PHILA SHALL FILE ANSWER WITHIN TWENTY DAYS OF THE DATE OFTHIS ORDER. THIS RESPONSE SHALL INCLUDE A MEMORANDUM OF LAW CONCERNING THE ISSUES PRESENTED AND ANY DEFENSES, AND COPIES OF ALL RELEVANT STATE COURT DECISIONS PLEADINGS, NOTES OF TESTIMONY AND DOCKET ENTRIES. ( SIGNED BY MAGISTRATE JUDGE JAMES R. MELINSON ) 2/7/00 ENTERED AND COPIES MAILED. (lvj) (Entered: 02/07/2000) |
|---|---|---|
| 02/07/2000 | 7 | ORDER THAT WITHIN THIRTY DAYS PETITIONER MUST FURNISH THIS COURT WITH A PHOTOCOPY OF HIS RECEIPT OR IN THE ALTERNATIVE SUBMIT AN APPLICATION FOR IN FORMA PAUPERIS STATUS OR ELSE THIS ACTION WILL BE DISMISSED. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 2/8/00 ENTERED AND COPIES MAILED. (lvj) (Entered: 02/08/2000) |
| 02/16/2000 | 8 | MOTION REQUEST BY PETITIONER MAJOR TILLERY FOR DISCOVERY , PROOF OF SERVICE. (lvj) (Entered: 02/16/2000) |
| 02/16/2000 | 9 | MOTION BY PETITIONER MAJOR TILLERY TO AMEND HABEAS CORPUS PETITION ,PROOF OF SERVICE. (lvj) (Entered: 02/16/2000) |
| 02/23/2000 | 10 | Exhibits C by PETITIONER MAJOR TILLERY in support of petitioner habeas corpus, proof of service. (lvj) (Entered: 02/24/2000) |
| 02/24/2000 | 11 | MOTION BY PETITIONER MAJOR TILLERY TO APPOINT COUNSEL , PROOF OF SERVICE. (lvj) (Entered: 02/24/2000) |
| 02/28/2000 | 12 | Records and decisions from petitioner appeals state Pa. (lvj) (Entered: 02/28/2000) |
| 02/29/2000 | 13 | MOTION BY RESPONDENT MARTIN HORN FOR ENLARGMENT OF TIME TO FILE RESPONSE , CERTIFICATE OF SERVICE. (lvj) (Entered: 02/29/2000) |
| 03/02/2000 | 14 | ORDER THAT RESPONDENTS' TIME FOR FILING A RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS IS EXTENDED TO APRIL 15, 2000. ( SIGNED BY MAGISTRATE JUDGE JAMES R. MELINSON ) 3/3/00 ENTERED AND COPIES MAILED. (lvj) (Entered: 03/03/2000) |
| 04/07/2000 | 15 | Brief by PETITIONER MAJOR TILLERY in support of petitioner's habeas corpus for evidentiary hearing, Certificate of Service. (gn) (Entered: 04/07/2000) |
| 04/14/2000 | 16 | MOTION BY RESPONDENT MARTIN HORN FOR ENLARGEMENT OF TIME TO FILE RESPONSE , CERTIFICATE OF SERVICE. (lvj) (Entered: 04/17/2000) |
| 04/18/2000 | 17 | ORDER THAT RESPONDENTS' TIME FOR FILING A RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS IS EXTENDED TO MAY 15 2000. ( SIGNED BY MAGISTRATE JUDGE JAMES R. |

| | | |
|---|---|---|
| | | MELINSON ) 4/19/00 ENTERED AND COPIES MAILED. (lvj) (Entered: 04/19/2000) |
| 04/19/2000 | 18 | Inclosed Briefs and Exhibits by PETITIONER MAJOR TILLERY (lvj) (Entered: 04/20/2000) |
| 04/20/2000 | 19 | MOTION BY PETITIONER MAJOR TILLERY TO COMPEL RESPONDENTS TO ANSWER , CERTIFICATE OF SERVICE. (lvj) (Entered: 04/20/2000) |
| 04/24/2000 | 20 | MOTION BY PETITIONER MAJOR TILLERY TO DENY RESPONDENT ANYMORE EXTENTION OF TIME , CERTIFICATE OF SERVICE. (lvj) (Entered: 04/25/2000) |
| 04/25/2000 | 21 | MOTION BY PETITIONER MAJOR TILLERY TO DENY RESPONDENT ANYMORE EXTENTION OF TIME , CERTIFICATE OF SERVICE. (lvj) (Entered: 04/25/2000) |
| 05/15/2000 | 22 | MOTION BY RESPONDENT MARTIN HORN FOR ENLARGMENT OF TIME TO FILE RESPONSE , CERTIFICATE OF SERVICE. (lvj) (Entered: 05/16/2000) |
| 05/18/2000 | 23 | ORDER THAT RESPONDENTS' TIME FOR FILING A RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS IS EXTENDED TO 6/14/00. ( SIGNED BY MAGISTRATE JUDGE JAMES R. MELINSON ) 5/19/00 ENTERED AND COPIES MAILED (lvj) (Entered: 05/19/2000) |
| 05/22/2000 | 24 | Response (appeal) by PETITIONER MAJOR TILLERY to the Court to deny respondents another enlargement of time, cert of service. (gm) (Entered: 05/22/2000) |
| 05/22/2000 | 25 | Letter from plff dated 5/17/00 re: certain facts (lvj) (Entered: 05/23/2000) |
| 05/25/2000 | 26 | Question by PETITIONER MAJOR TILLERY on extension (lvj) (Entered: 05/25/2000) |
| 06/14/2000 | 27 | Letter from petitioner dated 6/10/00 re: certain facts (lvj) (Entered: 06/14/2000) |
| 06/14/2000 | 28 | MOTION BY RESPONDENT MARTIN HORN, UNREPRESENTED PARTY DA OF PHILA., UNREPRESENTED PARTY ATTY GEN OF PA, UNREPRESENTED PARTY MARTIN L. HORN FOR ENLARGMENT OF TIME TO FILE RESPONSE , CERTIFICATE OF SERVICE. (lvj) (Entered: 06/15/2000) |
| 06/20/2000 | 29 | ORDER THAT RESPONDENTS' TIME FOR FILING A RESPONSE TO THE PETITION FOR WRIT OF HABEAS CORPUS IS EXTENDED TO JUNE 21, 2000. (SIGNED BY MAGISTRATE JUDGE JAMES R. MELINSON) 6/21/00 ENTERED AND COPIES MAILED. (dt) (Entered: 06/21/2000) |
| 06/21/2000 | 30 | Respondent's Answer to Motion to Amend Habeas Corpus Petition, Certificate of Service. (dt) (Entered: 06/22/2000) |

| 06/21/2000 | 31 | Response by RESPONDENT MARTIN HORN to Petition for Writ of Habeas Corpus (ph) (Entered: 06/22/2000) |
| 06/23/2000 | 32 | MOTION by PETITIONER MAJOR TILLERY TO WITHDRAW MOTION TO AMEND HABEAS CORPUS PETITION , CERTIFICATE OF SERVICE. (md) (Entered: 06/23/2000) |
| 06/23/2000 | 33 | MOTION by PETITIONER MAJOR TILLERY TO WITHDRAW AMENDED PETITION , CERTIFICATE OF SERVICE. (jl) (Entered: 06/23/2000) |
| 06/28/2000 | 34 | Response by PETITIONER MAJOR TILLERY to the Answer the Respondents submitted to Petitioners Habeas Corpus, Certificate of Service. (fh) (Entered: 06/28/2000) |
| 06/29/2000 | 35 | Response by PETITIONER MAJOR TILLERY to the answer the RESPONDENTS submitted to PETITIONERS habeas corpus, Certificate of Service. (fb) (Entered: 06/29/2000) |
| 09/15/2000 | 36 | ORDER THAT PETITIONER'S MOTIONS FOR DISCOVERY AND APPOINTMENT OF COUNSEL ARE DENIED. PETITIONER'S MOTIONS TO COMPEL RESPONDENTS TO ANSWER AND TO DENY RESPONDENT'S EXTENSION OF TIME ARE DENIED AS MOOT. PETITIONER'S MOTIONS TO WITHDRAW HIS MOTION TO AMEND HIS HABEAS CORPUS PETITION AND TO WITHDRAW HIS AMENDED PETITION ARE GRANTED. RESPONDENTS' MOTION FOR ENLARGMENT OF TIME TO FILE RESPONSE IS GRANTED NUNC PRO TUNC. ( SIGNED BY MAGISTRATE JUDGE JAMES R. MELINSON ) 9/18/00 ENTERED AND COPIES MAILED . (lvj) (Entered: 09/18/2000) |
| 09/19/2000 | 37 | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE JAMES R. MELINSON THAT THE PET FOR A WRIT OF HABEAS CORPUS BE DENIED WITH PREJUDICE. IT IS FURTHER RECOMMENDED THAT THERE IS NO PROBABLE CAUSE TO ISSUE A CERTIFICATE OF APPEALABILITY. CASE NO LONGER REFERRED TO MAGISTRATE JUDGE JAMES R. MELINSON 9/19/00 ENTERED AND COPIES MAILED. (gm) (Entered: 09/19/2000) |
| 09/27/2000 | 38 | Objection by PETITIONER MAJOR TILLERY to [37-1] report and recommendations , Certificate of Service. (lvj) (Entered: 09/27/2000) |
| 10/04/2000 | 39 | Response to Petitioner's objection by RESPONDENT MARTIN HORN to the Magistrate Judge's report and recommendations, certificate of service. (lvj) (Entered: 10/05/2000) |
| 10/30/2000 | 40 | ORDER THAT THE REPORT AND RECOMMENDATION IS APPROVED AND ADOPTED. THE PETITION FOR A WRIT OF HABEAS CORPUS IS DISMISSED. A CERTIFICATE OF APPEALABILITY IS DENIED. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 10/31/00 ENTERED AND COPIES MAILED. (lvj) (Entered: 10/31/2000) |

| 10/30/2000 |    | Case closed (kv) (Entered: 11/01/2000) |
|------------|----|----------------------------------------|
| 11/08/2000 | 41 | Notice of appeal by PETITIONER MAJOR TILLERY . . Copies to: JUDGE CLARENCE C. NEWCOMER , Clerk USCA, Appeals Clerk, and THOMAS W. DOLGENOS, JEFFREY M. KRULIK , certificate of service. (lvj) (Entered: 11/13/2000) |
| 11/09/2000 | 42 | Copy of Clerk's notice to USCA re: [41-1] appeal . (lvj) (Entered: 11/13/2000) |
| 11/13/2000 | 43 | MOTION BY PETITIONER MAJOR TILLERY TO SUBMIT INTERROGATORIES TO TRIAL ATTORNEY MR. JOSEPH SANTAGUIDA, ESQ. , CERTIFICATE OF SERVICE. (gm) (Entered: 11/14/2000) |
| 11/14/2000 | 44 | ORDER THAT PETITIONER'S MOTION TO SUBMIT INTERROGATORIES TO TRIAL ATTORNEY MR. JOSEPH SANTAGUIDA, ESQ. IS DENIED AS MOOT, ETC. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 11/15/00 ENTERED AND COPIES MAILED . (lvj) (Entered: 11/15/2000) |
| 11/15/2000 |    | CERTIFIED AND TRANSMITTED RECORD ON APPEAL TO U.S. COURT OF APPEALS. (Pleading #23 not included). (jpd) (Entered: 11/15/2000) |
| 11/24/2000 |    | Notice of Docketing ROA from USCA Re: [41-1] appeal USCA NUMBER: 00-3818 . 11/22/00 (lvj) (Entered: 11/27/2000) |
| 11/24/2000 |    | USCA appeal fees received $ 105.00 (ajf) (Entered: 11/27/2000) |
| 08/23/2002 | 45 | Certified copy of order from USCA dated: 8/21/02 TERMINATING [41-1] appeal. The appellant's request for a certificate of appealability filed pursuant to 28 u.s.c. section 2253(c)(1) is hereby granted. This matter is remanded to the district court for further proceedings. (lvj) (Entered: 08/27/2002) |
| 08/23/2002 |    | Record on appeal returned from U.S. Court of Appeals and forwarded to record room. (lvj) (Entered: 08/27/2002) |
| 10/07/2002 | 46 | Notice of change of address by MAJOR TILLERY (lvj) (Entered: 10/08/2002) |
| 12/24/2002 | 47 | Notice of change of address by MAJOR TILLERY, cert of service. (gm) (Entered: 12/26/2002) |
| 01/07/2003 | 48 | Notice of change of address by MAJOR TILLERY, proof of service. (fb) (Entered: 01/08/2003) |
| 01/15/2003 | 49 | ORDER THAT A HEARING ON PETITIONER'S CONFLICT OF INTEREST CLAIM SHALL BE HELD BEFORE THIS COURT ON 2/20/03 AT 10:00, ETC. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 1/16/03 ENTERED AND COPIES MAILED. (lvj) (Entered: 01/16/2003) |
| 02/06/2003 | 50 | ORDER THAT THE WARDEN OF SCI HUNTINGDON PRODUCE THE BODY OF MAJOR TILLERY ON 2/20/03 AT 10:00 TO APPEAR FOR A CIVIL HEARING, ETC. ( SIGNED BY JUDGE CLARENCE C. |

| | | |
|---|---|---|
| | | NEWCOMER ) 2/7/03 ENTERED AND COPIES MAILED AND FAXED. (lvj) (Entered: 02/07/2003) |
| 02/12/2003 | 51 | Certificate of service by RESPONDENT MARTIN HORN that copy of letter attached was served upon petition by mail (lvj) (Entered: 02/13/2003) |
| 02/12/2003 | 53 | MOTION BY PETITIONER MAJOR TILLERY FOR CONTINUANCE , VERIFICATION, CERTIFICATE OF SERVICE. (lvj) (Entered: 02/14/2003) |
| 02/13/2003 | 52 | Appearance of EDWARD H. WILEY for PETITIONER MAJOR TILLERY (jpd) (Entered: 02/14/2003) |
| 02/14/2003 | 54 | Appearance of DAVID CURTIS GLEBE for RESPONDENT MARTIN HORN, Certificate of Service. (fb) (Entered: 02/18/2003) |
| 02/14/2003 | 55 | Withdrawal of appearance by JEFFREY M. KRULIK for RESPONDENT MARTIN HORN, certificate of service. (fb) (Entered: 02/18/2003) |
| 02/19/2003 | 56 | ORDER THAT PETITIONER'S UNOPPOSED MOTION FOR CONTINUANCE IS GRANTED. THE HEARING SCHEDULED FOR 2/20/03 SHALL NOW BE HELD ON 3/24/03 AT 2:00 ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 2/20/03 ENTERED AND COPIES MAILED. (lvj) (Entered: 02/20/2003) |
| 02/26/2003 | 57 | Certificate of service by RESPONDENT MARTIN HORN that copy of request that the court schedule a pre-hearing conference was served upon counsel for petitioner by u.s. mail. (lvj) (Entered: 02/28/2003) |
| 03/17/2003 | 58 | MOTION by RESPONDENT MARTIN HORN FOR CONTINUANCE OF HEARING ON REMAND FROM THIRD CIRCUIT COURT OF APPEALS , CERTIFICATE OF SERVICE. (jpd) (Entered: 03/18/2003) |
| 03/19/2003 | 59 | MOTION WITH MEMORANDUM IN SUPPORT by RESPONDENT MARTIN HORN FOR ORDER LIMITING SCOPE OF REMAND HEARING TO ISSUES PROPERLY BEFORE THE COURT UNDER AMNDED HABEAS STATUTE , CERTIFICATE OF SERVICE. (np) (Entered: 03/19/2003) |
| 03/21/2003 | 60 | ORDER THAT RESPONDENTS' UNOPPOSED MOTION FOR CONTINUANCE OF HEARING ON REMAND FROM THIRD CIRCUIT COURT OF APPEALS IS GRANTED. THE REMAND HEARING SHALL BE RE-SCHEDULED TO TAKE PLACE ON 4/23/03 AT 10:00 ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 3/24/03 ENTERED AND COPIES MAILED. (lvj) (Entered: 03/24/2003) |
| 04/10/2003 | 61 | ORDER THAT RESPONDENT'S MOTION FOR ORDER LIMITING SCOPE OF REMAND HEARING TO ISSUES PROPERLY BEFORE THE COURT UNDER AMNDED HABEAS STATUTE IS GRANTED IN PART AND DENIED IN PART, ETC. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 4/11/03 ENTERED AND COPIES MAILED. (lvj) (Entered: 04/11/2003) |

| 04/11/2003 | 62 | ORDER THAT THE WARDEN OF SCI HUNTINGDON PRODUCE THE BODY OF MAJOR GEORGE TILLERY ON 4/23/03 AT 10:00 TO APPEAR FOR EVIDENTIARY HEARING, ETC. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 4/14/03 ENTERED AND COPIES MAILED. (lvj) (Entered: 04/14/2003) |
|---|---|---|
| 04/17/2003 | 63 | MOTION BY PETITIONER MAJOR TILLERY FOR EXTENTION OF TIME TO ALLOWED PETITIONER TO MAKE MOTIONS TO THE COURT OF APPEALS TO CLARIFIED ITS GRANTING OF A C.O.A. TO HAVE A EVIDENUARY HEARING FOR CONFLICT OF INTEREST , CERTIFICATE OF SERVICE. (lvj) (Entered: 04/17/2003) |
| 04/17/2003 | 64 | MOTION BY PETITIONER MAJOR TILLERY FOR RELIEF UNDER RULE 60 AND TO AMEND THE COURT ORDER TO GRANT IN PART THAT NO EVIDENCE BE ALLOWED TO BE PRESENTED AT HIS HEARING ON 4/23/03 , AND FOR APPOINTMENT OF COUNSEL , CERTIFICATE OF SERVICE. (lvj) (Entered: 04/17/2003) |
| 04/21/2003 | 65 | ORDER THAT PETITIONER'S MOTION FOR AN EXTENSION OF TIME AND MOTION FOR RELIEF ARE DENIED, ETC. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 4/22/03 ENTERED AND COPIES MAILED AND FAXED. (lvj) (Entered: 04/22/2003) |
| 04/24/2003 | 66 | ORDER THAT A HEARING WILL BE HELD ON 5/14/03 AT 10:00. SAID HEARING WILL FOCUS ON WHETHER THE PETITIONER CAN SHOW CAUSE AND PREJUDICE OR THAT A MISCARRIAGE OF JUSTICE WILL RESULT SHOULD THIS COURT FIND THAT PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IS UNREVIEWABLE BY THIS COURT ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 4/25/03 ENTERED AND COPIES MAILED. (mbh) (Entered: 04/25/2003) |
| 04/25/2003 | 67 | ORDER THAT THE WARDEN OF SCI GRATERFORD PRODUCE THE BODY OF MAJOR TILLERY ON 5/14/03 AT 10:00 TO APPEAR FOR CIVIL HEARING, ETC. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 4/28/03 ENTERED AND COPIES MAILED. (lvj) (Entered: 04/28/2003) |
| 05/14/2003 | 68 | Memorandum of law by RESPONDENT MARTIN HORN REGARDING PETITIONER'S POSSIBLE SHOWING OF EXCUSE FOR PROCEDURAL DEFAULT , Certificate of Service. (jpd) (Entered: 05/14/2003) |
| 05/15/2003 | 69 | ORDER THAT A HEARING ON THE CONFLICK OF INTEREST CLAIM SHALL BE RESCHEDULED FOR 10:30 ON 5/28/03. ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 5/15/03 ENTERED AND COPIES MAILED . (afm) (Entered: 05/15/2003) |
| 05/21/2003 | 70 | ORDER THAT THE WARDEN OF SCI GRATERFORD PRODUCE BEFORE THIS COURT MAJOR TILLERY ON 5/28/03 AT 10:30 TO APPEAR FOR A CIVIL HEARING. IMMEDIATELY UPON |

| | | TERMINATION OF THE PROCEEDINGS, HE SHALL BE DELIVERED INTO THE CUSTODY OF THE SAID SUPERINTENDENT OF SAID INSTITUTION ( SIGNED BY JUDGE CLARENCE C. NEWCOMER ) 5/22/03 ENTERED AND COPIES MAILED AND FAXED BY CHAMBERS. (mbh) (Entered: 05/22/2003) |
|---|---|---|
| 05/29/2003 | 71 | Minute Entry DATED 5/28/03 re:Evidentiary Hearing. Court Reporter: ROTHSCHILD. counsel addressed the court. witnesses sworn; The court will issued its opinion in due course. (lvj, ) (Entered: 05/30/2003) |
| 06/04/2003 | 72 | TRANSCRIPT of Proceedings Hearing held on 5/28/03 before Judge NEWCOMER. Court Reporter: SIDNEY ROTHCHILD. (jl, ) (Entered: 06/04/2003) |
| 06/05/2003 | 73 | MOTION FOR APPOINTMENT OF COUNSEL FILED BY MAJOR TILLERY, PROOF OF SERVICE.(lvj, ) (Entered: 06/05/2003) |
| 06/11/2003 | 74 | ORDER THAT PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL IS DENIED. SIGNED BY JUDGE CLARENCE C. NEWCOMER ON 6/10/2003. 6/12/2003 ENTERED AND COPIES MAILED. (mbh, ) (Entered: 06/12/2003) |
| 07/11/2003 | 75 | Transcript of Proceedings held on 4/23/2003 before Judge Clarence C. Newcomer. Court Reporter: ESR Operator. (mbh, ) (Entered: 07/14/2003) |
| 07/21/2003 | 76 | Request by MAJOR TILLERY for transcripts to hearing. (lvj, ) (Entered: 07/22/2003) |
| 07/25/2003 | 77 | ORDER THAT PETITIONER BE GIVEN THE TRANSCRIPTS FROM THE HEARINGS OF APRIL 23, 2003 AND MAY 28, 2003. SIGNED BY JUDGE CLARENCE C. NEWCOMER ON 7/25/03. 7/28/03 ENTERED AND COPIES MAILED.(lvj, ) (Entered: 07/28/2003) |
| 07/29/2003 | 78 | ORDER THAT THIS COURT'S 10/30/2000 ORDER APPROVING AND ADOPTING U.S. MAGISTRATE MELINSON'S REPORT AND RECOMMENDATION IS REAFFIRMED. SIGNED BY JUDGE CLARENCE C. NEWCOMER ON 7/28/2003. 7/30/2003 ENTERED AND COPIES MAILED.(mbh, ) (Entered: 07/30/2003) |
| 08/07/2003 | 79 | MOTION TO MAKE ADDITIONAL FINDINGS OF FACT/ALTER/OR AMEND JUDGMENT FILED BY MAJOR TILLERY,CERTIFICATE OF SERVICE.(lvj, ) (Entered: 08/07/2003) |
| 08/08/2003 | 81 | NOTICE OF APPEAL as to 78 Order by MAJOR TILLERY. Copies to Judge, Clerk USCA, Appeals Clerk and THOMAS W. DOLGENOS, DAVID CURTIS GLEBE, EDWARD H. WILEY (lvj, ) (Entered: 08/28/2003) |
| 08/25/2003 | 80 | MOTION TO AMEND AND SUPPLEMENT, MOTION TO MAKE ADDITIONAL FINDINGS OF FACT/ALTER/OR AMEND JUDGMENT ON REMAND OF HABEAS CORPUS PLEADINGS FILED BY MAJOR TILLERY,CERTIFICATE OF SERVICE.(lvj, ) (Entered: 08/26/2003) |

| 08/27/2003 | 82 | Clerk's Notice to USCA re 81 Notice of Appeal: (lvj, ) (Entered: 08/28/2003) |
|---|---|---|
| 09/02/2003 | | Certified and Transmitted Record on Appeal to US Court of Appeals. (Pleadings #45,46,57,59,79,80 not included). (mac, ) (Entered: 09/02/2003) |
| 09/03/2003 | | NOTICE of Docketing Record on Appeal from USCA re 81 Notice of Appeal filed by MAJOR TILLERY. USCA Case Number 03-3616 (lvj, ) (Entered: 09/04/2003) |
| 09/08/2003 | 83 | Certified Copy of Order from USCA that the above-entitled appeal is stayed pending disposition of the motion, etc. it should be noted that appellate review of the district court's decision regarding the post-decision motion requires the party to file an amended notice of appeal within the time prescribed by rule 4, fed.r. app. p. measured from the entry of the order disposing of the last outstanding post-decision motion. (lvj, ) (Entered: 09/09/2003) |
| 09/11/2003 | 84 | Response *to Petitioner's Motions to Supplement Facts and Amend Judgement* by RESPONDENT MARTIN HORN, Certificate of Service. (DOLGENOS, THOMAS) Modified on 9/17/2003 (fh) (Entered: 09/11/2003) |
| 10/09/2003 | 85 | ORDER THAT PETITIONER'S MOTION TO MAKE ADDITIONAL FINDINGS OF FACT/ALTER OR AMEND JUDGMENT IS DENIED. SIGNED BY JUDGE CLARENCE C. NEWCOMER ON 10/9/2003.10/9/2003 ENTERED AND COPIES MAILED. (mbh, ) (Entered: 10/09/2003) |
| 10/22/2003 | | USCA Appeal Fees received $ 105 receipt number 898645 re 81 Notice of Appeal filed by MAJOR TILLERY (lvj, ) (Entered: 10/23/2003) |
| 10/23/2003 | 86 | AMENDMENT by MAJOR TILLERY. Amendment to 81 Notice of Appeal. (lvj, ) (Entered: 11/19/2003) |
| 06/16/2004 | 87 | Certified Copy of Order from USCA THAT THE FOREGOING MOTION TO PROCEEDIN FORMA PAUPERIS IS GRANTED FOR THE PURPOSES OF THE APPOINTMENT OF COUNSEL SHOULD THE REQUEST FOR A CERTIFICATE OF APPEALABILITY AND MOTION FOR APPOINTMENT OF COUNSE BE GRANTED BY THE COURT. (jpd) (Entered: 06/17/2004) |
| 07/23/2004 | 88 | ORDER of USCA as to 81 Notice of Appeal filed by MAJOR TILLERY. The foregoing application for a certificate of appealability is granted and counsel will be appointed. (mbh, ) (Entered: 07/26/2004) |
| 08/23/2005 | 89 | ORDER of USCA as to 81 Notice of Appeal filed by MAJOR TILLERY that the judgment of the district court entered on July 30, 2003 be and the same hereby is affirmed. All of the above in accordance with the opinion of this court. Costs taxed against appellant. (lvj, ) (Entered: 08/23/2005) |
| 08/23/2005 | | Appeal Record Returned: 81 Notice of Appeal (lvj, ) (Entered: 08/23/2005) |
| 10/14/2008 | 90 | AMENDED MOTION FOR RELIEF FROM JUDGMENT FILED BY MAJOR TILLERY..(lvj, ) (Entered: 10/14/2008) |

| 10/17/2008 | 91 | ORDER THAT THIS CASE IS REASSIGNED FROM HONORABLE CLARENCE C. NEWCOMER TO HONORABLE BRUCE W. KAUFFMAN FOR ALL FURTHER PROCEEDINGS. SIGNED BY MICHAEL E. KUNZ, CLERK OF COURT ON 10/17/08. 10/17/08 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 10/17/2008) |
|---|---|---|
| 11/03/2008 | 92 | ORDER THAT THE DEFT'S MOTION FOR RELIEF FROM JUDGMENT IS DENIED.. SIGNED BY HONORABLE BRUCE W. KAUFFMAN ON 10/31/08.11/3/08 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 11/03/2008) |
| 11/03/2008 | 93 | ORDER THAT THE MOTION FOR RELIEF FROM JUDGMENT IS DISMISSED WIHTOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION; AND THE CLERK OF COURT SHALL MARK THIS MATTER CLOSED.. SIGNED BY HONORABLE PETRESE B. TUCKER ON 10/31/08. 11/4/08 ENTERED AND COPIES MAILED, E-MAILED AND FAXED.(lvj, ) (Entered: 11/04/2008) |
| 11/10/2008 | | Copy of order dated 10/31/08 to plff returned by u.s. postal service re: released (lvj, ) (Entered: 11/12/2008) |

Pa 37

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAJOR TILLERY | : | CIVIL ACTION |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN HORN, at al. | : | |
| | : | NO. 99-6516 |
| | : | |
| Respondent | : | |
| | : | |

## O R D E R

AND NOW, this    day of July, 2003, upon reconsideration of Petitioner's Habeas Petition it is hereby ORDERED that this Court's October 30, 2000, Order approving and adopting U.S. Magistrate Melinson's Report and Recommendation is reaffirmed.

Pursuant to the Circuit Court's August 23, 2003, Order, this Court held hearings on April 23, 2003 and May 28, 2003, at which time Petitioner, who was represented by counsel, was given ample opportunity to present evidence showing that this Court erred in its denial of his ineffective assistance of counsel claim. Petitioner failed to present any evidence whatsoever to satisfy the two prong requirement that the witness, Petitioner claims should have been called at trial, (1) was available to testify at the time of trial and (2) would have been beneficial to the defense. Therefore, pursuant to <u>Zettlemoyer v. Fulcomer</u>, 923 F.3d 284, 298 (3d. Cir. 1991) and <u>Lewis v. Mazurkiewicz</u>, 915

1

F.2d 106, 115 (3d Cir. 1990), Petitioner's claim must fail.  The
Circuit Court is directed to page 58 of the May 28, 2003,
transcript.  Here, Petitioner's counsel freely admits that
Petitioner was unable to show that the witness in question was
able to testify.  In addition, despite calling Petitioner's trial
counsel to the stand, Petitioner was unable to show that the
witness' testimony would have strengthened his case.




     AND IT IS SO ORDERED.


_____
Clarence C. Newcomer, S.J.










2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
MAJOR TILLERY                :          CIVIL ACTION
                             :
        Petitioner           :
                             :
        v.                   :
                             :
MARTIN HORN, at al.          :
                             :          NO.  99-6516
                             :
        Respondent           :
                             :
```

## O R D E R

AND NOW, this    day of June, 2003, upon consideration of Petitioner's Motion for Appointment of Counsel (Document 73), it is hereby ORDERED that said Motion is DENIED.


AND IT IS SO ORDERED.


_____
Clarence C. Newcomer, S.J.

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAJOR TILLERY,                    :
     Petitioner,                :          HABEAS CASE
                                :
     v.                              :          No. 99-CV-6516
                                  :
MARTIN HORN, et al.,              :
     Respondents.               :

## RESPONDENTS' ANSWER TO PETITIONER'S MOTIONS TO SUPPLEMENT FACTS AND AMEND JUDGMENT

**LYNNE ABRAHAM**, District Attorney of Philadelphia County, by **DAVID CURTIS GLEBE**, Assistant District Attorney, and **THOMAS W. DOLGENOS**, Chief, Federal Litigation, on behalf of respondents in the captioned habeas case, respectfully requests that this Court deny petitioner's post-hearing motions, for the following reasons.

After the remand of this case by the Third Circuit Court of Appeals, this Court entered an order in January of 2003, scheduling a hearing on petitioner's procedurally defaulted ineffectiveness claim.  Petitioner thereafter retained counsel, who promptly asked that the scheduled hearing be continued so that he could familiarize himself with the case and otherwise prepare for the hearing.  This Court eventually conducted *two* hearings in this case, on April 23, 2003, and May 28, 2003, during which petitioner as

well as his former trial counsel testified. On July 28, 2003, this Court entered an order reaffirming, approving, and adopting the original recommendation of the magistrate that petitioner's application for habeas relief be denied.

On August 5, 2003, and August 18, 2003, petitioner filed similar-looking motions with this Court, requesting that additional findings of fact be made, and that the Court amend its order of July 28, 2003, rejecting his petition. Petitioner has also recently filed a notice of appeal to the Third Circuit, which has now stayed all further action pending this Court's disposition of petitioner's motions. In answer thereto, respondents aver that petitioner's current motions are utterly groundless, and should therefore be dismissed promptly by this Court.

The record on remand in this case plainly shows that this Court has already been exceedingly generous to petitioner. To begin with, he and his former counsel were given additional time to prepare for the scheduled hearings, and were thereafter provided every opportunity to present all evidence and argument in support of his contentions. In addition, this Court was particularly accommodating to petitioner by allowing him to litigate a procedurally defaulted ineffectiveness claim – without *any* showing on his part of "cause" or a "miscarriage of justice" to excuse his default. Further,

following the two hearings this Court charitably evaluated his ineffectiveness claim using an applicant-friendly *de novo* standard of review, rather than the tougher, state-deferential standard set forth in the amended habeas statute. *See* 28 U.S.C. Section 2254(d).

But despite being permitted to expand the evidentiary record, and despite such liberal treatment, petitioner was plainly unable to support his application for relief, as this Court properly concluded in its latest order. That is, the evidence simply did not support the notion that petitioner's trial counsel labored under an impermissible conflict of interest at the time of trial, nor that any prejudice resulted in any event. Accordingly, when petitioner's legal and factual position is examined in its best possible light, with every conceivable measure taken in his favor, his position nevertheless fails.

Petitioner's present proffer of an affidavit from his friend William Franklin – who was convicted of murder arising from the same shooting incident related to petitioner's conviction – brings absolutely nothing new to this Court's attention. Namely, the fact that petitioner's counsel represented John Pickens five years before petitioner's trial, to which Franklin attests, does not even imply, much less show, that his counsel was constitutionally ineffective. Moreover, this fact was already known to this Court and given

full consideration. In addition, the other materials that petitioner has attached to his motions are similarly not new, and have also been previously examined by this Court.

In short, petitioner has failed to present any legitimate reason to warrant this Court's supplementation of the factual record, or to amend this Court's decision to reaffirm its original findings, which rejected petitioner's application for habeas relief. In light of these considerations, respondents respectfully request that this Court dismiss petitioner's pending motions without further proceedings.

Respectfully submitted,


DAVID CURTIS GLEBE
Assistant District Attorney


THOMAS W. DOLGENOS
Chief, Federal Litigation

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that one copy of the foregoing was duly served on this date by United States Mail, first class postage prepaid, upon petitioner at the following address:


Mr. Major Tillery
No. AM-9786
SCI – Huntington
1100 Pike Street
Huntington, Pennsylvania 16654-1112


_____
DAVID CURTIS GLEBE
Assistant District Attorney
1421 Arch Street
Philadelphia, PA  19102
215-686-5706


Date:  September 11, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
MAJOR TILLERY              :        CIVIL ACTION
                           :
     Petitioner            :
                           :
     v.                    :
                           :
MARTIN HORN, at al.        :
                           :        NO.  99-6516
                           :
     Respondent            :
                           :
```

**O R D E R**

AND NOW, this    day of October, 2003, upon consideration of Petitioner's Motion to Make Additional Findings of Fact/Alter or Amend Judgment (Doc. 79 and Doc. 80, treated as one Motion) and the Respondent's Reply, it is hereby ORDERED that said Motion is DENIED.

Petitioner asks this Court to revisit its ruling of July 30, 2003. As Respondents note, Petitioner has not provided the Court with any new information tending to prove that his Constitutional rights were infringed. For this reason, revisiting this Court's ruling of July 30, 2003, is not appropriate.

AND IT IS SO ORDERED.

_____
Clarence C. Newcomer, S.J.

1

Case 2:99-cv-06516-CCN Document 99 Filed 06/24/08 Page 50 of 114

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MAJOR G. TILLERY, | : | Civil Action<br>C.A.No.03-3616<br>No. 99-06516 (CCN) |
|  | : | AMENDED |
| -vs- | : | MOTION FOR RELIEF FROM<br>JUDGMENT PER. FRCP 60(b) |
|  | : | (2)(3) & (5) |
| MARTIN HORN, DEPARTMENT OF<br>PENNSYLVANIA STATE PRISONS | : |  |
|  | : |  |

Please accept this petition as an amended FRCP 60 petition
in support of the previous submission dated ___9___ , _21_ , 2008,
with this honorable court.

Subsequent to filing the original petition for relief from
judgment, petitioner discovered additional evidence that would
support his claims that attorney Joseph Sanaguida provided false
testimony before this honorable court when testifying at the
evidentiary hearing that his representation of John Pickins
was minimal at best and did not involve any court appearances
on Mr. Pickins behalf. (Evid. Hr. Tran. at 17-22)

This evidence attached hereto falls under the newly
discovered evidence prong of FRCP 60(b).

Based on Mr. Sanaguida' false testimony the below court
determined that petitioner Mr. Tillery did not suffer from
ineffective assistance of counsel based on a conflict of interest
resulting from Mr. Sanaguida duel representation of petitioner
and the victim (John Pickins) of the crimes petitioner was/is
charged. (Evid. Hr. Tr. at 62)

Mr. Sanaguida's false testimony caused petitioner to be

Case 2:04-cv-10356-DBM Document Page 92 Filed 06/24/08 05/07/2014

denied his federal constitutional right to Writ of Habeas Corpus
pursuant to §2254.

The additional evidence of discussion herein is the attached
transcript from William Franklin* Post Conviction Hearing before
the Honorable James D. McCrudden, Jr. dated October 5, 1988.
(Attached Exhibit)

In the transcript attached hereto it is discussed amongst
the attorneys for defendant Franklin that Mr. Pickins was indeed
advised by Mr. Sanaguida that he should not testify on behalf
of the defendants indicted of the crimes committed against him,
and that if called by any of the defendants he should invoke
his Fifth Amendment privilege.  (Attachment at 15))

This advisement by Mr. Sanaguida denied petitioner the
right to call witnesses that could exonerate him from the crimes.
(See Pet. Orig. FRCP 60 Pet.)

In the attached transcript it is also stated by the other
attorney's that Mr. Sanaguida advised them that he was indeed
the attorney for Mr. Pickins and stated that Mr. Sanaguida stood
up before a court and avowed that he is indeed the attorney
for Mr. Pickins. (Attachment at 13)

This evidence is very crucial given the fact that Mr.
Sanaguida testified before this honorable court and minimized
his representation of Mr. Pickins.  It is very important because

_____

*William Franklin is petitioners co-defendant in the indicted
offenses.

Pa 48

of the fact that Mr. Pickins was also the victim in the crimes that petitioner were charged, and stated that petitioner was not one of the participants that assaulted him by fire-arm. However, because Mr. Sanaguida was representing Mr. Pickins and the petitioner, and he advised Mr. Pickins to invoke his Fifth Amendment privilege if called as an exculpatory witness by any of the defendants, petitioner was denied to present exculpatory evidence that would have exonerated him of the crimes charged contrary to the Sixth Amendment of the US constitution.

Furthermore, petitioner has attached an additional page from the transcript of Mr. Franklin proceedings. Page 21 attached hereto also speaks and shows that Mr. Sanaguida appeared at Mr. Franklin's Preliminary Hearing with Mr. Pickins as his counsel. This action contradicts Mr. Sanaguida's testimony at petitioners Habeas Corpus Evidentiary Hearing before this honorable court. (Attachment pg. 21)

Petitioner was clearly denied his right to a fair evidentiary hearing and thus Writ of Habeas Corpus pursuant to §2254.

Additionally, petitioner has recently received a letter from his Habeas Corpus CJA counsel Mr. Michael Confusione, in which Mr. Confusione stated that contrary to §2249 he never was provided access to any of the original file from petitioners case in order to perform a brief on petitioners behalf. This also added insult to injury and further denied petitioner the right to the Writ of Habeas Corpus. Mr. Confusione could not

effectuate a proper brief on petitioners behalf without having access to the file pertaining to petitioners claims and arguments. (Attachment Letter)

In conclusion, together with the arguments and claims mentioned in petitioners original petition for relief from judgment pursuant to FRCP 60, petitioner should be entitled to a new evidentiary hearing, and given the opportunity to cross-examine Mr. Sanaguida's actions in relation to the attachments herein and his previous testimony at the original evidentiary hearing.

Very truly yours,

Major G. Tillery

Dated: 10-1-08

EX B
A

1

2                  IN THE COURT OF COMMON PLEAS
          FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
3                    CRIMINAL TRIAL DIVISION

4                          - - -

5     COMMONWEALTH                   :      JUNE TERM, 1980

6                                    :

7          vs.                       :

8                                    :

9     WILLIAM FRANKLIN               :        NO. 0561

10                         - - -

11                   POST-CONVICTION HEARING

12                         - - -

13

14                      October 5, 1988
                   Courtroom 788, City Hall
15                  Philadelphia, Pennsylvania

16                         - - -

17    BEFORE:   THE HONORABLE JAMES D. McCRUDDEN, J.

18                         - - -

19    APPEARANCES:

20                    HELEN KANE, ESQUIRE
                      Assistant District Attorney
21                    For The Commonwealth

22
                      JOHN F. STILLMUN, III, ESQUIRE
23                    Attorney For The Defendant

24                         - - -

25

*This shows my Attorney was at hearing with the witness.*

around" town at the time of trial, (N.T. at 3.73), thus refuting the Superior Court's suggestion that Pickens had fled the jurisdiction.

→ Furthermore, both Pickens and Santaguida had attended Mr. Franklin's preliminary hearing. (N.T. at 3.73, N.T. from Preliminary Hearing at 66). The Superior Court missed the point when it observed that Pickens' presence at the preliminary hearing did not show he was available at trial several months later. See Exhibit B at 9 n. 9. Even if Pickens were a drifter, Mozenter could have called him at the preliminary hearing and so preserved his testimony that way. Any reasonable attorney would have served Pickens with a subpoena on the spot in order to secure his presence at trial. Mozenter did nothing.

Finally, even if the Superior Court's factual findings are accepted, they do not establish that Pickens was unavailable to testify at Mr. Franklin's trial. A witness's availability to testify is a mixed question of law and fact, reviewable afresh by this Court. See Martinez v. Sullivan, 881 F.2d 921, 926 (10th Cir. 1989), cert. denied, 493 U.S. 1029 (1990).

This Court may grant the Petitioner's Writ without holding an evidentiary hearing because it is clear from the record that Pickens was available to testify, whether of his own volition or by subpoena, if necessary. And we know how he would have testified. We have Lt. McGrath's notes of which Pickens stated, hours after the attack, that he had been shot by two men named

*AT my Hearing Santaguida stated he was Never in the Courtroom with Pickens*

# HEGGE & CONFUSIONE, LLC

ATTORNEYS AT LAW

SUSAN G. HEGGE
MICHAEL J. CONFUSIONE*

*ALSO ADMITTED IN PA AND NY

NINE TANNER STREET - WEST ENTRY
HADDONFIELD, NEW JERSEY 08033
TELEPHONE: (856) 218-8400
FACSIMILE: (856) 429-5272
WEB: HEGGELAW.COM
EMAIL: INFO@HEGGELAW.COM

September 25, 2008

Major Tillery
#526689
New Jersey State Prison
Box 861
Trenton, NJ 08625

Re:     **Your request for file materials**

Dear Mr. Tillery:

I received your letter. I have enclosed what materials I have from your file (the Third Circuit did not give me the original file materials when I was asked to prepare your brief; the court should still have the original files). If you have questions, let me know. Otherwise, I hope this material is helpful to you.

Very truly yours,

Michael Confusione

MC/ms
Enc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAJOR TILLERY | : | CIVIL ACTION |
| | : | |
| VS. | : | |
| | : | |
| MARTIN HORN | : | NO.  99-6516 |

## ORDER

**AND NOW**, this **17th** day of **OCTOBER, 2008**, in accordance with the court's procedure for random reassignment of cases, it is hereby,

**ORDERED** that the above captioned case is reassigned from the calendar of the late Honorable Clarence C. Newcomer to the calendar of the Honorable Bruce W. Kauffman.

FOR THE COURT:

HARVEY BARTLE III
Chief Judge

ATTEST:

/s/ Michael E. Kunz
MICHAEL E. KUNZ
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAJOR TILLERY : CIVIL ACTION
:
     v. : NO. 99-6516
:
MARTIN HORN :

## ORDER

     **AND NOW**, this     31st     day of October, 2008, upon consideration of

Defendant's Motion For Relief from Judgement (docket no. 90), it is **ORDERED** that the

Motion is **DENIED**.[1]

                                    BY THE COURT:


                                   __S/ BRUCE W. KAUFFMAN _
                                   BRUCE W. KAUFFMAN,   J.

---

[1]     Petitioner brings this Motion for a rehearing of his habeas corpus petition pursuant to Federal Civil Rule 60, which allows a rehearing in consideration of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. 60(b)(2). The Supreme Court has recognized that Rule 60 applies in habeas corpus cases. See Gonzalez v. Crosby, 545 U.S. 524, 534 (2005). However, "a motion under Rule 60(b) must be made within a reasonable time--and for reasons [of newly discovered evidence] no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. 60(c)(1). Petitioner filed a Notice of Appeal on July 23, 2004 (docket no. 88) and the district court's ruling was affirmed August 23, 2005 (docket no. 89). Petitioner brings the current motion more than a year after the Court ruling on the original habeas corpus petition and the Third Circuit's review. Furthermore, the new evidence that Petitioner proffers is his co-defendant's post-conviction hearing transcript from October 5, 1998. The Court is unconvinced that this transcript, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MAJOR G. TILLERY,      :
     Petitioner      :
              :
    v.      :      CIVIL ACTION NOs. 08-CV-4689
              :      and 99-CV-6516
MARTIN HORN, et al.,      :
     Respondents.      :

ORDER

On September 29, 2008, Petitioner filed a "Motion for Relief from Judgment per FRCP 60(b)(2)(3) & (6).[1]" **AND NOW**, this _31st_ day of October 2008, **IT IS HEREBY ORDERED** that:

    1.    The Motion for Relief from Judgment is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction[2] ; and,

    2.    The Clerk of Court shall mark this matter closed.

_Petrese B. Tucker_
**PETRESE B. TUCKER, J.**

[1] Petitioner also filed an Amended Motion for Relief from Judgment in civil action number 99-CV-6516 on October 14, 2008.

[2] Petitioner filed a petition for _habeas corpus_ relief in civil action number 99-CV-6516. That petition was dismissed on July 23, 2003. The Court of Appeals for the Third Circuit affirmed the dismissal on August 23, 2005. In accordance with Gonzalez v. Crosby, 545 U.S. 524, 531, 126 S.Ct. 2641, 2647-48 (2005), Petitioner's motion for relief from judgment pursuant to Rule 60(b)(b) should be treated as a successive petition for _habeas corpus_ relief because Petitioner asserts substantive claims therein. In the instant motion for relief, Petitioner claims that his newly discovered evidence warrants reconsideration of this Court's prior determination. A motion for relief from judgment which raises a substantive claim must be treated as a successive petition for _habeas corpus_ relief. Id.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a prisoner cannot file a second or successive petition for writ of _habeas corpus_ without first seeking and receiving approval from the Court of Appeals. Absent such authorization, the District Court is not permitted to consider the merits of a subsequent petition. 28 U.S.C. § 2244(b)(3)(A); _Robinson v. Johnson_, 313 F.3d 128, 139-40 (3d Cir. 2002).

**General Docket**
**Third Circuit Court of Appeals**

| | |
|---|---|
| **Court of Appeals Docket #:** 00-3818 | **Docketed:** 11/22/2000 |
| **Nature of Suit:** 3530 Habeas Corpus | **Termed:** 02/28/2002 |
| Tillery v. Horn | |
| **Appeal From:** United States District Court for the Eastern District of Pennsylvania | |
| **Fee Status:** Paid | |

**Case Type Information:**
   **1)** civil
   **2)** private
   **3)** Habeas Corpus-prisoner

**Originating Court Information:**
   **District:** 0313-2 : 2-99-cv-06516
   **District Judge:** Clarence C. Newcomer, U.S. District Judge
   **Date Filed:** 12/22/1999

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** |
|---|---|---|
| 10/31/2000 | 10/31/2000 | 11/08/2000 |

**Prior Cases:**
  None

**Current Cases:**
  None

| | |
|---|---|
| MAJOR G. TILLERY (#AM-9786) <br>      Plaintiff - Appellant | Major G. Tillery <br> [NTC Pro Se] <br> Retreat SCI <br> 660 State Route 11 <br> Hunlock Creek, PA 18621 |
| v. | |
| MARTIN HORN, DEPT. OF PENNA STATE PRISONS <br>      Defendant - Appellee | Thomas W. Dolgenos, Esq. <br> [COR NTC city/county gov] <br> Philadelphia County Office of District Attorney <br> 3 South Penn Square <br> Philadelphia, PA 19107 <br><br> Jeffrey M. Krulik, Esq. <br> Email: jeffreym.krulik@pacourts.us <br> [COR NTC city/county gov] <br> Philadelphia County Office of District Attorney <br> 3 South Penn Square <br> Philadelphia, PA 19107 |

MAJOR TILLERY,

    Appellant

  v.

MARTIN HORN, DEPT. OF PENNA STATE PRISONS

| | | |
|---|---|---|
| 11/22/2000 | ☐ | CIVIL CASE DOCKETED. Notice filed by Major Tillery. (LWC) [Entered: 11/22/2000 11:09 AM] |
| 11/22/2000 | ☐ | RECORD, received. (LWC) [Entered: 11/22/2000 11:21 AM] |
| 11/27/2000 | ☐ | STAFF ATTORNEY LETTER SENT advising case will be submitted to a panel of this Court for a decision on the issuance of certificate of appealability. (TE) [Entered: 11/27/2000 03:31 PM] |
| 11/28/2000 | ☐ | MOTION by Appellant Major Tillery for appointment of counsel, filed. Answer due 12/11/00. Certificate of Service dated 11/27/00. (LWC) [Entered: 12/18/2000 10:59 AM] |
| 11/30/2000 | ☐ | MOTION by Appellant to file fewer copies of documents, filed. Answer due 12/11/00. Certificate of Service dated 11/28/00. (LWC) [Entered: 12/18/2000 11:05 AM] |
| 12/08/2000 | ☐ | APPEARANCE from Attorney Jeffrey M. Krulik on behalf of Appellee Martin Horn, filed. (LWC) [Entered: 12/13/2000 09:23 AM] |
| 12/12/2000 | ☐ | MOTION by Appellant for certificate of appealability, filed. Answer due 12/22/00. Certificate of Service dated 12/9/00. (LWC) [Entered: 12/18/2000 11:33 AM] |
| 12/15/2000 | ☐ | Notice received from district court that the docketing and filing fees have been paid by the appellant on 11/24/00. (LWC) [Entered: 12/15/2000 09:59 AM] |
| 12/15/2000 | ☐ | STAFF ATTORNEY'S NONCOMPLIANCE LETTER acknowledging receipt on 11/28/00 of appellant's motion for appointment of counsel, dated 11/27/00. No action can be taken regarding appellant's motion for appointment of counsel at this time. The Court is authorized to appoint counsel only for indigent litigants; therefore, when filing a motion for appointment of counsel appellant must also file a motion for leave to appeal in forma pauperis. Appellant shall file affidavit of poverty, which must be served on all opposing parties and a certificate of service must be filed with the Clerk. The above procedures must be completed within fourteen (14) days from the date of this letter. If the Court does not hear from Appellant within this time, the Court will assume that Appellant does not wish for further action to be taken on motion for appointment of counsel. Response due in 14 days. (LWC) [Entered: 12/18/2000 11:15 AM] |

| 12/27/2000 ☐ | MOTION by Appellant to proceed in forma pauperis for the purpose of appointment of counsel, filed. Answer due 01/03/01. Certificate of Service dated 12/20/00. (LWC) [Entered: 01/08/2001 12:37 PM] |
| 07/13/2001 ☐ | MEMORANDUM IN SUPPORT of motion for certificate of appealability and Concise Legal Statement on behalf of Appellant, filed. (LWC) [Entered: 07/13/2001 01:49 PM] |
| 10/25/2001 ☐ | Submitted for a certificate of appealability, memorandum in support and motion for appointment of counsel Coram: Nygaard, Roth and Barry, Circuit Judges. (TYW) [Entered: 02/28/2002 01:42 PM] |
| 02/28/2002 ☐ | ORDER (Nygaard, Authoring Judge, Roth and Barry, Circuit Judges) granting Appellant's request for a certificate of appealability filed pursuant to 28 U.S.C. Section 2253(c)(1). This matter is remanded to the District Court for further proceedings, filed. DPS-27 (TYW) [Entered: 02/28/2002 01:46 PM] |
| 03/07/2002 ☐ | APPEARANCE from Attorney Thomas W. Dolgenos on behalf of Appellee Martin Horn, filed. (AWI) [Entered: 03/08/2002 11:34 AM] |
| 03/07/2002 ☐ | MOTION by Appellee for clarification of the Court's 2/28/02 Order granting a certificate of appealability, filed. Answer due 3/20/02. Certificate of Service dated 3/7/02. (AWI) [Entered: 03/08/2002 11:36 AM] |
| 08/21/2002 ☐ | ORDER (Nygaard, Authoring Judge, Roth, and Barry, Circuit Judges) Motion by Appellee for clarification is granted. The Court's previous order of February 28, 2002 is clarified as follows: A certificate of appealability is granted on the Appellant's conflict of interest claim and this matter is remanded to the District Court for a hearing on said claim, filed. (LWC) [Entered: 08/23/2002 08:21 AM] |
| 08/21/2002 ☐ | MANDATE ISSUED, filed. (LWC) [Entered: 08/23/2002 08:23 AM] |
| 08/23/2002 ☐ | RECORD RETURNED. (AGB) [Entered: 08/27/2002 08:10 AM] |
| 04/18/2003 ☐ | MOTION by Appellant to clarify the Court's order dated 02/28/02 on conflict of interest issue, filed. Answer due 04/28/03. Certificate of Service dated 4/16/03. (LWC) [Entered: 05/01/2003 09:20 AM] |
| 05/01/2003 ☐ | ORDER (Clerk) denying Motion by Appellant to Clarify the Court's Order Granting C.O.A. on Conflict of Interest Issue. All proceedings in this Court concluded with the issuance of the Court's mandate on August 21, 2002. Accordingly, this Court does not have authority to interject itself into the ongoing proceedings in the District Court by issuing an order clarifying or interpreting it prior order. The Court has no jurisdiction to take any further action in regard to this appeal, filed. (LWC) [Entered: 05/01/2003 09:22 AM] |

Pa 59

**General Docket**
**Third Circuit Court of Appeals**

| | |
|---|---|
| **Court of Appeals Docket #:** 03-3616 | **Docketed:** 09/02/2003 |
| **Nature of Suit:** 3530 Habeas Corpus | **Termed:** 07/29/2005 |
| Tillery v. Horn | |
| **Appeal From:** United States District Court for the Eastern District of Pennsylvania | |
| **Fee Status:** Paid | |

**Case Type Information:**
  **1)** civil
  **2)** private
  **3)** Habeas Corpus-prisoner

**Originating Court Information:**
  **District:** 0313-2 : 2-99-cv-06516
  **District Judge:** Clarence C. Newcomer, U.S. District Judge
  **Date Filed:** 12/22/1999

| **Date Order/Judgment:** | **Date Order/Judgment EOD:** | **Date NOA Filed:** |
|---|---|---|
| 07/30/2003 | 07/30/2003 | 08/08/2003 |

**Prior Cases:**
  None

**Current Cases:**
  None

| | |
|---|---|
| MAJOR G. TILLERY (#AM-9786)<br>      Plaintiff - Appellant | Michael J. Confusione, Esq.<br>Direct: 800-790-1550<br>Email: mc@heggelaw.com<br>Fax: 888-963-8864<br>[COR NTC CJA appt appeal USCA]<br>Hegge & Confusione<br>P.O. Box 366<br>Mulica Hill, NJ 08062 |
| v. | |
| MARTIN HORN, Dept. of Penna State Prisons<br>      Defendant - Appellee | David C. Glebe, Esq.<br>[COR NTC city/county gov]<br>Deceased<br>Deceased |

MAJOR TILLERY,

    Appellant

v.

MARTIN HORN,
Dept. of Penna State Prisons

| | | |
|---|---|---|
| 09/02/2003 | ☐ | CIVIL CASE DOCKETED. Notice filed by Major Tillery. (AWI) [Entered: 09/02/2003 03:16 PM] |
| 09/02/2003 | ☐ | RECORD, received. (AWI) [Entered: 09/02/2003 03:17 PM] |
| 09/05/2003 | ☐ | LEGAL DIVISION LETTER SENT advising case will be submitted to a panel of this Court for a decision on the issuance of certificate of appealability. (TE) [Entered: 09/05/2003 02:47 PM] |
| 09/08/2003 | ☐ | CLERK ORDER - RULE 4(a)(4) Stay case pending disposition of post decision motion. Status Report due 10/8/03. (AWI) [Entered: 09/08/2003 12:41 PM] |
| 09/08/2003 | ☐ | Certified copy of order to Lower Court. (AWI) [Entered: 09/08/2003 12:43 PM] |
| 09/08/2003 | ☐ | APPEARANCE from Attorney David C. Glebe on behalf of Appellee Martin Horn, filed. (AWI) [Entered: 09/08/2003 01:48 PM] |
| 10/07/2003 | ☐ | STATUS REPORT received from Appellant advising the Court that the post decision motion has not been acted on. Status Report due 11/6/03. (AWI) [Entered: 10/07/2003 02:29 PM] |
| 10/10/2003 | ☐ | STATUS REPORT received from Appellee advising the Court that the post decision motion remains pending in District Court. Status Report due 11/10/03 . (AWI) [Entered: 10/10/2003 03:40 PM] |
| 10/23/2003 | ☐ | Appellant's document titled, "Amended Notice of Appeal and Request for Certificate of Appealability," which the Court may wish to construe as an application for certificate of appealability, filed. Answer due 11/3/03. Certificate of Service dated 10/19/03. (NF) [Entered: 11/10/2003 03:07 PM] |
| 10/27/2003 | ☐ | FINAL STATUS REPORT received from Appellee advising the Court that the post decision motion was denied by order of the District Court. (AWI) [Entered: 11/05/2003 02:52 PM] |
| 11/04/2003 | ☐ | COPY OF DECISION/ORDER of District Court dated 10/9/03 denying motion to make additional findings of fact/alter or amend judgment, filed. (AWI) [Entered: 11/05/2003 02:53 PM] |
| 11/17/2003 | ☐ | MOTION by Appellant for appointment of counsel, filed. Answer due 11/24/03. Certificate of Service dated 11/11/03. (AWI) [Entered: 11/18/2003 09:43 AM] |
| 11/24/2003 | ☐ | Appellant's document titled, "Concise Legal Statement and Memorandum of Law in Support of Application for Certificate of Appealability", filed. |

| | | Certificate of service date 11/19/03. (NF) [Entered: 12/01/2003 04:42 PM] |
|---|---|---|
| 05/19/2004 | ☐ | Notice received from district court that the docketing and filing fees have been paid by the appellant on 10/22/03. (AWI) [Entered: 05/19/2004 04:11 PM] |
| 06/03/2004 | ☐ | CLERK LETTER SENT to Appellant requesting that he file a Motion to proceed In Forma Pauperis, in support of his Motion for Appointment of Counsel, within 14 days of the date of this letter or his motion for appointment of counsel will be considered withdrawn. (AWI) [Entered: 06/03/2004 02:37 PM] |
| 06/10/2004 | ☐ | MOTION by Appellant to proceed in forma pauperis, filed. Answer due 6/28/04. Clerk's Office served Appellee as of 6/14/04. (AWI) [Entered: 06/14/2004 11:47 AM] |
| 06/16/2004 | ☐ | ORDER (Clerk) granting motion by Appellant to proceed in forma pauperis for the purposes of the appointment of counsel should the request for a certificate of appealability and motion for appointment of counsel be granted by the Court, filed. (AWI) [Entered: 06/16/2004 02:54 PM] |
| 06/16/2004 | ☐ | Certified copy of order to Lower Court. (AWI) [Entered: 06/16/2004 02:56 PM] |
| 07/23/2004 | ☐ | ORDER (Nygaard, Authoring Judge, Barry and Smith, Circuit Judges) granting application for certificate of appealability and counsel will be appointed. The Clerk will issue a briefing schedule. The parties should address in their briefs whether Tillery's conflict of interest claim was procedurally defaulted, and, if so, whether he can overcome the procedural default; and, whether Tillery has shown that Attorney Santaguida operated under "(1) an actual conflict of interest that (2) adversely affected counsel's performance," Sullivan v. Cuyler, 723 F.2d 1077, 1086 (3d Cir. 1983), filed. BPS-166 (AWI) [Entered: 07/23/2004 09:25 AM] |
| 07/23/2004 | ☐ | Certified copy of order to Lower Court. (AWI) [Entered: 07/23/2004 09:32 AM] |
| 07/23/2004 | ☐ | ORDER appointing Michael J. Confusione, Esq. as CJA counsel to represent Appellant, filed. (AWI) [Entered: 07/23/2004 09:33 AM] |
| 07/23/2004 | ☐ | ORDER (Clerk) The Clerk having appointed Michael J. Confusione, Esq. as counsel for Appellant under the provisions of the Criminal Justice Act, it is hereby ordered that Mr. Confusione shall have a period of 45 days from the date of this order to review the record. Prior to the expiration of that 45 day period, counsel shall advise the Clerk whether additional documents or transcripts are necessary. If counsel does not need additional documents or transcripts, the Clerk will issue a briefing schedule immediately after the 45 day review period ends. Counsel shall file the entry of appearance form within 14 days of the date of this order, filed. (AWI) [Entered: 07/23/2004 09:33 AM] |

| 08/04/2004 ☐ | APPEARANCE from Attorney Michael J. Confusione on behalf of Appellant Major Tillery #AM-9786, filed. (AWI) [Entered: 08/06/2004 11:27 AM] |
|---|---|
| 08/04/2004 ☐ | INFORMATION STATEMENT on behalf of Appellant Major Tillery #AM-9786, received. (AWI) [Entered: 08/06/2004 11:30 AM] |
| 08/04/2004 ☐ | TRANSCRIPT PURCHASE ORDER (Part I), already on file in the District Court Clerk's Office, filed. (AWI) [Entered: 08/06/2004 11:31 AM] |
| 08/06/2004 ☐ | RECORD, filed. (AWI) [Entered: 08/06/2004 11:31 AM] |
| 08/06/2004 ☐ | BRIEFING NOTICE ISSUED. Appellant's brief and appendix due 9/15/04. (AWI) [Entered: 08/06/2004 11:34 AM] |
| 09/13/2004 ☐ | MOTION by Pro Se Appellant Major Tillery to file supplemental brief, filed. Answer due 9/27/04. Certificate of Service dated 9/13/04. (TE) [Entered: 09/14/2004 04:30 PM] |
| 09/13/2004 ☐ | BRIEF/APPENDIX (vol 1 attached) on behalf of Appellant Major Tillery. Pages: 28, Copies: 10, Delivered by mail, filed. Certificate of service date 9/13/04. (GPK) [Entered: 09/15/2004 03:16 PM] |
| 09/13/2004 ☐ | APPENDIX on behalf of Appellant Major Tillery. Copies: 4, Volumes: 2 (vol 1 attached to brief), Delivered by mail, filed. Certificate of service date 9/13/04. (GPK) [Entered: 09/15/2004 03:17 PM] |
| 09/16/2004 ☐ | ORDER (Clerk) denying motion to file Supplemental Pro Se Brief by Appellant Major Tillery, filed. Third Circuit Local Appellate Rule 31.3 provides: "Except in those cases in which counsel has filed a motion to withdraw under Anders v. California, 386 U.S. 738 (1967), parties represented by counsel may not file a brief pro se. If a party sends a pro se brief to the court, the clerk shall forward the brief to the party's attorney of record. Counsel may choose to include the arguments in his or her brief or may in the unusual case file a motion to file a supplemental brief, if appropriate." It does not appear that appellant was served with a copy of the brief and appendix filed on his behalf by counsel. In this instance only, the Clerk will forward a copy of the brief to appellant. Due to the limited number of copies available, the Clerk will be unable to provide appellant with a copy of volume 2 of the appendix. (TE) [Entered: 09/16/2004 04:26 PM] |
| 10/08/2004 ☐ | MOTION by Appellee for extension of time to file brief until 11/5/04, filed. Answer due 10/25/04. Certificate of Service dated 10/8/04. (AWI) [Entered: 10/12/2004 02:50 PM] |
| 10/14/2004 ☐ | ORDER (Clerk) granting motion by Appellee for extension of time to file brief. Appellee's brief shall be filed and served on or before 11/5/04, filed. (AWI) [Entered: 10/14/2004 03:37 PM] |
| 11/05/2004 ☐ | BRIEF on behalf of Appellee Martin Horn, Copies: 10, Pages: 35, Word Count: 6,508, delivered by mail, filed. Certificate of service date 11/5/04. |

| | | |
|---|---|---|
| | | (LAL) [Entered: 11/08/2004 03:43 PM] |
| 02/02/2005 | ☐ | CALENDARED for Monday, April 4, 2005. (CLT) [Entered: 02/03/2005 08:00 AM] |
| 04/04/2005 | ☐ | ARGUED Monday, April 4, 2005 Panel: Barry, Ambro and Cowen, Circuit Judges. Counsel for Appellant: Michael J. Confusione and Counsel for Appellee: David C. Glebe. (CLT) [Entered: 04/04/2005 10:47 AM] |
| 07/29/2005 | ☐ | NOT PRECEDENTIAL OPINION (Barry, Ambro and Cowen, Authoring Judge, Circuit Judges), filed. Total # pages: 12. (LWC) [Entered: 07/29/2005 09:23 AM] |
| 07/29/2005 | ☐ | JUDGMENT, Affirmed. All of the above in accordance with the opinion of this Court. Costs taxed against appellant, filed. (LWC) [Entered: 07/29/2005 09:40 AM] |
| 08/22/2005 | ☐ | MANDATE ISSUED, filed. (PDB) [Entered: 08/22/2005 10:42 AM] |
| 08/23/2005 | ☐ | RECORD RETURNED. (AGB) [Entered: 08/23/2005 12:39 PM] |
| 10/11/2005 | ☐ | Supreme Court of U.S. notice filed advising petition for writ of certiorari filed by Appellant Major Tillery. Filed in the Supreme Court on 9/30/05 at Supreme Ct. case number: 05-6811. (JT) [Entered: 10/11/2005 02:30 PM] |
| 11/07/2005 | ☐ | CJA 20 voucher no. 051121000114 approved by Judge Robert E. Cowen, Circuit Judge for compensation and expenses totaling $ 5,287.99. [FFW] (JT) [Entered: 11/21/2005 03:12 PM] |
| 12/02/2005 | ☐ | U.S. Supreme Court order dated 11/28/05, at S.C. number: 05-6811, denying petition for writ of certiorari by Appellant Major Tillery, filed. (JT) [Entered: 12/07/2005 10:10 AM] |

No. 03-3616

===========================================================

IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

===========================================================

MAJOR TILLERY,
Petitioner-Appellant

v.

MARTIN HORN,
DEPARTMENT OF PENNSYLVANIA STATE PRISONS,
Respondent-Appellee

_____

ON APPEAL FROM A FINAL ORDER OF
THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

Sat Below:  Clarence C. Newcomer, U.S.D.J.

_____

BRIEF AND VOLUME I, PAGES 1-37, OF APPENDIX
OF APPELLANT MAJOR TILLERY

_____

Michael Confusione (MC-6855)
HEGGE & CONFUSIONE, LLC
Nine Tanner Street - West Entry
Haddonfield, New Jersey 08033
(856) 218-8400
mconfusione@heggeandconfusione.com

Michael Confusione, Designated Counsel
  Of Counsel and On the Brief

# **TABLE OF CONTENTS**

TABLE TO THE APPENDIX ................................................................iii

TABLE OF AUTHORITIES ...............................................................iv

CORPORATE DISCLOSURE STATEMENT…………………………….........1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION..............1

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE...........................................................1

STATEMENT OF FACTS ..............................................................4

STATEMENT OF RELATED CASES ...................................................9

STANDARD OF REVIEW .............................................................9

SUMMARY OF THE ARGUMENT ....................................................9

ARGUMENT ..........................................................................11

A.    TILLERY'S CONFLICT OF INTEREST CLAIM WAS NOT
PROCEDURALLY DEFAULTED    12

B.    TILLERY SHOWED CAUSE AND PREJUDICE SUFFICIENT TO
OVERCOME ANY PROCEDURAL DEFAULT    14

C.    TILLERY'S TRIAL COUNSEL OPERATED UNDER AN ACTUAL
CONFLICT OF INTEREST THAT ADVERSELY AFFECTED HIS
PERFORMANCE    16

D.    TILLERY'S CONVICTION SHOULD BE REVERSED
AUTOMATICALLY BECAUSE HIS TRIAL COUNSEL
REPRESENTED BOTH TILLERY AND HIS ALLEGED
VICTIM WITH RESPECT TO THE 1976 SHOOTING
FOR WHICH TILLERY STANDS CONVICTED    23

i

CONCLUSION ........................................................................................................ 28

CERTIFICATE OF SERVICE ................................................................... Attached

ii

# TABLE TO THE APPENDIX

## Volume I (included in this Volume)

| | |
|---|---|
| Notice of Appeal | Pa1-2 |
| July 28, 2003 Order denying Habeas Petition | Pa3-4 |
| October 27, 2000 Memorandum Opinion and Order<br>  Denying Habeas Petition | Pa5-13 |
| September 19, 2000 Report and Recommendation | Pa14-25 |
| Docket Entries | Pa26-37 |

## Volume II (bound separately)

| | |
|---|---|
| Supplemental letter and exhibits in support of habeas petition | Pa38-75 |
| Transcript of January 13, 1998 Hearing before Honorable<br>  John J. Poserina, Philadelphia Court of Common Pleas | Pa76-102 |
| Transcript of April 23, 2003 Hearing before Honorable<br>  Clarence C. Newcomer, U.S.D.J. | Pa103-165 |
| Transcript of May 28, 2003 Hearing before Honorable<br>  Clarence C. Newcomer, U.S.D.J. | Pa166-229 |
| Order Granting certificate of appealability | Pa230 |
| Statement of John Pickens | Pa231-36 |
| Opinion in Commonwealth v. Franklin, 580 A.2d 25<br>  (Pa. Super. 1990) | Pa237-49 |
| Slip opinion in Commonwealth v. Tillery, No. 523,<br>  Pennsylvania Superior Court, April 21, 1999 | Pa250-54 |

# TABLE OF AUTHORITIES

Calderon v. Thompson, 523 U.S. 538, 559 (1998)  15

Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)  13

Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)  16

Gideon v. Wainwright, 372 U.S. 335 (1963)  26

Glasser v. United States, 315 U.S. 60 (1942)  25

Harris v. Reed, 489 U.S. 255, 262 (1989)  12

Holloway v. Arkansas, 435 U.S. 475 (1978)  25

Murray v. Carrier, 477 U.S. 478, 497 (1986)  14

Strickland v. Washington, 466 U.S. 668, 692 (1984)  16

Sullivan v. Cuyler, 723 F.2d 1077, 1086 (3d Cir.1983)  16

United States v. Cronic, 466 U.S. 648, 658 (1984)  24

United States v. Frady, 456 U.S. 152, 170 (1982)  15

United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir.1988),
 cert. denied, 492 U.S. 906 (1989)  16

United States v. Levy, 577 F.2d 200, 220 (3d Cir. 1978)  20

United States v. Moscony, 927 F.2d 742 (3d Cir.),
 cert. denied, 501 U.S. 1211 (1991)  20

Villot v. Varner, 373 F.3d 327 (3d Cir. 2004)  12

Werts v. Vaughn, 228 F.3d 178, 191 (3d Cir. 2000),
 cert. denied, 532 U.S. 980 (2001)  9, 11, 14

iv

## CORPORATE DISCLOSURE STATEMENT

Not applicable.

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The district court had jurisdiction over this habeas corpus action pursuant to

28 U.S.C. § 2253.  This Court has appellate jurisdiction pursuant to 28 U.S.C. §§

1291 and 2253 and the certificate of appealability entered by the Court.  (Pa230).

## STATEMENT OF THE ISSUES

1.     Is Tillery's conflict of interest claim procedurally defaulted? (see

Pa10-13; Pa16-20)

2.     Even if Tillery's claim is procedurally defaulted, has he shown cause

and prejudice to overcome the default? (see Pa10-13; Pa16-20)

3.     Did Tillery's trial counsel operate under an actual conflict of interest

that adversely affected his performance during Tillery's trial? (see Pa3-24)

4.     Should Tillery's conviction be reversed automatically because his trial

counsel represented both Tillery and his alleged victim with respect to the same

1976 shooting for which Tillery stands convicted?

## STATEMENT OF THE CASE

Major Tillery is serving a life sentence in Pennsylvania state prison.  He now

appeals from the district court's denial of his writ of habeas corpus.

1

On May 29, 1985, following a jury trial in the Philadelphia Court of
Common Pleas, Tilley was convicted of first-degree murder, aggravated assault
and weapons offenses arising out of the October 27, 1976 shooting death of John
Hollis and wounding of John Pickens.  (Pa6; Pa48).  The Pennsylvania Superior
Court affirmed Tillery's conviction on May 30, 1989, <u>Commonwealth v. Tillery</u>,
563 A.2d 195 (Pa. Super. 1989), and the Pennsylvania Supreme Court denied
allocatur on March 5, 1990, <u>Commonwealth v. Tillery</u>, 593 A.2d 841 (Pa. 1990).

On September 20, 1996, Tillery filed a petition under Pennsylvania's Post-
Conviction Relief Act after he discovered that his trial counsel, Joseph Santaguida,
Esquire, had also represented Tillery's alleged victim, John Pickens, with respect
to the Commonwealth's charges against William Franklin, Tillery's alleged co-
perpetrator in the 1976 shooting.  Despite that revelation, however, the Court of
Common Pleas dismissed Tillery's petition without an evidentiary hearing on
January 13, 1998, (Pa6; Pa63), and the Superior Court affirmed the dismissal on
April 21, 1999.  <u>Commonwealth v. Tillery</u>, 738 A.2d 1058 (Pa. Super. 1999).
(Pa6; Pa250-54).

Tillery then filed a petition for a writ of habeas corpus with the United States
District Court for the Eastern District of Pennsylvania on December 22, 1999, in
which he again contended that his trial counsel operated under an actual conflict of

2

interest. (Pa6). On October 30, 2000, the district court approved and adopted Magistrate Judge Melinson's Report and Recommendation to dismiss Tillery's petition. (Pa5-24).

By Order dated August 23, 2003, however, this Court directed the district court to hold a hearing to permit Tillery to present evidence in support of his conflict of interest claim. (Pa3). The district court held hearings on April 23 and May 28, 2003 but, by Order dated July 29, 2003, reaffirmed the dismissal of Tillery's petition on the ground that Tillery had failed to demonstrate that Pickens was available to testify at the time of trial and would have benefited Tillery's defense. (Pa3-4).

On August 8, 2003, Tillery filed a Notice of Appeal from the district court's July 29, 2003 Order and requested a certificate of appealability. (Pa1-2). This Court granted the certificate and directed the parties to address whether Tillery's conflict of interest claim was procedurally defaulted and, if so, whether he could overcome the default; and whether Tillery had shown that his trial counsel operated under an actual conflict of interest that adversely affected his performance. (Pa230).

3

## **STATEMENT OF FACTS**

Shots rang out in a Philadelphia pool hall on October 27, 1976. John Hollis was killed, and John Pickens was wounded. Shortly after the shooting, Pickens told the police that "Dave" and "Rickie" committed the shooting. (Pa231-36).

The police made no arrests, however, and the crime remained unsolved for more than three years. Then, Emanual Claitt, a jailhouse informant, purported to provide information to the police that indicated that William Franklin and Major Tillery committed the offense. (Pa48-49).

The Commonwealth tried Tillery for the shooting in 1985. Tillery retained Joseph Santaguida, Esquire to represent him.

Before trial began, Tillery asked Mr. Santaguida to subpoena the surviving victim, Pickens. Tillery wanted Pickens to testify on Tillery's behalf at trial and confirm Pickens's statement to the police that "Dave" and "Rickie," not Tillery, committed the shooting. (Pa39; Pa49; see Pa64-69; Pa231-36). Tillery also asked Mr. Santaguida to request a missing witness charge should Pickens not testify at trial. (Pa49). Mr. Santaguida neither obtained Pickens's testimony nor requested a missing witness charge, however, and Tillery was convicted and sentenced to life imprisonment.

4

Then, in 1996, Tillery reviewed <u>Commonwealth v. Franklin</u>, 580 A.2d 25 (Pa. Super. 1990) in the prison law library. That case discussed the 1980 trial of William Franklin, Tillery's alleged co-perpetrator in the 1976 shooting.

Tillery was shocked to learn that his trial counsel, Mr. Santaguida, had also represented Pickens, Tillery's alleged victim, during Franklin's trial in 1980. (Pa241-42). Mr. Santaguida never told Tillery that he had represented Pickens in any matter, (Pa193-94), let alone in the matter in which Pickens was the victim and Tillery the alleged perpetrator.

Worse yet, Tillery learned that Mr. Santaguida had advised Pickens not to testify for Franklin in 1980 because Pickens might incriminate himself. That advice to Pickens conflicted with Tillery's interest during his 1985 trial, and his need for Pickens's testimony that "Dave" and "Rickie," not Tillery, committed the shooting. Franklin's counsel had contacted Mr. Santaguida during Franklin's trial and asked if Pickens would testify on Franklin's behalf. Mr. Santaguida replied, however, that he "would have to advise his client not to testify for [Franklin]" because of Pickens's involvement in the underlying criminal charges. (Pa242).

Mr. Santaguida confirmed in the district court below that he represented both Tillery and Pickens, the alleged perpetrator and victim of the 1976 shooting:

- He represented Pickens in 1980 regarding his possible testimony for William Franklin, Tillery's alleged co-perpetrator in the 1976 shooting. (Pa172). <u>Franklin</u> was the "same case" for which the Commonwealth tried Tillery five years later. (Pa184).

- He advised Pickens not to testify as a witness in <u>Franklin</u>: "Based on whatever conversation I must have had with him, I must have informed the Commonwealth, if [Pickens] were called to testify [in the <u>Franklin</u> matter], he would invoke his privilege under the Fifth Amendment." (Pa172).[1]

- He "probably" did not tell Tillery that he had represented Pickens five years earlier. Mr. Santaguida testified initially, "I don't know. I don't know if that came up. * * * If he asked me, I would have told him, I hope, you know. If I didn't, then I don't know." (Pa174). Mr. Santaguida ultimately

---

[1] Although his testimony was vague, Mr. Santaguida testified that he informed the Commonwealth during <u>Franklin</u> that Pickens would not testify. (Pa172). In <u>Franklin</u>, however, the court notes that Franklin's counsel had contacted Mr. Santaguida and that Mr. Santaguida informed Franklin's counsel that because of Pickens's "involvement in the events underlying the criminal charges . . ., he would have to advise his client not to testify for [Franklin]." (Pa242). That is the likely scenario, since Pickens's statement was exculpatory for Franklin (and Tillery), and it was Franklin's counsel who requested, as Tillery would during his own trial five years later, that Pickens testify. It is clear in any event that Pickens was a critical witness for both Franklin and Tillery.

6

admitted, however: "<u>Did I tell George [Tillery] I represented [Pickens]?</u>
<u>Like technically, I probably didn't tell him that</u>." (Pa175) (emphasis added).

- It was "probably true" that Tillery asked Mr. Santaguida to call Pickens as a
  witness and Mr. Santaguida replied that Pickens was "unavailable." (Pa181-
  82). "[I]f Mr. Pickens's testimony would have helped [Tillery], we couldn't
  find Mr. Pickens. I might have told him that. But, I didn't tell you we
  couldn't find him. I don't know why we didn't call him. The
  Commonwealth couldn't find him." (Pa174).

- He "assumed" Pickens would not testify for Tillery because Pickens did not
  testify for Franklin five years earlier. (Pa175). Mr. Santaguida
  acknowledged, however, that Pickens's "might have changed" his decision
  by the time of Tillery's trial in 1985: "maybe it would have." (Pa189-90).[2]

- He acknowledged that his representation of both Tillery, the alleged
  perpetrator, and Pickens, the victim, may have been a conflict of interest:
  "If I did represent Mr. Pickens, if that is a conflict, then it was a conflict."
  Mr. Santaguida nevertheless defended his actions by stating, "[b]ut, I didn't
  think it was a conflict because Mr. Pickens, number one, couldn't be found.

---

[2] Mr. Santaguida disregarded that Pickens chose not to testify based on Mr.
Santaguida's own advice.

* * * Number two, his position, he didn't want to testify because his testimony could, you know, be used against him." (Pa181). Mr. Santaguida acknowledged that it would have been appropriate, however, to have called Pickens at Tillery's trial even if Pickens would have taken the Fifth Amendment on the stand. (Pa186).

- He acknowledged that, as Tillery's counsel, he was obligated to make "every effort" to locate Pickens. (Pa190). Mr. Santaguida could not confirm he had actually done so, however. "I can't say what I did, no. I can't tell you that. It wouldn't be fair. I can't say I called him or didn't call him." (Pa190).

Tillery also testified below. He asked Mr. Santaguida to call Pickens as a witness and Mr. Santaguida replied he "couldn't find" Pickens. (Pa193). Mr. Santaguida never told Tillery that Santaguida had represented Pickens. (Pa193-94). Tillery emphasized that Mr. Santaguida may have located Pickens had Mr. Santaguida used his best efforts and not labored under the conflict of interest. (Pa208). The <u>Franklin</u> court noted that Franklin's counsel, for example, located Pickens's mother in 1988, who stated that Pickens contacted her on occasion. (Pa243). Mr. Santaguida made no such effort for Tillery, thus depriving him of any chance to obtain Pickens's critical exculpatory testimony.

## STATEMENT OF RELATED CASES

None.

## STANDARD OF REVIEW

In reviewing the denial of a petition for habeas corpus, this Court exercises plenary review over a district court's legal conclusions and applies a clearly erroneous standard to factual findings. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

## SUMMARY OF THE ARGUMENT

Petitioner Tillery is entitled to the writ of habeas corpus because his trial counsel operated under an actual conflict of interest in representing both perpetrator and victim of the 1976 shooting at issue. Mr. Santaguida represented Pickens, the victim, in 1980. He advised Pickens not to testify for William Franklin, Tillery's alleged co-perpetrator in the shooting, on the ground that Pickens might incriminate himself. Five years later, Mr. Santaguida represented Tillery, to whom Mr. Santaguida was obliged to use his best efforts to obtain Pickens's testimony that "Dave" and "Rickie," not Tillery, committed the shooting. Those interests are not merely conflicting, they are diametrically opposed, and Mr. Santaguida's representation of them violated the core of the Sixth Amendment's right to counsel.

9

That Mr. Santaguida represented Pickens and Tillery four or five years apart does not lessen their conflicting interests or render the representations "merely successive." The professional obligations Mr. Santaguida owed to Pickens, to keep confidential the information learned from him and safeguard the advice given to him, still existed in 1984 when Mr. Santaguida began representing Tillery. <u>At the very least</u>, they continued with respect to Tillery's case, which involved the same 1976 shooting and its alleged co-perpetrator.

Mr. Santaguida's conflict of interest adversely affected his performance because he failed to make his best effort on Tillery's behalf to obtain Pickens's testimony. Burdened by conflicting loyalties, Mr. Santaguida made half-hearted attempts to even locate his former client, Pickens; Mr. Santaguida could not confirm in his testimony below that he subpoenaed Pickens, requested an investigator to locate him, or attempted to secure Pickens's testimony in any manner. Instead, Mr. Santaguida simply "assumed" Pickens would not testify because he had refused to do so for Franklin five years earlier (a decision based on Mr. Santaguida's own advice). That is a far cry from an attorney's best efforts to secure the most critical exculpatory evidence for his client's defense – a statement

10

from the surviving victim that two other persons committed the crime. The district court erred in failing to provide relief from that conflict of interest.

The district court also erred to the extent it did not consider Tillery's claim on the ground that it was procedurally defaulted. The state court never made an "adequate" finding of procedural default because Tillery did not discover the claim until 1996, when he raised it on post-conviction relief. Any finding of waiver, moreover, was based (at least partly) on the state court's interpretation of substantive law and did not rest "independently" on a procedural rule. Finally, Tillery demonstrated cause and prejudice for any default because Mr. Santaguida never advised Tillery of the Pickens representation and Tillery did not learn of it until 1996. Those circumstances do not provide a basis to preclude habeas review here.

The Court should reverse the decision below and grant Tillery's petition for the writ of habeas corpus.

## ARGUMENT

Under 28 U.S.C. § 2254(a), a federal court must consider petitions from individuals in custody pursuant to a state court judgment that are grounded in a violation of the Constitution, laws, or treaties of the United States. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

11

Federal habeas corpus relief is granted where the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law (as determined by the Supreme Court of the United States); or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254 (d).

## A.   TILLERY'S CONFLICT OF INTEREST CLAIM WAS NOT PROCEDURALLY DEFAULTED

A procedural default occurs when a state court refuses to consider a petitioner's federal claim because he has violated a state procedural rule. If the state court makes an "adequate and independent finding" that the claim has been defaulted, a federal court will not review the claim on habeas corpus unless the petitioner demonstrates cause for the default and prejudice attributable thereto, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Villot v. Varner, 373 F.3d 327 (3d Cir. 2004); Harris v. Reed, 489 U.S. 255, 262 (1989).

In this case, the state court never made an "adequate and independent finding" that Tillery's conflict of interest claim was procedurally defaulted. The only waiver noted by the state court was in 1998-99, after Tillery discovered the conflict and presented it on post-conviction relief. (Pa63; Pa73-74; Pa253). Judge

12

Poserina dismissed Tillery's claim because he had "not provided a statement from the missing witness 'Pickens' which would have possibly effected [sic] the verdict." (Pa63; Pa73-74). The Superior Court affirmed the decision because Tillery "has . . . failed to establish any evidence the witness [Pickens] was available and willing to testify . . . ." (Pa253).

Those rulings are not procedural defaults, however, because they are substantive decisions on the merits, not refusals to consider the claim because of a violation of state procedure. The rulings are based (at least in part) on the state court's interpretation of the substantive law underlying Tillery's claim. At the very least, they do not rest "independently" on a state procedural rule and fail to provide an adequate basis, therefore, to avoid habeas review here. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991) (emphasizing that procedural default rule applies only where the state court's decision rests on a state law ground that is independent of the federal question and adequate to support the judgment).

Even if those statements were waivers, they are not "adequate" findings that the conflict claim Tillery has raised here was barred by state procedural rules. At most, the state court erroneously combined Tillery's conflict claim, which he did not discover until 1996, with his prior ineffective assistance claims based on trial errors, which he had (or could have) raised on appeal and were subject to waiver.

13

That is confirmed by the Superior Court's 1998 ruling that Tillery's "issue of ineffectiveness" was waived because he failed to raise it previously at the trial, appellate or prior post-conviction relief level. (Pa253). Judge Poserina also lumped the conflict claim into Tillery's prior ineffective assistance claims by stating that Tillery "knowingly and understandingly fail[ed] to raise it at trial, on appeal or in any other prior proceeding . . . ." (Pa73). At the very least, those hazy statements are not "adequate" findings of procedural default because the state court never explained how the conflict claim, which Tillery did not even discover until 1996, could possibly have been "waived" for failing to assert it at trial or on direct appeal ten years earlier. The district court erred, therefore, if it declined to consider Tillery's conflict claim on the ground that it was procedurally defaulted.

**B.  TILLERY SHOWED CAUSE AND PREJUDICE SUFFICIENT TO OVERCOME ANY PROCEDURAL DEFAULT**

Even if the state court made an "adequate" and "independent" finding that Tillery's conflict claim was procedurally defaulted, Tillery has shown cause and prejudice sufficient to overcome the default. "Cause" for a procedural default exists where a factor external to the defendant impeded his efforts to comply with a state procedural requirement, such as where the factual or legal basis for the claim was not reasonably available. Murray v. Carrier, 477 U.S. 478, 497 (1986); Werts, 228 F.3d at 193. "Prejudice" exists where there is a reasonable probability that the

14

alleged error worked to the defendant's substantial disadvantage and infected and undermined the proceedings. United States v. Frady, 456 U.S. 152, 170 (1982).

As emphasized above, Mr. Santaguida never advised Tillery that Mr. Santaguida had represented Pickens. Tillery first learned of that representation in 1996, and Tillery filed his post-conviction relief petition based on that conflict shortly thereafter. (Pa121-22). Therefore, even assuming that state procedure somehow required Tillery to file his conflict claim sooner, Mr. Santaguida's failure to advise Tillery of the Pickens representation and Tillery's late discovery of it in 1996 are factors external to Tillery that prevented him from filing the claim sooner, and the factual basis for the claim was not reasonably available sooner.

The prejudice to Tillery violated his right to conflict-free counsel. Pickens did not identify Tillery as the shooter in his statement to the police and could have provided critical exculpatory evidence on Tillery's behalf. (Pa122-23). Mr. Santaguida used virtually no effort, however, let alone his best effort, to attempt to obtain Pickens's testimony, instead simply "assuming" that Pickens would not testify (a decision that Pickens based on Mr. Santaguida's own advice). Had that significant exculpatory evidence been pursued at Tillery's trial, it is likely that no reasonable juror would have convicted Tillery of the offenses. Werts, 228 F.3d at 193; Calderon v. Thompson, 523 U.S. 538, 559 (1998).

15

## C.    TILLERY'S TRIAL COUNSEL OPERATED UNDER AN ACTUAL CONFLICT OF INTEREST THAT ADVERSELY AFFECTED HIS PERFORMANCE

When counsel's representation of a criminal defendant is corrupted by conflicting interests, counsel "breaches the duty of loyalty, perhaps the most basic of counsel's duties" to the defendant. Strickland v. Washington, 466 U.S. 668, 692 (1984). In such circumstances, the precise impact on the defense is so difficult to measure, and the possibility of prejudice so great, that courts scrutinize the facts differently than in other ineffective assistance cases. Counsel is considered "ineffective," and a defendant's Sixth Amendment right to counsel violated, if counsel operated under an actual conflict of interest that adversely affected his performance on the defendant's behalf. Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

An actual conflict exists if the interests of the defendant and another person whom counsel represents diverge with respect to a material factual or legal issue or to a course of action. United States v. Gambino, 864 F.2d 1064, 1070 (3d Cir.1988), cert. denied, 492 U.S. 906 (1989) (quoting Sullivan v. Cuyler, 723 F.2d 1077, 1086 (3d Cir.1983)). The conflict must cause some lapse in representation contrary to the defendant's interests but need not amount to actual prejudice. Id. An actual conflict is more likely to exist, for example, where "an attorney takes

16

positive steps on behalf of one client prejudicial to another" as opposed to where "the attorney's actions are based on inaction and are passive."  Id.

In this case, Mr. Santaguida operated under an actual conflict of interest by representing both Pickens and Tillery – the victim and alleged perpetrator in the 1976 shooting.  As Tillery's counsel in 1984-85, Mr. Santaguida was obliged to use his best efforts to obtain Pickens's testimony so Pickens could confirm his statement that "Dave" and "Rickie," not Tillery, committed the shooting.  (Pa190). Unfortunately, that duty to Tillery conflicted with Mr. Santaguida's existing duty to Pickens, whom Mr. Santaguida represented in 1980 and had advised not to testify at codefendant Franklin's trial on the ground that Pickens might incriminate himself.  (Pa172; Pa184).

That conflict adversely affected Mr. Santaguida's performance on Tillery's behalf.  Mr. Santaguida made only half-hearted attempts to even locate Pickens let alone secure his testimony for Tillery's trial.  Mr. Santaguida believed Pickens could not be found, but Mr. Santaguida could not confirm in the court below that he had attempted to subpoena Pickens, requested a court-appointed investigator to locate him, or attempted to secure Pickens's testimony in any other manner, despite Mr. Santaguida's acknowledgment that he was obligated to make "every effort" to locate Pickens on Tillery's behalf.  (Pa174; Pa190).  Mr. Santaguida

17

acknowledged further that it would have been appropriate to have at least attempted to call Pickens as a witness even if he would have taken the Fifth Amendment on the stand. (Pa186). Mr. Santaguida did none of those things. That is a far cry from counsel's best efforts to secure the most critical exculpatory evidence available to his client – a statement from the sole surviving victim that two other persons, not defendant, committed the crime.

Laboring under the conflict of interest, Mr. Santaguida conveniently "assumed" that Pickens would not testify for Tillery because Pickens had refused to testify for co-perpetrator Franklin five years before. (Pa175). Mr. Santaguida ignored that Pickens's decision was based on Mr. Santaguida's own advice (which illustrates the problematic conflict under which Mr. Santaguida was laboring). Mr. Santaguida acknowledged further that Pickens's refusal to testify "might have changed" by Tillery's 1985 trial had Pickens been contacted: "maybe it would have." (Pa189-90). In addition, the <u>Franklin</u> court noted that Pickens refused to testify because of his exposure for drug trafficking, (Pa242), an element that may have provided another defense theory at Tillery's trial but which Mr. Santaguida could not pursue without violating his duty of loyalty and confidentiality to his existing client, Pickens.

18

Courts have found an actual conflict where, as here, a defendant's counsel fails to call an exculpatory witness to whom counsel owes conflicting ethical obligations.  In <u>Sullivan</u>, the court held that counsel's representation of Sullivan and Carchidi, a co-defendant, was an actual conflict that adversely affected counsel's performance.  723 F.2d at 1086.  Like Mr. Santaguida's failure to use his best efforts to obtain Pickens's testimony on Tillery's behalf here, Sullivan's counsel failed to call Carchidi to testify at Sullivan's trial despite Carchidi's ability to refute a significant incriminating statement attributed to Sullivan by the prosecution.  Much like Mr. Santaguida's obligation to Pickens here, the decision by Sullivan's counsel not to call Carchidi was affected by counsel's conflicting obligation to Carchidi to ensure that Carchidi, also counsel's client, did not incriminate himself:

> The record establishes that counsel's duty of loyalty to Sullivan to consider the sufficiency of the evidence presented and the availability of exculpatory evidence before deciding to rest his defense conflicted with their duty of loyalty to Carchidi to protect him against self-incrimination. . . .

<u>Id</u>.

The court concluded that counsel's conflict adversely affected their performance because they failed "to put forth their best case for Sullivan.  There is no question that their performance was less than it would have been had they not

19

been representing Carchidi as well." Id.  The court rejected the Commonwealth's

argument "that there was no adverse effect because had Carchidi been represented

by independent counsel, he would have been advised to invoke, and probably

would have invoked, the fifth amendment if called as a witness."  The court

emphasized, "a defendant need not demonstrate actual prejudice to make out a

violation of his sixth amendment rights. . . ." Id.

In United States v. Moscony, 927 F.2d 742 (3d Cir.), cert. denied, 501 U.S.

1211 (1991), the court affirmed that counsel's representation of the defendant and

several employees of the defendant's company, many of whom turned out to be

government witnesses against the defendant, constituted an actual conflict.  The

court emphasized, "an attorney who cross-examines former clients inherently

encounters divided loyalties." Id.

In United States v. Levy, 577 F.2d 200, 220 (3d Cir. 1978), the court ruled

that the defendant Verna's right to counsel was violated because his counsel,

attorney Siegal, also represented Verna's nephew, Visceglia, in the same narcotics

transactions.  The court concluded that counsel's representation of Visceglia and

Verna created conflicting loyalties and placed counsel in the "impossible position"

of being a potential witness:

> . . . one possible reason for Siegal's reluctance to call
> Visceglia was the fact that Visceglia was Siegal's former

20

> client. . . . Due to his relationship with Visceglia, Siegal
> might have learned about other narcotics transactions
> which could have placed Visceglia in further jeopardy. If
> Siegal had indeed learned about other transactions, he
> could hardly have been expected to risk their disclosure
> by subjecting Visceglia to rigorous examination and
> cross-examination.
>
> . . . Th[e] critical point is that <u>Verna waived his right to
> present a witness in his behalf on the basis of advice from
> an attorney who owed an obligation to that witness, an
> obligation which may well have conflicted with the
> attorney's legal duty of undivided loyalty to Verna</u>. . . .

<u>Id.</u> at 220-21 (emphasis added).

Mr. Santaguida operated under a more problematic conflict than did the attorneys in <u>Sullivan</u>, <u>Moscony</u> and <u>Levy</u> because Mr. Santaguida, beyond representing merely some "other client" whose interests "diverged" from Tillery's, represented Tillery's alleged victim himself. Those are diametrically opposed interests, and Mr. Santaguida's representation of them violated the core of the Sixth Amendment's right to counsel.

And Mr. Santaguida <u>actively</u> represented those conflicting interests because he represented both victim (Pickens) and perpetrator (Tillery) with respect to the same crime. He provided advice to both victim and perpetrator on the same subject, and his obligations to them conflicted because he could not use his best efforts for Tillery without violating his existing duty of loyalty and confidentiality

21

to Pickens.  Had the Commonwealth presented Pickens at Tillery's trial, Mr. Santaguida could not have cross-examined Pickens effectively because Mr. Santaguida would have known information from Pickens and his role in the 1976 shooting that he was obligated to keep confidential.

That Mr. Santaguida represented Pickens and Tillery four or five years apart does not change the nature of that conflict or render it "merely successive."  The professional obligations Mr. Santaguida owed to Pickens, to keep confidential the information learned from him and safeguard the advice given to him, still existed in 1984 when Mr. Santaguida began representing Tillery.  Those professional obligations did not end simply because Franklin's case ended.  At the very least, they continued with respect to Tillery's case, which involved the same 1976 shooting and its alleged co-perpetrator.

The district court erred because it failed to apply the actual conflict of interest caselaw to Tillery's claim.  The court improperly used the missing witness test to evaluate Tillery's conflict claim.  (Pa3-4).  That test, which incorporates the prejudice-based standard applicable to garden variety ineffective claims under Strickland, does not apply to an actual conflict of interest claim.

The state court's rejection of Tillery's conflict claim is wrong for similar reasons and resulted in a decision that contravenes the established federal law

22

discussed above. Judge Poserina dismissed Tillery's claim because he "has not provided a statement from the missing witness 'Pickens' which would have possibly effected [sic] the verdict." (Pa63; Pa73-74). The Superior Court ruled that Tillery "has . . . failed to establish any evidence the witness [Pickens] was available and willing to testify . . . ." (Pa253). Those rulings, like the district court's, improperly employed a prejudice-based standard and resulted in a decision that is contrary to the federal law discussed above.

**D.    TILLERY'S CONVICTION SHOULD BE REVERSED AUTOMATICALLY BECAUSE HIS TRIAL COUNSEL REPRESENTED BOTH TILLERY AND HIS ALLEGED VICTIM WITH RESPECT TO THE 1976 SHOOTING FOR WHICH TILLERY STANDS CONVICTED**

Tillery respectfully submits that Mr. Santaguida operated under a conflict of interest that adversely affected his performance on Tillery's behalf. Even if the Court concludes that Tillery has not demonstrated that Mr. Santaguida's performance was adversely affected, however, Tillery's conviction should be reversed automatically because of the special circumstances of this case, where trial counsel represented both perpetrator and victim with respect to the same crime.

The Supreme Court has recognized that "there are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a

23

particular case is unjustified." <u>United States v. Cronic</u>, 466 U.S. 648, 658 (1984). "Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." <u>Id</u>.

One circumstance, of course, is that ineffectiveness is presumed where counsel "actively represented conflicting interests." <u>Cuyler</u>, 446 U.S. at 350. Although a defendant is not required to prove under <u>Strickland</u> that the result of his trial would have been different, however, he still must show that his counsel's conflict "adversely affected" his performance.

Perhaps that burden is fair where the defendant learns of the conflict during or shortly after his trial. In that case, the defendant's counsel can testify about the conflicting representations (which would have occurred recently), and the court can evaluate the effect the conflict may have had upon counsel's representation.

In this case, however, Mr. Santaguida <u>never</u> told Tillery of the conflict, Tillery did not discover it until more than <u>ten</u> <u>years</u> after his 1985 trial, and Tillery was not granted an evidentiary hearing until nearly <u>twenty</u> <u>years</u> later in 2003. That lapse of time, which is not Tillery's fault, has hampered his ability to

24

demonstrate the "adversely affected" prong of the actual conflict test, and is

reflected in Mr. Santaguida's limited recall of the representations at issue and his

inability to confirm the decisions he made or did not make on Tillery's behalf: "I

can't say what I did, no. I can't tell you that. It wouldn't be fair. I can't say I

called him or didn't call him." (Pa190).

We respectfully submit that in a case such as this, where counsel represented

both the defendant and his alleged victim yet the actual effect upon counsel's

performance is difficult to measure due to a great lapse of time, the defendant

should be granted relief without the need to satisfy the "adversely affected" burden

under Cuyler v. Sullivan. The Supreme Court has recognized automatic reversals

in other cases where the defendant's right to counsel is clearly violated yet it is

difficult to demonstrate the actual effect upon counsel's performance. In Holloway

v. Arkansas, 435 U.S. 475 (1978), the Court created an automatic reversal rule

where counsel was forced to represent codefendants despite counsel's objection

that the joint representation was a conflict of interest. Id. at 488.

In doing so, the Holloway court noted Glasser v. United States, 315 U.S. 60

(1942), in which it ruled that the defendant's right to counsel was violated by the

appointment of an attorney to represent both defendant and a codefendant whose

interest conflicted. "To determine the precise degree of prejudice sustained by

25

Glasser as a result of the [district] court's appointment of Stewart as counsel for

Kretske is at once difficult and unnecessary. The right to have the assistance of

counsel is too fundamental and absolute to allow courts to indulge in nice

calculations as to the amount of prejudice arising from its denial." Id. at 75-76.

The Holloway court emphasized that in situations that violate the core

protections afforded a criminal defendant under the Constitution, "prejudice is

presumed regardless of whether it was independently shown."

> . . . the assistance of counsel is among those
> "constitutional rights so basic to a fair trial that their
> infraction can never be treated as harmless error."
> Accordingly, when a defendant is deprived of the
> presence and assistance of his attorney, either throughout
> the prosecution or during a critical stage in, at least, the
> prosecution of a capital offense, reversal is automatic.
> Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9
> L.Ed.2d 799 (1963); Hamilton v. Alabama, 368 U.S. 52,
> 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. Maryland,
> 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).
> That an attorney representing multiple defendants with
> conflicting interests is physically present at pretrial
> proceedings, during trial, and at sentencing does not
> warrant departure from this general rule. Joint
> representation of conflicting interests is suspect because
> of what it tends to prevent the attorney from doing. . . . a
> conflict may . . . prevent an attorney from challenging the
> admission of evidence prejudicial to one client but
> perhaps favorable to another. . . . The mere physical
> presence of an attorney does not fulfill the Sixth
> Amendment guarantee when the advocate's conflicting
> obligations have effectively sealed his lips on crucial
> matters.

26

435 U.S. at 489-90 (emphasis added).

The <u>Holloway</u> court emphasized that the effect of a conflict of interest (often discovered, as in this case, years after trial), is often not "readily identifiable." <u>Id</u>.

> It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.

<u>Id.</u> at 490-91.

Those principles apply with equal force here, where Mr. Santaguida operated under a conflict of interest yet the actual impact of the conflict on his representation of Tillery is difficult to measure more than twenty years later.  Thus, even if the Court concludes that Tillery has been unable to demonstrate that Mr. Santaguida's performance was adversely affected by the conflict of interest, the Court should reverse Tillery's conviction as a matter of law because his counsel also represented Tillery's alleged victim in the crime.

27

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's July

29, 2003 decision and grant Tillery's petition for a writ of habeas corpus.

Respectfully submitted,

**HEGGE & CONFUSIONE, LLC**
Nine Tanner Street – West Entry
Haddonfield, NJ 08033
(856) 218-8400

By: Michael Confusione (MC-6855)
    Designated Counsel

Dated: September 13, 2004

## CERTIFICATION OF BAR MEMBERSHIP

I certify that I am an attorney-at-law of the States of New Jersey and New York and the Commonwealth of Pennsylvania and a member of the Bar of the United States Court of Appeals for the Third Circuit. I am a member of the firm of Hegge & Confusione, LLC, attorneys for petitioner-appellant, Major Tillery.

_____

Dated:  September 13, 2004

29

## <u>CERTIFICATE OF SERVICE</u>

I certify that an original and nine copies of this Brief and Volume I of

Appendix were filed and served today by first class mail, postage prepaid, upon the

following person:

> Marcia M. Waldron, Clerk
> Office of the Clerk
> United States Court of Appeals
> for the Third Circuit
> 21400 United States Courthouse
> 601 Market Street
> Philadelphia, Pennsylvania 19106-1790

I further certify that two copies of this Brief and Volume I of Appendix were

served today by first class mail, postage prepaid, upon the following person:

> David Curtis Glebe, Esq.
> Office of the District Attorney
> City of Philadelphia
> 1421 Arch Street
> Philadelphia, Pennsylvania 19102
> Attorney for Respondent-Appellee

_____
Michael Confusione

Dated: September 13, 2004

30

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-3616

_____

MAJOR TILLERY,

Appellant

v.

MARTIN HORN,
Dept. of Penna State Prisons

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 99-cv-06516)
District Judge: Hon. Clarence C. Newcomer

_____

Argued: April 4, 2005

BEFORE: BARRY, AMBRO and  COWEN, Circuit Judges

(Filed:  July 29, 2005)

Michael J. Confusione, Esq. (Argued)
Hegge & Confusione
9 Tanner Street - West Entry
Haddonfield, NJ 08033

Counsel for Appellant

David C. Glebe, Esq. (Argued)
Office of District Attorney
1421 Arch Street
Philadelphia, PA 19102

Counsel for Appellee

_____

OPINION

_____

COWEN, <u>Circuit Judge</u>.

Appellant Major Tillery appeals from an order of the District Court denying his

petition for a writ of habeas corpus under 28 U.S.C. § 2254.  He argues that the petition

should have been granted because his trial counsel labored under an actual conflict of

interest.  We conclude that the claim is procedurally defaulted, and that Tillery has not

established actual prejudice.

I.

As we write solely for the parties, we briefly review the procedural background.

On May 29, 1985, following a jury trial, Tillery was convicted of first-degree murder and

related crimes.  The case arose from an October 22, 1976 shooting incident which

resulted in the death of John Hollis and the wounding of John Pickens.  The Pennsylvania

Superior Court affirmed, and on March 5, 1990, the Pennsylvania Supreme Court denied

*allocatur*.

On September 20, 1996, Tillery petitioned for collateral relief under the

Pennsylvania Post-Conviction Relief Act, alleging that he was denied effective assistance

of counsel under the Sixth Amendment because his trial counsel, Joseph Santaguida, operated under an actual conflict of interest. Santaguida had represented Tillery at trial, but was replaced by James Bruno, Esquire, who filed post-verdict motions on Tillery's behalf and represented him on direct appeal. The PCRA court dismissed Tillery's application, finding his conflict claim procedurally defaulted, and the Superior Court affirmed. The Pennsylvania Supreme Court denied *allocatur*.

Tillery filed the instant petition in the Eastern District of Pennsylvania, asserting that his trial counsel labored under an actual conflict of interest and was thus constitutionally ineffective. The District Court dismissed the petition and declined to issue a certificate of appealability. Tillery next sought relief in this Court, and we remanded, directing the District Court to permit him to present evidence in support of his conflict claim. The District Court thereafter held two hearings, but reaffirmed its previous order denying relief. This appeal ensued.

## II.

The District Court had jurisdiction over Tillery's habeas petition under 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. § 1291. The District Court's legal conclusions, including its resolution of legal questions arising from application of the procedural default doctrine, are subject to plenary review. *Hull v. Kyler*, 190 F.3d 88, 97 (3d Cir. 1999).

## III.

3

The Pennsylvania Superior Court concluded that Tillery had waived his actual conflict claim, finding that he had not raised the claim on direct appeal. The court relied on 42 Pa. Cons. Stat. Ann. § 9544(b), which states that "an issue is waived if the petitioner could have raised it but failed to do so . . . on appeal," as well as that "'[i]neffectiveness of trial counsel must be raised at the first opportunity at which the counsel whose effectiveness is being challenged no longer represents the defendant,'" (App. at 253 (quoting *Commonwealth v. Miller*, 564 A.2d 975, 977 (Pa. Super. Ct. 1989))). The state court's finding of waiver requires us to examine and employ the federal rules of procedural default.

A. *Procedural Default*

Under the doctrine of procedural default, a federal habeas court is prohibited from considering constitutional claims where a state court has refused to entertain their merits on the basis of an adequate and independent state procedural rule, *see Harris v. Reed*, 489 U.S. 255, 262 (1989), unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). A state procedural rule is "adequate" if it is regularly or consistently applied by the state court, *see Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and is "independent" if it does not "depend[] on a federal constitutional ruling," *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

To avoid waiver of any ineffective assistance of counsel claims, Pennsylvania law required Tillery to raise such claims "at the earliest stage in the proceedings at which the

4

counsel whose effectiveness is being challenged no longer represents the defendant."

*Commonwealth v. Hubbard*, 372 A.2d 687, 695 n.6 (Pa. 1977).[1]  Because Tillery obtained

new counsel following trial, before the filing of post-verdict motions, the Superior Court

recognized that he was obligated to raise all of his ineffective assistance of counsel claims

pertaining to his trial counsel, including that Santaguida labored under an actual conflict,

in post-verdict motions and on direct appeal.

Tillery challenges the adequacy of the *Hubbard* rule as applied to his case, arguing

that "the state court never made an 'adequate' finding of procedural default because

Tillery did not discover the claim until 1996, when he raised it on post-conviction relief."

(Appellant's Br. at 11.)  Tillery, however, is conflating concepts of the adequacy and

independence of a state procedural rule with the correctness of the state court's

application of its own law.  Tillery has not furnished any argument or evidence germane

to the adequacy inquiry.  *See Reynolds v. Ellingsworth*, 843 F.2d 712, 719 (3d Cir. 1988).

We have previously determined that the *Hubbard* rule was an adequate and independent

state procedural rule, *see Richardson v. Warden, S.C.I. Huntingdon*, 2005 WL 289992 (3d

---

[1]The Pennsylvania Supreme Court overruled *Hubbard* in 2002, holding that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002). Consequently, "any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity." *Id.*  Tillery, however, cannot receive the benefit of this ruling, as the court further held that the new rule would be applied retroactively to cases currently pending on direct review in which ineffective assistance claims had been raised and preserved, but not to cases pending on collateral review. *Id.* at 738-9 & n.16.  Tillery's direct and collateral state proceedings had concluded prior to the issuance of *Grant*.

5

Cir. 2005), and there is no evidence to suggest that it was not an independent and adequate state procedural rule as applied to Tillery. Instead, Tillery is charging Pennsylvania with the erroneous application of its own procedural rule, which courts have repeatedly counseled is not a cognizable claim on habeas. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Barnes v. Thompson*, 58 F.3d 971, 974 n.2 (4th Cir. 1995). Accordingly, the Pennsylvania Superior Court's decision to find Tillery's Sixth Amendment ineffective assistance claim waived rested upon application of an independent and adequate state procedural rule. His conflict of interest claim is procedurally defaulted. We can consider only whether cause and prejudice exists to excuse the procedural default.

B. *Cause and Prejudice*

A federal habeas court may entertain a procedurally defaulted claim if the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although we agree that cause exists to excuse the procedural default, Tillery has not met his burden in demonstrating actual prejudice.

Tillery contends that the facts underlying the alleged actual conflict of interest were not known to him or his appellate counsel at the time of his direct appeal, thus giving rise to "cause" excusing his default. *See Murray v. Carrier*, 477 U.S. 478, 488

6

(1986). Our analysis begins with a brief summary of the facts underpinning Tillery's claim.

Tillery's conflict of interest claim is grounded in allegations that Santaguida also served as counsel to Pickens, one of the victims of the 1976 shootings, during the trial of Tillery's co-defendant, William Franklin. The Commonwealth tried Franklin for the 1976 shootings in 1980, five years prior to trying Tillery. Because Pickens had, according to a police officer's notes, identified the shooters as individuals other than Franklin and Tillery, Franklin attempted to call Pickens as an exculpatory witness. Santaguida informed Franklin's attorney that he advised Pickens to invoke his Fifth Amendment right against self-incrimination and refrain from testifying. The record reflects that, by the time Franklin actually stood trial in 1980, Pickens had fled the jurisdiction and was unable to be located, despite extensive efforts by Franklin's counsel.

Tillery, represented by Santaguida at his trial in 1985, did not discover that counsel had represented Pickens in Franklin's trial until 1996, when he came across the decision of *Commonwealth v. Franklin*, 580 A.2d 25 (Pa. Super. Ct. 1990). This decision, which affirmed the denial of Franklin's petition for collateral relief, revealed that "Mr. Santaguida informed trial counsel that because of Mr. Pickens' involvement in the events underlying the criminal charges filed against [Franklin], he would have to advise his client not to testify for [Franklin]." *Id.* at 29.

7

At the evidentiary hearing conducted by the District Court, Tillery testified that Santaguida never disclosed that he formerly represented Pickens at co-defendant Franklin's trial. Santaguida could not remember whether he informed Tillery that he had previously represented Pickens. Thus, the earliest Tillery could have learned of that representation was in 1990, when the Superior Court issued *Commonwealth v. Franklin*. This occurred well after the conclusion of Tillery's direct appeal. That Tillery's claim may not, in fact, be sustainable is not relevant to the reality that its factual basis was not reasonably available at the time of his direct appeal. Tillery has thus met his burden of showing cause.

To demonstrate "actual prejudice," Tillery must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Tillery cannot sustain this burden.

The Sixth Amendment guarantees criminal defendants the right to representation free of conflicts of interest. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988). A petitioner must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). If this showing is made, prejudice will be presumed. *Id.* at 349-50. The question of whether counsel operated

8

under an actual conflict of interest that adversely affected performance is a mixed question of law and fact subject to *de novo* review. *Id.* at 341-42.

Actual conflict is more likely to occur in cases involving joint representation in a single proceeding rather than in cases of multiple representation in which the attorney represents different clients in different matters. *Duncan v. Morton*, 256 F.3d 189, 197 (3d Cir. 2001) (citations omitted). Moreover, the existence of an actual conflict and any adverse effects from it are more likely to be apparent in cases in which counsel takes positive steps on behalf of one client to the detriment of the other, as opposed to cases involving the inaction and passivity of counsel. *Id.* This case presents at *most* one involving multiple representation, and Tillery cites only a passive lapse of representation by Santaguida. As such, to prove a Sixth Amendment violation premised on actual conflict, Tillery must show: (1) a plausible, alternative defense strategy or tactic might have been pursued that is of sufficient substance to be viable; and (2) the alternative defense was inherently in conflict with or not undertaken because of the attorney's other loyalty or interest. *See Gambino*, 864 F.2d at 1070.

Tillery argues that Santaguida's representation of Pickens in 1980 conflicted with Tillery's interest during his 1985 trial, and that this conflict manifested itself in constitutionally defective representation. Specifically, Tillery accuses Santaguida of failing to put forth his best effort to locate Pickens at the time of Tillery's trial.

9

Santaguida further declined to request a missing witness charge, which Tillery also attributes to his alleged divided loyalties.

The record undermines Tillery's claim of a debilitating conflict of interest. First, Tillery has not succeeded in showing that the defense strategy of subpoenaing Pickens as an exculpatory witness in his trial was a viable one. At the time Franklin's trial commenced in late 1980, Pickens could not be located. As Tillery admits, Santaguida explained in 1985 that he was unaware of Pickens' whereabouts, and that neither he nor the Commonwealth could locate Pickens. Although he could not recall exactly what steps he took in his attempts to contact Pickens, Santaguida testified that he did conduct a search. He theorized that Pickens was making himself scarce to avoid testifying. Significantly, even at the time that he provided advice to Pickens in 1980, and at all times thereafter, Santaguida had no knowledge of his location. Tillery, contrarily, attested that his counsel did not make every effort to locate Pickens. He did not, however, provide any specific examples or support for this bald assertion.

Second, Tillery has not succeeded in showing that Santaguida owed a continuing duty of loyalty to Pickens, that in turn prevented counsel from using his best efforts to locate him. Santaguida's representation of Pickens occurred five years prior to Tillery's trial, and likewise terminated before Tillery's trial. At best, the record discloses that the representation of Pickens was fleeting and minimal. When asked at the evidentiary hearing if he ever represented Pickens, Santaguida responded that he did not believe that

10

he represented him in a courtroom.  Rather, based on his refreshed recollection, either Pickens or someone acting on his behalf called him to obtain advice on testifying in the *Franklin* case.  Furthermore, he could not recall providing any additional legal services to Pickens, and testified that no communication took place between them other than that one instance.  In his view, there was no conflict "because Mr. Pickens, number one, couldn't be found."  (App. at 181.)  Contrary to Tillery's claim, Santaguida never stated that, had he found Pickens, he would have advised him not to testify in Tillery's trial.  There is not a shred of evidence that Santaguida's representation of Pickens continued past its brief lifespan in 1980.  In short, counsel did not *actively* represent competing interests.

Tillery has failed to convince us that an actual conflict of interest existed that adversely impacted Santaguida's performance.  His claim that the record discloses that Santaguida possessed a duty of loyalty to Pickens at the time he represented Tillery, and that this duty of loyalty conflicted with his duty of loyalty to Pickens, is purely speculative.  Rather, the record plainly reveals a *successive* representation of two clients with possible diverging interests.  Not only was this scenario not addressed by the Pennsylvania Lawyer's Code of Professional Responsibility in effect at the time, *compare* Pa. Lawyer's Rules of Professional Conduct R. 1.9 cmt. (1988), but the Supreme Court has made clear that the mere possibility of conflict is insufficient to demonstrate the existence of an actual conflict, *Cuyler*, 446 U.S. at 350.  There is no evidence that Santaguida's actions and inactions were influenced by loyalty to Pickens, or that he even

11

maintained a loyalty to Pickens in 1985. Reliance upon the relationships created between himself, Pickens, and Santaguida cannot, standing alone, suffice to demonstrate the existence of an actual conflict of interest and adverse impact.

We conclude that Tillery's trial counsel's performance was not adversely affected by Santaguida's brief representation of Pickens. Tillery has not established that he was prejudiced, and his claim is thus procedurally defaulted.

IV.

For the foregoing reasons, the judgment of the District Court entered on July 30, 2003, will be affirmed.

_____

12

Pa 111