EXHIBIT A

Superior Court Opinion

On

Direct Appeal

J. 17001/89

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | No. 3297 Philadelphia 1986 |
| v. | : | |
| | : | |
| MAJOR GEORGE TILLERY, | : | |
| | : | |
| Appellant | : | |

## JUDGMENT

On Consideration Whereof, it is now here ordered and adjudged by this Court

that the judgment of the Court of Common Pleas of        PHILADELPHIA        County

be, and the same is hereby        AFFIRMED.

By the Court:

*[signature]*

PROTHONOTARY

Dated: _____ MAY 30, 1989 _____

J. 17001/89

COMMONWEALTH OF PENNSYLVANIA, :  IN THE SUPERIOR COURT OF
             :      PENNSYLVANIA
      Appellee  :

    v.        :  No. 3297 Philadelphia 1986
             :
MAJOR GEORGE TILLERY,    :
             :
      Appellant  :


     Appeal from the Judgment of Sentence of the
     Court of Common Pleas of Philadelphia County,
     Criminal Division at Nos. 8403-568, 570, 571,
     573, 574.


BEFORE:  POPOVICH, JOHNSON and WATKINS, JJ.


MEMORANDUM:        **FILED** MAY 3 0 1989


    This is an appeal from a December 9, 1986, judgment of
sentence of the Philadelphia County Court of Common Pleas.  On
May 29, 1985, a jury convicted appellant of murder in the first
degree, possessing instruments of a crime generally, criminal
conspiracy and aggravated assault.[1]  Post-trial motions were

---

  [1] For the crime of first degree murder, appellant was
sentenced to life imprisonment.  For the crime of possessing
instruments of a crime generally, appellant received a sentence of
not less than one year nor more than two years incarceration.  For
the crime of criminal conspiracy, appellant was sentenced to
prison for not less than five years nor more than ten years.  For
the crime of aggravated assault, appellant received a sentence of
not less than five years nor more than ten years incarceration.
For a second charge of criminal conspiracy, appellant was
sentenced to prison for not less than five years nor more than ten
years.  All sentences are to run concurrently with the sentence
for first degree murder, except the sentence for aggravated
assault, which is to run consecutively to the sentence for first
degree murder.

J. 17001/89

denied by the Honorable J. Geisz on December 8, 1986.  We
affirm.[2]

The facts of this have a rather long and tortuous past.
At approximately 10:00 p.m. on October 22, 1976, Philadelphia
police received a call to the address at Huntingdon and Warnock
Streets in North Philadelphia.  At that corner, they broke down
the locked door of a poolroom operated by William Franklin and
discovered the dead body of John Hollis.  A medical examination
later revealed that Hollis died of a gunshot wound to the trunk of
his body.  Inside the poolroom, the police found live and spent
.38 caliber ammunition and a set of car keys.  Around the corner
from the poolroom at 2527 North 11th Street, police officers found
John Pickens bleeding from a gunshot wound.  He was treated at a
hospital and survived his injuries.  Both Pickens and Hollis were
shot by different guns.

For more than three years, the shooting of Pickens and
Hollis remained unsolved.  However, in the spring of 1980, police
detectives, investigating the homicide of Samuel Goodwin, visited
a Philadelphia prison to determine if Emanual Claitt, an inmate
who had known Goodwin, could provide any information about
Goodwin's death.  The information Claitt provided went far beyond
the Goodwin case.  Claitt described in detail the operation of
what he labeled the "black mafia", a crime syndicate run by black

---

[2]  A notice of appeal to the Superior Court was filed on
December 9, 1986.  In November, 1988, the record was certified to
this Court without the requisite Rule 1925 opinion.

J. 17001/89

Muslims in Philadelphia.  His information described a vivid
picture of the events culminating with the shootings of Pickens
and Hollis.

Claitt testified that from 1976 until 1980, he engaged
in drug dealing and extortion as a member of the Philadelphia
"black mafia".  The organization divided the city into sections
for business purposes.  Alfred Clark was the leader of the North
Philadelphia branch.  He held the rank of first lieutenant and had
"the last word" for all business in the city.  Sylvester White
directed the West Philadelphia branch.  John Pickens also dealt
drugs in West Philadelphia.  During the 1970's, appellant held the
rank of first lieutenant and "had control of the entire city as
far as methamphetamines is concerned . . . ."  Claitt received his
heroin supply from Clark and his methamphetamine supply from
appellant.  Clark and appellant were partners in the heroin and
methamphetamine trade.  Claitt characterized appellant as Clark's
"right hand man".

On the night of October 20, 1976, Claitt, Clark,
appellant, James Ravenell and Rainey met at the home of Dana
Goodman at 59th and Woodbine Streets to discuss a disagreement
between Goodwin and Pickens over drug selling in West
Philadelphia.  Pickens arrived with Hollis and argued with Clark
about a transaction in which Clark disposed of drugs claimed by
Pickens at the expense of Pickens.  During the argument, Hollis
called Clark a "gangster".  He then grabbed Clark by the collar,
took out a pistol, slapped Clark in the face with the gun and

- 3 -

J. 17001/89

pointed it at Clark as if he were about to shoot. Pickens stopped
Hollis from firing the weapon, but appellant said that Hollis
"would have to die for what he did". Although White was not
present, Clark said he would talk to him and arrange a meeting at
Franklin's poolroom to settle the dispute.

Thereafter, a group consisting of Clark, Claitt, Rainey,
Ravenell and appellant met White at a mosque at 13th Street and
Susquehanna Avenue in North Philadelphia. The group then drove to
Franklin's poolroom. When they arrived at the poolroom, appellant
accused White of setting up the earlier incident and demanded a
meeting on Friday, October 22, 1976, to which White was to bring
Pickens and Hollis. White agreed to the demand.

On the evening of Friday, October 22, 1976, Clark met
the group outside the mosque. Clark made everyone surrender their
weapons because a peaceful meeting was planned. The group then
drove to the poolroom at Huntingdon and Warnock Streets. When
they arrived, Clark instructed Claitt to remove two more guns from
the group and then guard the door. Additionally, appellant
arranged for one of his couriers, Robert Mickens, to watch outside
the poolhall for police.

Inside the poolhall, appellant and Franklin sat at
opposite ends of a table. Appellant told Hollis to apologize, but
Hollis refused. Following a nod to Franklin, appellant reached
under the table and pulled out a gun. Franklin also reached under
the table and pulled out a weapon. Appellant then shot Hollis in

- 4 -

J. 17001/89

the back.  When Pickens protested, appellant shot Hollis again and Franklin then shot Pickens.  Pickens proceeded to run through a locked door shattering the glass.

William Arnold arrived immediately after the shootings and discovered Pickens holding his stomach.  Pickens had collapsed from the wound.  Arnold helped him to a house at 2527 North 11th Street where the police found him.

Based on Claitt's information, the police obtained a warrant on May 23, 1980, for appellant's arrest.  However, for three years the police were not able to serve the warrant because appellant could not be located.  A detective in California finally arrested appellant in November, 1983.  Appellant was returned to Philadelphia on December 8, 1983, to stand trial for the aforementioned charges.

At the outset of our discussion of the issues, we must note that appellant's brief mocks the rules of appellate procedure.[3]  The two and one-half page summary of argument is in violation of Pa.R.A.P. 2118 which reads, "[t]he summary of argument should not be a mere repetition of the statement of questions presented."  The order in question is not included in the brief as required by Pa.R.A.P. 2115(a).  Moreover, counsel for appellant raises approximately forty (40) issues in his forty-one

---

[3]   See Commonwealth v. Jones, 329 Pa.Super. 20, 477 A.2d 882 (1984); Commonwealth v. Drew, 353 Pa.Super. 632, 510 A.2d 1244 (1986); Pa.R.A.P. 2101.

J. 17001/89

page argument.[4]  He proceeds to raise the issues and then cite

paragraph after paragraph of law.  However, more often than not,

counsel for appellant fails to set forth little, if any, argument

to support his position on the issues.  As such, many issues have

been waived.  See Commonwealth v. Maniqualt, 501 Pa. 506, 462 A.2d

239 (1983).  Regardless, we have carefully reviewed all the claims

raised by appellant and found them to be without merit.

        In section A of appellant's argument,[5] he lists 18

allegations of prosecutorial misconduct during closing remarks to

the jury.  Rather than offer a solid argument following each

allegation, appellant baldly asserts the prosecutor's comment was

either an improper expression of opinion, prejudicial, unfair or

irrelevant.  As such, issues A through F and issues H through R of

section A are hereby deemed waived for the failure to set forth

any substantive argument in support of the issues.  See

Commonwealth v. Balch, 328 Pa.Super. 71, 476 A.2d 458 (1984);

Commonwealth v. Petras, 368 Pa.Super. 372, 534 A.2d 483 (1987).

        However, appellant does manage to set forth an argument

in his brief, albeit weak, in support of issue G of section A.

---

[4]   We agree with the Commonwealth's reflection that counsel for
appellant appears to think that if he claims prosecutorial
misconduct as often as possible, he can create the appearance of
impropriety where none, in fact, exists.  Appellate advocacy is
measured by effectiveness, not loquaciousness.  See U.S. v. Hart,
693 F.2d 286, 287, n. 1 (3rd Cir.  1982); cited with approval in
Commonwealth v. Sirbaugh, 347 Pa.Super. 154, 500 A.2d 453 (1985);
Commonwealth v. Klinger, 323 Pa.Super. 181, 470 A.2d 540 (1983).

[5]   The argument in appellant's brief consists of sections A
through I.

J. 17001/89

That issue is premised on the following remarks by the
Commonwealth:

> (g) "And I ask you to recall Mister
> Sterling's testimony indicating he knew the
> defendant through the courtship of his
> daughter.  Defendant through the courtship of
> Mister Sterling's now dead daughter in the
> year 1983, not in the year 1981, when Claitt
> gets ambushed and speeds away with a bullet
> meant to end his ability to talk."  (5/28/85
> p. 89).

Appellant contends the comments regarding the death of
Mr. Sterling's daughter were an ill-concealed attempt to divert
the jury from an objective evaluation of the testimony.  He
contends the remarks infer appellant was responsible for the death
of Mr. Sterling's daughter.  We disagree.

> Our Supreme Court has stated:
>
> . . .  [T]hat a prosecutor, just as a defense
> attorney, must have reasonable latitude in
> presenting a case to the jury and must be free
> to present his or her argument with "logical
> force and vigor."  (citations omitted).
> Counsel's remarks to the jury may contain fair
> deductions and legitimate inferences from the
> evidence presented during the testimony.
> (citations omitted).  . . .
>
> However, not every intemperate or uncalled for
> remark by the prosecutor requires a new trial.
> As we have stated many times:
>
>> [C]omments by a prosecutor do not
>> constitute reversible error unless
>> the "unavoidable effect of such
>> comments would be to prejudice the
>> jury, forming in their minds fixed
>> bias and hostility toward the
>> defendant so that they could not
>> weigh the evidence objectively and
>> render a true verdict."  (citations
>> omitted).

J. 17001/89

> Furthermore, the prejudicial effect
> of the prosecutor's remarks must be
> evaluated in the context in which
> they occurred.  (citations
> omitted).

Commonwealth v. D'Amato, 514 Pa. 471, 526 A.2d 300 (1987).

We are not of the opinion that the testimony concerning the death of Mr. Sterling's daughter inferred that appellant had, in fact, killed her.  A review of the record indicates the Commonwealth did not attempt to connect the death of Mr. Sterling's daughter to the hands of the appellant.  In fact, the remark clarified for the jury why Mr. Sterling's daughter did not testify at the trial.  The remark did not affect the objectivity of the jury.  Therefore, this argument must fail.

In section B of his brief, appellant maintains he was denied a fair trial by three instances of prosecutorial misconduct committed during the trial.  The first two issues of the three listed are deemed waived.  Again, appellant asserts only the naked allegation that the prosecutor's comments were irrelevant and prejudicial without setting forth any substantive argument to buttress his position.  See e.g., Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); Commonwealth v. Simon, 432 Pa. 386, 248 A.2d 289 (1968).

However, appellant does offer an argument, albeit abbreviated, regarding the third allegation of prosecutorial misconduct.  He claims the Commonwealth failed to provide trial counsel with discovery concerning the testimony of Los Angeles

- 8 -

J. 17001/89

Police Detective Richards.  Appellant argues trial counsel, "should have objected to the presentation of this witness due to the fact the defense was unaware of this witness . . . "  Despite this allegation, appellant does not claim any harm whatsoever from the detective's testimony.  Without an assertion of prejudice, appellant has not presented any basis or reason for relief to be granted.  See e.g., Commonwealth v. Starks, 304 Pa.Super. 527, 450 A.2d 1363 (1982).

Appellant raises a myriad of ineffective assistance of counsel claims in section C of his brief.  However, the five issues raised by appellant are waived for the failure to set foth a substantive argument or to assert prejudice from counsel's actions.  See Petras, 534 A.2d at 485; Commonwealth v. Pettus, 492 Pa. 558, 424 A.2d 1332 (1981); Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987).

In section D of his brief, appellant contends the trial court erred in granting the Commonwealth's petition for a protective order for witness Robert Mikens (who was present outside the poolroom at the time of the shootings).  Appellant asserts that since he was not represented at the in camera hearing when the order was entered, he was denied his right to a fair trial.  He proceeds to argue that if he was informed of Mickens' testimony prior to trial, he might have investigated him and possibly discovered any biases the witness held against appellant. We disagree.

- 9 -

J. 17001/89

Appellant was informed of Mickens' testimony before the Commonwealth presented the witness. He received copies of the witness' criminal record and statements concerning threats on Mickens' family which justified the protective order. Moreover, appellant was afforded a recess to prepare for Mickens' testimony and he then thoroughly cross-examined the witness.

Regardless, appellant does not argue the evidence and representations made to the trial court were insufficient to support granting the protective order. His only claim is that he should have been informed of Mickens' identity at a stage in the proceedings that would have provided time to investigate the witness. However, appellant does not allege any concrete prejudice resulting from the delayed discovery. Instead, he speculates about a possible investigation and discovery of biases Mickens may have held against appellant. Any type of speculation concerning issues raised on appeal is not sufficient grounds to order a new trial. See, Commonwealth v. Holmes, 315 Pa.Super. 256, 461 A.2d 1268 (1983).

The arguments in Sections E and F of appellant's brief are also deemed waived for the failure to offer a substantive argument to buttress his position. See Balch, 476 A.2d at 461. See also, Cosner v. United Penn Bank, 358 Pa.Super. 484, 517 A.2d 1337 (1986); Trustees of First Presbyterian Church of Pittsburgh v. Oliver Tyrone Corp., 248 Pa.Super. 470 n.1, 375 A.2d 193 (1977).

- 10 -

J. 17001/89

The argument set forth in section G of appellant's brief
is that the trial court erred in allowing the Commonwealth to
present testimony from Robert Mickens that he had been assaulted
in prison.  Appellant claims this testimony caused the jury to
have undue sympathy towards Mickens and that such testimony was
irrelevant and prejudicial because there was no showing the
assault was made with appellant's knowledge or consent.  We are
not persuaded by this argument.

At the time of the trial, Mickens was a Commonwealth
informant against may other persons charged with various crimes.
The evidence was relevant to explain the witness' motives for
appearing as a witness for the Commonwealth.

Additionally, at the time of the prison assault, Mickens
was prepared to testify in an unrelated homicide case against
another defendant.  When appellant met Mickens in prison around
the time of the assault, appellant stated he did not think Mickens
was acting as a Commonwealth source.  As such, there was no reason
for the jury to draw a conclusion that appellant assaulted
Mickens.

In section H of his brief, appellant contends the trial
court erred in allowing the Commonwealth to present testimony of a
flight from the authorities by appellant because a warrant was not
issued until 1980, four years following the shooting incident.
Appellant maintains there was no direct evidence or circumstantial

- 11 -

J. 17001/89

proof that appellant had notice he was sought by the police until after he moved to California.   We disagree.

A thorough perusal of the record shows there was sufficient circumstantial evidence to prove that appellant knew he was, or would be, accused of committing a crime.   Commonwealth v. Hailey, 332 Pa.Super. 167, 480 A.2d 1240 (1984).   See also, Commonwealth v. Osborne, 433 Pa. 297, 249 A.2d 330 (1969).   The record reveals the appellant disappeared from Philadelphia following the shootings.   Alphonsa Sterling testified he knew the appellant in Los Angeles from May to July, 1983, when appellant was friendly with Sterling's daughter.   During that time, appellant called himself Isaiah, said he was from New Orleans, kept his hair short and wore dark glasses.   Clearly, evidence of appellant's flight from the city, change in appearance, use of an alias and false statements about his background provide sufficient circumstantial evidence he knew he was accused of a crime.

In section I of his brief, appellant attempts to advance the same argument in a different way.   Not only must this argument fail for the reasons enunciated in the discussion of the foregoing issue, but it is also waived by appellant's failure to offer an argument in support of his position.   Commonwealth v. Gravely, 486 Pa. 194, 404 A.2d 1296 (1979).

The length and vagueness of appellant's brief makes appellate review very difficult.   Although many of appellant's issues are technically waived, we nevertheless have reviewed all

- 12 -

J. 17001/89

of appellant's claims and found then to be without merit.
However, we note that when issues are not properly raised and
developed in briefs and when the briefs are wholly inadequate to
present specific issues for review, we do not have to consider the
merits of the appeal.  Commonwealth v. Drew, 353 Pa.Super. 632,
510 A.2d 1244 (1986).  See also, Commonwealth v. Stoppie, 337
Pa.Super. 235, 486 A.2d 994 (1984); Bolus v. United Penn Bank, 363
Pa.Super. 247, 525 A.2d 1215 (1987).

        Judgment of sentence affirmed.