EXHIBIT B

Second PCRA petition, filed 8/13/07



PLEAS - COUNTY OF PHILADELPHIA

PENNSYLVANIA COURT OF COMMON

==========VANIA,:

COMMONWEALTH, Plaintiff

CP-51-CR-0305681-1984 Comm. v. Tillery, George
Post-Conviction Relief Act Petition Filed

2180643931

VS.
TILLERY,
Defendant.

March Term, 1984 Bills
No. 568 - 574

And

arch Term 1984 Bills
o. 0155 - 0169

RECEIVED

AUG 1 3 2007

PCRA UNIT

## MOTION PURSUANT TO THE POST CONVICTION RELIEF ACT

Petitioner Major Tillery, pro se, moves this court for relief
under the Post Conviction relief Act 42, Pa.C.S.A. S 9541 et.
and in support thereof represent the following.

1. Your petitioner Major Tillery prison number is 526689,
is presently incarcerated at New Jersey State Prison. And has
a mailing address of P.O. Box ____ ___ 08625.

____ tioner was found guilty by jury
____ the Hon. John E. Geisz, of the charge

2. Oene 1st°, poss. of instrument of crime - generally,
___nal conspiracy, agg. assault, under bills of information
March Term 1984 numbers 568, 570, 571, 573, and 574.

3. On 12-9-86 your petitioner was sentence under bill
number 570 on the charge of 1st° murder of Joseph Hollis to
a mandatory life sentence.

On bill number 568 charge of poss. of instrument of
crime, petitioner received one to two years to run concurrent

-1-

with bill 570.

On bill number 573 charging petitioner with agg. assault on John Pickins, petitioner was sentence to 5-10 years to run concurrent with bill 570.

On bill number 574 charging petitioner with criminal conspiracy he was sentence to 5-10 years to run concurrent with bill 570.

4.   Subsequent to this verdict petitioner filed Port Trial Motions which were denied.  Petitioner then filed timely appeals to the State Superior Court of Pennsylvania in 1986.  The decision of the lower court was affirmed on 5-30-89.

5.   Petitioner than filed a petition for allowance of appeal with the Supreme Court of Pennsylvania which was also denied.

6.   At trial petitioner was represented by attorney Joseph Santaguida.  At Post Trial motions and the filing of appeals before the Superior Court and Supreme Court of Pennsylvania, your petitioner was represented by James S. Bruno.


CASE NUMBER TWO

March Term 1984 - Bill 0155-0169


1.   On 8-5-85, petitioner was found guilty by jury on all counts which was presided over by the Hon. D'Alessandro. Petitioner was charged with Criminal Conspiracy, Risking a Catastrophe, Prohibited Offensive Weapons, Attempted Arson and

-2-

Arson.

2.   1984 March Bills, 0155 Criminal Conspiracy, 0156 Risking Catastrophe, 0158 Prohibited Offensive Weapons, 0159 Arson Endangering Person and Property, 0160 Arson Endangering Person and Property, 0161 Risking Catastrophe, 0163 Prohibited Offensive Weapons, 0164 Criminal Conspiracy, 0165 and 0166 Attempted Arson Endangering Persons and Property, 0167 Risking Catastrophe, 0168 Prohibited Offensive Weapon, and 0169 Criminal Conspiracy.

3.   At trial petitioner was represented by attorney Joseph Santaguida.  On 8-31-87, Post Verdict Motions was denied, petitioner was sentenced to 12-24 years.  petitioner was Represented by James A. Lineberger on post verdict motions.

4.   Petitioner attorney James A. Lineberger than filed a timely appeal to the Pennsylvania Superior Court, and the Supreme Court of Pennsylvania which was denied.

5.   Petitioner respectfully request that all the charges in both cases March Term 1984 Bill No. 568-574 and March Term 1984 No. 0155-0169 be dismissed, or in the alternative be granted a new trial!

## ARGUMENTS IN SUPPORT OF POST CONVICTION RELIEF

The following arguments are in support of petitioners motion for Post Conviction Relief.

-3-

POINT ONE

THE COMMONWEALTH OF PENNSYLVANIA
D.A. BARBARA CHRISTIE KNOWINGLY
WITHHELD EXCULPATORY IMPEACHMENT
EVIDENCE OF ONE OF ITS KEY WITNES-
SES AGENT/INFORMANT EMMANUAL CLAITT
IN ORDER TO OBTAIN THE MURDER
CONVICTION. THUS DENYING DEFENDANTS
FOURTEENTH AMENDMENT RIGHTS OF THE
U.S. CONSTITUTION AND PA. CONST.
ART. 3, § 12; 42 PA. CSA § 9541
et.

In the case sub judice, the Commonwealth used a well known

prosecutor informant by the name of Emmanuel Claitt as its prime

witness in order to obtain the conviction of Major G. Tillery.

Mr. Claitt was the only eye-witness to the murder of Joseph

Hollis and assault of Pickins connecting defendant to the crimes.

No other witness connected defendant to the crimes not even

the surviving victem Mr. Pickins.  Therefore, this case basically

boils down to one of the credibility of the Commonwealths only

witness as identified above.  See, U.S. v. Foster, 874 F.2d

491 (8th Cir. 1988); "Case boils down to a question of the

credibility of the witnesses."

However, the below argument is regarding the trial testimony

of Emmanuel Claitt and the undisclosed preferential treatment

that he received in return for his testimony against the

defendant.  Emmanuel Claitt is a career criminal and has a long

criminal history in the state of Pennsylvania.  [See, Exhibits

1, 2, and 3]  Mr. Claitt also has a long history of providing

information to the Commonwealth and has testified as a witness

in many cases prior to the defendants and thereafter, which

-4-

he then in turn received preferential treatment from the Commonwealth.  At defendants trial defense attorney Mr. Joseph Santiguida attempted to discredit Emmanuel Claitt testimony with his past criminal history as well as with his potential favorable expectations from the Commonwealth.

Although the Commonwealth via, Barbera Christie, disclosed that it will speak to Mr. Claitt sentencing judge the Honorable Judge Katz, and indicate Mr. Claitt favorable testimony against Mr. Tillery, the Commonwealth <u>intentionally</u> <u>withheld</u> that it would be recommended that Mr. Claitt receive a sentence of "<u>no more then ten (10) years</u>" on his pending charges.  [See, Exhibit 10 Attached hereto]  Mr. Claitt at the time of defendants trial had several indictments pending against him in the state of Pennsylvania.  [See, Exhibits 1, 2, and 3, Attached hereto]

Most of the pending charges Mr. Claitt had pending was not disclosed to the defense prior to trial nor were the favorable  recommendation of "<u>no more then ten (10) years</u>" he received from the Commonwealth in regards to his indictments, contrary to Supreme Court precedent set forth in the matter of, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); which states in pertinent part that: "A prosecutor has a duty to provide an accused with all evidence in the state's possession materially favorable to the accused defense."  The prosecutor failed to do such here.  See also, <u>Com. v. Romansky</u>, 702 A.2d 1064 Pa. Super. 1997).  Based on the Commonwealth recommendation of "<u>no more then ten (10) years</u>", Judge Katz sentenced Mr. Claitt to

a concurrent sentence of 7 years but he only served 23 1/2 months and he was released from Camp Hill on November 22, 1982 after completing his prison term.  After Mr. Claitts release however, he committed more crimes as indicated in the attached exhibits one, two, and three.

The only way defendant discovered Exhibits one, two, three, and seven, is through his own independent research after his convictions of the Hollis/Pickins shootings trial and the subsequent  fire bombing trial.  Exhibits one, two, three, and seven, is therefore newly discovered evidence that was intentionally withheld by the Commonwealth in order to obtain it's unlawful convictions.  See, Romanky, supra. id.

Moreover, the Commonwealth committed a farce on the court when it withheld Exhibits one, two, three, and seven, and in fact, indicated to the court that Mr. Claitt will be receiving "no recommendations" from the Commonwealth as to a set sentence regarding his pending indictments before Judge Katz, and that it was only agreed that Mr. Claitt will enter into an "open plea" and that the court can sentence Mr. Claitt to the fullest extent of the law.  In other words, the Commonwealth gave the impression to the jury and the defense as well as the trial judges, that Mr. Claitt had no expectations other then protection in return for his trial testimony.  Thus giving him know motive to falsely accuse the defendant of the indicted offenses.  [See, Exhibit 7]

-6-

xhibit seven, is a letter that the Commonwealth wrote
e State of Pennsylvania Parole Board on January 31, 1984,
mmending that the parole board remove a detainer pending
inst Mr. Claitt so that he may be released on bail which
uld otherwise be impossible with a pending parole detainer.
This recommendation was based on Mr. Claitts future testimony
against defendant in the homicide trial.

As a result of the Commonwealths recommendation to the
parole board on behalf of Mr. Claitt the detainer was lifted
and Mr. Claitt was able to make bail and was released. [See,
Exhibits 7 and 11 Attached hereto]

Also attached hereto as exhibit six, is an additional letter
written by the Commonwealth D.A. Ross dated January 5, 1981,
to the Hon. Judge Katz, who's court Mr. Claitt had pending
indictments.  The letter indicates Mr. Claitt continual
relationship as a Commonwealth witness since January of 1980,
not only in the defendants case, but in several other cases
in the state of Pennsylvania.  This demonstrates that Mr. Claitt
was a agent for the state of Pennsylvania and a well compensated
one at that, considering the lenient sentences and dismissals
of indictments he received in exchange for his cooperation's
with the Commonwealth.  [See, Exhibit 6 Attached hereto].  Matteo
v. Superintendent, SCI Albion, 171 F.3d 877 (1999).

Mr. Claitt was not only a witness against Mr. Tillery in
the homicide and aggravated assault (shootings) case, but was
also a Commonwealth witness against Mr. Tillery in the

-7-

subsequent fire bombing indictment.  In both cases Mr. Claitt
admits his participation in the crimes, but suspiciously was
never charged in the homicide case as an accomplice or a
co-conspirator, and received a concurrent sentence in the
subsequent fire bombing cases as stated earlier.  The
Commonwealth never explained why Mr. Claitt was never charged
and indicted in the homicide of Mr. Hollis and the aggravated
assault of Mr. Pickins.  Mr. Claitt not being charged in the
Hollis/Pickins crimes are clear signs of "Use Immunity" in return
for his various trial testimony's.  This type of exchange should
have been disclosed to the jury and the Commonwealths failure
to do so is a clear due process violation contrary to the
Fourteenth Amendment of the United States Constitution.  See,
e.g., Moore v. Kemp, 809 F.2d 702 (11th Cir. 1987); holding
in pertinent part that: "A defendant has the right to question
whether a witness is testifying under a grant of immunity, or
absent such a grant, whether witness thought he had immunity."

Furthermore, Mr. Claitt testimony against Mr. Tillery in
the Hollis/Pickins crimes in regards to his reasons and
expectations contradicts his subsequent trial testimony against
Mr. Tillery in the fire bombings cases.  [See, Exhibit 10 and
11]

In exhibit ten, which is the closing summation of
Commonwealth D.A. Minehart in the fire bombing trial, that it
was recommended to Judge Katz, that Mr. Claitt not receive "no
more then ten (10) years" on his pending indictments in exchange

-8-

for his testimonies against Mr. Tillery.  This testimony is
in direct contradiction to exhibit eleven, which is the
Commonwealth D.A. Christie closing summation at the defendants
homicide/aggravated assault trial where it's position is that
there was "no set deal" and that the Commonwealt only enter
into an "open plea" agreement with Mr. Claitt.  An "open plea"
agreement meaning by the D.A. Christie definition is that the
judge has full discretion as to the sentence Mr. Claitt will
receive and that therefore Mr. Claitt has no expectations as
to the sentence he will receive.  The latter position allowed
the Commonwealth in defendants homicide trial to paint a false
impression to the jury that Mr. Claitt had no ulterior motive
to want to curry favor for the prosecution.  See, Moore v. Kemp,
809 F.2d 702 (11th Cir. 1987).

Also as new evidence the defendant discovered after his
convictions are exhibits four, five, eight, and nine, all of
which defendant discovered by his own independent investigations
by utilizing The Right To Know Act (TRTKA).

Exhibit four, is the transcript from Mr. George Rose
homicide trial, another victim of Mr. Claitts false testimony.
Mr. Rose was Mr. Tillery codefendant in the subsequent fire
bombing trial and went on trial in 1980 for the unrelated
homicide of Mr. Alfred Clark based on the testimony of
Commonwealth witness Mr. Claitt.  This trial commenced prior
to the defendants capture, and it was indicated that Mr. Claitt
agreed with the D.A. Ross that five (5) open charges he had

-9-

pending at the time will be dismissed as a result of his
testimony.   This demonstrates that Mr. Claitt had an agreement
of favorable treatment with the Commonwealth prior to the capture
and homicide trial of the defendant.   The defendant was arrested
on December 8, 1983, in L.A. California and began trial in the
Hollis/Pickins shootings in May of 1985.   This evidence surely
was known to the Commonwealth prior to defendants capture and
it should had been disclosed to the defendant prior to his trial.

Fortunately for Mr. Rose, the jury disbelieved Mr. Claitts
testimony against him and found him not guilty of all charges.

Furthermore, despite of the fact that Mr. Claitt testified
that he was present during Mr. Clark murder he was never charged
as an accomplice to Mr. Rose.   The latter in itself demonstrates
just as in the case sub judice, that Mr. Claitt is never charged
by the Commonwealth for his participation in homicides.   Which
further supports the inference of an agreement with the
Commonwealth in the  form of "Use Immunity".

Exhibit five, is the December 1983 transcript from Mr.
Frazier homicide trial, which is unrelated to the case sub
judice.   Mr. Claitt was a witness against Mr. Frazier and
testified that Mr. Frazier confessed to him from his jail cell,
although Mr. Claitt was well known in the jail as a Commonwealth
police informant.

In the Frazier case, Mr. Claitt is cross-examined
extensively about his cooperation with the Commonwealth in the
indictments against the defendant Mr. Tillery, as well as to

-10-

other individuals including Mr. Rose.  Again--- Mr. Claitt

acknowledges that he had expectations from the Commonwealth

in exchange for his testimony against the defendant who had

not been apprehended at the time of Mr. Fraziers trial, but

a warrant was out for his arrest.  This evidence should have

been disclosed prior to the defendants trial.

Exhibit eight, is the transcript from Mr. James Brand fire

bombing trial.  Mr. Brand was the defendants co-defendant in

the fire bombing indictment but was separately triad in 1980

prior to defendants capture.  Mr. Claitt was the Commonwealths

prime witness against Mr. Brand, as he was in all the cases

mentioned above.

At Mr. Brand[2] trial Mr. Claitt falsely stated that he was

receiving no favorable recommendations from the Commonwealth

in exchange for his trial testimony's, and maintained that his

reasoning for coming forward to the police regarding the

indictments against defendant Mr. Tillery and co-defendants,

was simply because he sought justice for a friend [viz, "Samual

Goodwin"] that he suspected was killed by Mr. Tillery and

associates.

Exhibit nine, is additional testimony of Mr. Claitt from

---

[2]Mr. Rose, Mr. Smith, Mr. Brand, and Mr. Tillery were all
co-defendants on the fire bombing indictments.  Although Mr.
Rose appeared at the preliminary hearing with Mr. Brand, they
weren't tried together.  Mr. Rose and Mr. Tillery were tried
together, subsekuent to Mr. Brand and Smith.

-11-

the fire bombing indictment against James Brand.  At Mr. Brand
and Mr. Rose preliminary hearing on the fire bombing indictment
in July of 1980, Mr. Claitt further submitted that he was
expecting no recommendation from the Commonwealth, as far as,
promises, or reduced sentences regarding his pending matters.
Which directly contradicts his testimony in other trials
regarding the same subject.

Because of the multitude of trial testimonies that Mr.
Claitt provided to the Commonwealth on various separate
occasions, made it the more difficult for the defendant to locate
and obtain the documents to support his position that Mr. Claitt
had good reason to want to curry favor for the prosecution.

It was only through defendants independent strenuous
research that he discovered the above mentioned material.
Material that was intentionally withheld by the Commonwealth.
Thus committing nothing less then a miscarriage of justice and
a farce upon the trial court.  See, Com. v. Romanky, supra.
Where the court held that: "evidence of an understanding or
agreement regarding future prosecution would be relevant to
the witness credibility and the jury should have been informed
of it."

The defendant in the instant matter was left handicapped
from cross-examining Mr. Claitt as to his expectations because
of the Commonwealths intentional withholding of the very evidence
that discredited its prime witness and demonstrates that Mr.
Claitt had all the reason to falsely accuse Mr. Tillery of the

-12-

indicted offenses.  Mr. Claitt was never charged with the
Hollis/Pickins shootings although he admitted he was part of
a criminal organization and not only was present when the
shootings occurred, but in fact, admitted he lead the two
shooting victims into an ambush.

Being well aware of Mr. Claitt envolement in the
shootings, the Commonwealth gave no reasons to the Court or
the defense for it's decision not to charge Mr. Claitt as an
accomplice to murder and assault.  It is clear that Mr. Claitt
received favorable treatment in the form of "Use Immunity" in
exchange for his testimony against the defendant.  The
Commonwealth had an obligation to disclose such immunity to
the defense prior to trial.  See, Moore v. Kemp, supra.

Furthermore, Mr. Claitt received a sentence of no more
then ten (10) years in Judge Katz court based on the
recommendation of the Commonwealth.  This evidence existed prior
to defendants trial but was intentionally withheld from the
defense.  At trial the Commonwealth gave the impression that
Mr. Claitt would be fully prosecuted in his pending indictments.
When in fact, his pending matters were disposed of by the
Commonwealth, through either concurrent sentences, nolle pros,
or out right dismissals, and again the guarantee of no more
then ten (10) years.  [Exhibits 1, 2, 3, and 7]

If defendant would have be made aware of this evidence,
defense counsel could have utilized it to completely destroy
Mr. Claitt credibility as to his expectations from the

-13-

Commonwealth in exchange for his testimony against Mr. Tillery. The Commonwealth had an obligation to disclose such evidence and its failure to do so is a miscarriage of justice and tainted defendants conviction entitling him to a new trial.  See e.g., Blankenship v. Estelle, 545 F.2d 510 (5th Cir. 1977); Where it was discussed in pertinent part: "Although in the instant case the testimony that Brooks and Crawford were under indictment may have been technically true, it left an erroneous impression of an impending trial and the absence of leniency as an inducement to testify.  This court has recently made clear that we will not tolerate prosecutorial participation in technically correct, yet seriously misleading, testimony which serves to conceal the existence of a deal with material witnesses."

As in the case sub judice, although it was technically correct that Mr. Claitt had pending indictments against him, and that the Commonwealth did write letters for his protection, the Commonwealth withheld the part that it was recommended that Mr. Claitt receive no more then ten (10) years, and that five other cases be nolle pros or dismissed as discussed earlier in the motion.  Nor was it disclosed that Mr. Claitt received immunity from the Hollis/Pickins indictment.

Even more critical is the fact that the Commonwealth stated to the jury during its closing that Mr. Claitt received an "open plea" and that his sentence is totally left to the discretion of the court.  (Trial Tran. ¶May 14, 1985) [Exhibit 11]

In conclusion, this case is before the court on a subsequent

-14-

motion under the Post-Conviction-Relief-Act (PCRA).  As such, the defendant has demonstrated that a grave miscarriage of justice has been committed against him by the Commonwealths intentional withholding of the above stated information.  See, Com. v. Lawson, 519 Pa. 504 (1988); Holding that: "A second or subsequent post conviction request for relief will not be entertained unless a strong prima facie showing is offered to demonstrate that a miscarriage of justice may have occurred."

Therefore defendant has met his burden.  The new evidence as exhibits one, two, three, four, five, eight, and nine, attached hereto was discovered by defendant within the last sixty (60) days pusuant the the Post-Conciction-Relief Act (PCRA), and clearly shows that the Commonwealth denied defendant due process rights when it knowingly withheld material impeachment evidence that should have been disclosed to defense prior to trial, so that with this evidence defendant could have swayed the jury's verdict in his favor and been acquitted of all charges.  See, Com. v. Szuchon, 534 Pa. 483, (1993).

For the foregoing reasons mentioned above, the defendant should be entitled to a new trial under the Post Conviction Relief Act **(PCRA).**

-15-

POINT TWO

**THE COMMONWEALTH OF PENNSYLVANIA
D.A. BARBARA CHRISTIE AND MINEHART
ALLOWED ITS KEY WITNESS EMMANUEL
CLAITT FALSE TESTIMONY TO GO
UNCORRECTED IN ORDER TO OBTAIN
THE HOMICIDE & ARSON (FIRE BOMBING)
CONVICTIONS. THUS DENYING DEFENDA-
NTS FOURTEENTH AMENDMENT RIGHTS OF
THE U.S.CONSTITUTION AND PA. CONST.
ART. 3, § 12; 42 PA. CSA § 9541
et.**

The Commonwealths cases on the homicide and assault conviction

of Hollis/Pickins, as well as the fire bombing conviction was based

primarily on the testimony of informant Emmanuel Claitt as argued

in point one of the below motion.  On May 20, 1980, Mr. Claitt was

interviewed by detectives from the Commonwealth of Pennsylvania

regarding an unrelated homicide.  At that interview Mr. Claitt

volunteered information regarding the homicide of Mr. Hollis and

aggravated assault (shooting) of Mr. Pickins, and indicated that

defendant Mr. Tillery was responsible for there crimes.

As a result of Mr. Claitt false testimony, Mr. Tillery was

convicted of the Hollis/Pickins crimes on May 29, 1985 and sentenced

accordingly*.

Subsequent to Mr. Tillery murder conviction, Mr. Claitt testified

as the key witness for the Commonwealth on the additional indictment

regarding the aggravated arson (fire bombing) case.  As a result

of Mr. Claitt testimony, Mr. Tillery was convicted on August 5, 1985,

---

*Defendant homicide trial and bombing trial was before different
trial judges.  The homicide trial was tried before the Hon. John
E. Geitz.  And Hon. N. D'Alessandro, presided over defendants' fire
bombing trial.

of all crimes associated with the fire bombing indictment.

Mr. Tillery has adamantly maintained his innocence and continues to do so.

The Commonwealth only obtained Mr. Tillery unlawful convictions through the uncorrected false testimony of Mr. Claitt. Mr. Claitt trial testimony's regarding his favorable expectations from the Commonwealth, is in conflict with each other. In fact, the trial testimony that he provided at Mr. Tillery homicide trial regarding expectations, is in direct contradiction to his testimony at the subsequent fire bombing trial.

Furthermore, Mr. Claitt provided a multitude of testimony's on behalf of the Commonwealth in several different trials prior to Mr. Tillery and thereafter. At trials unrelated to the case sub judice, Mr. Claitt was cross-examined about his long standing history of providing information for the Commonwealth, and his motives for providing such information in the cases against Mr. Tillery. As such, Mr. Claitt gave conflicting answers as to his under-handed deals with the Commonwealth. Most of the latter testimony Mr. Tillery recently learned of through his independent efforts by utilizing the Right To Know Act (RTKA).

For example, at Mr. Rose unrelated homicide trial in 1980, Mr. Claitt was a witness for the Commonwealth D.A. Ross. Mr. Claitt testified at that time that there in fact was a deal linked between himself and the Commonwealth that certain indictments pending against him would be dismissed as a result of his favorable testimony. This testimony could have been used at the defendants trial to show that

-17-

Mr. Claitt did have a deal.  However, due to the Commonwealths
intentional failures Mr. Claitt was allowed to testify that he
received no deals from the Commonwealth and that he was testifying
to seek justice for the death of friend he felt defendant was
responsible for.  [Exhibit 4]

Mr. Claitt also provided testimony at Mr. Frazier unrelated
homicide trial on behalf of the Commonwealth D.A. Ross.  At the
Frazier trial Mr. Claitt was cross-examined significantly about his
assistance in the Mr. Tillery case.  Mr. Claitt testified that Dt.
Raymond Dougherty and Lt. Shelton, who were the investigators in
the Tillery investigations, questioned him about defendants
involvement in criminal activity.  At that time Mr. Claitt provided
incriminating statements regarding Mr. Tillery, and testified at
Mr. Frazier trial that he was indeed expecting some favorable
consideration from the Commonwealth for his assistance in the arrest
and convictions of defendant.  [Exhibit 5]

Further, Mr. Claitt provided trial testimony at Mr. Tillery
co-defendant in the fire bombing case, Mr. Brand.  At Mr. Brand
preliminary hearing and trial, Mr. Claitt testified that there was
no deals made, and his only reason for testifying was to seek justice
for a friend.  [Exhibit(s) 8 and 9]

However, at Mr. Tillery codefendant in the Hollis/Pickins case,
Mr. Franklin.  Mr. Claitt testified that there was deals made.  And
the Commonwealth D.A. Ross who prosecutored the case against Franklin,
held a back room conference with Mr. Claitt sentencing Judge Kubacki
in which it was stated by the D.A. that there were deals made between

-18-

the Commonwealth and Mr. Claitt.  [Exhibit 20]

Then Mr. Claitt immediately contradicted himself later in the Franklin Hollis/Pickins trial when he testified that although he was hoping for a concurrent sentence on his pending fire bombing charges, he received no promises, or recommendations from the Commonwealth.  [Exhibit 21]

The above reference testimonies all occurred prior to Mr. Tillery trials, and could had been utilized if the Commonwealth would have disclosed and corrected the false testimonies when they occurred.

Although, the Commonwealth of Pennsylvania was well aware of the contradictory testimony's provided by it's prime witness, the prosecutor(s) involved allowed this testimony to go before the jury uncorrected at both trials.  See, United States v. Bigeleisen, 625 F.2d 203 (8th Cir. 1980); "[t]he duty to correct false testimony is on the prosecutor, and that duty arises when the false evidence appears."

Most importantly, the Commonwealth at the Mr. Tillery homicide trial viz, Barbera Christie, not only failed to correct the false testimony of Mr. Claitt when it appeared.  She suborned such false testimony.

The relevant testimony occurred during direct examination at the homicide trial and is stated below: [Exhibit 11 pg. 5]:


**COMMONWEALTH: BARBERA CHRISTIE:**


QUESTION --- OKAY. THE 3 CHARGES THAT YOU'VE JUST DISCUSSED, WHAT IF ANYTHING DID YOU DO WITH REGARD TO THOSE CHARGES THAT CAUSED YOU TO BE INCARCERATED?  DID YOU GO TO TRIAL OF WHAT DID YOU DO?

ANSWER BY CLAITT --- I PLEAD GUILTY, OPEN PLEA IN FRONT OF JUDGE LEON KATZ.

QUESTION --- ALL RIGHT.  CAN YOU TELL THE JURY WHAT YOU MEAN BY OPEN PLEA?

ANSWER --- OPEN PLEA IS, I PLEAD GUILTY TO THE CHARGES WITH --- WITH NO RECOMMENDATION FROM THE DISTRICT ATTORNEY'S OFFICE. IT WAS AN OPEN PLEA WHEREIN THE JUDGE WOULD DECIDE MY FATE AS TO SENTENCE.

QUESTION --- ALL RIGHT.  AND WHAT SENTENCE DID YOU RECEIVE FROM JUDGE KATZ ON YOUR PLEA TO THOSE CHARGES?

ANSWER --- ONE AND A HALF TO 7 YEARS FOR SALES ON NARCOTICS. AND ONE TO 5 YEARS FOR ATTEMPT ARSON AND 6 TO 12 MONTHS FOR POSSESSION OF AN INSTRUMENT OF CRIME.

[Also exhibit 11 pg 6:]

QUESTION --- NOW, AT THE TIME OF YOUR SENTENCING BEFORE JUDGE KATZ, DID ANY MEMBER OF THE DISTRICT ATTORNEY'S OFFICE RECOMMEND OR REQUEST OF JUDGE KATZ ANY PARTICULAR SENTENCING RELATIVE TO THOSE CHARGES TO WHICH YOU PLEAD GUILTY?

ANSWER --- ASSISTANT DISTRICT ATTORNEY LYNN ROSS RECOMMENDED TO JUDGE LEON KATZ THAT AT -- HE MADE THE COURT AWARE OF ANY COOPERATION WITH THE DISTRICT ATTORNEY'S OFFICE IN VIEW OF THE NUMBER OF CASES THAT I HELPED THEM PROSECUTOR AND HIS ONLY STIPULATION WAS THAT HE ASKED THE COURT TO RUN THE SENTENCE TOGETHER, MEANING CONCURRENT. [**Failed to add that there was a recommendation that he receive no more then 10 years on his sentence.**]

QUESTION --- ALL RIGHT.  NOW WITH REGARD TO THE TIME WHICH YOU WOULD RECEIVE AND DID RECEIVE FROM JUDGE KATZ, DID ANY MEMBER OF THE DISTRICT ATTORNEY'S OFFICE, MISTER ROSS OR ANYONE ELSE, REQUEST OR RECOMMEND OR REPRESENT TO JUDGE KATZ, AND PARTICULAR PERIOD OF TIME OTHER THAN WHATEVER TIME YOU RECEIVED, THAT THE REQUEST, THAT THE TIME RUN TOGETHER, RUN CONCURRENT?

ANSWER --- NO.  THERE WAS NO OTHER RECOMMENDATION. [**This testimony was false and known to be so by the Commonwealth and should have been corrected.**]

[Also Exhibit 11 pg 7]

QUESTION --- SO AT THE TIME OF THE PLEA BEFORE JUDGE KATZ, DID YOU HAVE OPEN CASES WHICH YOU IN YOUR TERMINOLOGY HAD TO FIGHT ALONE?

ANSWER --- YES, I DID.

QUESTION --- AND AT THE CURRANT MOMENT, AT THIS TIME, DO

-20-

YOU HAVE AN OPEN CASE PENDING?

      ANSWER --- YES, I DO.

      QUESTION --- WHAT' THE CHARGE IN THAT CASE?

      ANSWER --- ROBBERY.

      QUESTION --- OKAY.  THAT IF ANY UNDERSTANDING OR AGREEMENT DO YOU HAVE WITH REGARD TO YOUR PENDING ROBBERY CASE WITH THE DISTRICT ATTORNEY'S OFFICE?

      ANSWER --- I HAVE NO AGREEMENT AT ALL.  **[This testimony was false and known to be so by the Commonwealth and should have been corrected.]**

              \*  \*  \*  \*

Although the Commonwealth was well aware of the fact that it was promised to Mr. Claitt that it would be recommended that he receive no more then 10 years on his sentence.  At no time did the D.A. Christie attempt to clarify Mr. Claitt false testimony when it occurred.  And in fact, gave the impression to the jurors that Mr. Claitt will be sentence with no recommendation from the D.A. Office as shown above, and that Mr. Claitt received no promises and only that he plead to a so called "open plea"[2].  Also see, [Exhibit 23]

This is coupled by the closing summation testimony provided by D.A. Minehart at Mr. Tillery subsequent fire bombing trial.  The

---

[2]According to the Commonwealth and Mr. Claitt, an "open plea" is a plea of no set time recommendations, and that the court can sentence a defendant to the fullest extent of the law.  This position by the Commonwealth gave the jurors in Mr. Tillery trial the impression that Mr. Claitt had no expectations of receiving a lighter sentence in exchange for his testimony.  Although the Commonwealth clearly knew that it was recommended that Mr. Claitt be sentenced to no more then 10 years.

fact that it was a different D.A. prosecuting Mr. Tillery fire bombing trial then at the prior homicide, doesn't change the Commonwealth responsibility to correct false testimony.

At Mr. Tillery fire bombing trial, Mr. Claitt admitted that he was receiving a recommendation of no more then a 10 year sentence from the Commonwealth prior to his testimony given at Mr. Tillery homicide trial.

The relevant testimony was brought out on direct examination at the fire bombing trial and is stated below: [Exhibit 14 pg 69]

**COMMONWEALTH MR. MINEHART:**

**QUESTION** --- NOW, AS TO THE AGREEMENT, AS TO HOW MUCH TIME YOU WOULD SPEND IN PRISON ON THIS CASE, WHAT WAS THE AGREEMENT WITH THE DISTRICT ATTORNEY'S OFFICE THAT YOU HAD?

**ANSWER** --- THAT WHEN I GOT SENTENCED, MY SENTENCE WOULDN'T EXCEED 10 YEARS, MAXIMUM. **[This testimony differs significantly from his trial testimony at the prior homicide trial.]**

\*   \*   \*   \*

Evenmore troubling is the fact that Commonwealth D.A. Minehart clearly was aware of the false testimony provided by Mr. Claitt because he was the prosecutor in several of the indictments pending against Mr. Claitt in Judge Katz court room and appeared at a preliminary hearing on Novemeber 28, 1980 on behalf of the Commonwealth to discuss the pending indictments status.  This hearing occurred an entire three years prior to Mr. Tillery's arrest in California.  At the preliminary hearing Mr. Claitts deals were discussed and it was stated on the record by D.A. Minehart that there clearly are deals, and Mr. Claitt also stated on the record that

-22-

he received "promises" from the Commonwealth.  [Exhibit 1]

Therefore, there should be no question that D.A. Minehart was aware that Mr. Claitt was testifying falsey when he said he received no "promises" or the like from the Commonwealth at defendants trials.

In fact D.A. Minehart went on to somewhat contradict his position as with regards to the deals Mr. Claitt received at defendants fire bombing trial in October 1985.  At defendants fire bombing trial Mr. Minehart admitted that there were all kinds of deals with Mr. Claitt but still maintained that there was no promises, refusing to take a strong position as to one fact or the other.  At no time did Mr. Minehart show even an attempt to correct Mr. Claitts false testimony.  [Exhibit 12]

Additionally, Dt. Gerrard testified on behalf of the Commonwealth and admitted that there were deals made with Mr. Claitt prior to 1980.  And that Mr. Claitt detainers were lifted and he was allowed to sign his own bail.  Thus contradicting Mr. Minehart position as well, and what makes Dt. Gerrard testimony regarding what Mr. Claitt received is more believable given the fact that Mr. Claitt was released from jail and various indictments of his own were dismissed by the Commonwealth.

Furthermore, Mr. Claitt provided testimony at defendants co-defendant Mr. Rose fire bombing trial in 1985 as well.  At Mr. Rose trial the Commonwealth D.A. Mr. Minehart again admitted that there were deals but immediately contradicted himself by stating there were no deals.  [Exhibit 16; pg 82-83]

Moreover, because of the veracity of Mr. Claitt various

-23-

testimonies and of the D.A. Office contradictory positions regarding
the deals made with Mr. Claitt it is difficult to know when Mr. Claitt
is telling the truth or not.... or whether he received a deal or
not.  And know conviction should even in part, be allowed to stand
on such veracity.  The Commonwealth has a obligation to make it clear
to the court, jury, and the defense , whether a witness is receiving
something in exchange for his testimony.

It is clear that Mr. Claitt is a career criminal and a habitual
liar, who's credibility is meager at best and has a history of not
being charged in homicide cases despit his admitted participation
in them.

Basically the states case, as in, U.S. v. Foster, 874 F.2d 491
(8th Cir. 1988); "Boiled down to a question of the credibility of
the witnesses." U.S. v. Foster, 874 F.2d 491 (8th Cir. 1988).

See e.g., Napue v. Illinois, 360 U.S. 264, 79 S.  Ct. 1173,
3 L. Ed. 2d 1217 (1959).  "Held: The failure of the prosecutor to
correct the testimony of the witness which he knew to be false denied
petitioner due process of law in violation of the Fourteenth
Amendment." Napue supra, 360 U.S. Id.  "First,  it is established
that a conviction obtained through use of false evidence, known to
be such by the representatives of the State, must fall under the
Fourteenth Amendment, quoting: Mooney v. Holohan, 294 U.S. 103, 112,
55 S.Ct. 340, 342, 79 L.Ed. 791 (1935).  "The same result obtains
when the State, although not soliciting false evidence, allows it
to go uncorrected when it appears."  Also in Napue the Court stated
that "The jury's estimate of the truthfulness and reliability of

-24-

a given witness may well be determinative of guilt or innocence,
and it is upon such subtle factors as the possible interest of the
witness in testifying falsely that a defendant's life or liberty
may depend." Id.

Furthermore, in Napue at 269, quoting People v. Savvides, 1
N.Y. 2d 554, 557; 136 N.E. 2d 853,854-855; 154 N.Y.S. 2d 885, 887:

> "It is of no consequence that the falsehood
> bore upon the witness' credibility rather
> than directly upon defendant's guilt.   A
> lie is a lie, no matter what its subject,
> and, if it is any way relevant to the case,
> the district attorney has the responsibility
> and duty to correct what he knows to be
> false and elicit the truth.... That the
> district attorney's silence was not the
> result of guile or a desire to prejudice
> matters little, for its impact was the same,
> preventing, as it did, a trial that could
> in any real sense be termed fair."

See supra, United States v. Bigeleisen, 625 F.2d 203 (8th Cir.
1980).

This is not a case in which the witness' bias becomes irrel-
evant because the witness' testimony is fully corroborated,
nor is this a case in which the witness' testimony has been
thoroughly impeached and proof of his bias would be merely cumul-
ative.  See, e.g., McCleskey v. Kemp, 753 F.2d 877, 885 (11th
Cir. 1985).

The disclosure of Mr. Claitt' expectations from the state
in return for his testimony against defendant, however, would
not have been merely repetitious, reinforcing a fact already
knew; instead, "the truth would have introduced a new source
of potential bias." Brown v. Wainright, 785, F.2d  1457, 1466

-25-

(11th Cir. 1986). See also <u>United States v. Sanfilippo,</u> 564 F.2d 176, 178 (5th Cir. 1977) ("A jury may very well give great weight to a **precise reason** to doubt credibility when the witness has been shown to be the kind of person who might perjure himself.").

One might argue that Mr. Claitt false testimony was not perjured. Under those circumstances the defendant directs the courts attention to <u>Dupart v. United States,</u> 541 F. 2d 1148, 1150 (5th Cir. 1976); Where it was held "where testimony, even though not perjurious, would surely be highly misleading to the jury...."

Finally, this case is before the court on a subsequent motion under the Post-Conviction-Relief-Act (PCRA). As such, the defendant has demonstrated that a grave miscarriage of justice has been committed against him by the Commonwealths intentional systematic failures to correct false testimony at the homicide trial and the fire bombing trial. Therefore, as supported by the evidence presented and the supporting case citations the defendant is entitled to a new and fair trial which is guaranteed to him under the Fourteenth Amendment of the United States Constitution and the Post Conviction Releif Act (PCRA) as stated in <u>POINT ONE</u>.

-26-

### POINT THREE

**THE COMMONWEALTH OF PENNSYLVANIA D.A. BARBARA CHRISTIE KNOWINGLY WITHHELD EXCULPATORY IMPEACHMENT EVIDENCE OF ONE OF ITS KEY WITNESSES AGENT/INFORMANT ROBERT MICKINS IN ORDER TO OBTAIN THE MURDER/ASSAULT CONVICTIONS. AND ALLOWED ITS WITNESS FALSE TESTIMONY TO GO UNCORRECTED BEFORE THE JURY. THUS DENYING HIS FOURTEENTH AMENDMENT RIGHTS UNDER THE U.S. CONSTITUTION AND PA. CONST. ART. 3, § 12; 42 PA. CSA § 9541 et.**

Mr. Robert Mickins was the only other witness besides Mr. Claitt to implicate the defendant in the Hollis/Pickins crimes.

On September 26, 1984, Mr. Mickins gave a sworn statement to investigators from the Commonwealth of Pennsylvania implicating Mr. Tillery in the homicide and assault charges mentioned in the indictment.  The alleged crimes occurred on October 22, 1976, an entire 8 years prior to Mr. Mickins statement to police.  And he only gave the statement after he was arrested on unrelated rape and robbery charges.  See, [Exhibit 3C]

A statement that he claims he never had the opportunity to read before signing.  Because of this, he provided the Commonwealth with an additional statement in April of 1985 further implicating the defendant in the crimes and this time adding that it was Mr. Tillery who ask him to be the look out instead of another individual he initially said ask him to be the look out.  See, [Exhibit 2B]

Although Mr. Mickins admitted that he was the look out guy at the crime scene which allowed these shootings to occur, he never

-27-

was charged as an accomplice or co-conspiritor in the indictment.

The Commonwealth via, Barbera Christie never gave any explanation as to why Mr. Mickins was not charged as such.   Mr. Mickins not being charged in the Hollis/Pickins crimes are clear signs of an undisclosed "Use Immunity" agreement in return for his trial testimony against Mr. Tillery.   This type of exchange should have been disclosed to the jury and the Commonwealths failure to do so is a clear due process violation contrary to the Fourteenth Amendment of the United States Constitution.   See, e.g., Moore v. Kemp, 809 F.2d 702 (11th Cir. 1987); holding in pertinent part that: "A defendant has the right to question whether a witness is testifying under a grant of immunity, or absent such a grant, whether witness thought he had immunity."

Moreover, Mr. Mickins has a long criminal back-ground, and an extensive history as a Commonwealth informant/agent.  See, e.g., Matteo v. Superintendent, SCI Albion, 171 F.3d 877 (1999). He has testified in several cases on behalf of the Commonwealth, and in all of the cases he has stated people confessed crimes to him for no apparent reason.  To add fuel to the fire, D.A. Barbera Christie has a history of using false jail house witnesses to assist her in obtaining convictions for the Commonwealth.  The two put together is a deadly combination.  See, [Exhibit 5E]

Although at defendants trial it was disclosed that Mr. Mickins would be receiving some assistance from the Commonwealth on his pending rape/robbery indictment in exchange for his testimony.  There were certain promises that was withheld from the defense.

-28-

Such as, exhibit 1A, which is attached hereto in support of defendants motion.  Exhibit 1A is evidence of further favorable treatment Mr. Mickins was receiving from the Commonwealth in exchange for his testimony against defendant.  This evidence was never disclosed prior to Mr. Tillery trial, and was never brought to the attention of the court or the defense.  The defendant only learned of this evidence within the last sixty (60) days, by his own independent investigation through utilizing the Right To Know Act (RTKA).  See, [Exhibit 1A]

See, Brady v. Maryland, 373 U.S. 83 (1963); which states in pertinent part that: "A prosecutor has a duty to provide an accused with all evidence in the state's possession materially favorable to the accused defense."  The prosecutor failed to do such here. See also, Com. v. Romanky, supra.  Where the court held that: "evidence of an understanding or agreement regarding future prosecution would be relevant to the witness credibility and the jury should have been informed of it."

This evidence clearly shows that after defendants conviction Mr. Mickins continued to use his testimony against defendant as a bargaining tool to get favorable treatment from the Commonwealth on his own criminal matters.

As seen, in or about November of 1985, after defendants conviction, Mr. Mickins wrote to his own sentencing [viz, Judge Eugene Clark] asking for help in getting him released from prison on a Home Furlough.  And by using his history as a Commonwealth witness in several murder trials including Mr. Tillery's, as a bargaining tool,

-29-

he was successful in obtaining furloughs, with a favorable
recommendation of the D.A. Miss Barbera Christie, who again, has
a history of using false witnesses.  Mr. Mickins also clearly admitted
in his letter that the court only sentenced him to 2-5 years in
Northampton county prison instead of up state where prison sentences
are often served.

See e.g., Blankenship v. Estelle, 545 F.2d 510 (5th Cir. 1977);
Where it was discussed in pertinent part: "This court has recently
made clear that we will not tolerate prosecutorial participation
in technically correct, yet seriously misleading, testimony which
serves to conceal the existence of a deal with material witnesses."

If defendant would have been made privy to this evidence, it
would have given the defense more damaging evidence to show that
Mr. Mickins had great reason to want to curry favor for the
Commonwealth.  And that reason was not to receive the full sentence
eligible for the rape/robbery charges.  Charges that shoes Mr. Mickins
character as being a weak individual to want to prey on defenseless
woman.  Such evidence goes directly to the credibility of the
Commonwealth on additional witness to the crimes and Mr. Tillery's
alleged involvement.  See, United States v. Sanfilippo, 564 F.2d
176, 178 (5th Cir. 1977) ("A jury may very well give great weight
to a precise reason to doubt credibility when the witness has been
shown to be the kind of person who might perjure himself.").

In fact Mr. Mickins was allowed to testify that he only plead
guilty to an "open plea", and that sentencing was up to his sentencing
judge [viz, Clark] with no recommendations from the Commonwealth.

-30-

See, [Exhibit 4D]

The latter in itself was false evidence that was allowed to go uncorrected before the jury.  The commonwealth had an obligation to disclosed and correct Mr. Mickins false testimony, with the evidence of the favorable recommendations he received from the Commonwealth in Judge Clark court room.  The deals Mr. Mickins had was already established at Judge Clarks court, when the Commonwealth nolle pros several of his pending indictments.  See, [Exhibit 4D pg 24-25]

See, Napue v. Illinois, 360 U.S. 264, 79 S.  Ct. 1173, 3 L. Ed. 2d 1217 (1959).  "Held: The failure of the prosecutor to correct the testimony of the witness which he knew to be false denied petitioner due process of law in violation of the Fourteenth Amendment."  And also U.S. v. Foster, 874 F.2d 491 (8th Cir. 1988). Napue 360 U.S. Id.  "First,  it is established that a conviction obtained through use of false evidence, known to be such by the representatives of the State, must fall under the Fourteenth Amendment, quoting: Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  Also in Napue the Court stated that "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." Id.

-31-

In the case sub judice, when Mr. Mickins testified that there was no agreement [Ex. 4D pg 25]; the Commonwealth clearly knew that there was an agreement and should have immediately corrected such false testimony.  It's failure to do so gave the false impression to the jury that Mr. Mickins had no reason to want to curry favor for the Commonwealth by lying against defendant.  Even though, Mr. Mickins had every reason in the world to want to curry favor for the Commonwealth, and that reason was to stay out of prison, whether by Home Furloughs, or "Use Immunity" on the homicide indictment. or the very lenient sentence he received for rape/robbery.

See supra, <u>Napue</u> at 269, quoting <u>People v. Savvides,</u> 1 N.Y. 2d 554, 557; 136 N.E. 2d 853,854-855; 154 N.Y.S. 2d 885, 887:

> "A <u>lie is a lie</u>, no matter what its subject, and, if it is any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth.... That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair."

Again as stated in the matter of, <u>United States v. Bigeleisen,</u> 625 F.2d 203 (8th Cir. 1980); "<u>[t]he duty to correct false testimony is on the prosecutor,</u> and <u>that duty arises</u> **<u>when the false evidence appears.</u>**"

This is not a case in which the witness' bias becomes irrelevant because the witness' testimony is fully corroborated, nor is this a case in which the witness' testimony has been thoroughly impeached and proof of his bias would be merely cumul-

-32-

ative.  See, e.g., <u>McCleskey v. Kemp,</u> 753 F.2d 877, 885 (11th Cir. 1985).

If the truth would had been disclosed "it would have introduced a new source of potential bias." <u>Brown v. Wainright,</u> 785, F.2d 1457, 1466 (11th Cir. 1986).  See also <u>United States v. Sanfilippo,</u> 564 F.2d 176, 178 (5th Cir. 1977) ("A jury may very well give great weight to a **precise** **reason** to doubt credibility when the witness has been shown to be the kind of person who might perjure himself.").

One might argue that Mr. Mickins false testimony was not perjured.  Under those circumstances the defendant directs the courts attention to <u>Dupart v. United States,</u> 541 F. 2d 1148, 1150 (5th Cir. 1976); Where it was held "where testimony, even though not perjurious, would surely be highly misleading to the jury...."

Therefore, in light of the evidence and the arguments presented before the Court, the defendant is entitled to a new and fair trial un-tainted by the various false testimonies of Mr. Mickins and Mr. Claitt, which is guaranteed to defendant under the Fourteenth Amendment of the United States Constitution.

## C O N C L U S I O N

All of the issues presented in the below motion should also be considered collectively.  Defendants arguments are also supported by the exhibit annexed hereto for the courts consideration.


Respectfully submitted,

Major G. Tillery


Dated: 8-2-07


-34-

**VERIFICATION**

I **Major Tillery** , do hereby verify the facts set forth in the attached Motion are true and correct to the best of my knowledge information and belief.     **Sending This Motions With The Proper Exhibits To Support Defendants Claim.**

The undersigned understands that the statement made therein are subject to the penalties of 18 Pa.C.S. Section 4904 relating to unsworn falsification to authorities.

Major Tillery   526689

P.O.Box 861

Trenton New Jersey 08625

DATE 8-2-07