# EXHIBIT E

PCRA Court Opinion

following denial of

Third PCRA Petition

FILED
JAN 13 2017
Appeals/Post Trial
Office of Judicial Records

COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

---

COMMONWEALTH OF PENNSYLVANIA

v.

GEORGE M. TILLERY

CP-51-CR-0305681-1984
3270 EDA 2016

## OPINION

**LEON W. TUCKER, J.**

This appeal comes before the Superior Court following the dismissal of a Post Conviction Relief Act ("PCRA")[1] petition filed on October 6, 2014. On September 26, 2016, this court dismissed the PCRA petition for the reasons set forth below.

### I. PROCEDURAL HISTORY

George M. Tillery (hereinafter referred to as "Petitioner") was arrested and subsequently charged with homicide and related offenses stemming from the shooting death of John Hollis and the non-fatal shooting of John Pickens in October 1976 in the city of Philadelphia.

On May 29, 1985, following a jury trial presided over by the Honorable John Geisz, Petitioner was convicted of first-degree murder, aggravated assault, two counts of criminal conspiracy, and possessing an instrument of crime. After post-verdict motions were denied, the trial court imposed a sentence of life imprisonment on the murder conviction and lesser terms of incarceration on the remaining convictions. Following a direct appeal, Petitioner's judgment of



CP-51-CR-0305681-1984 Comm. v. Tillery, George
Memorandum Opinion

7888408021

---

[1] 42 Pa. Cons. Stat. §§ 9541-9546.

sentence was affirmed by the Superior Court on May 30, 1989, and the Pennsylvania Supreme Court denied *allocatur* on March 5, 1990.[2]

On September 16, 1996, through private counsel, Richard P. Hunter, Esquire, Petitioner filed his first PCRA petition. The PCRA court denied the petition on January 13, 1998. The Superior Court affirmed the PCRA court's order denying relief on April 21, 1999.[3] The Pennsylvania Supreme Court denied *allocatur* on August 18, 1999.[4]

Petitioner filed his second PCRA petition on August 13, 2007. On September 9, 2008, the PCRA court dismissed his petition as untimely. The dismissal of Petitioner's PCRA petition was affirmed by the Superior Court on July 15, 2009.[5] The Pennsylvania Supreme Court denied *allocatur* on December 9, 2009.[6]

On October 6, 2014, Petitioner filed the instant, *pro se,* collateral petition, his third.[7] Petitioner filed supplemental petitions on December 9, 2014 and June 15, 2016. Pursuant to Pennsylvania Rule of Criminal Procedure 907, Petitioner was served notice of the PCRA court's intention to dismiss his petition on August 19, 2016. Petitioner submitted responses to the Rule 907 letter on September 7 and September 21, 2016. On September 26, 2016, the PCRA court

---

[2] *Commonwealth v. Tillery*, 563 A.2d 195 (Pa. Super. 1989) (unpublished memorandum), *appeal denied*, 593 A.2d 841 (Pa. 1990).

[3] *Commonwealth v. Tillery*, 738 A.2d 1055 (Pa. Super. 1999) (unpublished memorandum).

[4] *Commonwealth v. Tillery*, 742 A.2d 674 (Pa. 1999).

[5] *Commonwealth v. Tillery*, 981 A.2d 937 (Pa. Super. 2009) (unpublished memorandum).

[6] *Commonwealth v. Tillery*, 985 A.2d 972 (Pa. 2009).

[7] The current version of the PCRA contains a provision permitting a defendant whose conviction became final prior to January 16, 1996, the date the current version of the PCRA took effect, to file a timely first PCRA petition within one year of that date. *See Commonwealth v. Alcorn*, 703 A.2d 1054, 1056-57 (Pa. Super. 1997) (holding that where a petitioner's judgment of sentence became final on or before the effective date of the amendment to the PCRA, the amended PCRA contained a provision whereby a first PCRA petition could be filed by January 16, 1997, even if the conviction in question became final more than a year prior to the date of the filing). Petitioner's most recently filed PCRA petition was neither his first nor was it filed within one year of the date the amendment took effect.

dismissed his PCRA petition as untimely.[8] On October 20, 2016, the instant notice of appeal was timely filed to the Superior Court.

## II. DISCUSSION

### A. Petitioner's current PCRA petition was manifestly untimely.

Petitioner's petition challenging the constitutionality of his conviction and legality of his detention was facially untimely. As a prefatory matter, the timeliness of a PCRA petition is a jurisdictional requisite. *Commonwealth v. Robinson,* 12 A.3d 477 (Pa. Super. 2011). A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa. Cons. Stat. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3).

Petitioner's judgment of sentence became final for PCRA purposes in June 1990 after the Pennsylvania Supreme Court denied *allocatur* and time period for filing a petition for writ of *certiorari* in the United States Supreme Court expired. *See id.*; U.S. Sup. Ct. R. 13 (effective January 1, 1990). Petitioner's *pro se* petition, filed on October 6, 2014, was therefore untimely by approximately twenty-three years. *See* 42 Pa. Cons. Stat. § 9545(b)(1).

### B. Petitioner was ineligible for the limited timeliness exceptions found in 42 Pa. Cons. Stat. § 9545 (b)(1)(i), (ii).

Despite the one-year deadline, the PCRA permits the late filing of a petition where a petitioner alleges and proves one of the three narrow exceptions to the mandatory time-bar under

---

[8] The Honorable Leon W. Tucker issued the order and opinion in this matter in his capacity as Supervising Judge of the Criminal Section of the Court of Common Pleas of Philadelphia – Trial Division as of March 7, 2016 as the trial judge is no longer sitting.

3

42 Pa. Cons. Stat. § 9545(b)(1)(i)-(iii). To invoke an exception, a petition must allege and the petitioner must prove:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* § 9545(b)(1)(i)-(iii).

In attempt to overcome the PCRA's statutory time-bar, Petitioner argued that his petition fell within the "governmental interference" exception, § 9545(b)(1)(i),[9] and the "newly-discovered evidence" exception, § 9545(b)(1)(ii).[10]

According to Petitioner, the new information triggering both exceptions was found in signed recantations from Emanuel Claitt and Robert Mickens, Commonwealth witnesses who provided extensive inculpatory testimony at Petitioner's trial. Both witnesses now assert that they were not present during the commission of the crime and fabricated the entirety of their detailed testimonies. *See* PCRA petition, 6/15/16 at exhibits A, B, C. According to Claitt and

---

[9] The "governmental interference" exception, § 9545(b)(1)(i) requires a petitioner to plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials and (2) the information on which he relies could not have been obtained earlier with the exercise of due diligence. *Commonwealth v. Williams*, 105 A.3d 1234, 1240 (Pa. 2014) (citing *Commonwealth v. Abu–Jamal*, 941 A.2d 1263, 1268 (Pa. 2008)).

[10] The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. *Commonwealth v. Bennett*, 930 A.2d 1264, 1271 (Pa. 2007). Due diligence demands that the petitioner take reasonable steps to protect his own interests. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001). A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. *Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001).

4

Mickens, a cabal of prosecutorial agents – assistant district attorneys and members of law enforcement – implemented a scheme of coercion and incentives to obtain fabricated testimony against Petitioner. *Id.*

Notwithstanding Petitioner has previously raised these claims in a prior PCRA,[11] his failure to demonstrate that the witnesses' statements could not have been obtained earlier by exercising due diligence was fatal to proving either statutory exception. Rather than detailing any specific efforts to contact Claitt or Mickens in the thirty-one years between his conviction and the filing of his instant petition, Petitioner instead argued that i) the circumstances of his confinement prevented communication and ii) irrespective of his inability to communicate, Claitt's and Mickens's decisions to recant could not have possibly been fostered at an earlier time. Neither argument is persuasive.

In support of his first assertion, Petitioner detailed a litany of general impediments to his ability to contact the witnesses. *See* PCRA petition, 6/15/16 at 10. Petitioner claimed, for example, that for twenty of the past thirty-plus years, his access to communication channels was "severely restricted." PCRA petition, 6/15/16. Even if Petitioner substantiated this claim with supporting evidence, and the court excluded those years from scrutiny, Petitioner failed to articulate any attempts to locate the witnesses during the remaining decade. Furthermore, although Petitioner cited instances of illness and frequent transfer between correctional facilities, he did not specify whether these incidents occurred during the non-restricted period of incarceration, and if so, for what duration. PCRA petition, 6/15/16 at 10-11. Petitioner's attempt to explain his inability to act for over thirty years was therefore patently insufficient to demonstrate due diligence.

---

[11] *See* PCRA petition, 8/13/07.

5

Alternatively, Petitioner relied upon the Superior Court's decision in *Commonwealth v. Davis,* 86 A.3d 883 (Pa. Super. 2014) and *en banc* decision in *Commonwealth v. Medina,* 92 A.3d 1210 (Pa. Super. 2014) in arguing that waiting for Claitt and Mickens to feel comfortable recanting was sufficient to meet his burden of due diligence. *See* 907 response, 9/7/16 at 7-11.

In *Davis,* the defendant was convicted of murder based, in part, on the testimony of Commonwealth witness Jerome Watson. *Davis,* 86 A.3d at 885–86. More than thirty years after the conclusion of Davis's trial, Watson recanted his trial testimony and revealed he made an undisclosed deal with the assistant district attorney. *Id.* at 888. The Superior Court held that since there was no indication at trial of any deal or expected leniency, it would have been unreasonable to require that Davis conduct a search prior to receiving Watson's affidavit detailing possible governmental interference. *Id.* at 890–891.

In *Medina,* the defendant was convicted of murder based, in part, on the testimony of two Commonwealth witnesses. *Medina,* 92 A.3d at 1213. More than a decade after the conviction, the witnesses recanted their trial testimonies. *Id.* at 1213–1214. The Superior Court upheld the PCRA court's finding that Medina satisfied the newly-discovered evidence exception to the statutory time-bar. *Id.* at 1218.

In both *Davis* and *Medina,* the Superior Court's due diligence analysis centered on the fact that neither Davis nor Medina had reason to believe they could elicit exculpatory information from the respective witnesses. *Davis,* 86 A.3d at 890; *Medina,* 92 A.3d at 1218–1219.

Here, Petitioner would have been aware that Claitt and Mickens falsely inculpated him at trial. Furthermore, in 2007, nine years before acquiring the affidavits supporting the instant petition, Petitioner claimed to have uncovered evidence that the witnesses perjured themselves

6

regarding undisclosed preferential treatment from the Commonwealth in exchange for their testimonies. *See* PCRA petition, 8/13/07. Based upon Petitioner's purported discovery of the Commonwealth's role in suborning Claitt and Mickens, Petitioner had reason to believe that the witnesses may be amenable to disclosing their fabricated testimony.

Not only were the instant facts distinguishable from those in *Davis* and *Medina*, the Superior Court in *Davis* also evaluated whether Davis exercised due diligence in discovering proof that the witness fabricated his murder confession, a fact that would have been immediately known to Davis. *Davis*, 86 A.3d at 890–91. In concluding that Davis did exercise due diligence, the Superior Court relied upon Davis's affidavits detailing attempts by family members and friends to contact the witness after trial to convince him to admit that he lied on the stand. *Id.* at 891. Again, *Davis* is of no benefit to Petitioner, who failed to demonstrate any efforts by either himself, or anyone on his behalf, to contact either witness prior to 2016.

Ultimately, Petitioner argued that because Claitt's and Mickens's statements indicated that they only recently desired to "clear their consciences," any effort on his part to urge their emotional cleansing would have been fruitless.[12] *See* PCRA petition 6/15/16 at 10 ("It rested with Robert Mickens and Emanuel Claitt to decide to come forward."). In other words, Petitioner suggested that known, untruthful witnesses may be reasonably afforded an indefinite time for reflection, free from pleas from aggrieved petitioners. The PCRA court does not agree. Petitioner's attempt to circumvent his duty to act diligently by speculating that any interaction prior to 2016 would have been futile was unavailing.

---

[12] The fact that both witnesses chose to "clear their consciences" immediately upon speaking with Petitioner's attorney, Rachel Wolkenstein, in 2016, weakens Petitioner's intimation that the witnesses were previously impervious to persuasion. *See* Supplemental petition, 9/7/16 at 12.

7

## IV. CONCLUSION

This court has once again evaluated an untimely collateral petition (his third) filed by Mr. Tillery. Petitioner failed, however, to plead and prove an exception to the timeliness provision found in either subsections 9545 (b)(1)(i) or (ii). Additionally, Petitioner was not entitled to habeas corpus relief.[13] Accordingly, for the reasons stated herein, the decision of the court dismissing the collateral petition should be affirmed.

**BY THE COURT:**

LEON W. TUCKER, J. /NV

---

[13] Petitioner erroneously contended that the Department of Corrections ("DOC") lacked legal authority for his continued detention due to the lack of a written sentencing order, in contravention of 42 Pa. Cons. Stat. § 9764(a)(8) and 37 Pa. Code § 91.3. *See Joseph v. Glunt*, 96 A.3d 365 (Pa. Super. 2014) (concluding that the PCRA did not subsume an illegal-sentence claim based on the inability of the DOC to produce a written sentencing order). Upon review, the Honorable John Geisz entered sentencing orders in this matter on December 9, 1986. Additionally, upon reviewing the criminal docket through the Common Pleas Case Management System, Petitioner's sentence was accurately docketed by the Clerk of Courts of this court. The Superior Court has held that even when the DOC lacks possession of a written sentencing order, it has continuing authority to detain a prisoner. *Id.* at 372.

8