# EXHIBIT I

## Commonwealth v. Claitt

## N.T. 9/17/81

IN THE COURT OF COMMON PLEAS

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

CRIMINAL TRIAL DIVISION

- - -

COMMONWEALTH

: APRIL TERM, 1979

: NO.809-UNAUTH USE AUTO
     810-THEFT, RSP

: - - -

MAY TERM, 1980

: 1024-THEFT, RSP
: 1025-UNAUTH USE AUTO

- - -

: AUGUST TERM, 1980

: NO.2093-ATT ARSON PERS
     ATT ARSON PROP
: 2094-ATT CRIM MISCH
   2095-PIC GEN
:    PIC WEAPON
   PROHIB OFF WEAPON
: 2096-RISK CAT

EMANUEL M. CLIATT
   2097-CONSPIRACY

- - -

Room 615, City Hall

Philadelphia, Pennsylvania

- - -

September 17, 1981

- - -

RECEIVED

FEB 19 1982

DISTRICT ATTORNEY'S OFFICE

BEFORE:

HONORABLE LEON KATZ,

PRESENT:

LEONARD ROSS, ESQUIRE
Assistant District Attorney
For the Commonwealth

MYRON DEUTSCH, ESQUIRE
Court Appointed Counsel
For the Defendant

- - -

COMMONWEALTH VS. EMANUEL M. CLIATT

SEPTEMBER 17, 1981

MR. ROSS:  Your Honor, the matter
that's before us is Commonwealth vs. Emanuel
Cliatt.  There are five matters before you.
Two matters, and I will give you, for the
record, Mr. Cliatt has already pled guilty to.

THE COURT:  What are the bill numbers?

MR. ROSS:  They are CP 8008, 1067,
charging the defendant with manufacture with
intent to deliver a controlled substance.
Also before Your Honor deferred is 8008,
1328 to 1330, which is another drug case,
which the defendant pled guilty to.  And to
be honest with you, I'm not sure, I think
it's again with possession with intent to
deliver.

Then there are three open matters
that are listed before you, Your Honor.  They
are CP 8008, 2093 to 97, charging the defendant
with various charges, involving arson, crim-
inal mischief, risking catastrophe, conspiracy.
This case, Mr. Cliatt will enter a guilty plea

as to one of those bills, and the other bills, with regard to that case, will be nol-prossed.

The other two cases that remain, that are open, are 7904-809 and 810, which will be nol-prossed upon sentencing, and 8005, 1024 to 1025, which will be nol-prossed--

THE COURT:  80 what?

MR. ROSS:  8005, 1024 and 1025. That will also be nol-prossed after Your Honor sentences Mr. Cliatt.

Those two cases, Your Honor, both involve the possession and use of stolen automobiles.  Those are the two cases that the Commonwealth is going to nol-pros.

Mr. Cliatt will be pleading guilty to the one bills that's remaining, number, that's Bill 2097, Judge, August of 1980.

THE COURT:  What's the charge?

MR. ROSS:  Charing the defendant with criminal conspiracy, where the object is arson, risking catastrophe; overt act, did possess an explosive device.  Co-defendants in the case are George Rose, George Tillary, and Douglas Smith, and George Grant.

THE COURT:  Are there any other
cases other than the ones you mentioned that
are open or pending against this defendant?

MR. ROSS:  No.  Is that right?

MR. DEUTSCH:  No.

MR. ROSS:  I believe.

MR. DEUTSCH:  The only thing is--

MR. ROSS:  Montgomery County.

THE COURT:  I'm talking about
Philadelphia.

MR. DEUTSCH:  In Philadelphia, no,
sir.

MR. ROSS:  This is it, Judge.

MR. DEUTSCH:  It involves an auto-
mobile.

THE COURT:  Are you saying to me
that if and when he pleads guilty to 2097,
and the others are nol-prossed at the time of
sentencing, then all of the cases pending
against him are completed in Philadelphia
County?

MR. ROSS:  Yes, that's my understand-
ing, Judge.

MR. DEUTSCH:  That's right.

THE COURT:  Any you're prepared
for sentencing on the other matters today?

MR. DEUTSCH:  If I may, Your Honor--

(Conference by defense counsel with
defendant off the record.)

THE COURT:  I don't want to have
a piecemeal sentence because this case has
been kicking around a long time.

MR. ROSS:  I agree with Your Honor.
I think the sentence should all be imposed
on one day.  The Commonwealth has no objection
to however it's done.  If Mr. Cliatt wants
to plead guilty today and be sentenced on all
of them, that's fine.  If he wants to be con-
tinued, that's fine.  Whatever Mr. Cliatt
wants.

THE COURT:  How about the matter
that we discussed earlier, matters that are
pending, without going into detail?

MR. ROSS:  Without going into
detail, Mr. Cliatt has continued his cooper-
ation, Your Honor.

THE COURT:  You feel confident that
that cooperation will continue even after

sentencing?

MR. ROSS:  Yes, it does, Your Honor,
because Mr. Cliatt knows that should he not
cooperate, then the Commonwealth's safekeeping
of him will stop.

THE COURT:  Are you prepared to
make a recommendation as to sentencing in
all these cases?

MR. ROSS:  As part of the negotiation
the Commonwealth agreed to make no recommend-
ation, so that we are bound not to make a
recommendation.

MR. DEUTSCH:  I was informed, while
sitting in Your Honor's courtroom, by Mr. Cliatt,
that some of this cooperation Mr. Ross speaks
about has extended to certain other areas
that Mr. Ross is not responsible for.

THE COURT:  In Philadelphia?

You don't have to say what, is it
in Philadelphia?

MR. ROSS:  Can we have a second?

(Conference by district attorney
with defense counsel off the record.)

MR. DEUTSCH:  Perhaps I should

8

speak to you at side bar?

THE COURT:  Is he prepared to plead guilty now to the one bill?

(Conference by defense counsel with defendant off the record.)

THE COURT:  Otherwise I can sentence him on the other bills and he could ask for a jury trial, or non-jury trial on the other bill.

(Conference by defense counsel with defendant off the record.)

MR. DEUTSCH:  All right.

(Off the record discussion in open court.)

MR. DEUTSCH:  Mr. Cliatt is prepared to plead to one bill out of the, I think, Bill 2097.

THE COURT:  Conspiracy.

MR. DEUTSCH:  Yes.  And--

THE COURT:  Agree that the other bills will be nol-prossed at the time of sentencing.

MR. DEUTSCH:  Yes, that was the agreement, Your Honor.  And that's been the

agreement for some time.

THE COURT:  Do you have that bill here?

COURT CLERK:  Yes, I do, Judge.

THE COURT:  Let's go on with the guilty plea.

MR. ROSS:  Does Your Honor wish me to conduct the colloquy?

THE COURT:  Yes.

(Whereupon defendant approached the bar of the court.)

EMANUEL M. CLIATT, 5148 Green Street, SWORN:

MR. ROSS:  Mr. Cliatt, how old are you?

THE DEFENDANT:  Twenty-eight.

MR. ROSS:  Do you read, write, and understand the English language?

THE DEFENDANT:  Yes, I do.

MR. ROSS:  How far did you go in school?

THE DEFENDANT:  Eleventh grade.

MR. ROSS:  Are you presently under the influence of any narcotics or alcoholic

beverages?

THE DEFENDANT:  No.

MR. ROSS:  Where are you presently
located, in terms of where you're living--
strike that--are you presently incarcerated
or out on the street?

THE DEFENDANT:  Incarcerated.

MR. ROSS:  And how long have you
been incarcerated?

THE DEFENDANT:  Three months.

MR. ROSS:  Approximately?

THE DEFENDANT:  As of today, three
months.

MR. ROSS:  Now, Mr. Cliatt, have
you ever been under the care of a psychiatrist
or in a mental institution?

THE DEFENDANT:  No.

MR. ROSS:  Do you understand that
you're here today charged with, in this
particular case, four Bills of Indictment
involving a fire bombing that occurred on
or about November 11th, 1979?  Do you under-
stand that?

THE DEFENDANT:  Yes.

MR. ROSS:  And that you are accused,
along with others, of having attempted to
blow up a certain house.  Do you understand
that?

THE DEFENDANT:  Yes.

THE COURT:  What's the date?

MR. ROSS:  November 11th, 1979.

THE COURT:  All right.

MR. ROSS:  Now, you understand,
Mr. Cliatt, that you have an absolute right
to go to trial on all the Bills of Information
that are presented against you regarding that
attempted bombing.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Do you understand that
at that trial you would have a right to
either have a jury trial or a trial by a
judge sitting without a jury?  If you chose
to be tried by a jury you would participate,
along with your counsel, in selecting members
of the community that would sit in judgment
of you.  They would hear the case and listen
to the evidence and then decide whether or
not the Commonwealth proved you guilty beyond

a reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  And do you understand
that those citizens would be your peers, that
is, jury would be selected from the citizens
of Philadelphia?  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Do you understand that
their verdict would have to be unanimous,
Mr. Cliatt, that is, all twelve of the people
that you and your counsel, along with the
district attorney and the judge selected to
be on the jury, would have to be convinced
beyond a reasonable doubt that you were guilty
before you could be found guilty?

THE DEFENDANT:  Yes.

MR. ROSS:  Do you understand,
further, that the burden of proof that the
Commonwealth has is that of a reasonable
doubt.  That means that the Commonwealth has
to prove, through the evidence, to a jury's
satisfaction, or to the judge's satisfaction,
that you were guilty beyond a reasonable doubt.
And reasonable doubt is the kind of doubt

that would arise from the evidence or the lack of evidence that would cause a reasonable man to refrain from acting in a matter of the upmost importance to himself.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  That that's how the Commonwealth would have to prove you guilty, beyond a reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  If you went to trial you would have the right, whether it was a jury trial or a waiver trial, to cross examine the witnesses that were presented against you.  That is, the witnesses would be called to testify.  You would listen to their direct testimony and your attorney would have the right to ask them questions.  That's called cross examination.  However, by pleading guilty you're giving up your right to confront those witnesses against you and instead, the Commonwealth would merely give a summary to the judge about the incident.  Do you under-

stand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Now, if you went to trial you would also have the right to testify and present evidence in your own behalf. However, if you did not wish to testify or present evidence in your own behalf, there is nobody that could force you to do so. But, if you chose to do so, you could.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Now, by pleading guilty you're giving up various other rights.  For instance, if you went to trial you would have the right to present to this Court what's called a Motion to Suppress.  You could allege that a statement that you gave to the detectives about this case was gotten in violation of your legal rights.  And, you could ask the Court to rule that the Commonwealth could not use that statement.  By doing so, if the Court agreed with you, the Commonwealth would be precluded from using that against you.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  By pleading guilty,
however, you are giving up all your rights
to argue a Motion to Suppress, and you're
saying to the Court that all the evidence
that the Commonwealth has can be used against
you.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Now, I indicated to you
that there were two types of trial.  If you
chose to be tried without a jury, then the
judge alone would have to be convinced beyond
a reasonable doubt that you were guilty,
instead of the twelve people of the jury.
Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Everything else would
be the same.  You would have the same rights
and the same rules would apply, whether it
was a jury trial or a non-jury trial.  Do
you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Mr. Cliatt, by pleading
guilty you are giving up certain appellate

rights.   That is, if you were found guilty
you would have the right to argue in the
Superior Court of Pennsylvania that certain
mistakes were made during your trial, and
ask them to either discharge you or to grant
you a new trial.

By pleading guilty, however, you
are limiting your rights to raise certain
issues on appeal, and you're limited to three
issues.   The only issues that you could raise
on appeal by pleading guilty are, the juris-
diction of the Court, that is, whether or not
the incident happened in Philadelphia; the
legality of the sentence that is finally
imposed upon you by this Court; and, the
voluntariness of your plea.   Those are the
only three things that you could raise on
appeal.   Do you understand that?

THE DEFENDANT:   Yes.

MR. ROSS:   Do you understand that
by answering these questions you're indicating
to the Court in that you are making a voluntary
plea, that is, that you, nobody is forcing
you to do this.   Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Do you understand you're further bound by your answers today?  You cannot change your mind tomorrow and say that you didn't understand what was asked of you if today you said you understood it.

THE DEFENDANT:  Yes.

MR. ROSS:  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Now, with regard to sentencing in this particular case, you will be pleading guilty to a conspiracy bill where the maximum penalty is five to ten years in prison.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  That means that when the judge sentences you, unless the sentence exceeds that five to ten year period, that would even limit your appellate rights even further.  Do you understand that?

THE DEFENDANT:  Yes.

MR. ROSS:  Now, by pleading guilty to conspiracy what you are pleading guilty to is the fact that you made an agreement

with one or more other individuals to do a
crime.  In this particular case we're saying
that the crime was arson and making a bomb
to explode an individual's house.  Do you
understand that?

       THE DEFENDANT:  Yes.

       MR. ROSS:  And that by pleading
guilty you are agreeing with the Commonwealth
that you did an overt act, in this particular
case, the overt act is that you did possess
an explosive device, the one that was actually
attempted to bomb the house.  Do you understand
that?

       THE DEFENDANT:  Yes.

       MR. ROSS:  Do you understand by
pleading guilty you are admitting that the
facts contained in the Bill of Information,
that is, that you did make the agreement,
that you did have that criminal objective,
and that you did that overt act in fact are
true?  Do you understand that?

       THE DEFENDANT:  Yes.

       MR. ROSS:  All right.  Now, has
anybody threatened you or forced you in any

way to get you to plead guilty here today?

THE DEFENDANT:  No.

MR. ROSS:  Are you doing this of your own free will and based on your own decision, after consultation with your attorney and discussions about this?

THE DEFENDANT:  Yes.

MR. ROSS:  Are you satisfied with Mr. Deutsch as your lawyer, in that you feel that he's had enough time to properly prepare the case, does he know enough about the case to properly represent you, and give you the advise that he's given you?

THE DEFENDANT:  Yes.

MR. ROSS:  Do you understand further that by pleading guilty here today you are giving up all rights you have to putting forward a defense.  I'm not sure what kind of defense you could have in an arson and a bombing case, but for instance, you could say at some point that you didn't know what you were doing was wrong because you were mentally ill.  That would be an insanity defense.  By pleading guilty here today you could not later

raise that on appeal and say you should not have pled guilty because at the time you had a defense available to you, whether it was true or not, doesn't make any difference. So, that you could not raise on appeal the fact that you wanted to raise a defense. Do you understand that?

THE DEFENDANT: Yes.

MR. ROSS: Do you have any questions now, Mr. Cliatt, with regard to your guilty plea?

THE DEFENDANT: No.

MR. ROSS: Does Your Honor have any additional questions?

THE COURT: No.

MR. DEUTSCH: I have no questions.

THE COURT: Do you understand there are no promises?

MR. ROSS: I'm sorry.

THE COURT: Here, as there aren't in the other cases, as to what your sentence would be. You've been told there's a poss- ibility of a maximum of five to ten years plus a fine. And although that's the maximum,

that's not an indication you will get it,
nor is there any indication that you won't
get the maximum.  Is that clear, or any other
sentence in between?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.

COURT CRIER:  Emanuel M. Cliatt,
to this Bill of Information 2097, August
Sessions, 1980, charging you with criminal
conspiracy, to this Bill of Information how
say you, guilty or not guilty?

THE DEFENDANT:  Guilty.

COURT CRIER:  Your Honor, defendant
pleads guilty to Bill of Information Number
2097.

MR. ROSS:  Your Honor, a brief
summary of the facts, just for the record,
if I might.

THE COURT:  Yes.

MR. ROSS:  Your Honor, on November
11th, 1979, at 5935 Wister, W-I-S-T-E-R
street, in the County of Philadelphia, there
was an explosive device that was placed on
the porch of the home, of an individual by

the name of Kenneth Washington.  At that time the device did not explode.

It was subsequently taken by the Philadelphia bomb squad and subsequently exploded at the Police Academy in an area that they have designed specifically for the exploding of explosives that have been confiscated.

Some time in 1980 Mr. Cliatt came forward, after a number of statements that he gave to the police regarding other cases, he gave the police a statement indicating his involvement in the attempted bombing of the home that was owned by Kenneth Washington. In that he indicated that he made an agreement, if not oral, certainly a tacit agreement with George Tillary, who was a business associate, George Rose, who was a business associate, and Douglas Smith, who was a business associate of Mr. Cliatt's, and all of them were part of the same business conspiracy at the time to get even with Mr. Washington for certain wrongs that had been committed against Major Tillary.

In the statement Mr. Cliatt indicated to the police that he was instrumental in picking up certain explosives from an individual named George Grant.  He was also present at the time the explosive device was placed at Mr. Washington's home, was there at the time, although he didn't participate other than being there.  That when the explosive device did not go off, several gun shots were fired at it in an attempt to make it explode, which it didn't.  And eventually they left the scene.

Mr. Cliatt has reiterated the statement he gave to the police at two separate preliminary hearings involving George Rose and Douglas Smith, who have been apprehended and their cases are pending before this Court with regard to the bombings.

That in brief summary, Your Honor, is the matter that Mr. Cliatt is pleading guilty to.

Mr. Cliatt, do you understand the facts as I've just basically summarized them to the Judge?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any corrections as to the facts as read by the D.A.?

THE DEFENDANT:  No, sir.

THE COURT:  All right.

MR. ROSS:  That would be all I have for the summary.  Mr. Cliatt has indicated he already pled guilty.

THE DEFENDANT:  Yes.

THE COURT:  He's entered a plea on this bill already.

MR. ROSS:  Yes, he did, Your Honor.

THE COURT:  Let me recapitulate what I have.  This case has been on the books for some time.  I have a guilty plea on Bill 8008-1067, which is for the manufacture and sale of drugs, which carries a maximum sentence of fifteen years.

MR. ROSS:  That's correct.

THE COURT:  I also have a guilty plea previously entered by the defendant on 8008, 1329, which is possession of drugs, which carries a maximum sentence, if it's the first offense, as I believe it is, of one

year.  Is that correct?

MR. ROSS:  I defer to Your Honor.
I think that is correct.  I was unclear when
I gave you the brief summary.

THE COURT:  That's why I'm correcting
it.  My record indicates 1329.

MR. ROSS:  All right.

THE COURT:  Today he's pled guilty
to Bill 8008-2097, which is the conspiracy
bill, arson, involving a fire bombing wherein
we just heard the summary.  And, that has a
five to ten year maximum sentence.  Is that
correct?

MR. ROSS:  That's correct, Your
Honor.  Your Honor, if I might just interrupt,
I would just also remind the Court, or perhaps
let the Court know, for the first time, as
part of the plea agreement, although we make
no recommendation as to the sentence, we do,
as part of it, ask the Court to give Mr. Cliatt
one sentence, and to have the other sentences
run concurrently.  That was part of the agree-
ment that whatever sentences he got would run
concurrently, so whatever maximum Your Honor

has determined, and minimum, make that on one
bill and then have the others to run concurrent
with that.

THE COURT:  All right.  All the
other bills that are open against this defend-
ant in Philadelphia County only, because I
don't have jurisdiction in the others, and
the others are to be nol-prossed at the time
of sentencing which will be today.

MR. ROSS:  The bills that are before
Your Honor, today.

THE COURT:  That includes the recent
bills that you mentioned, 8005, 1024 and 1025,
possession and use of the automobiles.

MR. ROSS:  That's correct, Your
Honor.

THE COURT:  All right.

MR. ROSS:  And also 7904, 809.

THE COURT:  Yes.

MR. ROSS:  Which is another theft
of an auto.  There are two separate incidents,
two separate cars.

THE COURT:  Either of you gentleman
or the defendant wish to say anything before

I pronounce sentence, and of course, I assume
we all agree at this time that both defense
counsel, the D.A., has examined the pre-sentence
investigation, mental health evaluation, and
unless I hear to the contrary I will assume
that there are no corrections as far as the
factual and history contained therein.

MR. DEUTSCH:  I think there was just
one correction that Mr. Cliatt is the father
of three children.  I noticed it said two
children.

THE COURT:  All right.

MR. DEUTSCH:  And that's the only
thing I saw.

THE COURT:  Also the drug evaluation
which I didn't mention.

MR. DEUTSCH:  Yes, we have read it.
That was provided before this hearing and we
have read it.

THE COURT:  I also want to put on
the record that I have received from Leonard
N. Ross, assistant district attorney of the
homicide unit, a letter dated January 5th,
1981, and without being specific, for reasons

that I think we all concur, Mr. Ross has

outlined a pattern of cooperation of a mean-

ingful nature on the part of the defendant.

And, that in response to my question, Mr.

Ross has indicated that he's confident that

that cooperation will continue.  Is that correct,

sir?

MR. ROSS:  Yes, Your Honor.  And

if it doesn't there's. I'm confident--

THE COURT:  For whatever reason

you're confident, you are confident it will

continue.

MR. ROSS:  Yes, sir.

THE COURT:  Am I to understand

from the defendant and/or counsel, that the

defendant has been incarcerated for a period

of three months on this case, or on one of

these cases as a result of a bench warrant

that I issued?

MR. DEUTSCH:  That's correct.  That's

as a result of a bench warrant alone.

THE COURT:  Whatever time I give

him, he has approximately three months credit.

MR. ROSS:  Judge, actually, to be

honest, he's probably got close to a year

on these cases. What was basically happening,

Judge, is just to be very quick about it,

and it's hard to distinguish exactly what,

he had so many cases open and so many detainers

and bench warrants, that's something the prison

may have to figure out. He was released for

a period of time and then he wouldn't show

up when he was supposed to and he would be

arrested for a while--

      THE COURT: We're not going to get

involved in that mathematics. It's not

germaine to what the sentence is.

      MR. ROSS: Whatever the sentence

Your Honor gives, if you just add the words

"To be given credit for whatever time he's

served on these cases," and if that's a problem

we can certainly straighten it out at a later

date.

      MR. DEUTSCH: I understand--I

recognize the seriousness of the charges to

which the defendant has pled guilty. And,

I'm sure the district attorney shares that with

me as does his counsel. I also recognize the

importance of the cooperation that he's extended.

THE COURT: Must keep in mind that although one cooperates with the Commonwealth, we cannot wash out the fact that he's been convicted of at least nine crimes, possibly more, including the crimes to which he pled guilty today, because as of the time of the pre-sentence investigation, as stated on the face sheet, he was convicted of seven crimes and he's pled guilty today to another one, so it's at least eight.

He's had two commitments. He's had one probation violation, without any juvenile record.

The recommendation of the pre-sentence investigator is incarceration. And, if it were not, if it were not for the cooperation extended to the Commonwealth, I would think that full justification that this defendant should receive a maximum sentence of seven and a half to fifteen years on the drug charge, namely 1007, manufacture, sale, and delivery of drugs. Not that I'm minimizing the other

charges, such as the conspiracy to fire bomb the house and the possession of the drugs.

However, I'm taking that into consideration because I think, in the field of law enforcement, that there are many times when we cannot prosecute career criminals or criminals who commit acts of violence without the cooperation of either co-defendants or others who have information. And that's, I think, what is present in this case.

MR. ROSS:  Judge, might I just comment briefly on that one fact for the record, so Your Honor will have some--

THE COURT:  Please do.

MR. ROSS:  In these particular cases, Your Honor, none of those cases could have been brought to trial without Mr. Cliatt's statements.  The two homicide matters, as well as the bombings, although we basically knew who was involved, Judge, we had no hard evidence to present to a Court until Mr. Cliatt made his statements.  Everything that you said in general terms is specifically true in this particular case.  Those five

cases or so that have been presented, and
people have been arrested for, could not have
happened without Mr. Cliatt's statements and
cooperation.

THE COURT:  I think that the de-
fendant should be subject to the parole
authorities.

What happened in the probation cases?
Didn't he have three probations pending?

MR. DEUTSCH:  As I understand it,
Your Honor, we tried a case a number of years
ago before Judge Kubacki and he's the one that
put him on the probation.  Although, there's
been some arrests and detainers and back and
forth, it's always been with Judge Kubacki.
It was a five year probation and we got through
about three and a half, almost four without
too much trouble, and it was only in the last
year of the probation that it began to break
down from these other matters.  The actual
date of expiration was July 10th, 1981.  If
you take it into five annual years.

MR. ROSS:  The other judge, Judge
Caesar, was the Municipal Court case of which

Mr. Cliatt appealed and then Judge Kubacki

had the exact same case. So, there   really

is only one judge in terms of probation, and

the only one that's active is Judge Kubacki.

And I would say for the record, Judge Kubacki's

indication was that probably, regardless of

what Your Honor did, he would terminate his

probation since you would have him under some

kind of supervision, either your own personal

supervision or state parole supervision if

Your Honor were to sentence him.

THE COURT:  Do you have anything

to say, Mr. Cliatt, yourself?

MR DEUTSCH:  Could we start, Your

Honor, with my discussing that matter with

you at side bar, and then--

THE COURT:  What matter, sentencing

matter?

MR. DEUTSCH:  No, having to do

originally when we talked about some cooper-

ation, there was something I wanted to say

off the record.

THE COURT:  All right.

(Conference in chambers off the

record.)

(The following is in open court:)

THE COURT:  All right, Mr. Cliatt, for the reasons that I've stated, and upon analysis of the pre-sentence report, mental health evaluation, the drug evaluation, the letter from Mr. Ross that I alluded to dated January 5th, 1981, sentence of the Court is as follows--

MR. ROSS:  Judge, excuse me for just one second, before you do that, the question that you asked Mr. Cliatt, whether he had anything to say remained unanswered.

THE COURT:  Do you have anything to say, sir, before I sentence?

THE DEFENDANT:  Yes, sir.

THE COURT:  Please say it.

MR. DEUTSCH:  He did want to address the Court.

THE COURT:  Go ahead.

THE DEFENDANT:  What I wanted to say was, that as far as my life, as far as my life of being involved in crime, you know, I think, not only think, I know that, you know,

I'm through with crime as far as I'm concerned because, you know, I'm not accepted amongst the hustlers and people in the street, doing the things that are wrong, because I have told and testified on these people.  My type is not accepted amongst that type no more.  I'm saying whatever you sentence me to today, Your Honor, like, you know, after this, you know, this is it.

THE COURT:  What you're saying to me is you really don't have any choice because you're not going to be trusted, in a way.  That's a hard way of walking the straight and narrow, but apparently that's, whatever reason it is, we should all be thankful that you're going to get out of the field of crime.

THE DEFENDANT:  Yes, sir.

THE COURT:  For your own sake, it would have been better if you never got in as deeply as you did.  Nevertheless, is there anything else you want to say?

THE DEFENDANT:  No, Your Honor.

THE COURT:  On Bill 1067, which is the drug bill that I mentioned, wherein the

maximum is fifteen years, sentence of the Court is to undergo a period of incarceration of not less than eighteen months nor more than seven years.

On Bill 1329, which is the possession, where the maximum is one year, the sentence of the Court is six to twelve months to run concurrently with the bill imposed on 1067.

On Bill 2037, which is the conspiracy and fire-bombing case, where the maximum is ten years, the sentence of the Court is to undergo a period of incarceration of not less than one nor more than five years. And that sentence is to run concurrently with the sentence imposed on 1067.

I will entertain a motion to nol-pros all other bills.

MR. ROSS:  Judge, I will move to nol-pros all the remaining bills that are before you.

THE COURT:  Motion is granted. All other bills are nol-prossed.

Mr. Ross, would you advise him as to his rights to appeal any or all of the

sentences imposed today?

MR. ROSS:   Mr. Cliatt, you have thirty days from today in which to appeal the sentences that have just been handed down on all these cases.  Since you pled guilty, as I indicated, you're appellat rights are severely limited.

If you do not notify that you wish to appeal within thirty days, your right to appeal will be considered to be waived.

You have, however, ten days also for you to file a motion with this Court to modify the sentence that was imposed upon you, and you must do that prior to your perfecting your appeal or notice of appeal to the Superior Court.

If you cannot afford to have a lawyer to represent you, one will be appointed for you free of charge.  Mr. Deutsch will notify the appellate court if you wish to appeal, if you want to do so, and then a lawyer will be appointed for you if you could not afford one and wanted one.  Do you under-stand that?

38

THE DEFENDANT:  Yes.

THE COURT:  Do you have any questions about your sentence?

MR. DEUTSCH:  Would Your Honor be kind enough in some way to indicate on the record that he, it's your understanding that he's to get credit through the prison auth- orities for all time served?

THE COURT:  I will make that very clear.  It's the intention of this Court for the defendant to get any and all credit that he's entitled to.  All right.

THE DEFENDANT:  Thank you.

MR. DEUTSCH:  Thank you.

* * *