EXHIBIT J

<u>Commonwealth v. Claitt</u>

N.T. 11/28/80

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

CRIMINAL TRIAL DIVISION

COMMONWEALTH

VS.

EMANUEL CLIATT

APRIL TERM, 1979

0809 – UNAUTHORIZED USE
AUTO/OTHER VEHICLE

0810 – THEFT, UNLAWFUL
TAKING/DISPOSITION

THEFT, RECEIVING
STOLEN PROPERTY

- - - - - - - - - -

: MAY TERM, 1980

: 1024 – THEFT, UNLAWFUL
TAKING/DISPOSITION

THEFT, RECEIVING
STOLEN PROPERTY

1025 – UNAUTHORIZED USE
AUTO/OTHER VEHICLE

: AUGUST TERM, 1980

: 1067 – KNOWINGLY POSS.
CONTROLLED SUBSTANCE

MANUFACTURING WITH
INTENT TO MANUFACTURE/
DELIVER CONTROLLED
SUBSTANCE

COMMONWEALTH

VS.

EMANUEL CLIATT

AUGUST TERM, 1980

1328 - POSS. INSTRUMENT CRIME, GENERALLY

POSS. INSTRUMENT CRIME, CONCEALED WEAPON

1329 - KNOWINGLY POSS. CONTROLLED SUB-STANCE

MANUFACTURING WITH INTENT TO MANU-FACTURE/DELIVER CONTROLLED SUB-STANCE

1330 - CRIMINAL CONSPIRACY

AUGUST TERM, 1980

2093 - ATT. ARSON--PERSON

ATT. ARSON--PROPERTY

2094 - CRIMINAL MISCHIEF

2095 - POSS. INSTRUMENT CRIME, GENERALLY

POSS. INSTRUMENT CRIME, CONCEALED WEAPON

PROHIBITED OFFEN-SIVE WEAPON

2096 - RISKING CATASTROPHE

1097 - CRIMINAL CONSPIRACY

COMMONWEALTH

VS.

EMANUEL CLIATT

: AUGUST TERM, 1980

: 1656 — SIMPLE ASSAULT

:          AGGRAVATED ASSAULT

: 1657 — RECKLESSLY END.
         PERSON

------------

: AUGUST TERM, 1980

: 713 — RECKLESSLY END.
        PERSON

:          TERRORISTIC THREATS

: 714 — CRIMINAL CONSPIRACY

: 715 — SIMPLE ASSAULT

:          AGGRAVATED ASSAULT

: 716 — CARRYING FIREARM
        PUBLIC STREET

:          UNLAWFUL CARRYING
           FIREARM W/O LICENSE

:          CARRYING FIREARM W/O
           IN VEHICLE

----------

: AUGUST TERM, 1980

: 717 — POSS. INSTRUMENT
        CRIME, GENERALLY

:          POSS. INSTRUMENT CRIME,
           CONCEALED WEAPON

: 718 — THEFT

:          RECEIVING STOLEN PROPERT

: 719 — ROBBERY

NOVEMBER 28, 1980

COURTROOM 615, CITY HALL

----------

DISPOSITION

----------

BEFORE:        HONORABLE LEON KATZ, J.

----------

PRESENT:       JEFFREY MINEHART, ESQUIRE
               ASSISTANT DISTRICT ATTORNEY
               FOR THE COMMONWEALTH


               MYRON H. DEUTSCH, ESQUIRE
               COUNSEL FOR THE DEFENSE


               EMANUEL CLIATT,
               DEFENDANT

----------

# I N D E X

----------

COLLOQUY BY THE COMMONWEALTH                     PAGE  12

COLLOQUY BY DEFENSE COUNSEL                            22

COLLOQUY BY THE COMMONWEALTH                           28

COLLOQUY BY DEFENSE COUNSEL                            30

COLLOQUY BY THE COURT                                 31

COLLOQUY BY THE COMMONWEALTH                           32

COLLOQUY BY THE COURT                                 38

----------

ARRAIGNMENT OF THE DEFENDANT                           55

----------

THE COURT:  ALL RIGHT, ARE WE READY?

COURT CRIER:  YOUR HONOR, THIS IS CASE No. 1.  IT IS ALSO CASE No. 3 AND CASE No. 5 AND CASE No. 6, ALL DEALING WITH EMANUEL CLIATT.

MR. MINEHART:  WELL, LET'S HOLD ON.

(WHEREUPON THE CASE WAS SET ASIDE WHILE THE CALLING OF THE LIST CONTINUED.)

(LATER)

THE COURT:  ARE YOU READY?

MR. MINEHART:  YES, SIR, YOUR HONOR.

BY THE COURT CRIER:  (TO DEFENDANT)

Q.     WOULD YOU STATE YOUR FULL NAME AND SPELL YOUR LAST NAME?

A.     EMANUEL CLIATT, C-L-I-A-T-T.

Q.     AND YOUR ADDRESS?

A.     5148 GREENE STREET.

BY THE COURT:

Q.     WHAT STREET?

A.     GREENE.

Q.     IS THAT AN "E" ON THE END?

A.     YES, SIR; YES.

MR. DEUTSCH:  YES.

(AT 11:57 A.M. THE DEFENDANT WAS SWORN

AND/OR AFFIRMED OF RECORD.)

THE COURT:  GENTLEMEN, BEFORE WE GO INTO ANY COLLOQUY, I WOULD LIKE TO KNOW FROM ANYONE IS THERE AN AGREEMENT?

MR. DEUTSCH:  THERE IS AN AGREEMENT.

THE COURT:  ALL RIGHT, I WOULD LIKE TO KNOW WHAT THAT AGREEMENT IS ON THE RECORD BEFORE WE GO INTO ANY COLLOQUY.

MR. MINEHART:  WELL --

THE COURT:  THERE ARE SEVERAL CASES HERE.

MR. DEUTSCH:  I THINK THAT WE HAVE THE PRELIMINARY MATTERS FOR YOUR HONOR.

THERE ARE CERTAIN CASES THAT HAVE BEEN REMOVED FROM THIS JOINT LIST THAT HAVE BEEN BROUGHT TO YOUR HONOR. ONE OF THEM HAS BEEN RETURNED TO JUDGE GAFNI  IN 625 AND IT MAY INVOLVE A PRELIMINARY HEARING SO THAT THAT WILL NOT BE DISPOSED OF TODAY.

THERE IS ANOTHER ONE THAT THERE IS SOME QUESTION AS TO THE SUBJECT MATTER ITSELF OF THE PLEA. WE'RE ASKING THAT THAT ITEM BE CONTINUED BEFORE YOUR HONOR TO ANOTHER DATE.

THE COURT:  YOU'RE NOT IDENTIFYING

- 6 -

ANYTHING FOR ME.

MR. DEUTSCH:  WELL, WOULD YOU GIVE ME THAT RECORD?

THE COURT:  WHICH ONE, NO. 1, 2, 3? IS IT 4, 5, 6, 7; I MEAN, THERE ARE DIFFERENT CASES LISTED BEFORE ME TODAY.

MR. DEUTSCH:  YES, SIR, YOUR HONOR, YOU'RE RIGHT.

(WHEREUPON COUNSEL FOR THE DEFENSE EXAMINES HIS PORTFOLIO.)

(LATER)

MR. DEUTSCH:  IF YOUR HONOR PLEASE?

THE COURT:  YES?

MR. DEUTSCH:  THE CASE THAT IS IN 625 IS THE MUNICIPAL COURT --

THE COURT:  IT IS LISTED HERE TODAY BECAUSE IT WAS A JOINT LIST.  IT WAS LISTED ORIGINALLY IN 625, BUT IT WAS BROUGHT HERE AND RETURNED TO 625.

MR. DEUTSCH:  I CAN IDENTIFY THAT FOR YOUR HONOR AS MUNICIPAL COURT 80-05-1296. JUDGE GAFNI  HAS THAT IN HIS JURISDICTION.

COURT CLERK:  WE DON'T HAVE IT HERE.

- 7 -

MR. MINEHART:  No, no.

THE COURT:  All right.

Let's go.

MR. DEUTSCH:  The next case that you would like to have continued in front of Your Honor to another date is Common Pleas 80-08-2093.

THE COURT:  We have that here.

MR. DEUTSCH:  Fine.

I am asking that that be given another date before Your Honor, but there is some question as to a plea arrangement.

MR. MINEHART:  That case, we request a waiver.  180 day Rule.

MR. DEUTSCH:  My client is willing to waive the 180 day Rule.

THE COURT:  What is the rundate?

MR. MINEHART:  December the 8th, Your Honor.

COURT CRIER:  January the 23th, Your Honor.

(There was a conference between counsel for the defense and the defendant.)

- 8 -

MR. MINEHART:  My record shows that this
is December the 3th.  Apparently, there is an
estimated rundate because mine shows that it's
going to be a sentencing, which is going to be
deferred in this matter beyond December the
30th, which rundate --

THE COURT:  Well, all of the sentences
will be deferred.

MR. MINEHART:  Well, it's going to have
to be a waiver, anyway.  The file shows a
rundate of December the 30th.  My point is that
we're not going to be able to get it, anyway.

THE COURT:  Is there going to be a
guilty plea in this case eventually, do you
suspect?

MR. DEUTSCH:  I suspect that that may be.
(Nods head affirmatively.)

If Your Honor please, it's clearly, to
place it on the record, it's a question of
semantics between the District Attorney's office
and my understanding of what was the arrangement.

THE COURT:  Why don't we list it for a
day which would be a day of sentencing?

MR. DEUTSCH: OKAY.

THE COURT: IF APPROPRIATE, HE CAN ENTER A GUILTY PLEA AT THAT TIME AND I HAVE ALREADY RECEIVED THE PRESENTENCE REPORTS.

MR. DEUTSCH: YES, SIR.

I THINK THAT WOULD BE JUST FINE.

THE COURT: I DON'T KNOW WHAT THE DATE OF THE SENTENCING WILL BE, BUT I GUESS I CAN GIVE YOU A PRETTY GOOD IDEA.

MR. MINEHART: IF IT GOES WAY BEYOND THAT, WE AT THAT TIME WOULD HAVE A RIGHT TO LIST THE CASE FOR TRIAL.

THE COURT: YES.

(WHEREUPON THE COURT CLERK CHECKS THE CALENDAR FOR SCHEDULING.)

THE COURT: DO YOU HAVE A CALENDAR THERE WITH THE WEEK FROM JANUARY 27TH?

COURT CRIER: WE CAN TAKE IT FROM JANUARY THE 27TH. THE 27TH IS A TUESDAY. THE NEXT WOULD BE FEBRUARY THE 3RD, YOUR HONOR.

(WHEREUPON THE COURT MAKES SOME PERSONAL NOTATIONS.)

(LATER)

- 10 -

THE COURT:  ALL RIGHT.

This is to be continued.

Now, are you ready --

MR. DEUTSCH: Yes, sir.

THE COURT:  This will be continued to February the 3rd.

MR. DEUTSCH: Thank you, sir.

That would be in this room, Your Honor?

THE COURT:  Well, technically, Room 617 at 3:30.

Now, the next breakdown between now and then, you can have it relisted, Mr. Minehart, for a waiver and I'll not hear that waiver.

MR. MINEHART: Well, Your Honor, do you wish to take a waiver of the 1100 now, in that case?

THE COURT:  Yes, you can do that now.

MR. MINEHART: Do you want to waive this?

COURT CLERK: We can, later.

THE COURT:  The waiver will be February the 10th.

MR. MINEHART: Yes, sir.

BY MR. MINEHART:  (To Defendant)

Q.      Mr. Cliatt, how old are you, sir?

                MR. MINEHART:  Has he been sworn?

                COURT REPORTER:  Yes, sir.

A.      (No answer)

BY MR. MINEHART:

Q.      How old are you, sir?

A.      Twenty-four.

Q.      How far did you go in school?

A.      Twelfth grade.

Q.      Do you read and write English?

A.      Yes, sir.

Q.      Do you understand what's happening here today?

A.      Yes, sir.

Q.      Are you under the influence of any narcotics or
alcoholic beverages?

A.      No.

Q.      Have you ever been treated for any mental
illnesses?

A.      No.

Q.      Have you been confined to any type of a mental
hospital?

A.      No.

- 12 -

Q.        DO YOU REALIZE, SIR, THAT YOU HAVE RIGHTS UNDER
THE LAWS OF PENNSYLVANIA TO HAVE YOUR CASE, SPECIFICALLY
THE CASE IN WHICH YOU ARE CHARGED WITH THE CRIME OF
ARSON ON BILL NO. 80-08-2093 TO 2097, YOU HAVE A RIGHT
TO HAVE THAT CASE LISTED HERE TODAY AND YOU HAVE A RIGHT
TO HAVE THAT CASE TRIED WITHIN 180 DAYS?

          DO YOU UNDERSTAND THAT, SIR?

A.        (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.        NOW, INASMUCH AS WE WOULD REQUEST JANUARY 3RD ON
THAT CASE, THE ESTIMATED RUNDATE ON THAT CASE, THAT IS,
180 DAYS WOULD RUN OUT ON DECEMBER THE 8TH OF 1980?

          DO YOU UNDERSTAND THAT, SIR?

A.        YES, SIR.

Q.        AND YOU HAVE A RIGHT TO HAVE YOUR CASE TRIED ON
OR BEFORE THAT DATE.  YOU HAVE THAT RIGHT.

          DO YOU UNDERSTAND THAT?

A.        YES, SIR.

Q.        YOUR ATTORNEY INDICATED THAT HE HAS REQUESTED
A CONTINUANCE IN THIS MATTER SO THAT THIS CASE MIGHT BE
LISTED BEFORE HIS HONOR, JUDGE KATZ, SO THAT CERTAIN
ASPECTS OF THE CASE COULD BE EXPLORED BETWEEN YOUR
ATTORNEY AND THE DISTRICT ATTORNEY'S OFFICE.

          DO YOU UNDERSTAND THAT?

- 13 -

A.    YES, SIR.

Q.    NOW, THAT WOULD BE THAT THE NEXT TIME THE CASE WOULD BE LISTED WOULD BE FEBRUARY THE 3RD OF 1981.

DO YOU UNDERSTAND THAT?

A.    YES, SIR.

Q.    WHAT THE COURT IS ASKING YOU TO DO IS TO GIVE UP YOUR RIGHT TO BE TRIED WITHIN 180 DAYS; THAT IS, TO GIVE UP YOUR SPEEDY TRIAL RIGHTS AND WAIVE YOUR RIGHT TO THAT 180 DAY RULE UNTIL FEBRUARY THE 10TH OF NEXT YEAR.

DO YOU UNDERSTAND THAT?

A.    YES, SIR.

Q.    THAT'S A WEEK BEYOND THE TRIAL DATE.

A.    YES, SIR.

Q.    ARE YOU WILLING TO DO THAT?

A.    YES, SIR.

Q.    HAVE ANY THREATS BEEN MADE TO YOU?

A.    NO, NONE.

Q.    HAVE ANY PROMISES BEEN MADE TO YOU TO HAVE YOU GIVE UP YOUR RIGHTS?

A.    NO.

Q.    ARE YOU DOING THIS OF YOUR OWN FREE WILL?

A.    YES, I AM.

MR. MINEHART:  DOES YOUR HONOR HAVE ANY

- 14 -

QUESTIONS?

THE COURT:  No.

MR. MINEHART:  YOUR HONOR, IF I MIGHT,
THERE WILL BE A PLEA TODAY ENTERED INTO ON TWO
CASES; SPECIFICALLY ON BILL NO. 80-06-1067 --

THE COURT:  80-06?

MR. MINEHART:  YES -- 1067.

THE COURT:  OKAY, WAIT A MINUTE.
THAT'S 80-08.

MR. MINEHART:  AND THAT IS THE CHARGE
OF KNOWINGLY AND INTENTIONALLY POSSESSION A
CONTROLLED SUBSTANCE AND THE MANUFACTURING AND
DELIVERING A CONTROLLED SUBSTANCE WITH THE INTENT
TO DELIVER, SCHEDULED NUMBER ONE --

THE COURT:  WHAT NUMBER IS THAT ON THE
LIST?

MR. MINEHART:  ON YOUR LIST?
I HAVE NUMBER FIVE, YOUR HONOR.
THE COURT:  THEN, WAIT A MINUTE.
MR. MINEHART:  THAT'S NUMBER FIVE.
THE COURT:  THAT'S 80-08.
MR. MINEHART:  80-08, THAT'S WHAT I SAID.
THE COURT:  1067.

MR. MINEHART: YES.

WE ENTERED ON THAT IN AN OPEN PLEA AND THERE WILL FURTHER BE A PLEA ENTERED THAT WOULD BE UNDER -- WELL, IT'S ON YOUR HONOR'S LIST, WHICH WOULD BE CASE NO. 6, AND THAT WOULD BE TO BILLS 1329, AND THAT WOULD BE POSSESSION OF CONTROLLED SUBSTANCE.

THE COURT: 1329?

MR. MINEHART: YES, SIR.

THE COURT: ALL RIGHT.

THOSE WOULD BE THE TWO PLEAS ENTERED TODAY? IS THAT RIGHT?

MR. MINEHART: YES, SIR.

THE AGREEMENT WOULD BE THAT THEY WOULD OPEN PLEAS, YOUR HONOR, AS TO THE SALE AND AS TO THE POSSESSION, SPECIFICALLY 1067, NO. 5 CASE ON YOUR HONOR'S LIST, WHICH WOULD BE FOR THE SALE AND, 1328 WOULD BE TO THE --

THE COURT: 1329, YOU SAID.

MR. MINEHART: 29, EXCUSE ME, YOUR HONOR, WHICH WOULD BE THE POSSESSION. ANY CONVERSATION FOR THE OPEN PLEA WOULD BE AT THE TIME OF THE SENTENCING.

No. 1 on Your Honor's list would be NOLLE PROSSED.

THE COURT: Well, would you identify that, please?

MR. MINEHART: That is Common Pleas No. 79-04-809 to 810.

No. 3 on Your Honor's list, 80-05, Nos. 1024 to 1025, also will be nolle prossed at the time of sentencing.

THE COURT: Okay.

MR. MINEHART: Okay, so that would be --

THE COURT: That's the disposal cases on the list today? There are other cases on the list.

MR. MINEHART: Yes, sir, Your Honor. That disposes of the cases on Your Honor's list in the sense that it would be the opening cases; if the plea is acceptable, it will be nolle prossed at the time of sentencing.

THE COURT: Mr. Minehart, there are other bills on here that you have not referred to.

Are you suggesting that all the other bills will be nolle prossed or just the two that

- 17 -

YOU HAVE MENTIONED?

MR. MINEHART:  THE OTHER BILLS ON THE OTHER COUNTS WILL BE NOLLE PROSSED AT THE TIME OF SENTENCING AS WELL, YOUR HONOR.

THE COURT:  ON ALL CHARGES PENDING AGAINST HIM?

MR. MINEHART:  (NO ANSWER)

THE COURT:  OTHER THAN THE ONES WE CONTINUED TODAY?

MR. MINEHART:  OTHER THAN -- WELL, THERE ARE OUTSTANDING CASES THAT WE'RE MAKING NO AGREE- MENTS TODAY, ONE OF WHICH WE CONTINUED, WHICH WAS INITIALLY BEFORE YOUR HONOR.

THE COURT:  HOW ABOUT 80-09-1656 AND 1657 ON THE ADD-ON?

MR. MINEHART:  YOUR HONOR, THAT CASE WAS LISTED FOR DECEMBER THE 5TH IN ROOM 313 AND THAT WILL REMAIN IN 313.

MR. DEUTSCH:  THAT'S CORRECT.

THE COURT:  AND 80-11, 713 TO 719?

MR. MINEHART:  YES, THAT CASE WAS SENT FROM 625 AND IT WAS RETURNED TO 625 AND THEY HAVE GIVEN THAT DATE THERE -- WHAT DATE DID THEY GIVE,

- 18 -

MR. DEUTSCH?

     MR. DEUTSCH:  DECEMBER THE 5TH OF 1980 IN 625.

     THE COURT:  ALL RIGHT.

     THEN, THE ONLY BILLS THAT WILL BE NOLLE PROSSED WILL BE THE TWO THAT YOU MENTIONED ON THE OTHER CASES; IS THAT RIGHT?

     MR. MINEHART:  THAT'S CORRECT, YOUR HONOR.

     IF YOUR HONOR PLEASE, MAY I JUST HAVE A MOMENT?

     (THERE WAS A CONFERENCE BETWEEN THE DISTRICT ATTORNEY AND COUNSEL FOR THE DEFENSE.)

     (LATER)

     MR. MINEHART:  YOUR HONOR, IF I COULD CONTINUE MY -- JUST THE COLLOQUY TO THE DEFENDANT ON TWO CASES; WE HAVE ALREADY DONE THE COLLOQUY ON THE ONE CASE AND THE ADD-ON, AND I WANT TO QUALIFY BECAUSE HE WILL WAIVE THE RULE ON THE CASES IN WHICH YOU'RE GOING TO NOLLE PROSSE.

     THE COURT:  YES.

     (THERE WAS A CONFERENCE BETWEEN COUNSEL FOR THE DEFENSE AND THE DEFENDANT.)

     THE COURT:  HE IS PLEADING GUILTY TO TWO

BILLS?

MR. MINEHART:  THAT'S CORRECT, YOUR
HONOR.

THE COURT:  80-08-1067 AND 80-08-1329?

MR. MINEHART:  THAT'S CORRECT.

THE COURT:  THIS IS AN OPEN PLEA?

MR. MINEHART:  THAT'S CORRECT.

THE COURT:  WITHOUT ANY OTHER CONSIDERA-
TIONS OR ARE THERE ANY NEGOTIATIONS?

MR. MINEHART:  JUST THE NOLLE PROSSES,
YOUR HONOR, THAT'S IT.

THE COURT.  ALL RIGHT.

BY MR. MINEHART:  (TO DEFENDANT)

Q.    MR. CLIATT, IF I MIGHT, YOU INDICATED BRIEFLY THAT
YOU WERE WILLING TO GIVE UP YOUR RIGHT TO A SPEEDY TRIAL
ON ATTEMPT ARSON CHARGES, SPECIFICALLY BILL NO. 80-08-
2003 TO 2007.

IS THAT CORRECT, SIR?

A.    THAT IS, YES.

Q.    YOU ALSO HAVE TWO CASES WHICH ARE GOING TO -- THE
AGREEMENT IS THEY WILL BE NOLLE PROSSED AT THE TIME OF
YOUR SENTENCE, WHICH IS LISTED FOR FEBRUARY 3RD OF 1981.

ARE YOU AWARE OF THAT, SIR?

A.     YES, SIR.

Q.     AND YOUR ATTORNEY HAS REQUESTED BECAUSE OF -- OR,
PART OF THIS NEGOTIATION, THIS CASE BE LISTED AT THAT
TIME FOR THE INTENTS OF NOLLE PROSSING, IF IN FACT YOUR
GUILTY PLEA IS ACCEPTED.

       DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     ARE YOU WILLING TO GIVE UP YOUR RIGHT TO THE 180
DAYS ON BOTH OF THESE, BOTH OF THOSE CASES, SPECIFICALLY
BILL NO. 79-04-800 AND 810, CHARGING YOU WITH THEFT
OF AN AUTO AND UNAUTHORIZED USE OF AN AUTO; ARE YOU WILL-
ING TO WAIVE YOUR 180 DAY TRIAL TO THAT CASE?

A.     YES, SIR.

Q.     ALSO, AS TO THE CASE OF COMMON PLEAS 80-05-1024
TO 1025, CHARGING YOU ALSO WITH THEFT AND UNLAWFUL TAKING
AND UNAUTHORIZED USE OF AN AUTO?

A.     YES, SIR.

Q.     DO YOU UNDERSTAND THAT YOU HAVE A RIGHT TO HAVE
THESE CASES HEARD PRIOR TO THE 180 DAYS?

A.     YES, SIR.

Q.     HAVE THE CASES COME TO TRIAL?

A.     YES, SIR.

Q.     DO YOU UNDERSTAND THAT, SIR?

A.     YES, SIR.

          MR. MINEHART:  DOES YOUR HONOR HAVE ANY
QUESTIONS?

          THE COURT:  NO.

          MR. DEUTSCH:  WE JUST HAVE TO HAVE THE
11TH AMENDED, WHATEVER FORM IS NEEDED TO INCLUDE
THOSE TWO.  NO. 1 AND NO. 3.

          (LATER)

          THE COURT:  VERY WELL, ARE YOU READY TO
GO ON THE COLLOQUY NOW AS TO THE TWO BILLS?

          MR. DEUTSCH:  AS TO THE TWO BILLS, SHOULD
WE DO IT ALL AT ONCE?

          THE COURT:  YES.

          MR. DEUTSCH:  TOGETHER?

          THE COURT:  YES.

BY MR. DEUTSCH:

Q.     MR. CLIATT, DO YOU KNOW THAT THIS IS A COMBINATION
AND I'VE GOT TO ASK YOU SPECIFICALLY ON OPEN PLEAS TO
BILLS NO. 80-06-1067 AND 80-08-1329?

A.     YES, SIR.  (NODS HEAD AFFIRMATIVELY.)

Q.     WOULD YOU STATE FOR THE RECORD, PLEASE, HOW OLD
YOU ARE?

A.     TWENTY-FOUR.

Q.     AND HOW FAR HAVE YOU GONE IN SCHOOL?

A.     TWELFTH GRADE.

Q.     AND WHAT IS YOUR PHYSICAL CONDITION TODAY?

A.     (NODS HEAD AFFIRMATIVELY.)  GOOD.

Q.     GOOD?

A.     (NODS HEAD AFFIRMATIVELY.)  GOOD.

Q.     ARE YOU UNDER THE INFLUENCE OF ANY DRUGS OR
ALCOHOL TODAY?

A.     NO, SIR.  NO, SIR.  (SHAKES HEAD NEGATIVELY.)

Q.     HAVE YOU EVER HAD ANY PSYCHIATRIC TREATMENT?

A.     NO, SIR.

Q.     HAVE YOU EVER BEEN IN ANY PSYCHIATRIC INSTITUTION?

A.     NO, SIR.

Q.     HOW FAR DID YOU GO IN SCHOOL?

A.     TWELFTH GRADE.

Q.     DO YOU READ AND WRITE THE ENGLISH LANGUAGE?

A.     YES, SIR.

Q.     HAVE I REPRESENTED YOU SINCE THE BEGINNING OF
THIS MATTER?

A.     YES.

Q.     UP UNTIL THE PRESENT TIME?

A.     YES, SIR.

Q.     INCLUDING TODAY, ARE YOU SATISFIED WITH THE

SERVICES, THE LEGAL SERVICES THAT HAVE BEEN RENDERED TO YOU?

A.      YES, SIR.

Q.      AND HAVE I ADVISED YOU OF YOUR RIGHTS AND YOUR PRIVILEGES IN TERMS OF MAKING DECISIONS IN THIS MATTER? HAVE I DONE THAT UP TO THIS POINT?

A.      YES, SIR.

Q.      AND DO YOU KNOW THAT THIS MATTER IS NOW LISTED FOR AN OPEN PLEA BEFORE JUDGE KATZ?

        DO YOU KNOW THAT YOU HAVE A RIGHT TO BE TRIED BEFORE A JURY OF TWELVE PEERS OF THE COMMUNITY, TWELVE PERSONS FROM THE COMMUNITY?

A.      YES, SIR.

Q.      DO YOU KNOW THAT YOU HAVE A RIGHT TO SELECT THOSE PEOPLE?

A.      YES, SIR.

Q.      DO YOU KNOW THAT IN THIS KIND OF A MATTER, THAT THE COMMONWEALTH WOULD HAVE TO PROVE YOUR GUILTY; THEY WOULD HAVE TO PUT ON WITNESSES AND YOU WOULD HAVE A RIGHT TO CROSS-EXAMINE THOSE WITNESSES?

A.      YES, SIR.

Q.      DO YOU KNOW THAT HE WOULD HAVE TO PROVE YOUR GUILTY BEYOND A REASONABLE DOUBT?

Do you understand and are you aware of that?

A.    Yes, sir.

Q.    Are you aware also that you have a right to waive that right to trial by a jury?

A.    Yes, sir.

Q.    That you could be tried by a judge sitting without a jury?

A.    Yes, sir.

Q.    Are you familiar with the fact that if you are tried by a judge sitting without a jury, he would have to listen to all the evidence just as he would with a jury?

A.    Yes, sir.

Q.    Do you know that when we finish, he would have to find you guilty beyond a reasonable doubt?

A.    Yes, sir.

Q.    Are you waiving that -- are you waiving that right?

A.    Yes, sir.

Q.    Today?

A.    Yes, sir.

Q.    And do you realize when you plead guilty that you're limitations of your rights to appeal are very

LIMITED WHEN YOU PLEAD GUILTY?

A.   YES, SIR.

Q.   DO YOU REALIZE THAT YOU HAVE A RIGHT TO QUESTION THE JURISDICTION OF THIS COURT AND THAT I WILL TELL YOU THAT IT IS MY RELIEF THAT THE COURT DOES HAVE JURIS-DICTION?

A.   YES, SIR.

Q.   IS IT YOUR RIGHT -- YOU HAVE A RIGHT TO TAKE EXCEPTION OR TO APPEAL THE SENTENCE OF THE COURT IF IT WOULD BE AN ILLEGAL SENTENCE.

A.   YES.

Q.   ARE YOU MAKING THIS PLEA VOLUNTARILY AND OF YOUR OWN FREE WILL?

A.   YES, SIR.

Q.   HAS ANYBODY PROMISED YOU ANYTHING?

A.   NO, SIR.

Q.   AND MAY I STATE FOR THE RECORD THAT THE DISTRICT ATTORNEY HAS ALREADY SAID THAT HE WOULD COME FORWARD AND HE WOULD STATE WHAT YOU HAVE DONE DO FAR IN THE MATTER WITH THE COMMONWEALTH.

A.   YES, SIR.

Q.   IS THAT YOUR UNDERSTANDING?

A.   YES, SIR.

Q.     HAS ANYBODY PRESSURED YOU OR BROUGHT ANY THREATS
TO YOU TO PLEAD AS YOU'RE DOING TODAY?

A.     NO, SIR.

          MR. DEUTSCH:  ANYTHING, YOUR HONOR?

          THE COURT:  PLEASE ADVISE YOUR CLIENT
WHAT HE SPECIFICALLY INTENDS TO PLEAD GUILTY TO
AND WHAT THE MAXIMUM SENTENCES ARE AND IS HE
PLEADING GUILTY TO THESE BILLS BECAUSE HE IS IN
FACT GUILTY?

          MR. DEUTSCH:  ALL RIGHT, YOUR HONOR.

          MR. MINEHART, WILL YOU --

BY MR. DEUTSCH:

Q.     MAY I ASK YOU, ARE YOU PLEADING GUILTY TODAY
BECAUSE YOU ARE IN FACT GUILTY TO THE CRIMES THAT YOU
EXPECT TO PLEAD GUILTY TO?

A.     YES.

Q.     YOU WILL LISTEN TO THE DISTRICT ATTORNEY AS TO
THE EXACT CRIMES?

A.     (NO ANSWER)

          MR. MINEHART:  IF I CAN TAKE FIVE, JUST
A MOMENT, YOUR HONOR?

          THE COURT:  DO YOU WANT A DISCUSSION IN
THIS CASE?

MR. MINEHART:  YES, SIR, YOUR HONOR.

THE COURT:  OKAY.

(THERE WAS A CONFERENCE BETWEEN THE DISTRICT ATTORNEY AND AN UNIDENTIFIED COLORED MALE IN CIVILIAN ATTIRE.)

(LATER)

MR. MINEHART:  DID YOU GO OVER THE JURISDICTIONAL RIGHTS AND THE APPELLATE RIGHTS?

MR. DEUTSCH:  YES, SIR.

BY MR. MINEHART:

Q.    YOU REALIZE, MR. CLIATT, THAT YOU ARE WAIVING YOUR RIGHT TO ANY PRETRIAL MOTIONS, SUCH AS MOTIONS TO SUPPRESS ANY PHYSICAL EVIDENCE WHICH MAY HAVE BEEN TAKEN OR ANY STATEMENTS WHICH MAY HAVE BEEN TAKEN FROM YOU?

A.    (NODS HEAD AFFIRMATIVELY.)

Q.    DO YOU UNDERSTAND THAT, SIR?

A.    (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.    DO YOU UNDERSTAND THAT YOUR ATTORNEY WOULD HAVE A RIGHT TO FILE THEM PRIOR TO TRIAL AND THAT IF THEY WERE LITIGATED IN YOUR FAVOR, THAT TYPE OF EVIDENCE MAY NOT BE USED AT TRIAL?

DO YOU UNDERSTAND THAT, SIR?

A.    Yes.

Q.    Do you understand, sir, that by pleading guilty, you are giving up any defense for justification in this case that you might have or for any crimes that you are charged with?

Do you understand that, sir?

A.    Yes, sir.

Q.    Now, have any promises been made to you to get you to plead guilty today?

A.    No, sir.

Q.    Other than the agreement in certain cases which will be nolle prossed at a later date at the time of sentencing, have any promises been made to you?

A.    No, sir.

            Mr. Deutsch: Mr. Minehart, I think we ought to put it on the record or I think, we already put on the record that the district attorney will file certain other matters and he will come to the courtroom and he will make a statement of what he has done in the past that would be done.

            The Court: Well, you know, but I don't know what that means. That could be what,

MITIGATING CIRCUMSTANCES OR AGGRAVATING CIRCUM-
STANCES?

MR. DEUTSCH:  IN THE NATURE OF MITIGATING.

THE COURT:  WELL, I THINK THE STATEMENT
SHOULD BE MADE IN THE PRESENCE OF THE DEFENDANT
SO THAT HE KNOWS WHAT HE IS PLEADING GUILTY TO.
OR, AT LEAST UNDER WHAT CIRCUMSTANCES HE'S PLEAD-
ING GUILTY TO.

MR. DEUTSCH:  YES, SIR, THE CIRCUMSTANCES--

BY MR. DEUTSCH:

Q.     I THINK YOU FULLY WELL KNOW AND I AM SPEAKING NOW
ON BEHALF OF MR. LEONARD ROSS, THE ASSISTANT DISTRICT
ATTORNEY, WHO WOULD BE HERE AND MR. ROSS HAS ALREADY TOLD
YOU THAT HE WOULD INDICATE YOUR COOPERATION IN CERTAIN
CASES IN YOUR TESTIMONY?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.     IN CERTAIN CASES?

A.     (NODS HEAD AFFIRMATIVELY.)

Q.     AND THIS TESTIMONY WAS FAIRLY IMPORTANT TO YOU?

A.     YES, SIR.

Q.     AND YOU EXPECTED HIM TO SAY THAT?

A.     YES, SIR.

BY THE COURT:

Q.      AND THAT IS A PROMISE THAT YOU RECEIVED FROM THE DISTRICT ATTORNEY?

A.      (NODS HEAD AFFIRMATIVELY.) YES, SIR.

Q.      FROM THE DISTRICT ATTORNEY'S OFFICE?

A.      YES, SIR. YES, SIR. (NODS HEAD AFFIRMATIVELY.)

              MR. DEUTSCH: THAT'S CORRECT.

BY THE COURT:

Q.      THAT'S ONE OF THE REASONS YOU'RE PLEADING GUILTY, IS IT NOT?

A.      (NODS HEAD AFFIRMATIVELY.) YES, SIR. YES, SIR.

              MR. DEUTSCH: THAT'S CORRECT.

BY THE COURT:

Q.      WHAT OTHER PROMISES HAVE BEEN MADE TO YOU?

A.      (SHAKES HEAD NEGATIVELY.) NONE.

Q.      OTHER THAN THE OTHER CHARGES THAT WE MENTIONED WILL BE DROPPED AT THE TIME OF SENTENCING?

A.      NOTHING, YOUR HONOR, OTHER THAN THE FACT THAT THE DISTRICT ATTORNEY SAID THAT HE WOULD SEND DOWN A PERSON HIMSELF AND SPEAK TO THE COURT.

BY MR. RINEHART:

Q.      HAVE ANY PROMISES BEEN MADE TO YOU AS TO WHAT YOUR SENTENCE WILL BE?

A.     No, sir. (Shakes head negatively.)

        Mr. Deutsch: If Your Honor please, it is our understanding that it will be completely open.

        The Court: Very well.

        Mr. Rinehart, will you go on through the specific charges that he's pleading guilty?

By Mr. Rinehart:

Q.     Sir, you are being charged with possessing a controlled substance under Bill of Information No. 80-08-1067 and specifically on Bill of Information, you were charged that you did knowingly, intentionally possess a controlled substance, which contents were found to be heroin, and that you did manufacture, deliver, possess with intent to manufacture and deliver a controlled substance, that is, heroin, and that you did in fact, which was a Schedule I drug, that you sold those to Officer Lee of the Narcotic Unit who is here today.

        Do you understand that, sir?

A.     Yes, sir.

Q.     That is what you are pleading guilty to.

A.     (Nods head affirmatively.)

        The Court: And the maximum sentence for that?

BY MR. MINEHART:

Q.     AND YOU REALIZE THAT YOU FACE A PENALTY UP TO 15
YEARS IN PRISON?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

          (THERE WAS A CONFERENCE BETWEEN COUNSEL
     FOR THE DEFENSE AND THE DEFENDANT.)

          (LATER)

          MR. MINEHART:  I DON'T HAVE THE FINE THAT
     CONTROLS THAT.

          THE COURT:  ALL RIGHT --

          MR. MINEHART:  YES, I DO.

BY MR. MINEHART:

Q.     YOU FACE A POSSIBLE SENTENCE OF IMPRISONMENT NOT
TO EXCEED 15 YEARS AND PAY A FINE NOT TO EXCEED
$250,000.00.

     DO YOU UNDERSTAND THAT, SIR?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.     DO YOU REALIZE THAT THE JUDGE HERE HAS THE POWER
TO SENTENCE YOU AS SUCH?

     DO YOU UNDERSTAND THAT?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.     YOU ARE ALSO CHARGED ON BILL NO. 80-08-1329 WITH
POSSESSION OF A CONTROLLED SUBSTANCE AND THE FACTS IN

THIS INCIDENT ALSO WERE HEROIN AND THAT IN FACT IN THIS
BILL OF INFORMATION, YOU ARE NOT BEING CHARGED WITH THE
SALE, BUT YOU'RE BEING CHARGED WITH POSSESSION OF HEROIN.

A.     YES, SIR.

Q.     AND INASMUCH AS YOU'RE CHARGED WITH POSSESSION,
YOU FACE THE PENALTY OF --

        MR. MINEHART:  IF I CAN HAVE A MOMENT,
    YOUR HONOR?

        (LATER)

BY MR. MINEHART:

Q.     -- AND THAT IT IS YOUR INTENTION TO PLEAD GUILTY
TO THE POSSESSION OF A DRUG, HEROIN, IN THIS CASE?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR; YES.  (NODS
HEAD AFFIRMATIVELY.)

Q.     NOW, SIR, YOU REALIZE THAT THE POSSIBLE PENALTY
FOR THAT COULD BE 15 YEARS IN PRISON, ALSO, AND THAT IS
A SCHEDULE I DRUG.

        DO YOU UNDERSTAND THAT, SIR?

        (THERE WAS A CONFERENCE BETWEEN COUNSEL
    FOR THE DEFENSE AND THE DISTRICT ATTORNEY.)

        (LATER)

        MR. MINEHART:  IF I CAN BE GIVEN JUST A
    MINUTE, YOUR HONOR?

(WHEREUPON THE ASSISTANT DISTRICT
ATTORNEY EXAMINES THE PENAL CODE.)

(LATER)

MR. RINEHART:  EXCUSE ME, YOUR HONOR,
BUT THERE HAS BEEN SOME DISPUTE THAT -- IT IS
MY UNDERSTANDING THAT IT IS THE LAW -- THE LAW
IS --

I APOLOGIZE, CAN I JUST HAVE ANOTHER
MOMENT?

(LATER)

BY MR. RINEHART:

Q.    DO YOU REALIZE, SIR, THAT POSSESSION OF A
SCHEDULE I DRUG, HEROIN, IT'S A POSSIBILITY OF A COMMIT-
MENT OF ONE YEAR IMPRISONMENT AND A FINE OF $5,000.00
OR THE FACT THAT IF IT IS YOUR SECOND CONVICTION, YOU
FACE THE POSSIBILITY OF A THREE YEAR IMPRISONMENT --

MR. RINEHART:  DOES IT GIVE THE FINE
THERE?

THE COURT:  AND/OR A $25,000.00 FINE.

BY MR. RINEHART:

Q.    AND/OR A $25,000.00 FINE.

DO YOU UNDERSTAND THAT?

A.    YES, SIR.

- 35 -

Q.    KNOWING THE POSSIBLE PENALTIES THAT YOU FACE,
UP TO 16 YEARS IN PRISON OR TO 19 YEARS IN PRISON AND
A FINE OF APPROXIMATELY $300,000.00 OR $275,000.00 --
KNOWING THAT, SIR, DO YOU STILL INTEND TO PLEAD GUILTY?

A.    (NODS HEAD AFFIRMATIVELY.) YES, SIR.

Q.    YOU REALIZE, SIR, THAT IF YOU ARE ON PROBATION
OR PAROLE, AND WE DON'T KNOW -- WE DON'T WANT YOU TO
TELL US RIGHT NOW, BUT IF YOU ARE, FROM THE FACTS, ARE
UNDER ANY FORM OF PROBATION OR PAROLE, THIS CONVICTION
COULD VIOLATE YOUR PROBATION OR PAROLE.

DO YOU UNDERSTAND THAT?

A.    (NODS HEAD AFFIRMATIVELY.) YES, SIR.

Q.    AND HAVE YOU DISCUSSED THIS WITH YOUR ATTORNEY?

A.    YES, SIR.

Q.    ARE YOU SATISFIED WITH HIS REPRESENTATION?

A.    YES, SIR.

Q.    YOU REALIZE, SIR, THAT YOU WOULD CHOOSE THAT
JURY -- IN FACT, IF ANY OF THOSE JURORS HAD ANY TYPE OF
A REASONABLE DOUBT, AND THAT REASONABLE DOUBT WOULD BE
EXPLAINED TO YOU; IT'S A TYPE OF A DOUBT THAT AN
ORDINARY PERSON HAS RESTRAINED -- OR, WOULD RESTRAIN AN
ORDINARY PERSON FROM ACTING IN A MATTER OF THE GREATEST
IMPORTANCE TO HIMSELF.  IF THE ONE-ON-ONE JURY HAD THAT

- 36 -

TYPE OF A DOUBT, THOUGH, HE WOULD NOT VOTE TO CONVICT YOU. YOU CANNOT BE CONVICTED OF THAT CRIME IN WHICH YOU ARE CHARGED.

DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     A HUNG JURY WOULD BE -- A MISTRIAL WOULD BE DECLARED AND BECAUSE IT IS A HUNG JURY, IN THIS INSTANCE THE COMMONWEALTH WOULD EITHER RETRY YOU OR THEY MAY NOT; THEY MAY DECIDE NOT TO RETRY YOU AGAIN.

DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     AND YOU ARE GIVING UP THE RIGHT AND YOU'RE ALSO GIVING UP THE RIGHT TO GO TO TRIAL BEFORE HIS HONOR, JUDGE KATZ AND HE WILL LISTEN AND IF HE HAS A DOUBT, HE CANNOT CONVICT YOU.  HE WOULD IN FACT ACQUIT YOU IF HE HAD A REASONABLE DOUBT.

DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     AND YOU'RE GIVING UP YOUR RIGHT TO CROSS-EXAMINE WITNESSES IN THIS MATTER AND YOU'RE GIVING UP YOUR RIGHT TO PRESENT EVIDENCE AND PRESENT TESTIMONY IN YOUR BEHALF.

DO YOU UNDERSTAND THAT, SIR?

A.     YES, SIR.

Q.     AND YOUR PRESUMPTION OF INNOCENCE, IF YOU SAID NOTHING DURING THE TRIAL, THE COMMONWEALTH WOULD STILL HAVE THE BURDEN OF CONVICTING YOU BEYOND A REASONABLE DOUBT.

DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     KNOWING ALL OF YOUR RIGHTS, KNOWING ALL OF YOUR ENTITLEMENTS, IT IS STILL YOUR DECISION, A DECISION OF YOUR OWN FREE WILL, TO PLEAD GUILTY HERE TODAY?

A.     YES, SIR.

MR. MINEHART:  DOES YOUR HONOR HAVE ANY QUESTIONS?

THE COURT:  YES.

BY THE COURT:

Q.     NOW, MR. CLIATT, DO YOU UNDERSTAND THAT I'M NOT PART OF ANY AGREEMENT OR PARTY TO ANY AGREEMENT THAT YOU MAY HAVE ENTERED INTO WITH YOUR ATTORNEY OR WITH ANY REPRESENTATIVE OF THE DISTRICT ATTORNEY'S OFFICE?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.     DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     THAT I AM FREE TO COMPLETELY REJECT OR ACCEPT THE NEGOTIATED GUILTY PLEA THAT IS BEING OFFERED HERE?

A.     YES, SIR.

Q.     DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     AND IF I CHOSE TO REJECT ANY OF THE TERMS WHICH WE DISCUSSED IN THIS MATTER, WE WILL HAVE A DISCUSSION PRIOR TO THIS TIME AND YOU WILL BE PERMITTED TO WITHDRAW YOUR GUILTY PLEA; IF YOU PLEAD GUILTY AND I REJECT IT, YOU WILL THEN GO TO ANOTHER ROOM BEFORE ANOTHER JUDGE.

A.     (NODS HEAD AFFIRMATIVELY.)

Q.     AND THAT I WILL NOT ADVISE THAT OTHER JUDGE THAT YOU IN FACT PLED GUILTY.

A.     YES, SIR.

Q.     DO YOU UNDERSTAND THAT?

A.     YES, SIR.

Q.     IF I REJECT IT BEFORE YOU PLEAD GUILTY, I WOULD TRANSFER THIS CASE TO ANOTHER COURTROOM AND NOT ADVISE THAT JUDGE THAT YOU INTENDED TO PLEAD GUILTY.

       DO YOU UNDERSTAND THAT?

A.     YES, SIR; YES.

Q.     AND AS I UNDERSTAND IT, WHAT YOU'RE PLEADING GUILTY TO, YOU'RE PLEADING TO BILL NO. 80-08-1067, WHICH IS THE SALE OF HEROIN?

A.     YES, SIR.

Q.     AND 80-08-1329, WHICH IS POSSESSION OF HEROIN?

A.     YES, SIR.

Q.     IS THAT CORRECT?

A.     YES, SIR.

Q.     YOU'RE PLEADING GUILTY TO THOSE BILLS BECAUSE YOU
IN FACT DID SELL HEROIN AS ACCUSED IN THE ONE BILL,
1067, AND YOU IN FACT DID POSSESS HEROIN IN BILL NO.
1329 AS CHARGED.

       IS THAT CORRECT?

A.     (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.     AND THAT THE ONLY REASON YOU'RE PLEADING GUILTY
IS NOT BECAUSE SOMEONE'S THREATENING YOU OR IN ANY WAY
PROMISING YOU ANYTHING?

A.     (SHAKES HEAD NEGATIVELY.)  NO, SIR.

Q.     AND AS PART OF THAT GUILTY PLEA AND UNDERSTANDING,
TWO BILLS WILL BE NOLLE PROSSED; THEY WILL BE THE BILLS
CHARGING YOU WITH UNAUTHORIZED USE OF A VEHICLE AND
THEFT OF THAT VEHICLE, WHICH OFFENSE ALLEGEDLY OCCURRED
ON NOVEMBER THE 16TH, 1979, IDENTIFIED AS BILL NO. 79-04-
809 AND 810.

       DO YOU UNDERSTAND THAT?

A.     (NODS HEAD AFFIRMATIVELY.)

Q.     THE OTHER BILL WHICH WILL BE NOLLE PROSSED IS

- 40 -

IDENTIFIED AS BILL No. 80-05, No. 1024 TO 1025, WHICH IS THE RESULT OF AN INCIDENT THAT OCCURRED ON APRIL THE 25TH, 1980 IN WHICH YOU WERE CHARGED WITH THEFT AND UNAUTHORIZED USE OF AN AUTOMOBILE?

A.      YES, SIR.

Q.      THOSE ARE TO BE NOLLE PROSSED BOTH AT THE TIME OF SENTENCING?

A.      YES, SIR.

Q.      ARE THERE ANY OTHER UNDERSTANDINGS THAT YOU ARE AWARE OF AT THIS TIME OTHER THAN THE TWO THAT I'VE STATED AND YOUR ATTORNEY DID, THAT A REPRESENTATIVE OF THE DISTRICT ATTORNEY'S OFFICE WILL PRESENT HIMSELF AT THE TIME OF SENTENCING AND INDICATE THE EXTENT OF THE COOPERATION THAT YOU HAVE GIVEN THE DISTRICT ATTORNEY'S OFFICE IN VARIOUS CASES.

DO YOU UNDERSTAND THAT?

A.      YES, SIR.

Q.      DO YOU UNDERSTAND THAT I AM FREE TO REJECT ANY OF THAT?

A.      (NODS HEAD AFFIRMATIVELY.)

Q.      THE RECOMMENDATION OR EVIDENCE OF ANY COOPERATION, IF I WISH?

A.      YES, SIR.

Q.    OR, I AM, OF COURSE, FREE TO CONSIDER THAT IN MY SENTENCING.

DO YOU UNDERSTAND THAT?

A.    (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

Q.    AND IS IT PERFECTLY CLEAR TO THE DISTRICT ATTORNEY THAT HE IS NOT GOING TO RECOMMEND ANY SENTENCE IN THIS CASE AND THAT WILL BE PURELY WITHIN MY DISCRETION AS TO WHAT THE APPROPRIATE SENTENCE SHOULD BE?

A.    YES, SIR.

Q.    AND THAT'S EXACTLY WHAT AN OPEN PLEA MEANS; THAT THERE IS NOT ANY RECOMMENDATION TO BE MADE.  THERE IS NO AGREEMENT BY YOU OR YOUR ATTORNEY OR THE DISTRICT ATTORNEY'S OFFICE OR THE COURT.

A.    (NODS HEAD AFFIRMATIVELY.)

Q.    IT'S COMPLETELY OPEN AND I WILL SENTENCE YOU IN ACCORDANCE WITH THE FACTS OF THE CASE, THE PRESENTENCE REPORTS AND ALL THE OTHER MATERIAL THAT I'LL HAVE BEFORE ME AT THE TIME OF SENTENCING.

DO YOU UNDERSTAND THAT?

A.    YES, SIR.

Q.    AND YOU ARE FULLY AWARE OF THE MAXIMUM SENTENCES AS OUTLINED TO YOU BY THE DISTRICT ATTORNEY?

A.    YES, SIR.

- 42 -

Q.      AND YOU UNDERSTAND THAT I HAVE A LEGAL RIGHT TO
GIVE YOU A MAXIMUM SENTENCE AS OUTLINED BY MR. MINEHART.

        IS THAT CLEAR TO YOU?

A.      YES, SIR.

Q.      ANY SENTENCE THAT'S EXCESSIVE, THAT WILL BE
ILLEGAL AND YOU HAVE A RIGHT TO APPEAL.

A.      YES, SIR.  (NODS HEAD AFFIRMATIVELY.)

Q.      MR. MINEHART IS GOING TO READ TO YOU A SUMMARY
OF THE FACTS PERTAINING TO THOSE TWO CASES THAT YOU
INTEND TO PLEAD GUILTY TO.

        I WANT YOU TO LISTEN CAREFULLY AND IF FOR ANY
REASON, THERE IS AN INACCURACY OR INCOMPLETE FACTOR, I
WANT YOU TO TELL YOUR ATTORNEY AND HE WILL EXPRESS THAT
TO THE COURT.

        DO YOU UNDERSTAND THAT?

A.      (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

                THE COURT:  MR. MINEHART?

                MR. MINEHART:  YOUR HONOR, OFFICER FRANK
        LEE, BADGE NO. 3933 --

                THE COURT:  WHICH ONE ARE YOU PROCEEDING
        ON?

                MR. MINEHART:  THIS IS ON 1067, YOUR
        HONOR.

- 43 -

FRANK LEE, OF THE DRUG ENFORCEMENT ADMINISTRATION TASK FORCE, PHILADELPHIA POLICE OFFICER ASSIGNED THERE, HE WOULD TESTIFY THAT ON NOVEMBER THE 30TH, 1978, HE WAS IN THE COMPANY OF A RELIABLE INFORMANT AND HE WENT TO THE LOCATION OF 7443 WOOLSTON STREET, WHICH IS THE RESIDENCE OF THE DEFENDANT, EMANUEL CLIATT, IN THE CITY AND COUNTY OF PHILADELPHIA.

THE INFORMANT AND OFFICER LEE WERE ADMITTED IN THIS RESIDENCE BY A NEGRO MALE WHO UPON THEIR ENTRANCE STATED THAT MANNY, REFERRING TO DEFENDANT CLIATT, WAS NOT AT HOME, BUT HAD CALLED AND STATED THAT HE WAS ENROUTE TO HIS RESIDENCE.  APPROXIMATELY FIVE MINUTES LATER, OFFICER LEE OBSERVED THE DEFENDANT IN COMPANY WITH TWO OTHER NEGRO MALES ENTER THE KITCHEN AND DINING ROOM FROM WHAT APPEARED TO BE FROM THE BASEMENT ENTRANCE.  AT THIS TIME, OFFICER LEE WAS INTRODUCED TO CLIATT AFTER WHICH CLIATT AND THE INFORMANT ENTERED INTO THE DINING ROOM AND ENGAGED IN A CONVERSATION.

SHORTLY AFTERWARDS, THE INFORMANT STATED TO OFFICER LEE THAT CLIATT HAD STATED THAT HE

WOULD SELL FIVE BUNDLES OF HEROIN AT A COST OF
$60.00 PER BUNDLE.  OFFICER LEE AT THAT TIME
APPROACHED CLIATT IN THE LIVING ROOM AREA AND
ASKED HIM THE PRICE FOR FIVE BUNDLES AND HE WAS
ADVISED BY CLIATT THAT IT WOULD COST $300.00 AND
HE AGREED TO SELL IT TO OFFICER LEE AND HE COUNTED
OUT $300.00 OF OFFICIAL ADVANCED MONEY, WHICH HE
GAVE TO CLIATT WHO THEN RECOUNTED THE MONEY AND
REENTERED THE DINING ROOM AND CONVERSED WITH A
MALE IN THE KITCHEN.

THE DEFENDANT THEN TOLD OFFICER LEE THAT
THE PACKAGE WOULD BE AT THE RESIDENCE IN ABOUT
TEN MINUTES.  AT THIS TIME, AT APPROXIMATELY 1:25
P.M. THE DEFENDANT SAID TO OFFICER LEE AND THE
INFORMANT THAT THEY WOULD HAVE TO FOLLOW HIM TO A
LOCATION, WHICH IS A FEW BLOCKS FROM THE STASH
AND THAT HE WOULD SIGNAL OFFICER LEE WHERE HE
PARKED HIS VEHICLE AND TO AWAIT HIS RETURN WITH
THE HEROIN.  OFFICER LEE THEN OBSERVED THE
DEFENDANT ENTER INTO A BASEMENT DOOR ENTRANCE AS
HE AND THE INFORMANT WERE EXITING THEIR VEHICLE.
THEY THEN PROCEEDED TO FOLLOW THE DEFENDANT.

THEY FOLLOWED HIM TO THE 7900 BLOCK OF UPSAL STREET WHERE THE DEFENDANT STOPPED HIS VEHICLE AND HE SIGNALED TO OFFICER LEE TO PARK HIS CAR AFTER WHICH THE DEFENDANT LEFT THE AREA AND AT APPROXIMATELY 1:50 P.M., OFFICER LEE OBSERVED THE DEFENDANT RETURN TO THE 7900 BLOCK OF UPSAL STREET AND PARKED HIS VEHICLE PARALLEL TO OFFICER LEE'S CAR.

OFFICER LEE AND THE INFORMANT EXITED OFFICER LEE'S VEHICLE AND APPROACHED THE DEFENDANT'S VEHICLE. AT THIS TIME, OFFICER LEE OBSERVED THE DEFENDANT HAND THE INFORMANT SOMETHING AS THE INFORMANT APPROACHED THE OPERATOR'S SIDE OF THE DEFENDANT'S VEHICLE.

OFFICER LEE AND THE INFORMANT CONVERSED WITH THE DEFENDANT FOR A SHORT TIME AFTER WHICH OFFICER LEE OBSERVED THE DEFENDANT EXIT THE AREA ON VERNON ROAD. THE INFORMANT WAS SEARCHED FOR MONIES AND NARCOTICS BEFORE THEY WENT OVER TO THE DEFENDANT'S HOUSE AND NOTHING WAS FOUND. SUBSEQUENTLY, THIS PACKAGE WAS TURNED OVER TO OFFICER LEE AND IT WAS MAILED TO THE LABORATORY FOR ANAYLSIS, THE DRUG ENFORCEMENT ADMINISTRATION.

THE CHEMIST, JOSEPH J. BARBATO OF THE
NORTHERN REGIONAL LABORATORY OF NEW YORK, IF HE WAS
CALLED TO TESTIFY, HE WOULD TESTIFY THAT HE
EXAMINED A PACKAGE RECEIVED INTACT, FILE NO.
CK-79-X017, THAT THEY RECEIVED THIS ON NOVEMBER
THE 30TH OF 1978 AND THAT THE TECHNICIAN RECEIVED
IT ON 12/4/78 AND IT WAS MAILED ON 11/30/78.
THEY RECEIVED FIVE BUNDLES OF GLASSINE BAGS
CONTAINING A WHITE POWDER AND SECURED WITH RUBBER-
BANDS CONSISTING OF A TOTAL OF 118 BAGS. NO
OTHER MARKS OR LABELS. IT WAS FOUND TO CONTAIN
47.5 GRAMS WITH A NET WEIGHT OF 1.66 GRAMS OF
HEROIN.

THERE WERE 116 GLASSINE BAGS OF WHITE
POWDER WHICH WERE FOUND TO BE HEROIN. THERE WERE
47.68 GRAMS GROSS WEIGHT AND 1.66 GRAMS NET WEIGHT
OF HEROIN, WHICH WAS DIVIDED INTO 216 GLASSINE
BAGS.

THE COURT: IT WAS DIVIDED BY WHOM, THE
ANALYST?

MR. MINEHART: NO, YOUR HONOR, WHEN IT
WAS SOLD, IT WAS IN THE 116 INDIVIDUAL BAGS, FIVE
BUNDLES, CONTAINING FIVE LARGE BUNDLES CONTAINING

- 47 -

THE 116 INDIVIDUAL BAGS WHICH WERE SUBMITTED
FOR THE CHEMICAL ANALYSIS.  THIS REPORT WAS
SIGNED BY JOSEPH J. BARBATO, B-A-R-B-A-T-O,
CHEMIST.

YOUR HONOR, THAT WOULD BE THE COMMON-
WEALTH'S CASE AS TO BILL NO. 80-08-1067.

AS TO BILL NO. 80-08-1329, YOUR HONOR,
IF YOU HAVE ANY QUESTIONS THAT YOU WANT TO ASK
THE DEFENDANT -- IF YOU HAVE ANY QUESTIONS
BEFORE --

BY THE COURT:  (TO DEFENDANT)

Q.    HAVE YOU HEARD THE SUMMARY ON THIS CHARGE WHICH
WE HAVE IDENTIFIED AS 1067, NAMELY, THE SALE OF HEROIN?

A.    YES, SIR.  YES, SIR.

Q.    ARE THERE ANY CORRECTIONS THAT YOU WISH TO MAKE?

A.    (SHAKES HEAD NEGATIVELY.)

(THERE WAS A CONFERENCE BETWEEN COUNSEL
FOR THE DEFENSE AND THE DEFENDANT.)

(LATER)

DEFENDANT CLIATT:  YOUR HONOR, THE ONLY
THING I CAN SAY IS THAT THE REASON I LEFT MY HOUSE;
RIGHT?  BECAUSE, I WASN'T SURE WHO HE WAS; RIGHT?
HE WASN'T PRESENT WHEN HE GAVE THE INFORMANT, YOU

KNOW, THE PACKAGE.

BY THE COURT:

Q.     YOU'RE SAYING THAT HE DIDN'T OBSERVE IT?

A.     (SHAKES HEAD NEGATIVELY.) NO, SIR -- YES, SIR,
I'M SAYING HE DIDN'T OBSERVE IT. THAT'S WHAT -- THE
REASON WHY, I TOLD HIM I HAD TO GO TO THE 7900 BLOCK
UPSAL. THE 7900 UPSAL.

Q.     YOU GAVE THE INFORMANT THAT PACKAGE?

A.     (NODS HEAD AFFIRMATIVELY.) YES, SIR.

            MR. DEUTSCH: YES, SIR, HE DOES.

            THE COURT: YOU'RE SAYING HE DIDN'T
        OBSERVE IT, IN YOUR OPINION?

            MR. MINEHART: YES, SIR.

BY THE COURT:

Q.     YOU'RE NOT AWARE THAT HE OBSERVED IT; IS THAT
CORRECT?

A.     YES, SIR.

Q.     WHICH MEANS, HE MAY OR MAY NOT HAVE OBSERVED IT?

A.     YES, SIR.

            THE COURT: ALL RIGHT.

            MR. MINEHART: ANY OTHER QUESTIONS?

            NOW, ON BILL NO. 80-08-1329, WHICH IS --
        IN WHICH THE DEFENDANT PLED GUILTY TO THE CHARGE

OF POSSESSION, THAT IF OFFICER HILT, H-I-L-T, THE PHILADELPHIA NARCOTICS, BADGE NO. 1524 WAS CALLED TO TESTIFY, HE WOULD TESTIFY THAT ON JANUARY THE 5TH OF 1980, HE WAS ARMED WITH AN ARREST WARRANT AND A SEARCH AND SEIZURE WARRANT THE SEARCH AND SEIZURE WARRANT NO. 44333 WAS SIGNED BY HIS HONOR JUDGE MARCONES TO SEARCH THE PREMISES OF 5148 GREENE STREET.

THIS WARRANT WAS OBTAINED AS A RESULT OF INFORMATION FROM A RELIABLE INFORMANT AS WELL AS A STATEMENT FROM LARRY CLIATT, L-A-R-R-Y -- C-L-I-A-T-T, AT THAT ADDRESS AND HE WAS ALSO A RESIDENT OF THE DEFENDANT EMANUEL CLIATT OF 5148 GREENE STREET.

THE OFFICERS WENT TO THE RESIDENCE AND IN COMPANY WITH UNIFORMED POLICEMEN FROM THE 14TH DISTRICT, WENT TO THE FRONT DOOR AND OTHER OFFICERS SECURED THE OTHER DOOR AND THEY KNOCKED ON THE DOOR AND THEY STATED THAT THEY WERE POLICE-MEN WITH A WARRANT AND THERE WAS NO RESPONSE.

AT THIS TIME, THEY OBSERVED A MALE LOOKING OUT THE WINDOW AND UPON SEEING THE POLICE OFFICERS RUN UP THE STEPS AND AT THIS TIME, THE DEFENDANT --

At this time, Officer Hilt would testify that knowing that the evidence was going to be destroyed, he along with Officer Scanzello and uniformed officers of the 14th District opened the front door and entered the residence. They were met once inside that residence by Carl Cliatt who was coming down the steps from the second floor.

At this time, they sat Carl down on the sofa; they gave him a copy of the Warrant. Sergeant Evans and uniformed officers went to the second floor with the assigned Officer Hilt, who joined them on the second floor in the middle bedroom. The officer would testify that they found the Defendant, Emanuel Cliatt, which they then placed him under arrest and they knew that there were outstanding arrest warrants for him. The residence was secured and a search was conducted from the second floor middle bedroom where the Defendant Cliatt was found and there was confiscated one foil package containing a white powder, two plastic bags containing a tan substance in rock form and an identification in

BOTH THE NAMES OF EMANUEL CLIATT AND HELEN ELLIS.
FROM THE REAR BEDROOM, POLICE CONFISCATED A TRIPLE
BEAM SCALE AND NUMEROUS PAPER PACKETS, EMPTY, AND
IDENTIFICATION IN THE NAME OF CARL CLIATT.

FROM THE SECOND BEDROOM ON THE SECOND
FLOOR WAS CONFISCATED A VIAL CONTAINING A LIQUID
PAPER PACK CONTAINING A WHITE POWDER, NUMEROUS
SPOONS WITH RESIDUE. ALSO, IN THE BASEMENT WAS
FOUND A PLASTIC BAG CONTAINING 13 MANILA BAGS
CONTAINING A BROWN WEED AND SEED.

THE DEFENDANTS WERE TAKEN INTO CUSTODY
AND FURTHER ARRANGEMENTS FOR A FURTHER SEARCH --
AFTER SPEAKING WITH MR. CLIATT, A SEARCH WAS DONE
OVER THE MIDDLE BEDROOM WHERE THE IDENTIFICATION
FOR EMANUEL CLIATT WAS FOUND, AND BEHIND THE
RADIATOR, THE ASSIGNED CONFISCATED A PLASTIC
BOX WHICH DID CONTAIN ONE CLOTH BAG CONTAINING
FOUR LARGE PAPER PACKS CONTAINING A WHITE POWDER
AND EIGHT SMALL PAPER PACKS CONTAINING A WHITE
POWDER; $590.00 IN UNITED STATES CURRENCY AND A
A PSFS SAVINGS BOOK IN THE NAME OF EMANUEL CLIATT.

THESE ITEMS WERE SUBMITTED TO A CHEMICAL
LABORATORY BY OFFICER HILT AND POLICEMAN SCANZELLO,

SPECIFICALLY, THE PLASTIC BOX CONTAINING THE
BROWN CLOTH BAG WHICH CONTAINED FOUR LARGE PAPER
PACKETS AND EIGHT SMALL PAPER PACKETS CONTAINING
A WHITE POWDER, WHICH WAS IN FACT HEROIN.

IT CONTAINED A WHITE POWDER, HEROIN, A CONTROLLED
SUBSTANCE SCHEDULE I.

THAT WOULD BE THE COMMONWEALTH'S CASE,
YOUR HONOR, AS TO THE POSSESSION CHARGE.

BY THE COURT:   (TO DEFENDANT)

Q.    MR. CLIATT, HAVE YOU HEARD THE TESTIMONY OR A
SUMMARY OF THE TESTIMONY AS TO BILL NO. 1329, CHARGING
YOU WITH POSSESSION OF HEROIN?

A.    YES, SIR.

Q.    DO YOU HAVE ANY CORRECTIONS OR ADDITIONS TO MAKE?

A.    (SHAKES HEAD NEGATIVELY.) NO, SIR.

MR. RINEHART:  YOUR HONOR, I JUST WOULD
POINT OUT FOR THE COMPLETE SUMMARY THAT 5148
GREENE STREET IS IN PHILADELPHIA.

BY THE COURT:

Q.    THAT'S G-R-E-E-N-E?

A.    YES, SIR.

Q.    ALL RIGHT.

THE COURT:  ARRAIGN HIM ON THE TWO BILLS.

MR. DEUTSCH:  IF YOUR HONOR PLEASE, I
THINK THAT THE RECORD SHOULD DEMONSTRATE --
(THERE WAS A CONFERENCE BETWEEN COUNSEL
FOR THE DEFENSE AND THE DEFENDANT.)
(LATER)
BY MR. DEUTSCH:

Q.    THE RESIDENCE ITSELF WHERE ALL OF THIS HAPPENED,
WHICH IS THE RESIDENCE OF 5148 GREENE STREET?

A.    YES.

Q.    THAT'S IN THE NAME OF STERELTA -- SOMETHING LIKE
THAT, STERELTA CLIATT, AND THERE ARE OTHER PEOPLE THAT
LIVE IN THAT HOUSE.  I THINK YOUR HONOR SHOULD BE AWARE--
I'M JUST INDICATING THAT OTHER PEOPLE WERE ARRESTED AND
THERE WAS A MENTION OF A LARRY CLIATT MENTIONED IN THIS
MATTER.

THE COURT:  THE DEFENDANT IS PLEADING
GUILTY TO BEING IN POSSESSION OF THAT NO MATTER
HOW MANY PEOPLE LIVED THERE; CORRECT?

MR. DEUTSCH:  THAT'S CORRECT; THAT'S
CORRECT.  THERE'S NO QUESTION ABOUT IT.

PERHAPS I MIGHT SAY IT COULD BE MITIGATING
AREAS.

THE COURT:  WELL, THAT WOULD BE THE ONLY

RELEVANCY THAT YOU'RE BRINGING IT IN TO SHOW
THAT THERE WERE OTHER PEOPLE WHO POSSESSED THEM?
THEN, I SEE NO NEED TO PLEAD GUILTY TO THE --

MR. DEUTSCH:  WE'RE NOT DOING THAT, YOUR
HONOR.

THE COURT:   ALL RIGHT, THEN.

MR. DEUTSCH:  I JUST WANTED YOUR HONOR TO
BE AWARE THAT IT'S A RESIDENCE OF OTHER PEOPLE.

THE COURT:  VERY WELL.

(WHEREUPON THE DEFENDANT APPEARED BEFORE
THE BAR OF THE COURT WITH COUNSEL.)

COURT CRIER:  SHALL HE BE ARRAIGNED?

THE COURT: YES.

BY THE COURT CRIER:  (TO DEFENDANT)

Q.    TO THIS BILL OF INFORMATION NO. 1067, AUGUST
SESSIONS, 1980, CHARGING YOU WITH MANUFACTURING,
DELIVERING OR POSSESSING WITH INTENT TO MANUFACTURE/
DELIVER A CONTROLLED SUBSTANCE, HOW DO YOU PLEAD; GUILTY
OR NOT GUILTY?

A.    GUILTY.

BY THE COURT:

Q.    THE CONTROLLED IS THAT IT WAS HEROIN; IS THAT
CORRECT?

A.      (NODS HEAD AFFIRMATIVELY.)  YES, SIR.

                 COURT CRIER:  GUILTY TO 1067, YOUR HONOR.

BY THE COURT CRIER:

Q.      EMANUEL CLIATT, TO THIS BILL OF INFORMATION NO.
1329, AUGUST SESSIONS, 1980, CHARGING YOU WITH KNOWINGLY
POSSESSING A CONTROLLED SUBSTANCE, HOW DO YOU PLEAD;
GUILTY OR NOT GUILTY?

A.      GUILTY.

                 THE COURT:  THE CONTROLLED SUBSTANCE,
        THERE, IS ALSO HEROIN; IS THAT CORRECT?

                 DEFENDANT CLIATT:  YES, SIR.

                 COURT CRIER:  HE PLEADS GUILTY TO BILL
        1029, YOUR HONOR.

                 (AT 12:55 P.M. THE DEFENDANT WAS
        ARRAIGNED AND PLED GUILTY OF RECORD.)

                 THE COURT:  ARE YOU PRESENTLY ON
        PROBATION?

                 DEFENDANT CLIATT:  YES, SIR, YOUR HONOR.

                 MR. DEUTSCH:  IT'S JUDGE KUBACKI.

                 THE COURT:  FIVE YEARS PROBATION?

                 MR. DEUTSCH:  THAT'S CORRECT, YOUR HONOR.

                 DEFENDANT CLIATT:  YES, SIR, YOUR HONOR.

        (NODS HEAD AFFIRMATIVELY.)

                          - 56 -

THE COURT: MR. MINEHART, UNDER THAT CATEGORY OF THE FLLLOWING ACTIVE CASES. THIS DEFENDANT'S RECORD SHEET, ALL OF THESE ACTIVITIES, ARE THEY ALL ACCOUNTED FOR IN THE COLLOQUY THAT WE HAD TODAY?

(WHEREUPON THE DISTRICT ATTORNEY PERUSES HIS PORTFOLIO.)

THE COURT: THERE IS A COUNT OF FOUR THAT WILL BE LISTED AT A FUTURE DATE OR NOT PROSECUTED AT THE TIME OF SENTENCING AS PART OF THIS AGREEMENT?

I'M REFERRING SPECIFICALLY WITHOUT, BUT NOT EXCLUSIVELY TO 30-05.

MR. MINEHART: JUST A MOMENT, YOUR HONOR.

THE COURT: ARE YOU RECOMMENDING 30-35 AND 36, RECKLESSLY ENDANGERING ANOTHER PERSON, TERRORISTIC THREATS, AGGRAVATED ASSAULT, AND SO FORTH?

MR. MINEHART: YOUR HONOR, THAT ACTUALLY BEGINS WITH CP-80-01, 1713 ON AND THAT WAS DISCHARGED, THE SENTENCE BEING AT 6-25, WHICH WAS INITIALLY BROUGHT IN HERE AND THAT WAS -- THAT HAS BEEN GIVEN THE DATE OF 12-05 AND 6-25. THE

CASE FOLLOWING THAT IS LISTED FOR 433 ON 12-5 AND THEY'VE ALL BEEN ACCOUNTED FOR. I'VE CHECKED WITH MR. LAWRENCE IN THE MUNICIPAL COURT CASES AND ALL THE COMMON PLEAS ACTIVE CASES ARE CONTINUED FOR YOUR HONOR, AND I READ OVER THE COMPUTER SHEET --

THE COURT: WELL, I'M CERTAINLY NOT GOING TO SIT DOWN AND STUDY THIS RECORD IN DETAIL AT THIS TIME BECAUSE IT'S A VOLUMINOUS MATTER AND I'M NOT GOING TO SENTENCE YOU. I'M NOT GOING TO SENTENCE YOU UNTIL FEBRUARY THE 3RD; THAT'S THE DATE OF THE DEFERRED SENTENCE?

YOU'VE BEEN GIVEN DETAINERS HERE, MR. MINEHART, BY THE CLERK OF QUARTER SESSIONS, FOUR, TO BE SPECIFIC. THEY ARE NUMBERS 1, 3, 5, AND 6--

COURT CLERK: THAT REFERS TO THE CASES ON THE LIST.

THE COURT: UH-HUH.

COURT CLERK: TWO OF THEM ARE NOLLE PROSSED AND THEY HAVE DETAINERS ON THEM.

THE COURT: WHAT IS THE EXPRESSED OF THE DEFENDANT'S CUSTODY OR BAIL?

MR. MINEHART: HE'S ON BAIL, YOUR HONOR,

- 58 -

AND --

THE COURT: HOW MUCH BAIL, TOTAL? HOW MUCH BAIL ARE YOU ON; DO YOU KNOW AT THIS TIME THE AMOUNT OF BAIL?

DEFENDANT CLIATT: YOUR HONOR, I WOULDN'T, BUT I GUESS IT'S -- WELL, I WOULD HAVE TO GUESS, JUDGE, BUT I AIN'T RIGHT.

COURT CLERK: THESE TWO, THE ONES THAT WERE DISCHARGED, HE SIGNED HIS OWN BOND AND ANOTHER IS FIVE THOUSAND.

MR. MINEHART: FIVE THOUSAND ON 1329.

THE COURT: THAT'S ON THESE TWO CASES?

COURT CLERK: UH-HUH.

MR. MINEHART: YES, SIR, YOUR HONOR. THAT'S ON 1067.

BY THE COURT: (TO DEFENDANT)

Q. WHERE ARE YOU NOW LIVING?

A. WITH MY MOTHER.

Q. WHERE?

A. 5148 GREENE STREET.

Q. AND WHAT ARE YOU DOING?

A. I WORK FOR MY UNCLE AT 2067 DURIEL AVENUE AT A DELICATESSEN.

Q. WHAT DO YOU DO AT THE DELICATESSEN?

A.    I'M A CASHIER.

Q.    AND WHO IS YOUR UNCLE?

A.    BERNARD BEAMER.

Q.    HOW DO YOU SPELL THAT NAME?

A.    WHAT?

Q.    HIS LAST NAME?

A.    B-E-A-M-E-R.

Q.    HOW LONG HAVE YOU WORKED THERE?

A.    OH, YOUR HONOR, OVER A PERIOD OF YEARS, I'VE BEEN WORKING THERE OVER A PERIOD OF ABOUT SEVEN YEARS, OFF AND ON, BUT SINCE I HAVE BEEN ARRESTED IN PRISON, RIGHT, HE AGREED TO TAKE ME ON, YOU KNOW, TO TAKE ME HERE TODAY AND LET ME WORK THERE.

Q.    THAT'S BEEN SINCE WHEN?

A.    SINCE BACK IN JUNE.

Q.    WERE YOU IN PRISON IN JUNE OF THIS YEAR?

A.    YES, SIR, YOUR HONOR.

Q.    WELL, DO YOU HAVE ANY CHILDREN?

A.    YES, SIR, THREE.

Q.    DO YOU SEE YOUR CHILDREN?

A.    YES, I TOOK THE MOTHER OF MY CHILDREN AND SHE'S SITTING RIGHT HERE IN COURT.  (INDICATING)

Q.    HOW OLD ARE YOUR CHILDREN?

A.     TERESA'S ONE YEAR OLD AND VIVIAN IS TWO.

Q.     ANY MORE?

A.     AND THE THIRD ONE IS DANIEL AND HE'S SEVEN.

Q.     YOU DON'T LIVE WITH THE MOTHER OF THE CHILDREN, DO YOU?

A.     NO, I DON'T, YOUR HONOR.

Q.     THE MOTHER OF THE TWO CHILDREN, RIGHT, IS HELEN ELLIS. WHO DOES SHE LIVE WITH?

A.     SHE LIVES WITH ME.

Q.     THE MOTHER OF THE TWO CHILDREN; ARE YOU SUPPORT-ING THEM?

A.     THE KIDS, YES, SIR, YOUR HONOR.

               THE COURT:  DO YOU HAVE ANY POSITION AS
          TO BAIL FOR DETAINERS, MR. MINEHART?

               MR. MINEHART:  I BELIEVE THE BAIL WAS
          PART OF THE AGREEMENT, THE BAIL WOULD REMAIN THE
          SAME.

               THE COURT:  WELL, I HAVEN'T HEARD THAT
          BEFORE.

               MR. MINEHART:  WELL, YOUR HONOR, WE HAVE
          NO POSITION AS TO BAIL.

               THE COURT:  HOW ABOUT THE DETAINERS?

               MR. MINEHART:  YOUR HONOR, WE HAVE THE

DETAINERS AND THAT'S AT THE DISCRETION OF THE
COURT.

MR. DEUTSCH:  IF YOUR HONOR PLEASE,
MR. CLIATT IS SCHEDULED ON MONDAY TO TESTIFY IN
ONE MATTER AND LATER IN DECEMBER AND I'M NOT
SURE OF THE DATE THAT HE'S GOING TO TESTIFY IN
ANOTHER MATTER.  THESE ARE HOMICIDE CASES WHICH
IT IS MY UNDERSTANDING THAT THE DISTRICT
ATTORNEY'S OFFICE HAS A GREAT DEAL OF INTEREST
IN GETTING HIS TESTIMONY.

THE COURT:  WELL, I'VE NOT HEARD THAT
MUCH ON THE RECORD ABOUT THAT; THE ONLY THING I
HEARD WAS SOME REPRESENTATIVE FROM THE DISTRICT
ATTORNEY'S OFFICE WAS GOING TO COME INTO COURT
AT THE TIME OF SENTENCING.  THE TESTIMONY ABOUT
THE SENTENCING OR THE COOPERATION OF THE DEFENDANT
WAS --

MR. DEUTSCH:  THE HOMICIDE CASES HE HAS
TESTIFIED TO SO FAR AND HOW MANY MORE HE IS
SCHEDULED TO TESTIFY -- WELL, IT'S MY UNDERSTAND-
ING THAT THERE IS ONE THAT HE HAS TESTIFIED IN AND
THERE ARE TWO THAT HE IS NECESSARY TO, BECAUSE
THOSE GENTLEMEN ARE IN JAIL AND THERE IS A THIRD

ONE WHERE THEY HAVE A BENCH WARRANT OUT, AND THEREFORE, --

Is THAT RIGHT?

DEFENDANT CLIATT: THAT'S RIGHT. THERE'S A BENCH WARRANT.

MR. DEUTSCH: THERE IS A BENCH WARRANT OUT FOR THREE DIFFERENT INDIVIDUALS CHARGED WITH TWO OF THE MURDERS AND THEY HAVE NOT CAUGHT THEM YET, AND HE IS TESTIFYING AGAINST ONE ON A FIRE-BOMBING.

THE COURT: IS IT POSSIBLE TO ASSUME THAT THAT WILL TAKE PLACE BEFORE HIS UTILIZATION AS A WITNESS IS COMPLETED?

MR. DEUTSCH: IT MAY BECAUSE THERE IS A BENCH WARRANT OUTSTANDING, IF YOUR HONOR PLEASE, AND THEY DIDN'T CATCH THOSE INDIVIDUALS AND I THINK NOT AS TO THE OTHER INDIVIDUALS, THEY ARE SCHEDULED TO GO TO TRIAL, BUT THAT'S BEFORE FEBRUARY THE 3RD --

THE COURT: MR. MINEHART, I WOULD ASK THAT THIS -- WHO IS THIS MEMBER OF THE HOMICIDE?

MR. MINEHART: THAT WOULD BE MR. ROSS, R-O-S-S, LENNY ROSS.

THE COURT: WELL, HE IS TO SUPPLY ME WITH A WRITTEN STATEMENT WELL IN ADVANCE OF THE DATE OF SENTENCING AS TO HIS COOPERATION, IF ANY.

MR. MINEHART: I WOULD ADVISE HIM, SIR.

THE COURT: I DON'T WANT TO HEAR THIS FOR THE FIRST TIME AT THE TIME OF SENTENCING. I WANT TO STUDY THE DOCUMENTS AND VERIFY THE --

MR. MINEHART: CERTAINLY, YOUR HONOR.

THE COURT: AND I WILL GIVE HIM THE RESPONSIBILITY OF CONVEYING THAT TO MR. ROSS THAT HE SHOULD HAVE IT IN MY POSSESSION NO LATER THAN JANUARY THE 4TH, WHICH WOULD GIVE ME ONE MONTH TO VERIFY SOME OF THE ITEMS AND EVALUATE AND ALSO, FOR THEM TO APPEAR ON THE DATE OF SENTENCING WITH ANY ADDITIONAL INFORMATION THAT THEY MAY HAVE ACQUIRED SINCE THE EXECUTION OF THAT LETTER.

MR. MINEHART: YES, SIR.

THE COURT: IS THAT CLEAR?

MR. MINEHART: YES, SIR, YOUR HONOR. I'LL MARK IT DOWN ON THE FILE.

THE COURT: AND MR. DEUTSCH, I IMPLORE YOU TO BE SURE THAT THE DISTRICT ATTORNEY DOES THAT.

MR. DEUTSCH: I'LL CONTACT MR. ROSS MYSELF.

THE COURT:  YOUR CLIENT IS CHARGED WITH A PENALTY AND HE HAS PLEADED GUILTY TO SOME SEVERE OFFENSES IN WHICH THERE WOULD BE A POSSIBLE PRISON SENTENCE.  I DON'T WANT TO SENTENCE HIM WITHOUT THE BENEFIT OF ALL OF THE INFORMATION THAT IS AVAILABLE, WHETHER IT BE AGGRAVATING OR MITIGATING IN NATURE.

MR. DEUTSCH:  OBVIOUSLY, THIS IS VERY MITIGATING; WE WOULD WANT YOUR HONOR TO HAVE ALL OF IT.

THE COURT:  I WANT IT IN ADVANCE. I DON'T WANT THE GENERAL TERMS.  I WANT SPECIFICALLY AS TO WHAT TYPE OF WITNESSES AND WHAT THE TESTIMONY IS AND THE NAMES, THE NAMES OF THE CASES AND WHERE IT WAS TRIED AND BEFORE WHOM AND THE PRESIDING JUDGE AND THE JURY, AND ALL THE OTHER INFORMATION.  I THINK YOUR CLIENT IS ENTITLED TO THAT AND THE COURT IS CERTAINLY ENTITLED TO IT. THE COURT HAS TO MAKE A DECISION AND BEFORE MAKING THAT DECISION -- BECAUSE, LOOKING AT YOUR CLIENT'S RECORD, HE HAS BEEN IN TROUBLE ALMOST CONTINUOUSLY FOR QUITE A FEW YEARS.

DO YOU HAVE ANY COMMENT ON THAT, MR.

MINEHART?

MR. MINEHART:  No, YOUR HONOR.

THE COURT:  I WOULD ALSO WANT THE HARCOTIC OFFICER, WHOEVER IS IN CHARGE IN THIS INVESTIGATION, BEFORE ME AND THE DISTRICT ATTORNEY BEFORE ME AND A STATEMENT AS TO THIS DEFENDANT'S ACTIVITY AND I THINK, EITHER WRITTEN OR IN PERSON, AT THE TIME OF SENTENCING.

MR. MINEHART:  OFFICER LEE, I BELIEVE, INTENDS TO BE HERE AT THE TIME OF SENTENCING.

THE COURT:  IN THIS CASE, HE'S PLEADING GUILTY AND HE IS THE ONE THAT I AM SENTENCING.

UNIDENTIFIED COLORED MALE POLICE OFFICER: I'M GOING TO BE HERE.

THE COURT:  OKAY.

MR. MINEHART:  ON FEBRUARY THE 3RD.

BY THE COURT:  (TO DEFENDANT)

Q.    MR. CLIATT, HAVE YOU USED DRUGS IN THE PAST?

A.    (SHAKES HEAD NEGATIVELY.)  NO, SIR.

Q.    YOU NEVER USED DRUGS YOURSELF?

A.    (SHAKES HEAD NEGATIVELY.)  NO, SIR.

Q.    ANY KIND OF DRUGS?

A.    YOUR HONOR, WHEN YOU SAY DRUGS, USE, NOW --

Q.   ILLEGITMATE DRUGS?

A.   YES, YES, SIR, YOUR HONOR.

Q.   NOT RECENT POSSESSION --

A.   YES, I HAVE USED THEM.  I THOUGHT YOU WERE TALKING ABOUT A SPECIFIC DRUG, HEROIN.

Q.   WELL, WHAT DRUGS HAVE YOU USED?

A.   COCAINE AND CODEINE AND SYRUP.

Q.   HAVE YOU EVER BEEN TREATED FOR ANY DRUGS?

A.   (SHAKES HEAD NEGATIVELY.)  NO.

Q.   ANY DRUG ABUSE?

A.   NO.

Q.   HAVE YOU EVER HAD ANY DRINKING OR ALCOHOLIC PROBLEMS?

A.   NO, SIR.  (SHAKES HEAD NEGATIVELY.)

Q.   WELL, I'M GOING TO DEFER THIS MATTER UNTIL FEBRUARY THE 3RD; I BELIEVE THAT IS THE DATE THAT WE SET?

A.   YES, SIR, YOUR HONOR.

            COURT CRIER:  YES, SIR, YOUR HONOR.

            THE COURT:  I'M GOING TO ASK FOR A PRESENTENCE REPORT AND A MENTAL HEALTH EVALUATION AND A DRUG EVALUATION AND AN ABUSIVE EVALUATION REPORT.  PLUS, I WANT A WRITTEN DOCUMENT AND

AGAIN, I REPEAT, MR. ROSS OF THE DISTRICT
ATTORNEY'S OFFICE.

       MR. MINEHART:  YES, SIR.

       THE COURT:  THAT'S ALL PART OF THE PAGE
THAT I WILL LOOK AT, AMONG THE OTHER THINGS IN
DETERMINING THE APPROPRIATE SENTENCING.

       DO YOU HAVE ANYTHING YOU WANT TO SAY,
MR. CLIATT?

       DEFENDANT CLIATT:  (SHAKES HEAD
NEGATIVELY.)

       THE COURT:  WELL, YOU HAVE THE OPPORTUNITY
IF YOU WISH TO PRESENT ANY FURTHER TESTIMONY OR
WITNESSES RELATIVE TO YOUR SENTENCING.

       DEFENDANT CLIATT:  YES, SIR.

       THE COURT:  BAIL WILL REMAIN THE SAME.
I'M NOT LODGING ANY DETAINERS.

       DEFENDANT CLIATT:  THANK YOU.

       (WHEREUPON COURT WAS ADJOURNED.)

------------