# EXHIBIT K
## Commonwealth v. Harvey
## PCRA Court Opinion

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION - CRIMINAL SECTION

COMMONWEALTH : JULY TERM, 1983
NO. 0305

vs :

ANDRE HARVEY :

RECEIVED
JUL 14 1999
PCRA UNIT

OPINION AND ORDER

BRINKLEY, J.

JULY 14, 1999

David M. McGlaughlin, Esquire, on behalf of Petitioner, has filed an Amended Petition for relief pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 et seq.

I. HISTORY

1. On May 9, 1984, following a jury trial, Petitioner and his two co-defendants were found guilty of first degree murder, conspiracy and violations of the Uniform Firearms Act. Trial counsel for Petitioner was Barry Denker, Esquire. The Honorable Francis Biunno presided.

2. The Commonwealth presented evidence that on October 27, 1982, Petitioner and his two co-defendants pulled up to the corner of 27th and Oxford Streets in a blue Gremlin, got out of the car, and began to argue with Fred Rainey, who had been standing on the

APPENDIX "A"

corner. Subsequently, all three co-defendants pointed guns at Rainey and fired shots. Rainey ran down the street and the three accomplices got back in the car and fired more shots, causing the victim's death.

Mr. Charles Atwell was an eyewitness to the crime and apparently was later threatened by the defendants to not reveal what he had seen.[1] On May 17, 1983, Atwell himself was arrested and charged with two counts of aggravated assault in an unrelated case (N.T. 4/26/84, p. 28). While in custody on the charges, Atwell contacted homicide detectives and gave a statement identifying Petitioner and co-defendants Williams and White as the gunmen.

3.  Newly appointed counsel, Stanley Bluestine, filed post-verdict motions on behalf of the Petitioner. On February 3, 1987, the trial court denied the motions and sentenced Petitioner to a term of life imprisonment for murder and five to ten consecutive years for conspiracy. An appeal was filed by Mr. Bluestine, on behalf of Petitioner. The trial court filed an opinion and on August 31, 1987, the Superior Court affirmed the judgment of

---

[1] At Petitioner's trial, evidence was presented that two weeks after the incident Petitioner and his co-defendant, Russell Williams, fired shots in the direction of the witness when he was standing on a street corner (See N.T. 4/26/84, pp. 24-25, 103).

sentence. Petition for allowance of appeal was denied by the Supreme Court on September 12, 1990.

4. On December 28, 1992, Burton Rose, Esquire, filed an Amended Petition on behalf of Petitioner. The petition was denied on December 10, 1993. On September 1, 1994, the Superior Court affirmed the PCRA court's denial of the petition.

5. On November 10, 1995, present counsel filed a second PCRA Amended Petition on Petitioner's behalf. An Evidentiary Hearing was held on February 18 and 19, 1997.[2] On July 2, 1997, this Court held the matter under advisement.

## II. STANDARD OF REVIEW

### A. MULTIPLE PETITIONS

A second or multiple petition for post conviction relief need not be considered unless the Defendant can make out a strong prima facie showing of miscarriage of justice. Commonwealth v. Lawson, 519 Pa. 504, 549 A.2d 107 (1988); Commonwealth v. Blackwell, 384 Pa.Super.251, 558 A.2d 107 (1989). The Defendant's allegation did not meet that standard.

---

[2] Petitioner's claims were consolidated with those of co-defendants Russell Williams and Harvey White for hearing purposes since similar issues were raised by all three Petitioners.

### B. WAIVER

All issues that are not raised in the Defendant's first post-conviction petition are deemed to be waived. Commonwealth v. Eaddy, 419 Pa.Super. 78, 614 A.2d 1203 (1992), appeal denied, 626 A.2d 1155 (Pa. 1993).

In order for the Petitioner to overcome waiver, he must meet the conditions set forth in Section 9543 (a) (3) of the Act by the showing that the allegations of error have resulted in the conviction or affirmance of an innocent individual. Commonwealth v. Dukeman, 413 Pa.Super. 397, 605 A.2d 418 (1992); Commonwealth v. Ryan, 394 Pa.Super. 373, 575 A.2d 949 (1990). Petitioner's allegations did not meet that requirement.

### C. PREVIOUSLY LITIGATED ISSUES

A Petitioner is not entitled to PCRA review on an issue that has been previously litigated. 42 Pa.C.S.A. §9543 (a) (3). An issue has been previously litigated if: "(1) it has been raised in the trial court, the trial court has ruled on the merits of the issue and the Petitioner did not appeal; (2) the highest appellate court in which Petitioner could have had review as a matter of right has ruled on the merits of three issue; or (3) it has been raised in and decided in a proceeding collaterally attacking the conviction of sentence." 42 Pa.C.R.A. §9544(a).

4

"An issue may not be relitigated merely because a new or different theory is posited as a basis for reexamining an issue that has already been decided." Commonwealth v. Senk, 496 Pa. 630, 437 A.2d 1218, 1220 (1981); Commonwealth v. Tenner, 377 Pa.Super. 540, 547 A.2d 1194, 1997 (1988), appeal denied, 562 A.2d 826 (Pa. 1989).

### D. AFTER-DISCOVERED EVIDENCE

Pursuant to Section 9543 (a) (2) (vi) of the PCRA, a Petitioner is entitled to post-conviction relief if he pleads and proves that his conviction resulted from: "The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced."

In Commonwealth v. Tizer, 525 Pa. 315, 580 A.2d 305 (1990), our Supreme Court interpreted a previous, identical provision to require that the following four requirements be satisfied: (1) the evidence must have been discovered only after trial and must not have been discoverable through the exercise of reasonable diligence; (2) it must be exculpatory and not merely cumulative or corroborative; (3) it must not be used only to impeach the credibility of a witness; and (4) it must be of such nature and character that it would compel a different result.  See also Commonwealth v. Frey, 512 Pa.557, 517, A.2d 1265 (1986).

III. ISSUES

The following issues were raised in the 1995 amended PCRA petition: (1) Commonwealth witness, Charles Atwell, was supplied with sexual favors in exchange for his false eyewitness testimony, and the testimony of a post-incident confrontation with Mr. Harvey;[3]

(2) Atwell testified falsely about his favorable treatment by the Commonwealth whereby he received a windfall of a nol pros of his open assault charges in exchange for his testimony, which was not harmless error;[4]

(3) The nol pros of Atwell's open aggravated assault charges was secured by police misconduct, and illegal acts.[5]

---

[3] The sole issue addressed at the February 18th and 19th Evidentiary Hearing was whether sexual favors were provided to Charles Atwell in order to induce him to falsely implicate the Petitioner for the crime for which he was convicted. Accordingly, this Opinion will discuss only this issue.

[4] With regard to Petitioner's claim that Atwell testified against him in exchange for dropping Mr. Atwell's aggravated assault charges, Mr. Flannery, the assistant district attorney on the case, testified that the charges were nolle prossed because the complaining witness never showed up to the preliminary hearing (N.T. 5/1/84, pp.4-24)

[5] Petitioner alleges that he was denied a fair trial because the Commonwealth knowingly failed to disclose the material inducements and/or other considerations or promises made to Charles Atwell. There is no credible proof that Charles Atwell was offered a deal or was made any promises other than his request to be transferred from the Detention Center to Holmesburg Prison, which was part of his testimony during the original trial (N.T. 4-26-84, p.31).

6

(4) The evidence offered by Marvin McClain was tainted by McClain's relationship with Atwell.[6]

## IV. DISCUSSION

Petitioner claims that police provided witness Charles Atwell with sexual encounters with women in the Police Administration Building (PAB), in exchange for his testimony implicating the Petitioner and his co-defendants in the murder of Fred Rainey.

The burden of proving the ground upon which post-conviction relief is requested, rests upon the Petitioner. Commonwealth v. Baker, 352 Pa.Super. 260, 507 A.2d 872 (1986); Commonwealth v. Fox, 272 Pa.Super. 8, 414 A.2d 642 (1979). In order to obtain relief under the PCRA, a petitioner has the burden of pleading and proving by a preponderance of the evidence that his or her conviction or sentence resulted from at least one of the errors set forth in Section 9543(a)(2), he or she has not previously litigated or waived any of the issues he or she raises, and the decision to forego litigating the issues was not tactical. 42 Pa.C.S.A. §9543(a).

---

[6] On or about June 5, 1998, Petitioner submitted this claim as a supplemental issue. However, this issue was waived as it was not raised previously on post-trial motions, on direct appeal or on his first PCRA Petition. Moreover, it is well settled that a second or multiple petition for post-conviction relief need not be considered unless Defendant can make out a strong prima facie showing of miscarriage of justice. Lawson, supra. This petitioner has failed to do.

7

Passing on the credibility of witnesses is a function solely within the province of the finder of fact, which is free to believe all, part, or none of the evidence. Commonwealth v. Woods, 432 Pa.Super. 428, 638 A.2d 1013, 1015 (1994); Commonwealth v. Mayfield, 401 Pa.Super. 560, 585 A.2d 1069 (1991). Furthermore, a judge as a fact-finder is presumed to be able to disregard inadmissible or incompetent evidence. Commonwealth v. Glover, 266 Pa.Super. 531, 405 A.2d 945 (1979).

In the instant case, the Court conducted an evidentiary hearing on February 18 and 19, 1997 at which testimony was presented from five witnesses. Those witnesses were Charles Atwell and Detective Gerrard for the Commonwealth and Douglas Atwell, Maxie Harris-Jiles and Sharon Artis for Petitioners. After a review of the record and the testimony given at the evidentiary hearing, this Court finds the testimony of Commonwealth witness Charles Atwell credible and that of Petitioner's witnesses Douglas Atwell, Sharon Artis and Maxie Harris-Jiles incredible, and thus finds Petitioner's claims to be without merit.

Nearly thirteen years elapsed between the original trial date and the date of the evidentiary hearing. All of the witnesses presented at the evidentiary hearing in February 1997 needed their memories refreshed or suffered impeachment by the adverse party. Notwithstanding the foregoing, this Court has resolved the issue of credibility in favor of the Commonwealth.    Charles    Atwell

8

testified credibly that he was not provided with sexual favors to induce him to falsely implicate Petitioner for the crime for which he was convicted (N.T. 2/18/97, pp. 30, 50-51, 67, 74-75). Mr. Atwell acknowledged that he was transported from the county prison to the Police Administration Building to provide information in an ongoing police investigation in this case. While at the PAB, he acknowledged visits with Maxie Harris-Jiles, whom he listed on visitor logs as his wife. However, at that time, she was, in fact, either a current or former girlfriend. More importantly, however, she was the mother of his children (N.T. 2/18/97, pp. 59-69).

Atwell also testified credibly that the purpose of his visits with Ms. Harris-Jiles was to visit with his children (N.T. 2/19/97, p. 76). Even Ms. Harris-Jiles and Detective Gerrard corroborate the fact that visits included the presence of one or two young children under the age of five years (N.T. 2/18/97, pp. 72, 2/19/97, pp. 109, 116). Moreover, Atwell testified that the only consideration he requested and which was granted during his cooperation with homicide detectives preceding the jury trial in this case was transfer from the same county prison where the Petitioner and his co-defendants were housed (N.T. 4/26/84, pp. 31-33, 56-59; N.T. 6/30/83, p. 61). This request has the ring of truth since there is a claim that Atwell was himself shot at by two of the Petitioners following the killing of Mr. Rainey (N.T.

9

4/26/84, pp. 24-25, 103). Moreover, Ms. Harris-Jiles claimed that her life and that of her children were threatened during the course of this investigation (N.T. 2/18/97, pp. 67-68, 2/19/97, p. 209). Thus, a request for transfer from the same prison was appropriate and possibly necessary to protect Mr. Atwell from any danger while awaiting trial.

Furthermore, Mr. Atwell's testimony at trial was consistent with that of at least three other eyewitnesses. In addition, circumstantial evidence regarding the theft of the vehicle involved in the shooting and the presence of co-defendant Williams' fingerprints on that vehicle following the shooting, support Atwell's testimony regarding Mr. Harvey and his co-defendants.[7]

---

[7] The evidence, as summarized by the trial court was as follows: On October 27, 1982 at approximately 3:15 p.m., Fred Rainey was shot several times while in the vicinity of 27th and Oxford Streets in Philadelphia, Pennsylvania. **Theodore Young**, age 15, who lived at 1623 North 27th Street, testified that he was the neighbor of the victim and that at the time of the shooting he was walking on 27th Street toward Oxford when he saw the victim standing outside of 1603 North 27th Street. Mr. Rainey was talking to some people inside a blue Gremlin hatchback automobile. Mr. Young was about twelve to fifteen feet away from the victim when he saw the victim turn and start to run in Mr. Young's direction. Mr. Young heard two shots fired from the Gremlin and saw the victim fall to the ground. As Mr. Young hid behind a parked car and covered his head, he then saw the Gremlin speed away.

**Robert Bently** testified that on October 27, 1982 at about 1:30 p.m., he saw the defendant Howard White driving a blue Gremlin. Later he saw the victim, Fred Rainey, who he had known for three or four years, standing near a blue Gremlin and arguing with someone inside the car. Mr. Bently heard shots coming from the area of the blue Gremlin which then sped off with three men

in it. After the shooting, Mr. Bently saw the victim run down the street and collapse on the pavement.

Charles Atwell, age 30, testified that on October 27, 1982 at about 2:50 p.m., he was walking with Marvin McClain on Oxford Street approximately a half a block from 27th Street. He said he saw the victim, Fred Rainey, standing on the corner of 27th and Oxford Streets. He then saw a blue Gremlin driven by the defendant Howard White and occupied by Andre Harvey and Russell Williams traveling from 26th to 27th Street on Oxford Street. He saw the Gremlin pull up to the curb near Rainey, [and] he saw all three defendants get out of the car. Hands were moving in an apparent argument. Then Atwell saw all three defendants point at Rainey, he heard shots and saw all three defendants' hands jerk. Rainey ran north on 27th Street and Atwell lost sight of him. The defendants then all got back into the car and Mr. Atwell heard two more shots. Mr. Atwell further testified that he knew the victim and all of the defendants for several years. He also testified that he knew that Levonia Davidson was Howard White's girlfriend and he had seen them in the past together in the blue Gremlin.

Marvin McClain testified that On October 27, 1982, he was with Charles Atwell about one half block away from 27th and Oxford Streets when he saw the victim and the three defendants arguing. He saw a gun in the defendant Andre Harvey's hand and heard a shot from the area where the defendant Russell Williams was standing. He ran toward the corner and heard several more shots. He then saw Howard White get into the blue Gremlin and at that time saw a gun in defendant White's hand. He also saw the defendant Andre Harvey with a gun in his hand standing over the victim's prone body and kick the victim in the head.

Officer Irvin Henderson testified that on October 27, 1982 at approximately 5:35 p.m., he went to 2442 W. Sharswood Street, Philadelphia, Pennsylvania and met with Levonia Davidson, who reported that her 1976 blue Gremlin, license number BYE 676 had been stolen. This car was recovered undamaged on October 28, 1982 at 1:35 a.m., by Detective William Thomas. Subsequently, one latent fingerprint was taken from the top of the exterior of the passenger door and identified as being the first digit of the left finger of Russell Williams.

Dr. Paul J. Foyer, an assistant medical examiner for the county of Philadelphia, testified that he performed an autopsy on Fred Rainey and that the victim's body had five bullet tracks from at least four shots and that the cause of death was gunshot

11

Thus, Atwell's testimony was deemed credible at trial and it remains credible in light of Petitioner's new claims regarding Atwell's alleged motive.

Moreover, in making a credibility finding in favor of the Commonwealth, this Court specifically rejects the testimony of Douglas Atwell, Sharon Artis and Maxie Harris-Jiles. First, Douglas Atwell was housed at Graterford Prison with Petitioner Harvey and co-defendant Howard White. He testified that he had conversations about this case with them after having read about the Superior Court's ruling in Commonwealth v. Lester, 572 A.2d 694 (Pa.Super. 1990). Thus, he may have had motivation to fabricate his testimony.[8] Moreover, Douglas Atwell's testimony that he brought angel dust to the PAB and gave it, not to his Uncle Charles Atwell, but to Detective Gerrard is quite incredible.

Second, with regard to the testimony of Sharon Artis, her memory was quite diminished. Many details escaped her memory, but,

---

wounds of the chest, abdomen and extremities.

[8] In Lester, the Superior Court granted relief to Petitioner where Petitioner claimed that the same officers involved in the instant case, Detectives Gerrard and Gilbert, permitted Lester to have sex at the PAB in order to induce Lester into giving a confession following his arrest. Involvement of the same officers in the case at bar cannot raise a presumption about their activity for the exact reasons at issue in Lester. Each case must be reviewed on its own merits.

apparently, the only thing she could remember was going to the PAB, visiting with her then boyfriend, Mr. Singleton and having sex with him the two or three times she visited him. However, there were no police logs introduced indicating that Ms. Artis ever had visited Mr. Singleton while he was in custody at the PAB. Therefore, based upon Ms. Artis' severely diminished memory, less weight was accorded her testimony.

Lastly, with regard to the testimony of Maxie Harris-Jiles, the severe failure of her memory, likewise, renders her testimony incredible. Ms. Harris-Jiles testified that she suffers from a nervous condition called Steven Johnson Syndrome, which caused memory loss in 1983 and 1984. She testified further that she still suffered from memory loss at the time of the February 1997 evidentiary hearing (N.T. 2-18-97, pp.71-72). Moreover, Ms. Harris-Jiles memory was so impaired that she did not even recall having given her own statement on December 20, 1984 to police regarding threats against her life and that of her children (N.T. 2-18-97 pp.67-70).

Thus, Petitioner's argument is based solely upon speculation. He offers no credible evidence to prove that any deals or promises were made in exchange for the testimony of Mr. Atwell other than that to which Atwell and Assistant District Attorney Flannery testified. Nor is there sufficient credible evidence to support

the notion that Mr. Atwell was given sexual favors in order to induce him to testify falsely against Petitioner and his co-defendants at the Police Administration Building.

Furthermore, with regard to issue of after-discovered evidence, as stated in Tizer, infra, four requirements must be met: (1) the evidence must have been discovered only after trial and must not have been discoverable through the exercise of reasonable diligence; (2) it must be exculpatory and not merely cumulative or corroborative; (3) it must not be used only to impeach the credibility of a witness; and (4) it must be of such nature and character that it would compel a different result. Petitioner has failed to meet these requirements. Petitioner's claims regarding sexual favors given as an inducement to Charles Atwell to testify falsely against Petitioner, even if believed, would be used only to impeach the credibility of Atwell. Moreover, because overwhelming evidence was adduced at trial including eyewitness testimony from three persons other than Atwell, the sexual favors claim is not of such nature and character that it would compel a different result. Thus, this claim is meritless.

Likewise, Petitioner's claim of violation of due process and fair trial rights under the U.S. and Pennsylvania Constitutions is equally meritless. As discussed previously, Commonwealth Attorney Flannery testified that aggravated assault charges against Atwell

14

were nolle prossed because the complaining witness failed to appear at the preliminary hearing (N.T. 5-1-84, pp.4-24). Additionally, Atwell testified that the only consideration he requested, which was granted in exchange for his testimony was transfer from the same prison where Petitioner and his co-defendants were being held. This request was reasonable under the circumstances and was granted by the Commonwealth. Thus, there was no failure, either on the part of the Commonwealth or Atwell, to disclose any promise or inducements to Atwell in exchange for his testimony. Therefore, the truth determining process was not undermined and the defense was not prohibited from revealing to the jury, through cross-examination, the extent of the promises or inducements to Atwell in exchange for his cooperation.[9]

In conclusion, Petitioner failed to meet his burden of proof by a preponderance of credible evidence that he is entitled to PCRA relief. He failed to make out a prima facie showing of miscarriage of justice; he made no showing that the allegations of error have resulted in the conviction of an innocent individual and evidence

---

[9] To the contrary, Mr. Seay, counsel for co-defendant Williams, vigorously cross-examined Atwell in an attempt to show that he received favorable treatment in exchange for his testimony. But since there was no other "deal" other than transfer from one institution to another, Mr. Seay was limited in his questioning.

15

O R D E R

AND NOW, this 14th day of July, 1999, after a review of the pleadings and record it is hereby ORDERED and DECREED that Petitioner's claim for post-conviction relief is denied.

BY THE COURT:

*[signature]* J.