IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAJOR GEORGE TILLERY,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | NO.   20-cv-2675 |
| | : | |
| **KENNETH EASON, et al.,** | : | |
| Respondents. | : | |

**REPORT AND RECOMMENDATION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                                              December 17, 2021

Before the Court is a *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Major George Tillery (Petitioner), an individual currently incarcerated at the State Correctional Institution – Chester, located in Chester, Pennsylvania. For the following reasons, I respectfully recommend that Respondents' Motion to Stay (ECF No. 23) be **GRANTED**, and that the petition be **STAYED AND HELD IN ABEYANCE** until voluntary discovery proceedings have concluded.

**I.    FACTUAL AND PROCEDURAL HISTORY[1]**

The Superior Court gave the following summary of the facts on direct appeal:

---

[1] Due to the Covid-19 pandemic and the resulting difficulties in receiving physical records from the Prothonotary of Philadelphia, the state court record was not ordered in hard-copy format in this case. *See* Order, ECF No. 6. Instead, Respondents were ordered to attach all records as Exhibits to their Response to the habeas petition. *Id.* Accordingly, these documents shall be cited as Exhibits to the Response (ex. "Resp., ECF No. 13, Ex. ___"). The Court has also consulted the Court of Common Pleas criminal docket sheet for *Commonwealth v. Tillery*, No. CP-51-CR-0305681-1984, *available at* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0305681-1984&dnh=YHvnrlRecuTpbx0a%2FyMGtg%3D%3D (last visited Dec. 17, 2021) [hereinafter "Crim. Docket"].

At approximately 10:00 p.m. on October 22, 1976, Philadelphia police received a call to the address at Huntingdon and Warnock Streets in North Philadelphia. At that corner, they broke down the locked door of a poolroom operated by William Franklin and discovered the dead body of John Hollis. A medical examination later revealed that Hollis died of a gunshot wound to the trunk of his body. Inside the poolroom, the police found live and spent .38 caliber ammunition and a set of car keys. Around the corner from the poolroom at 2527 North 11th Street, police officers found John Pickens bleeding from a gunshot wound. He was treated at a hospital and survived his injuries. Both Pickens and Hollis were shot by different guns.

For more than three years, the shooting of Pickens and Hollis remained unsolved. However, in the spring of 1980, police detectives, investigating the [unrelated] homicide of Samuel Goodwin, visited a Philadelphia prison to determine if Emanual Claitt, an inmate who had known Goodwin, could provide any information about Goodwin's death. The information Claitt provided went far beyond the Goodwin case. Claitt described in detail the operation of what he labeled the "black mafia," a crime syndicate run by black Muslims in Philadelphia. His information described a vivid picture of the events culminating with the shootings of Pickens and Hollis.

Claitt testified that from 1976 until 1980, he engaged in drug dealing and extortion as a member of the Philadelphia "black mafia." The organization divided the city into sections for business purposes. Alfred Clark was the leader of the North Philadelphia branch. He held the rank of first lieutenant and had "the last word" for all business in the city. Sylvester White directed the West Philadelphia branch. John Pickens also dealt drugs in West Philadelphia. During the 1970s, [Petitioner] held the rank of first lieutenant and "had control of the entire city as far as methamphetamines is concerned …" Claitt received his heroin supply from Clark and his methamphetamine supply from [Petitioner]. Clark and [Petitioner] were partners in the heroin and methamphetamine trade. Claitt characterized [Petitioner] as Clark's "right hand man."

On the night of October 20, 1976, Claitt, Clark, [Petitioner], James Ravenell and Rainey met at the home of Dana Goodman at 59th and Woodbine Streets to discuss a disagreement between [Goodman] and Pickens over drug selling in West Philadelphia. Pickens arrived with Hollis and argued with Clark about a transaction in which Clark disposed of drugs claimed by Pickens at

2

the expense of Pickens. During the argument, Hollis called Clark a "gangster." He then grabbed Clark by the collar, took out a pistol, slapped Clark in the face with the gun and pointed it at Clark as if he were about to shoot. Pickens stopped Hollis from firing the weapon, but [Petitioner] said that Hollis "would have to die for what he did." Although White was not present, Clark said he would talk to him and arrange a meeting at Franklin's poolroom to settle the dispute.

Thereafter, a group consisting of Clark, Claitt, Rainey, Ravenell and [Petitioner] met White at a mosque at 13th Street and Susquehanna Avenue in North Philadelphia. The group then drove to Franklin's poolroom. When they arrived at the poolroom, [Petitioner] accused White of setting up the earlier incident and demanded a meeting on Friday, October 22, 1976, to which White was to bring Pickens and Hollis. White agreed to the demand.

On the evening of Friday, October 22, 1976, Clark met the group outside the mosque. Clark made everyone surrender their weapons because a peaceful meeting was planned. The group then drove to the poolroom at Huntingdon and Warnock Streets. When they arrived, Clark instructed Claitt to remove two more guns from the group and then guard the door. Additionally, [Petitioner] arranged for one of his couriers, Robert Mickens, to watch outside the poolhall for police.

Inside the poolhall, [Petitioner] and Franklin sat at opposite ends of a table. [Petitioner] told Hollis to apologize, but Hollis refused. Following a nod to Franklin, [Petitioner] reached under the table and pulled out a gun. Franklin also reached under the table and pulled out a weapon. [Petitioner] then shot Hollis in the back. When Pickens protested, [Petitioner] shot Hollis again and Franklin then shot Pickens. Pickens proceeded to run through a locked door shattering the glass.

William Arnold arrived immediately after the shootings and discovered Pickens holding his stomach. Pickens had collapsed from the wound. Arnold helped him to a house at 2527 North 11th Street where the police found him.

Based on Claitt's information, the police obtained a warrant on May 23, 1908 for [Petitioner's] arrest. However, for three years police were not able to serve the warrant because [Petitioner] could not be located. A detective in California finally arrested [Petitioner] in November, 1983. [Petitioner] was returned to Philadelphia on December 8, 1983 to stand trial for the aforementioned charges.

3

*Com. v. Tillery*, 563 A.2d 1956, slip op. at 2–5 (Pa. Super. 1989).

Following a jury trial, Petitioner was found guilty of murder in the first degree, aggravated assault, two counts of criminal conspiracy, and possession of an instrument of crime (PIC). (Crim. Docket at 3). On December 9, 1986, the trial court sentenced Petitioner to life imprisonment for the murder conviction. *Id.*

Petitioner filed a direct appeal, claiming prosecutorial misconduct, ineffective assistance of trial counsel, and trial court error. On May 30, 1989, the Pennsylvania Superior Court affirmed Petitioner's judgment of sentence. *Tillery*, 563 A.2d 1956. On March 5, 1990, the Pennsylvania Supreme Court denied allowance of appeal. *Com. v. Tillery*, 593 A.2d 841 (Pa. 1990).

On February 18, 1996, Petitioner filed a petition under Pennsylvania's Post-Conviction Relief Act (PCRA). (Hab. Pet., ECF No. 2, at 6). He raised one claim of ineffective assistance of trial counsel, asserting that counsel's prior representation of John Pickens constituted a conflict of interest. *Id.* The PCRA court denied the petition, and on April 21, 1999, the Superior Court affirmed the denial. *Com. v. Tillery*, 738 A.2d 1058 (Pa. Super. 1999). On August 18, 1999, the Pennsylvania Supreme Court denied allowance of appeal. *Com. v. Tillery*, 742 A.2d 674 (Pa. 1999).

On December 22, 1999, Petitioner filed his first petition for writ of habeas corpus. *Tillery v. Horn*, No. 99-cv-6516 (E.D. Pa. 1999) (Hab. Pet., ECF No. 1). In this petition, he repeated his claim that trial counsel was ineffective and had a conflict of interest. *Id.* On September 19, 2000, Magistrate Judge James R. Melinson issued a Report and Recommendation that the petition be denied. *Id.*, ECF No. 37. On October 30, 2000, the Honorable Judge

4

Clarence C. Newcomer approved and adopted the Report and Recommendation. *Id.*, ECF No. 40.

Petitioner appealed to the Court of Appeals for the Third Circuit, which remanded his case for further proceedings on August 23, 2002. *Id.*, ECF No. 45. The District Court held hearings on April 23 and May 28, 2003, then reaffirmed its previous order on July 28, 2003. *Id.*, ECF No. 78. Petitioner appealed again to the Court of Appeals, which granted a certificate of appealability. *Id.*, ECF No. 88. On July 29, 2005, the Court of Appeals affirmed the decision of the District Court, concluding that Petitioner had failed to demonstrate an actual conflict of interest that adversely impacted trial counsel's performance. *Tillery v. Horn*, 142 Fed. Appx. 66, 70–71 (3d Cir. 2005). On November 28, 2005, the United States Supreme Court denied Petitioner's petition for writ of certiorari. *Tillery v. Beard*, 546 U.S. 1043 (2005).

On August 13, 2007, Petitioner filed a second PCRA petition. (Crim. Docket at 4). In this petition, he raised three claims for relief: (1) the Commonwealth knowingly withheld evidence of preferential treatment given to Claitt in exchange for his testimony; (2) the Commonwealth allowed Claitt to testify falsely at trial; and (3) the Commonwealth knowingly withheld evidence of preferential treatment given to Mickens in exchange for his testimony. (Resp., ECF No. 13, Ex. B (Second PCRA)). The PCRA court dismissed Petitioner's PCRA as untimely, and on July 15, 2009, the Superior Court affirmed. (Crim. Docket at 6). On December 9, 2009, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. *Id.*

On October 6, 2014, Petitioner filed a third PCRA petition. *Id.* In this petition, he asserted that newly-discovered evidence, in the form of signed recantations from Claitt and Mickens, demonstrated his actual innocence. (Resp., ECF No. 13, Ex. D (Third PCRA)). He

also repeated his claims that the Commonwealth presented false testimony and withheld evidence of preferential treatment towards Claitt and Mickens. *Id.* On September 26, 2016, the PCRA court dismissed the petition as untimely, and on June 11, 2018, the Superior Court affirmed. (Crim. Docket at 7–8). On February 6, 2019, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. *Id.* at 8.

On June 5, 2020, the Court of Appeals granted Petitioner leave to file a second or subsequent petition for writ of habeas corpus. (USCA Order, ECF No. 1). On the same date, Petitioner filed the instant habeas petition. (Hab. Pet., ECF No. 2). On August 18, 2020, the Honorable Judge Petrese B. Tucker referred the case to Magistrate Judge Linda K. Caracappa for a Report and Recommendation. (Order, ECF No. 5). On October 5, 2020, Respondents filed a motion for extension of time to file a response, which the Court granted. (ECF No. 7; Order, ECF No. 8). On October 29, 2020, the case was reassigned to me for a Report and Recommendation. (Order, ECF No. 9). On February 5, 2021, Respondents filed their Response, and on June 6, 2021, Petitioner filed a Reply. (Resp., ECF No. 13; Reply, ECF No. 16).

On December 15, 2021, Respondents filed the instant Motion to Stay. (Mot. to Stay, ECF No. 23). In their Motion, Respondents represent that their previous Response arguing for the dismissal of Petitioner's petition contained substantial errors, and that they now believe that open-file discovery is appropriate in this case. *Id.* at 1, 7. Accordingly, Respondents ask for a stay to allow discovery to proceed. *Id.* at 7. Respondents do not presently take any position on whether Petitioner is entitled to habeas relief. *Id.*

## II. DISCUSSION

District courts ordinarily have the authority to issue stays, as long as the stay constitutes a

proper exercise of discretion. *Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). Here, the Commonwealth asks for a stay in order to conduct voluntary discovery. Several factors support granting the Commonwealth's request.

First, Petitioner has obtained counsel since filing his *pro se* habeas petition and reply. Allowing counsel to conduct discovery in cooperation with the Commonwealth and later file an amended petition will help to clarify the issues in this case, and could prove especially important where, as here, the Commonwealth represents that Petitioner's claims warrant further review. (Mot. to Stay, ECF No. 23, at 6).

Second, the Commonwealth represents that the four main arguments it initially relied on in arguing that Petitioner's petition should be dismissed are foreclosed by controlling precedent. *Id.* at 2. The Commonwealth explains that, in light of this, it believes that Petitioner may meet the requirements for a successive petition and that his arguments are potentially meritorious. *Id.* at 7. Without taking any position on the Commonwealth's interpretation of the controlling case law, this nevertheless presents a situation where further review of Petitioner's claims may be warranted.

Accordingly, I recommend that the Commonwealth's motion for a stay be granted.

### III. CONCLUSION

I recommend that the instant habeas petition be placed in suspense. I also recommend that Respondents notify the District Court within seven days of the conclusion of discovery.

Therefore, I respectfully make the following:

7

## RECOMMENDATION

AND NOW, this __17TH__ day of December, 2021, I respectfully **RECOMMEND** that the petition for writ of habeas corpus be **STAYED** and **HELD IN ABEYANCE** while the parties engage in voluntary open-file discovery.  I **FURTHER RECOMMEND** that the District Court direct Respondents to notify the District Court within seven days of the conclusion of discovery.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge